**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| NICOLAS GOUREAU and STEPHANIE MENKIN, : <br> individually and derivatively on behalf of : <br> GOOBERRY CORP., a New York corporation, : <br> : <br>        Plaintiffs, : <br> : <br> - against - : <br> : <br> MARCUS LEMONIS, an individual, ML RETAIL, : <br> LLC, a Delaware limited liability company, : <br> MARCUS LEMONIS, LLC, a Delaware limited : <br> liability company, and MACHETE CORPORATION : <br> d/b/a MACHETE PRODUCTIONS, a California : <br> corporation, : <br> : <br>        Defendants, : <br> : <br> and : <br> : <br> GOOBERRY CORP., a New York corporation, : <br> : <br>        Nominal Defendant. : <br> : <br> : | Case No. 1:20-cv-04691-MKV |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS MARCUS LEMONIS, ML RETAIL, LLC, AND MARCUS LEMONIS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ....................................................................1

II.    STATEMENT OF FACTS ............................................................................1

III.   ARGUMENT ...............................................................................................6

     A.     The Complaint must be dismissed for improper venue under Federal Rule of Civil Procedure 12(b)(3). ........................................................................6

     B.     Legal Standard for Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss. ................................................................................................8

     C.     Plaintiffs' lawsuit must be dismissed because it is barred by the prohibition against claim splitting. ........................................................................8

     D.     Plaintiffs fail to plead demand futility for their derivative claims because they control the majority of shares and directors of Gooberry. ...........................10

     E.     Plaintiffs' fail to state a plausible claim outside of contract for fraud (Counts 1 & 2), breach of fiduciary duty (Count 3), the implied covenant of good faith and fair dealing (Count 4), unjust enrichment (Count 5), misappropriation of corporate assets (Count 6), corporate mismanagement and waste (Count 7), and conversion (Count 8). ...................................................11

          1.     Plaintiffs' nebulous alter ego pleading fails to set forth the individual acts of wrongdoing by Lemonis, ML Retail, and Marcus Lemonis, LLC.....................................................................................11

          2.     Plaintiffs' claims for fraudulent inducement and fraud (Counts 1 & 2) lack the requisite particularity due to group pleading and the nebulous alter ego allegations. ...............................................14

          3.     The economic loss doctrine and the fact that Plaintiffs' claims are duplicative of their breach of contract claims further bar Plaintiffs' claims. ...................................................................................15

          4.     Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count 4) fails because it is a contract claim in disguise. ......16

          5.     Plaintiffs' unjust enrichment (Count 8) claim is barred by contract. ........18

     F.     Plaintiffs' civil RICO claim (Count 9) should be dismissed because Plaintiffs have not pled and cannot plead the elements of that claim, let alone with the requisite particularity...................................................19

G.      Plaintiffs' equitable claims for receiver (Count 12), injunctive relief (Count 13), and dissolution (14) should be dismissed because these are remedies— not causes of action. ...........................................................................................23

H.      Leave to amend should be denied. ...................................................................24

IV.     CONCLUSION ............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. NSA*,
925 F.3d 576 (2d Cir. 2019) ............................................................................2

*Ambase Corp. v. City Investing Co. Liquidating Trust*,
326 F.3d 63 (2d Cir. 2003) ...........................................................................8, 9

*AMEX v. Mopex, Inc.*,
215 F.R.D. 87 (S.D.N.Y. 2002) ........................................................................8

*Arnold v. KPMG LLP*,
334 F. App'x 349 (2d Cir. 2009) ....................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................8

*Atl. Marine Const. Co. v. United States District Court*,
571 U.S. 49 (2013) ............................................................................................6

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) .......................................................................12

*Barclay v. Lowe*,
131 F. App'x 778 (2d Cir. 2005) ......................................................................9

*Beth Sr. Med. Ct. v. Horizon Blue Cross & Blue Shield of NJ, Inc.*,
448 F.3d 573 (2d Cir. 2006) ...........................................................................18

*Billy v. Consolidated Machine Tool Corp.*,
51 N.Y.2d 152 (1980).....................................................................................13

*Blackrock Core Bond Portfolio v. U.S. Bank N.A.*,
165 F. Supp. 3d 80 (S.D.N.Y. 2016)...............................................................15

*BNP Paribas Mortg. v. Bank of Am., N.A.*,
949 F. Supp. 2d 486 (S.D.N.Y. 2013)..............................................................15

*Cerasani v. Sony Corp.*,
991 F. Supp. 343 (S.D.N.Y. 1998)....................................................................2

*Combier-Kapel v. Biegelson*,
242 F. App'x 714 (2d Cir. 2007) ......................................................................2

*Condos Bros. Constr. Corp. v. Main St Am. Assur. Co.*,
  280 F. Supp. 3d 349 (E.D.N.Y. 2017) ..................................................................... 19, 21, 22

*Cruz v. Fxdirectdealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) ................................................................................... 19, 20, 21

*Cullen v. Margiotta*,
  811 F.2d 698 (2d Cir. 1987) ..............................................................................................20

*Denny v. Barber*,
  576 F.2d 465 (2d Cir. 1978) ..............................................................................................24

*Digennaro v. Whitehair*,
  467 F. App'x 42 (2d Cir. 2012) ...........................................................................................9

*Diversified Group, Inc. v. Daugerdas*,
  139 F. Supp. 2d 445 (S.D.N.Y. 2001) ...............................................................................18

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
  228 F.R.D. 508 (S.D.N.Y. 2005) ......................................................................................13

*Egerique v. Chowaiki*,
  2020 U.S. Dist. LEXIS 73060 (S.D.N.Y. Apr. 24, 2020) ................................... 19, 21, 22, 23

*Freeman v. McKinnel*,
  307 F. App'x 590 (2d Cir. 2009) ......................................................................................11

*Frieldander v. Rhoades*,
  962 F. Supp. 428 (S.D.N.Y. 1997) ...................................................................................20

*Gartner v. Snyder*,
  607 F.2d 582 (2d Cir. 1979) ............................................................................................13

*Haggiag v. Brown*,
  728 F. Supp. 286 (S.D.N.Y. 1990) ...................................................................................24

*Int'l Techs. Mktg. v. Verint Sys.*,
  157 F. Supp. 3d 352 (S.D.N.Y. 2016) ..............................................................................17

*Lucente v. IBM*,
  310 F.3d 243 (2d Cir. 2002) ............................................................................................25

*Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*,
  2004 U.S. Dist. LEXIS 3508 (S.D.N.Y. Mar. 5, 2004) ......................................................6

*Nesbeth v. New York City Mgmt., LLC*,
  2019 U.S. Dist. LEXIS 1830 (S.D.N.Y. Jan. 4, 2019) ......................................................12

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
   712 F.3d 705 (2d Cir. 2013) ................................................................................8

*Petedge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017) ..............................................................14

*Physicians Mut. Ins. Co. v. Greystone Servicing Corp, Inc.*,
   2009 U.S. Dist. LEXIS 32616 (S.D.N.Y. Mar. 25, 2009) .................................20

*Plount v. Am. Home Assurance Co.*,
   668 F. Supp. 204 (S.D.N.Y. 1987) ....................................................................19

*Port Chester Electrical Constr. Corp. v. Atlas*,
   40 N.Y.2d 652 (1976).........................................................................................13

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) .................................................................................8

*Rozsa v. May Davis Group, Inc.*,
   187 F. Supp. 2d 123 (S.D.N.Y. 2002) ..............................................................24

*Ruotolo v. City of New York*,
   514 F.3d 184 (2d Cir. 2008) .............................................................................24

*State St. Bank && Trust Co. v. Inversiones Errazuriz Limitada*,
   374 F.3d 158 (2d Cir. 2004) ......................................................................17, 18

*Studint v. La Sall Ice Cream Co.*,
   623 F. Supp. 232 (E.D.N.Y. 1985)....................................................................24

*TradeComet.com LLC v. Google, Inc.*,
   453 F. App'x 32 (2d Cir. 2011) ...........................................................................7

*Vanover v. NCO Fin. Services, Inc.*,
   857 F.3d 833 (11th Cir. 2017) .............................................................................9

**Statutes**

18 U.S.C. § 1962...................................................................................................19

N.Y. Bus. Corp. Law § 1104-a .............................................................................23

**Other Authorities**

Fed. R. Civ. P. 8....................................................................................................12

Fed. R. Civ. P. 9.............................................................................................14, 19

Fed. R. Civ. P. 11 ................................................................................................................. 14, 25

Fed. R. Civ. P. 12 ............................................................................................................. 1, 6, 8, 25

Fed. R. Civ. P. 15 ................................................................................................................... 24

Fed. R. Civ. P. 23.1 ................................................................................................................ 11

Defendants Marcus Lemonis ("Lemonis"), ML Retail, LLC ("ML Retail"), and Marcus Lemonis, LLC (collectively, the "ML Defendants") respectfully submit this memorandum of law in support of their motion for an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing the Amended Complaint (Dkt. No. 24) (the "Complaint") of Plaintiffs Nicolas Goureau ("Goureau") and Stephanie Menkin ("Menkin") (collectively, "Plaintiffs").

## I.      PRELIMINARY STATEMENT

Rather than stand firm, Plaintiffs made the call to amend their complaint after seeing the faults in their claims exposed by Defendants' motion to dismiss in a nearly-identical action that Plaintiffs filed in Delaware state court. Despite this free bite at the apple and the benefit of seeing Defendants' challenges, Plaintiffs' claims remain deficient, and further repleading would be futile.

This purported shareholder derivative lawsuit arises from the operation of a company of which Plaintiffs and their mother own the majority, and of which Defendant ML Retail is the fourth shareholder. At its core, the Complaint wrongly purports to set forth claims for breach of contract, disguised as improper tort claims, and alleged breaches of fiduciary duty that result from such derivative actions. Plaintiffs' claims are also almost entirely duplicative of a copycat lawsuit in the Delaware Chancery Court and should be dismissed as an improper attempt at claim splitting. In addition, Plaintiffs' claims should be dismissed for improper venue. On the merits, Plaintiffs' causes of action are nothing but extravagant "made for TV" sensationalism that should be dismissed for failing to state a claim.

## II.     STATEMENT OF FACTS

Plaintiffs Nicolas Goureau and Stephanie Menkin ran a failing clothing retailer through nominal defendant Gooberry Corp. ("Gooberry") that, as Plaintiffs told millions of television

viewers of the CNBC television series "The Profit,"[1] lost "[a]bout half a million" dollars in 2013,[2] although Plaintiffs now claim that this statement was false.  Compl. ¶ 52.[3]  Those losses followed what Goureau described as "poor business management" and work that "wasn't up to par." Goureau told millions of television viewers that he was worried about "the bank," "the landlords," and "the people that call me for bills," likely referencing, among other things, Plaintiffs' default under a store lease in Atlanta.

Hoping to save Gooberry, in or about June 2014, Plaintiffs begged Defendant Marcus Lemonis to invest in the company as part of his successful television series "The Profit."  *See* Compl. ¶ 46.  Lemonis agreed to invest $800,000, taking a significant risk on a business that had lost hundreds of thousands of dollars the year before.  *See id.* ¶¶ 56, 60.  Before investing, Lemonis told Plaintiffs, on national television and in no uncertain terms, that if he took on this risk, he would be in control of the business: "Let me be very clear.  I'm going to be 100% in charge."  *See also* Compl. ¶¶ 3, 39.  Plaintiffs agreed to these terms, shook Lemonis' hand, and eagerly welcomed his significant investment into their struggling business.  *See id.* ¶¶ 56, 60.  But Plaintiffs had other plans for Lemonis' funds.

Lemonis and Plaintiffs later formed ML Fashion, LLC ("ML Fashion"), to not only oversee Plaintiffs' struggling retail brand "Courage B" previously managed by Gooberry, but to allow Plaintiffs to help manage other brands acquired by Lemonis as well.  *See* Compl. ¶¶ 89-91.

---

[1] *Available at* https://www.youtube.com/watch?v=bEhjsXfFCyk.
[2] On a motion to dismiss, the Court can consider statements made by Plaintiffs during the October 15, 2014 episode of "The Profit," as that episode of "The Profit" is integral to their Complaint, as well as other public statements by Plaintiffs that are part of the public record.  *See, e.g., ACLU v. NSA*, 925 F.3d 576, 599 n.126 (2d Cir. 2019); *Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 n.3 (S.D.N.Y. 1998).
[3] A copy of the Complaint is annexed as **Exhibit A** to the Declaration of Michael Wexler (the "Wexler Decl."), filed herewith.

Plaintiffs affirmatively allege that ML Fashion is the *de facto* successor-in-interest to Gooberry, as Plaintiffs allege that all of Gooberry's assets, with the exception of the Runway Boutique ("Runway") brand, were transferred in 2018 to MLG Retail, LLC ("MLG Retail"), an LLC "owned by ML Fashion."   Compl. ¶¶ 114-115.   Plaintiffs allege that the Runway brand, which was previously owned by Lemonis' now-wife Robert Raffel ("Raffel"), was never transferred and is now Gooberry's sole asset. *Id.* ¶¶ 99, 115.

Lemonis invested heavily in Gooberry and, later, ML Fashion, without ever receiving a payment from Gooberry or ML Fashion, and made business decisions aimed at saving Plaintiffs' struggling business.   Thanks to Lemonis' investments and business decisions, the former Gooberry business now owned by ML Fashion still operates today, still pays its employees, and still sells retail products nationwide. *See, e.g.,* Compl. ¶¶ 92, 112.

Plaintiffs are still the majority equity owners of Gooberry, and control the majority of seats on its board of directors. *See* Compl. ¶¶ 16-17, 70.   Yet, unlike Lemonis, ***Plaintiffs never put any money into Gooberry or their other business ventures with Lemonis***—they only took money out. Over the years, they extracted well in excesses of $2 million from Gooberry and ML Fashion in the form of undeserved escalated salaries and/or consulting fees in the hundreds of thousands of dollars per year, as well as other monetary perks, and their use of company funds to pay personal expenses, to buy extravagant cars, travel, to pay for stays at the poshest hotels, and to even pay for a nanny.   Plaintiffs' misappropriation of property owned by Plaintiffs' ventures with the ML Defendants has blatantly continued even to the present day, spawning separate litigation in Illinois after Plaintiffs' improperly seized inventory, furniture, fixtures, and equipment from ML Fashion, and opened a retail store that directly competes with ML Fashion's business in further disregard of their employment agreements. *ML Fashion, LLC, et al. v. Nobelle, et al.*, Case No. 1:20-cv-

05124 (N.D. Ill.).

Moreover, since appearing on Lemonis' "The Profit" television series, Plaintiffs continuously used Lemonis' name, image, and likeness and his "The Profit" television series to boost their own profiles. Both Goureau and Menkin frequently posted pictures of themselves with Lemonis, or used his name or "The Profit" in their social media posts.[4] In or about July 2018, Menkin appeared on another episode of "The Profit," helping Lemonis coach a struggling business owner, and promoted the appearance on Twitter.[5] Menkin posted about Lemonis, "The Profit," and Lemonis' "MARCUS" brand as recently as late 2019 and early 2020, and even today, her Instagram profile links to Lemonis' "MARCUS" brand.[6]

For years, Plaintiffs were content to extract millions from Gooberry and ML Fashion and use Lemonis' fame to promote themselves. But in late 2018, Plaintiffs, and Goureau in particular, apparently began to sour on their relationship with Lemonis as Plaintiffs' treachery began to reveal itself. Goureau was fired from his position at a publicly-traded company founded by Lemonis, Camping World, *see* Compl. ¶ 107, due to issues in his personal life that affected his job performance and eventually led to, among other things, Goureau being arrested in Miami, Florida in or about September 2019. Ironically, Goureau continues to leverage his association with Lemonis—now a negative association—to promote his ventures, bragging on social media that the Complaint "is just the tip of the iceberg" and that Goureau is "working with NetFlix" to produce a documentary about Lemonis.[7]

---

[4] https://twitter.com/NGoureauNYC/status/874739760782348290?s=20; https://twitter.com/NGoureauNYC/status/1014337877331804160?s=20.
[5]. https://twitter.com/shopmarcus/status/1021950143594196992?s=20.
[6] https://www.instagram.com/stephanie_goureau/.
[7] https://twitter.com/NGoureauNYC/status/1279174182836883457?s=20; https://twitter.com/NGoureauNYC/status/1275081999523311627?s=20.

On June 18, 2020, Plaintiffs commenced this action (the "New York Lawsuit").  Dkt. No. 1.  That same day, Plaintiffs filed a nearly-identical Verified Complaint against the ML Defendants; Lemonis's wife Raffel; MLG Retail; and Nominal Defendant ML Fashion; Case No. 2020-0486-MTZ, in the Delaware Chancery Court (the "Delaware Lawsuit").  After the ML Defendants moved to dismiss the Delaware Lawsuit, on August 17, 2020, Plaintiffs filed their First Amended Complaint in this action (Dkt. No. 24) (the "Complaint" or "Compl."), thereby unsuccessfully seeking to shore up their deficient claims exposed by the pending motion in Delaware and adding a new Defendant, Machete Corporation ("Machete").[8]  On August 24, 2020, Plaintiffs similarly filed a Verified First Amended Complaint in the Delaware Lawsuit, recycling many of their amendments in a testament to the fundamental similarity of the lawsuits.  Wexler Decl., **Exhibit B**.

The Delaware and New York Lawsuits share the same common nucleus of operative fact—namely the business disagreements between Plaintiffs and the various defendant entities and individuals, including, in both actions, the ML Defendants.  Moreover, the parties, allegations, and causes of action in the Delaware Lawsuit and New York Lawsuit are nearly identical, with only purposeful, strategic differences.  Thus, this action should be dismissed as duplicative.

The truth here is simple.  Plaintiffs lived lavish lives, promoted themselves and wasted company assets, at Gooberry's, ML Fashion's, and Lemonis' expense, while Lemonis and his businesses shouldered all of the losses of the business.  Lemonis pumped money into a failing business with partners, Plaintiffs, who were only interested in extracting as much money from

---

[8] Plaintiffs attached the following exhibits to the Complaint: Exhibit A: November 18, 2014 Stock Purchase Agreement; Exhibit B: November 18, 2014 Shareholder Agreement of Gooberry Corp.; Exhibit C: October 1, 2016 Credit Agreement between Gooberry Corp. and ML Fashion, LLC; and Exhibit D: October 1, 2016 Security Agreement between Gooberry Corp. and ML Fashion, LLC.

Gooberry and, later, ML Fashion as they could for their own personal gain.

In this action, Plaintiffs concocted a false and convoluted theory that Lemonis' investments and business decisions aimed at saving Plaintiffs' struggling business are a fraudulent scheme that Lemonis perpetrated against Plaintiffs.  They are wrong and simply trying to hide their own malfeasance.  Plaintiffs' farcical attempt to extract even more money from Lemonis and Gooberry fails, and their claims should be dismissed for the reasons set forth below.

## III.   ARGUMENT

### A.   The Complaint must be dismissed for improper venue under Federal Rule of Civil Procedure 12(b)(3).

Venue is improper in this Court.  None of the ML Defendants reside in New York and, more fundamentally, Plaintiffs' claims in this action are subject to mandatory venue selection clauses in Illinois based on the relevant agreements attached to the Complaint.  *See* Compl. Ex. C, § 7.4 ("The parties hereby agree to irrevocably submit to the personal and subject matter jurisdiction of the federal and state courts sitting in Chicago, Cook County, Illinois, and agree not to object to such venue for any reason at law or in equity."); Compl. Ex. D, § 8.  That the parties envisioned disputes relating to Gooberry being resolved in Illinois is further confirmed by the fact that the Gooberry Stock Purchase Agreement is governed by Illinois law.  Compl. Ex. A, § 11.3.

Forum selection clauses are presumptively binding.  "In all but the most unusual cases … the 'interest of justice is served by holding parties to their bargain." *Atl. Marine Const. Co. v. United States District Court*, 571 U.S. 49, 66 (2013); *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 U.S. Dist. LEXIS 3508, at *8 (S.D.N.Y. Mar. 5, 2004) ("[T]he Second Circuit has developed a policy of honoring forum selection clauses.").  Where, as here, the forum selection clauses were communicated "to the party resisting enforcement," the language of the clause "is mandatory," and the parties in the suit "are subject to the forum selection clause," the clause is

"presumptively enforceable" and the burden shifts to the party resisting enforcement to "mak[e] a sufficiently strong showing" that the clauses should not be enforced. *TradeComet.com LLC v. Google, Inc.*, 453 F. App'x 32, 33 (2d Cir. 2011).

Here, Plaintiffs' allegations, and their attachment of these agreements to their Complaint, tell the story of how intrinsic these agreements are to Plaintiffs' claims. Plaintiffs claim that the Credit and Security Agreements "gave Lemonis the unfettered ability to misuse the assets of Gooberry," leading to the misconduct underlying all of the Plaintiffs' causes of action. Compl. ¶¶ 93-96. The ML Defendants' supposed misrepresentations regarding these Agreements also form part of the basis of Plaintiffs' fraudulent inducement and fraud claims. *Id.* ¶¶ 138, 147. Plaintiffs even seek to covertly recover the loans granted to Gooberry pursuant to these agreements ***as their own damages***, claiming that Lemonis "forc[ed]" Gooberry to take these loans and "saddle[d]" it with debt. *See id.* ¶¶ 137, 147, 156, 161, 167, 175. In light of the foregoing, it is clear that Plaintiffs' claims in this action are "based []on, or aris[e] out of, under or in connection with" the Credit and Security Agreements, and thus must be asserted in Illinois. *See* Compl. Ex. D, § 8; *see also* Compl. Ex. C, § 7.4.

Despite the fact these agreements are integral to Plaintiffs' claims, Plaintiffs have not even attempted to plead their heavy burden to show that the forum selection clauses are not binding or should not be enforced here. Nor could they: Menkin signed the Credit and Security Agreements, and is the individual to receive notice under these agreements, on behalf of the entity for whom Plaintiffs are purportedly bringing derivative suit in this action, Gooberry. *See* Compl. Ex. C, § 7.8 and pg. 12; Compl. Ex. D, pg. 10. The venue clauses to which Menkin, on behalf of Gooberry, agreed are binding upon Gooberry and, by extension, Plaintiffs in this purported derivative lawsuit.

Because this litigation arises out of agreements with mandatory forum-selection clauses

requiring that suit be brought in another court, this suit must be dismissed.

> **B.    Legal Standard for Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering a motion to dismiss for failure to state a claim, the Court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

> **C.    Plaintiffs' lawsuit must be dismissed because it is barred by the prohibition against claim splitting.**

Duplicative litigation, like Plaintiffs attempt to pursue here by filing simultaneous Delaware and New York lawsuits, is barred by the doctrine of claim splitting. "Th[e] rule against claim splitting 'is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive action in different courts or at different times.'" *Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003); *see also AMEX v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) ("a party must bring in one action all legal theories arising out of the same transaction or series of transactions").

The Second Circuit's decision in *Ambase* is instructive. There, the plaintiff filed an action in Delaware Chancery Court, and then took a "second bite at the litigation apple" by filing a lawsuit in this District. *Ambase*, 326 F.3d at 64. The Second Circuit found that "the causes of action, facts alleged, and relief sought in Counts I and II of the" New York complaint "are virtually the same as those pleaded in Counts I and II of the complaint in the Delaware Action," and that "[t]hese claims are thus precluded." *Id.* at 73. The Court then addressed "two additional claims pleaded

here that were not pleaded in the Delaware Action." *Id.* The Second Circuit held that "they too are precluded because, although they are different substantive theories from those pleaded in the Delaware Action, they concern but one claim arising from but one common nucleus of operative facts." *Id.* at 73-74; *see also Vanover v. NCO Fin. Services, Inc.*, 857 F.3d 833, 843 (11th Cir. 2017) (holding "the addition of separate causes of action in [second lawsuit] does not prevent application of the claim-splitting doctrine").

Similarly, the fact that two actions may have slightly different defendants does not preclude application of the doctrine where the defendants are "in privity with the defendants named in the original complaint." *Digennaro v. Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012); *see also Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) (same).

Here, as in *Ambase*, Plaintiffs have filed duplicative suits in New York and Delaware that, although they have slightly different claims and parties in some respects, indisputably share the same common nucleus of operative fact and share many paragraphs that are word-for-word identical. A line-by-line comparison of the two complaints show the causes of action, facts, and annexed exhibits are nearly identical, with only strategic differences that do not prevent dismissal. *See* Wexler Decl. **Exhibit C** (Comparison of Lawsuits' Claims); Wexler Decl. **Exhibit D** (Comparison of Lawsuits' Facts).

The identity of the "nominal defendants" in each of the actions underscores the duplicative and interrelated nature of Plaintiffs' lawsuits. In this action, Plaintiffs purport to sue on behalf of Gooberry, while in Delaware they purport to sue on behalf of ML Fashion. Plaintiffs concede that ML Fashion, although a Delaware LLC, has its principal place of business in New York (and thus can be sued in New York) and is effectively the successor to Gooberry, as Plaintiffs allege that MLG Retail, an entity "owned" and managed by ML Fashion, holds all of Gooberry's former

assets except the Runway brand.  Compl. ¶¶ 114-115; Delaware Compl., Wexler Decl. Ex. B, ¶¶ 19, 104.  Plaintiffs have even named MLG Retail as a defendant in the Delaware Lawsuit.  Wexler Decl. Ex. B.  With respect to the Runway brand, which Plaintiffs now allege is Gooberry's sole asset, in the Delaware Lawsuit, Plaintiffs assert claims against Runway's founder, Raffel, and allege, as they do in this action, that Gooberry's purchase from Raffel of the Runway brand was improper.  Delaware Compl., Wexler Decl. Ex. B, ¶¶ 136-139; Compl. ¶¶ 99-102.

The foregoing, coupled with the other identical allegations and claims outlined in Exhibits C and D to the Wexler Declaration, confirm that there is no real distinction between these actions, and that Plaintiffs' purported claims on behalf of ML Fashion, Gooberry's *de facto* successor; Plaintiffs' claims against MLG Retail, the alleged holder of most of Gooberry's assets; and Plaintiffs' claims against Raffel, the founder of Gooberry's alleged sole remaining asset, could have, and should have, been asserted in a single action.  Because each lawsuit arises from a common nucleus of operative fact, and because all of Plaintiffs' claims could have been asserted in a single lawsuit, this suit should be dismissed.[9]

### D.  Plaintiffs fail to plead demand futility for their derivative claims because they control the majority of shares and directors of Gooberry.

Plaintiffs have asserted seven derivative claims on behalf Gooberry: Counts 3, 5, 6, 7, 8, 9, and 10.  Plaintiffs concede that they made no demand on Gooberry's board of directors before bringing suit, but claim that they are nonetheless entitled to bring derivative claims because any such demand would have been futile.  Compl. ¶¶ 125-132.  Plaintiffs are wrong.

In order to adequately plead demand futility, a plaintiff must plead, with particularity, "that there was a reasonable doubt that a majority of the Board 'could have properly exercised its

---

[9] The ML Defendants have raised the claim splitting argument in the Delaware Lawsuit as well. If the Chancery Court dismisses that lawsuit prior to the Court's ruling on this Motion, the ML Defendants will withdraw their claim splitting argument in this action.

independent and disinterested business judgment in responding to a demand' at the time the complaint was filed." *Freeman v. McKinnel*, 307 F. App'x 590, 592 (2d Cir. 2009); *see also* Fed. R. Civ. P. 23.1(b). Here, Plaintiffs have not come close to meeting this standard. Plaintiffs' allegations relate not to the majority of Gooberry's board of directors, but only to ***one member*** of the board: Lemonis. Compl. ¶¶ 125-132. In fact, Plaintiffs concede that they and their mother hold the majority of seats of the Gooberry board. *Id.* ¶¶ 69-70. Plaintiffs have not even made an attempt to allege that a demand on the ***majority*** of the board—*i.e.*, a demand on themselves and their mother—would have been futile. Accordingly, Plaintiffs' demand futility allegations fail.

Plaintiffs attempt to circumvent this fatal flaw by arguing that the Gooberry Shareholder Agreement provides Lemonis, through ML Retail, with control over Gooberry's "financial and accounting functions" and also prevents Gooberry from taking certain actions without the assent of ML Retail. Compl. ¶ 126 (citing Compl. Ex. B, §§ 2.1.1 and 2.2). The Shareholder Agreement, in turn, lists eleven specific things Gooberry cannot do without ML Retail's approval, but none of those specifically enumerated actions include commencing a lawsuit. Compl. Ex. B, § 2.1.1. Similarly, the Shareholder Agreement provides ML Retail with control over "financial and accounting matters" and "[t]ax matters," but says nothing about lawsuits or otherwise enforcing Gooberry's purported rights. *Id.* § 2.2. Simply, the Shareholder Agreement does not say what Plaintiffs want it to say. As a result, Plaintiffs have not pled, and cannot plead, demand futility.

### E.   Plaintiffs' fail to state a plausible claim outside of contract for fraud (Counts 1 & 2), breach of fiduciary duty (Count 3), the implied covenant of good faith and fair dealing (Count 4), unjust enrichment (Count 5), misappropriation of corporate assets (Count 6), corporate mismanagement and waste (Count 7), and conversion (Count 8).

#### 1.   Plaintiffs' nebulous alter ego pleading fails to set forth the individual acts of wrongdoing by Lemonis, ML Retail, and Marcus Lemonis, LLC.

Plaintiffs' Complaint fails because nearly all of their causes of action are premised upon

the notion that all alleged acts of Lemonis or ML Retail can be attributed to the other or to Marcus Lemonis, LLC, and thus Plaintiffs generally assert that "Defendants" engaged in purported misconduct. Plaintiffs do not make any allegations as to which Defendant did what, or even clarify whether "Defendants" as used in Plaintiffs' various causes of action includes Machete or only the ML Defendants. *See* Compl. pg. 1 (defining "Defendants" as the ML Defendants and Machete), ¶¶ 134, 137, 138, 139, 141, 144, 146, 147, 148, 161, 166, 168, 169, 171, 180, 186, 187, 188.

This sort of "group pleading" is improper. *See, e.g., Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("Fed. R. Civ. P. 8 . . . requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.' By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard" (internal citations omitted)); *Nesbeth v. New York City Mgmt., LLC*, 2019 U.S. Dist. LEXIS 1830, at *7 (S.D.N.Y. Jan. 4, 2019) ("it is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes" (internal quotation marks and brackets omitted)).

Moreover, with respect to Plaintiffs' claims for unjust enrichment and misappropriation, Plaintiffs have alleged misconduct by Lemonis in his role "[a]s President and CEO of ML Retail, and Director of Gooberry," but do not make any allegations of misconduct by Marcus Lemonis, LLC with respect to those two causes of action. *See* Compl. ¶¶ 167, 175.

Plaintiffs apparently hope to get around these fatal flaws by relying upon allegations that the ML Defendants are alter egos of one another in order to avoid being required to plead specific, wrongful acts by each Defendant. But courts in New York only disregard the separateness of entities "reluctantly," and then only in cases where an entity or individual exercises such domination and control over the alleged alter ego that the second entity is rendered a mere "dummy"

or "shell" entity.  *See Gartner v. Snyder*, 607 F.2d 582, 586-88 (2d Cir. 1979); *Billy v. Consolidated Machine Tool Corp.*, 51 N.Y.2d 152, 163 (1980); *Port Chester Electrical Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 656 (1976).  Moreover, merely pleading that an entity or individual exercised such extensive domination and control over the alleged alter egos that they were rendered "dummy" or "shell" entities is not enough.  Plaintiffs must also plead facts sufficient to demonstrate that the alleged domination and control giving rise to the alter ego status was what caused the plaintiffs' injuries, *i.e.*, that the alleged alter ego was created to perpetrate a fraud against plaintiffs.  *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 513 (S.D.N.Y. 2005).

Here, Plaintiffs' bare-bones allegations regarding commingling of funds, disregard of the corporate form, and so forth are insufficient to meet the high burden of pleading alter ego status. *See* Compl. ¶¶ 23-26.  Plaintiffs do not allege actual facts, for example, regarding how the ML Defendants disregarded corporate formalities, what funds or assets were allegedly commingled, or anything else that would allow the Court to draw any such inferences as a result of Plaintiffs' conclusory statements.  *See id.*  On the contrary, the Complaint concedes that, far from being a "dummy" or "shell" entity, ML Retail is an actual, operating corporation with real assets and businesses.  *E.g.*, Compl. ¶¶ 20 (ML Retail owns 32% of Gooberry shares); 69 (same); 70 (ML Retail entered into a Shareholder Agreement); 78 (ML Retail renovated Gooberry retail stores); 98 (ML Retail purchased promissory note).  Similarly, Plaintiffs allege that Marcus Lemonis, LLC entered into a credit agreement with ML Fashion (Compl. ¶¶ 97), Gooberry issued a promissory note to Marcus Lemonis, LLC (Compl. ¶ 98), and employed Plaintiff Goureau (Compl. ¶ 107). The Complaint does not contain any non-conclusory allegations from which the Court could reasonably infer that ML Retail or Marcus Lemonis, LLC are mere  "dummy" or "shell" entities.

Even if Plaintiffs had adequately pled such extensive domination and control by certain

Defendants over others so as to render both ML Retail and Marcus Lemonis, LLC mere "dummy" or "shell" entities (which they have not), Plaintiffs' pleading still fails because they have not alleged that such domination or control caused their injuries. The Complaint primarily relies upon allegations that Lemonis individually misled Plaintiffs and then used their business to enrich himself and the other Defendant entities. In other words, Plaintiffs allege that their injuries were caused by business decisions by Lemonis—not by ignoring corporate formalities, commingling entity funds and assets, and the like. *See, e.g.,* Compl. ¶¶ 134-135, 144-145, 156, 167, 175, 179, 228-230, 235. Plaintiffs did not allege, and cannot allege in accordance with Rule 11, that ML Retail or Marcus Lemonis, LLC were formed as "sham" entities to defraud Plaintiffs. Plaintiffs' failure to plead causation dooms their alter ego allegations, and all of the causes of action that rely upon those allegations.

In sum, Plaintiffs have not properly alleged that Lemonis, ML Retail, and Marcus Lemonis, LLC, are alter egos. As a result, their failure to plead individual acts of wrongdoing by each of these Defendants is fatal to Plaintiffs' claims.

> ### 2. Plaintiffs' claims for fraudulent inducement and fraud (Counts 1 & 2) lack the requisite particularity due to group pleading and the nebulous alter ego allegations.

Plaintiffs' claims for fraud and fraudulent inducement are subject to the heightened pleading requirement set forth in Federal Rule of Civil Procedure 9(b). Accordingly, Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Put another way, Plaintiffs must plead "the who, what, when, where and how: the first paragraph of any newspaper story." *Petedge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (internal quotation marks omitted). Here, Plaintiffs' ambiguous alter ego pleading leaves unanswered at least the "who" in Plaintiffs' various fraud claims. The lack of this basic information makes it impossible to associate Plaintiffs' allegations with specific entities in order

to determine whether a claim exists and its potential defenses.  As such, Plaintiffs' fraud claims

fail and must be dismissed.

> 3.   **The economic loss doctrine and the fact that Plaintiffs' claims are duplicative of their breach of contract claims further bar Plaintiffs' claims.**

Plaintiffs' causes of action for fraud, breach of fiduciary duty, unjust enrichment,

misappropriation of corporate assets, mismanagement and waste, and conversion are all barred by

the economic loss doctrine.  Under New York law, "the economic loss doctrine" provides "that a

contracting party seeking only a benefit of the bargain recovery may not sue in tort notwithstanding

the use of familiar tort language in its pleadings."  *Blackrock Core Bond Portfolio v. U.S. Bank

N.A.¸* 165 F. Supp. 3d 80, 106 (S.D.N.Y. 2016) (breach of fiduciary duty claims barred by

economic loss doctrine).  "The economic loss doctrine protects parties' abilities to allocate risk by

mutual agreement and thereby form reliable expectations about their potential financial exposure

with respect to the duties and liabilities that they have contractually assumed."  *BNP Paribas Mortg.

v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013).

More broadly, "to plead a tort claim, a plaintiff must allege an independent duty that

spring[s] from circumstances extraneous to, and not constituting elements of, the contract" because

tort claims "cannot be predicated on a mere breach of contract, but may only succeed if the plaintiff

alleges the violation of an independent duty."  *BNP Paribas*, 949 F. Supp. 2d at 505 (internal

quotation marks omitted).  At bottom, a plaintiff "may not transmogrify the contract [claim] into

one for tort."  *Id.* (internal quotation marks omitted).

Here, Plaintiffs claims are barred, whether by the economic loss doctrine or the fact that

the claims are not independent of a contract claim.

Plaintiffs' claim for fraud relies upon alleged misrepresentations that, *inter alia*, "Gooberry

was investing in stores, brands, and retail businesses in order to further grow those businesses and

Gooberry," "purchases made for Gooberry were done to benefit the brand," "Plaintiffs would have access to Lemonis' team of experts" without "pay[ing] for their fees and services," and that "Lemonis would be investing in Plaintiffs' business in order to help grow their business not to saddle it with debt in order to remove its assets." Compl. ¶ 146. Similarly, Plaintiffs' fiduciary duty, unjust enrichment, misappropriation, and waste claims are based upon the near-identical allegations that Lemonis saddled Gooberry with expensive inventory, decreased Gooberry's profit margins, increased Gooberry's debt, "destroyed the Company's legacy handbag line," took actions that favored one shareholder, ML Retail, misused Gooberry's assets, closed certain stores, and mismanaged Gooberry's "corporate assets and funds." Compl. ¶¶ 156, 167, 175, 179. Plaintiffs' conversion claim rests on the allegation that the ML Defendants took inventory and FFE in a Greenwich, Connecticut retail store as part of the closure of that store. Compl. ¶¶ 118, 186.[10]

These allegations are, at bottom, claims that Plaintiffs did not get the benefit they bargained for under the Stock Purchase Agreement and Shareholder Agreement, or that ML Retail improperly exercised its authority over financial and tax matters under the Shareholder Agreement. This rehashing of what should be contract claims in order to assert tort claims is precisely what the economic loss doctrine and the bar against "transmogrifying" contract claims into tort claims prohibit. Plaintiffs' tort claims should, accordingly, be dismissed.

### 4. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count 4) fails because it is a contract claim in disguise.

Plaintiffs' good-faith-and-fair-dealing claim fails for separate, but similar, reasons. "Under

---

[10] Plaintiffs elsewhere affirmatively allege in their Complaint that ML Retail had the right under the Shareholder Agreement to close stores. *See* Compl. ¶¶ 71-74. Thus, Plaintiffs' conversion allegations amount to a disagreement with ML Retail's business decisions. Those allegations stand in sharp contrast to Plaintiffs' conversion of inventory, fixtures, furniture, and equipment at issue in the Illinois action, which was done without any authorization, contractual or otherwise. *See* Case No. 1:20-cv-05124 (N.D. Ill.), Dkt. No. 1.

New York law, a covenant of good faith and fair dealing is implied in all contracts." *Int'l Techs.*

*Mktg. v. Verint Sys.*, 157 F. Supp. 3d 352, 368 (S.D.N.Y. 2016) (internal quotation marks omitted).

The doctrine cannot be used so "as to undermine a party's general right to act on its own interests

in a way that may incidentally lessen the other party's anticipated fruits from the contract,"

however. *Id.* (internal quotation marks omitted).  Similarly, although the covenant "requires

exercising discretion 'reasonably and with proper motive,'" the application of the covenant "to the

exercise of discretion is not without limits, and no obligation can be implied that would be

inconsistent with other terms of the contractual relationship." *State St. Bank && Trust Co. v.*

*Inversiones Errazuriz Limitada*, 374 F.3d 158, 170 (2d Cir. 2004).

The allegations underlying Plaintiffs' good faith and fair dealing claim are a combination

of the allegations supporting their fiduciary duty, unjust enrichment, misappropriation, and waste

claims and the allegations supporting their conversion claim: that Lemonis saddled Gooberry with

expensive inventory, decreased Gooberry's profit margins, increased Gooberry's debt, "destroyed

the Company's legacy handbag line," took actions that favored one shareholder, ML Retail,

misused Gooberry's assets, closed certain stores, and mismanaged Gooberry's "corporate assets

and funds."  Compl. ¶ 161.  Essentially, Plaintiffs' allegations are that they disagree with ML

Retail's business decisions.

But the Shareholder Agreement explicitly provides that ML Retail has "sole and absolute

discretion over . . . financial and accounting functions . . . including . . . opening and closing of

bank accounts, capital expenditures for store expansions, remodels and new locations," and that it

has "the right to loan funds to the Company" under certain conditions.  Compl. Ex. B §§ 2.2, 2.4.

To hold that ML Retail (and, apparently, the other ML Defendants who are not parties to the

Shareholder Agreement) breached the covenant by taking actions expressly permitted by the

Shareholder Agreement would be "inconsistent with the … terms" of that Agreement. *State St. Bank*, 374 F.3d at 170. Plaintiffs cannot use the covenant to re-write the parties' agreement, and their claim accordingly fails.

### 5. Plaintiffs' unjust enrichment (Count 8) claim is barred by contract.

Plaintiffs allege that Defendants committed unjust enrichment by "using the Company as a self-enrichment vehicle while forcing the Company to take actions counter to the Company's interest and to assume increasing debt." Compl. ¶ 166. The law is clear that a claim for unjust enrichment lies only "*in the absence of any agreement*" and that unjust enrichment claims are barred where there is "a valid and enforceable contract governing [the] particular subject matter." *Beth Sr. Med. Ct. v. Horizon Blue Cross & Blue Shield of NJ, Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (italics in original). Here, the Stock Purchase Agreement and Shareholder Agreement represent express, enforceable contracts that control this action. Compl. Exs. A-B.

Nor is it sufficient for Plaintiffs to plead this claim "in the alternative" based upon their claim that they seek rescission of those governing contracts. Compl. ¶ 164. As an initial matter, Plaintiffs' claim of rescission is based upon fraudulent inducement (Count 1), which fails for all of the reasons set forth above. More fundamentally, courts routinely dismiss unjust enrichment claims, even when pled in the alternative, that are entirely duplicative of their other causes of action. *Diversified Group, Inc. v. Daugerdas*, 139 F. Supp. 2d 445, 460-61 (S.D.N.Y. 2001) ("Any damages accruing as a result of the alleged breach may be recovered under the breach of fiduciary duty claim. Thus . . . this [unjust enrichment] claim is duplicative and . . . is dismissed").

Here, Plaintiffs' unjust enrichment claim is identical or nearly identical to, and duplicative of, multiple counts. *Compare* Compl. ¶ 167 (unjust enrichment), *with id.* ¶¶ 156 (fiduciary duty), 161 (good faith and fair dealing), 175 (misappropriation), and 179 (waste). As such, even when plead "in the alternative," Plaintiffs cannot state a claim for unjust enrichment.

**F.     Plaintiffs' civil RICO claim (Count 9) should be dismissed because Plaintiffs have not pled and cannot plead the elements of that claim, let alone with the requisite particularity.**

Plaintiffs' attempt to assert a civil RICO claim against the ML Defendants and Machete utterly fails. "Because of the sanctions and stigma attendant to them, civil RICO claims are notoriously – and appropriately – difficult to plead." *Egerique v. Chowaiki*, 2020 U.S. Dist. LEXIS 73060, at *2 (S.D.N.Y. Apr. 24, 2020). Courts strictly apply the pleading requirements of Federal Rule of Civil Procedure 9(b) to civil RICO claims to avoid, *inter alia*, "unfairly stigmatiz[ing]" defendants and "burdening federal courts with claims that have been improperly "reframed . . . as RICO actions because of the carrot of treble recovery and the availability of a federal forum." *Plount v. Am. Home Assurance Co.*, 668 F. Supp. 204, 205-07 (S.D.N.Y. 1987).

A civil RICO claim requires a plaintiff to plead that: "(i) the defendant has violated the substantive RICO statute [18 U.S.C. § 1962]; and (ii) the plaintiff was injured in his business or property by reason of a violation of Section 1962." *Egerique*, 2020 U.S. Dist. LEXIS 73060, at *22. "To make out a substantive RICO violation, in turn, a plaintiff must allege the (i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity." *Id.*

Plaintiffs' civil RICO claim fails for multiple reasons, including because Plaintiffs have failed to allege an "enterprise" or the "predicate acts" required to show a pattern of "racketeering activity." With respect to "enterprise," the Second Circuit "has long since rejected the idea that a RICO enterprise may consist merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013); *Condos Bros. Constr. Corp. v. Main St Am. Assur. Co.*, 280 F. Supp. 3d 349, 354 (E.D.N.Y. 2017). Moreover, "corporations that are legally separate but 'operate within a unified corporate structure' and 'guided by a single corporate consciousness' cannot be both the 'enterprise' and the 'person' under § 1962(c)." *Cruz*, 720 F.3d at 121.

19

Throughout the Complaint, Plaintiffs allege that Lemonis is the sole member of ML Retail, is trustee of the sole member of Marcus Lemonis, LLC, and that both entities act only through him. Compl. ¶¶ 20-21, 23, 135, 145.  In other words, Plaintiffs themselves have affirmatively alleged both that the members of the enterprise are corporate defendants associating with their manager or agent, *i.e.*, Lemonis, and that ML Retail and Marcus Lemonis, LLC operate within a unified structure and are guided by a single corporate consciousness, *i.e.*, Lemonis.  Accordingly, as a matter of law, the ML Defendants cannot be an "enterprise."  *Cruz*, 720 F.3d at 121.

Moreover, Plaintiffs have alleged that the ML Defendants are alter egos of one another, *i.e.*, that they are legally a single entity.  Compl. ¶¶ 24-27.  For purposes of civil RICO, however, "a solitary entity cannot, as a matter of law, simultaneously constitute both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise.'"  *Cullen v. Margiotta*, 811 F.2d 698, 729-30 (2d Cir. 1987).  Accordingly, even where alter ego allegations are "insufficient," a plaintiff cannot simultaneously allege that defendants are alter egos and also "are sufficiently separate such that [they] can be considered a distinct RICO 'enterprise.'"  *Physicians Mut. Ins. Co. v. Greystone Servicing Corp, Inc.*, 2009 U.S. Dist. LEXIS 32616, at *21-22 (S.D.N.Y. Mar. 25, 2009); *Frieldander v. Rhoades*, 962 F. Supp. 428, 432 (S.D.N.Y. 1997) (allegation that members of the enterprise "are the alter egos" of the other enterprise member was "fatal to her RICO claim").

Plaintiffs cannot have it both ways by simultaneously claiming that ML Defendants are separate, distinct individuals and entities that are working together in an "enterprise" (in which case Plaintiffs' causes of action necessarily fail because they lump separate Defendants together without pleading specific acts by each, as set forth above) and that the ML Defendants are also alter egos that are legally one entity (in which case they cannot be an "enterprise" and Plaintiffs' civil RICO claim fails).

Similarly, Plaintiffs affirmatively allege that Machete is the "agent" of the ML Defendants. Compl. ¶ 22. Again, an agent carrying out the regular business of a corporate defendant is not acting as part of an "enterprise." *Cruz*, 720 F.3d at 121. In short, Plaintiffs have not pled, and cannot plead, an "enterprise" here.

With respect to "racketeering activity," Plaintiffs' allegations fail on many levels. "The term 'racketeering activity' refers to the predicate acts necessary to sustain a RICO claim and includes mail fraud and wire fraud," while showing a pattern of racketeering activity requires two or more "predicate acts" within the span of 10 years. *Egerique*, 2020 U.S. Dist. LEXIS 73060, at *24. Importantly, "[w]hile federal wire and mail fraud constitute RICO predicate acts, common law fraud under state law does not." *Condos Bros.*, 280 F. Supp. 3d at 355. Plaintiffs must instead show that "defendant participated in a scheme to defraud victims of money or property, through the use of the mails or an interstate wire." *Id.* Plaintiffs must also "specify the time, place, speaker and content of the alleged misrepresentations." *Egerique*, 2020 U.S. Dist. LEXIS 73060, at *28.

Plaintiffs' allegations fall short of these requirements. As an initial matter, the alleged "predicate acts" are largely premised upon the same allegations as Plaintiffs' fraudulent inducement and fraud claims, thus failing for the same reasons those claims fail. They are also simply common-law fraud claims, which do not support a civil RICO claim. *Condo Bros.*, 280 F. Supp. 3d at 355.

In any event, many of the supposed "predicate acts" do not allege mail or wire fraud and therefore fail as RICO claims. Plaintiffs do allege four instances of what they purport to be "mail and wire fraud," *see* Compl. ¶ 203, but these fail as a matter of law because they fail to specify the fraudulent nature of the actions, or otherwise fail to "specify the time, place, speaker and content

of the alleged misrepresentations." *Egerique*, 2020 U.S. Dist. LEXIS 73060, at *28..[11]  First, Plaintiffs allege that Defendants sent "instructions to open U.S. banking accounts, make banking transactions, carry out activities in furtherance of fraud, material misrepresentations made to Plaintiffs, and the negotiation, finalization, and notarization of documents in furtherance of the fraud were sent by the Lemonis Enterprise or their authorized agents via mail and wire to and from the United States, and specifically to and from New York." Compl. ¶ 203(a).  However, Plaintiffs nowhere explain how these actions were fraudulent, which Defendant(s) issued the "instructions" or participated in the "negotiation, finalization, and notarization," when the actions took place, to whom any fraudulent statements were made, or against whom any fraudulent actions were taken.

Second, Plaintiffs allege that unidentified Defendants "us[ed] the Internet in or around October and/or November 2014 to transmit the Shareholder Agreement and Stock Purchase Agreement that gave Defendants an equity interest in and control over Gooberry."  Compl. ¶ 203(b)(ii).  Plaintiffs do not explain who sent these documents or the means by which they did so, other than via "the Internet," and do not explain how sending documents that themselves did not contain any alleged misrepresentations constitutes mail or wire fraud.  *See Condos Bros.*, 280 F. Supp. 3d at 355 (sending bills via mail and email not enough to constitute "predicate acts" where plaintiff did not identify any "fraudulent statement," or "who made it" and "why it is fraudulent").

Third, Plaintiffs allege that unspecified Defendants used "the Internet and telephone to make fraudulent representations . . . that the Lemonis Enterprise was helping these businesses while they were actually mismanaging them . . . ."  Compl. ¶ 203(b)(iii).  This vague allegation does not state what was fraudulent about the misrepresentation, who made the supposedly

---

[11] To the extent Plaintiffs claim that the allegations set forth in paragraphs 201 and 213 constitute "mail and wire fraud," Plaintiffs do not even come close to identifying who engaged in the supposed fraud, to whom the fraud was directed, or when each act of fraud was committed.

fraudulent misrepresentations, when the misrepresentations were made, how they were made (other than the vague reference to "the Internet and telephone"), or to whom they were made.  *Id.*

Fourth, Plaintiffs allege that Defendants, and specifically Machete, used "Skype around spring 2014 to make representations [to Plaintiffs] that Lemonis could help their business move to the next level, that the deals Lemonis makes on the show are real, and that the businesses Lemonis helps on the show [sic]."  Compl. ¶ 203(b)(iii).  Here, Plaintiffs once again fail to allege why these statements were false.  One of the statements is even nonsensical or incomplete ("that the businesses Lemonis helps on the show").  But even assuming that this inadequate allegation somehow meets the particularly requirement, a single well-pled predicate act, standing alone, does not constitute a pattern of racketeering activity.  *Egerique*, 2020 U.S. Dist. LEXIS 73060, at *24 (pattern requires two or more predicate acts).

In short, Plaintiffs' civil RICO claim is a baseless attempt to improperly dress up their other tort claims—which are themselves contract claims in disguise—as nefarious criminal racketeering. It is also a blatant attempt to unfairly stigmatize Defendants, which is the exact conduct that the particularity requirements are meant to protect against.

G.    **Plaintiffs' equitable claims for receiver (Count 12), injunctive relief (Count 13), and dissolution (14) should be dismissed because these are remedies—not causes of action.**

Plaintiffs do not plead any basis nor cite any authority that entitles them to refashion remedies of appointment of a receiver, dissolution, and injunctive relief as affirmative causes of action. *See* Compl. ¶¶ 226-233 (receiver), 234-239 (temporary, preliminary, and permanent injunction), 240-247 (dissolution under N.Y. Bus. Corp. Law § 1104-a).  Nor do Plaintiffs provide sufficient facts to transform these remedies into plausible claims; rather, Plaintiffs merely formulaically recite the statutes and tests for these remedies.  *Id.*  As such, Plaintiffs' receiver, injunction, and dissolution claims should be dismissed for both lack of factual sufficiency and as

procedural remedies that are necessarily secondary to Plaintiffs' other claims. *See, e.g., Haggiag v. Brown*, 728 F. Supp. 286, 294 (S.D.N.Y. 1990) ("The appointment of a receiver is an extraordinary remedy" and "[i]t is certainly not appropriate for a court to appoint a receiver every time a company loses money . . . ."); *Studint v. La Sall Ice Cream Co.*, 623 F. Supp. 232, 235 (E.D.N.Y. 1985) (noting that "dissolution and receivership" are "equitable and extraordinary remedies" that are sought "[i]n addition to money damages" as part of substantive causes of action).

### H.    Leave to amend should be denied.

In response to the preview they received of Defendants' motion to dismiss in the duplicative Delaware Lawsuit, Plaintiffs here filed an amended complaint on August 17, 2020. To the extent Plaintiffs request any further amendment, it should be denied because Plaintiffs have had their chance to fix their problems. Federal Rule of Civil Procedure 15 is not meant to give Plaintiffs repeated bites at the proverbial apple. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (where plaintiff was on notice of "deficiencies" in the "initial complaint," and plaintiffs repeated those "defects in the amended complaint," plaintiff cannot further burden "the busy district judge" by "engag[ing] in still a third go-around"); *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 132 (S.D.N.Y. 2002) ("This is [plaintiff's] second effort to state a claim against [defendant]. Under these circumstances, the Amended Complaint is dismissed with prejudice . . . without leave to replead").

Even if Plaintiffs had not already used their mulligan to replead, the Court should nevertheless use its discretion to deny further amendment. In exercising that discretion, the Court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant." *Arnold v. KPMG LLP*, 334 F. App'x 349, 352 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). Here, Plaintiffs' filing of simultaneous complaints in Delaware and New York, and filing in an improper venue,

demonstrate that Plaintiffs are acting in bad faith, and leave to amend should be denied.

Any request for leave to amend should be also denied because any amendment would be futile.  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002).  Here, Plaintiffs' amendments would be futile because, as set forth above, the Complaint is barred by claim splitting and by Rule 12(b)(3) due to Plaintiffs' filing in an improper venue.  No pleading of additional facts can cure those defects.  Defendants further submit that there are no additional facts Plaintiffs could plead while still complying with Rule 11—especially in light of their previous amendment, which was made with full knowledge of the arguments the ML Defendants would raise on this motion to dismiss.

Ultimately, Plaintiffs' sensationalized claims are, in fact, run-of-the-mill contract claims in disguise, which are more appropriately adjudicated in another forum and venue, and there is no way Plaintiffs can change these facts through amendment, short of more self-contradiction and pure bad-faith fabrication.  Accordingly, this Court should deny Plaintiffs' request for leave to amend.

## IV.   CONCLUSION

Defendants Marcus Lemonis, ML Retail, LLC, and Marcus Lemonis, LLC respectfully request the Court grant their Motion to Dismiss and for the Court to dismiss all causes of action against the ML Defendants, with prejudice.  Defendants request all further relief to which they may be entitled.

Dated:  October 23, 2020

Respectfully submitted,

SEYFARTH SHAW LLP

By:   */s/ Michael D. Wexler*

Michael D. Wexler
(*admitted pro hac vice*)
233 S. Wacker Drive, Suite 8000

Chicago, Illinois 60606-6448
Telephone:  (312) 460-5559

Jesse M. Coleman
(*admitted pro hac vice*)
700 Milam Street, Suite 1400
Houston, Texas  77002
Telephone: (713) 238-1805

Owen R. Wolfe (OW1931)
620 Eighth Avenue
New York, New York  10018
Telephone: (212) 218-5500

*Attorneys for Defendants*
*Marcus Lemonis, ML Retail, LLC, and*
*Marcus Lemonis, LLC*