# Exhibit D

**Common Allegations in the Delaware and New York Lawsuits**

| Common Allegations | DE | NY |
|---|---|---|
| Lemonis claims to help small businesses, but actually "prey[s]" on them and forces them to take on more debt in order to "foreclose" on them and take their assets | ¶ 2 | ¶¶ 2-3, 13 |
| Lemonis exercised complete dominion and control over ML Retail and Marcus Lemonis, LLC | ¶¶ 25-28 | ¶¶ 23-26 |
| Plaintiffs owned and operated the "Courage.B" brand through a corporation, Gooberry | ¶¶ 3-4, 36-37 | ¶¶ 4-5, 31-32 |
| "Courage.B" was founded by Plaintiffs' mother and her husband in 1987 and had a loyal customer base, many of whom lived in Greenwich, Connecticut, visited family in New York City, wintered in Palm Beach, and summered in Aspen, shopping at each "Courage.B" store along the way. | ¶¶ 38-43 | ¶¶ 33-37 |
| Plaintiffs appeared on "The Profit" TV show in connection with Gooberry/Plaintiffs' "Courage.B" brand, in which Lemonis agreed to invest $800,000 | ¶¶ 3, 5, 44-45, 52, 55 | ¶¶ 6, 46, 52, 60 |
| Overview of marketing for "The Profit" to small businesses, and Goureau discovers "The Profit" by watching an episode of "The Profit" involving a business called "Sweet Pete's" | ¶¶ 46-51 | ¶¶ 38-45 |
| Plaintiffs interacted with Machete Corporation as part of the process of being selected to appear on "The Profit," including a Skype interview with Kim Donnan of Machete | ¶¶ 53-54 | ¶¶ 47-51 |
| Lemonis' discussions with Plaintiffs during filming indicated that their business was doing well, but would not make it if Plaintiffs did not take his investment | ¶¶ 56-60 | ¶¶ 53-56 |
| In connection with Plaintiffs' appearance on "The Profit," Lemonis engaged in expensive store renovations without Plaintiffs' approval | ¶¶ 6-7, 61-63, 68 | ¶¶ 7-8, 56-59, 65 |
| Lemonis gave himself "unbridled control" over the entity on whose behalf Plaintiffs are purportedly suing, *i.e.*, Gooberry in New York and ML Fashion in Delaware (each, the "Derivative Entity") | ¶¶ 9-11 | ¶¶ 9-10 |
| Lemonis took control of Gooberry before his investment deal was finalized | ¶¶ 64-65 | ¶¶ 61-62 |

| Common Allegations | DE | NY |
|---|---|---|
| Lemonis claimed that Plaintiffs' mother "is the face of the brand" and that "it's still her eye that I trust," yet brings in "expert executives" from his company Camping World | ¶¶ 66-67 | ¶¶ 62-64 |
| Lemonis and Plaintiffs entered into a Shareholder Agreement for Gooberry that gave ML Retail control over Gooberry | ¶¶ 69-71 | ¶¶ 69-75 |
| Lemonis used IT personnel from another company to change email addresses at Gooberry | ¶¶ 73-74 | ¶¶ 76-77 |
| Lemonis forced Gooberry to: (a) make purchases through a line of credit from Lemonis' entities; (b) purchase Blue Jean Bar; and (c) sell inventory at a loss, all while forcing Gooberry to take inventory that loyal "Courage.B" customers did not like | ¶¶ 75-79 | ¶¶ 78-86 |
| Plaintiffs and Lemonis formed ML Fashion, which is managed and controlled by ML Retail | ¶¶ 82-103 | ¶¶ 89-92 |
| Lemonis transferred Gooberry's assets to MLG Retail, with the exception of Gooberry's "Runway business" | ¶ 104 | ¶¶ 114-115 |
| ML Fashion obtained a line of credit from Marcus Lemonis, LLC | ¶ 106 | ¶ 97 |
| Lemonis forced the Derivative Entity to take on loans from other entities through Credit Agreements and Security Agreements | ¶¶ 12, 105, 107-115 | ¶¶ 11-12, 93-95, 98 |
| Lemonis forced the Derivative Entity to purchase products or brands featured on other episodes of "The Profit" | ¶¶ 117-124, 150-154 | ¶¶ 87-88 |
| Lemonis engaged in misconduct relating to "Inkkas Shoes," including by forcing a "Free Shoe Friday" | ¶¶ 130, 148-149 | ¶¶ 104-106 |
| Lemonis forced Gooberry to purchase Runway and allowed Raffel to make business decisions due to Lemonis' romantic interest in Raffel | ¶¶ 136-140[1] | ¶¶ 99-103 |
| Lemonis improperly forced ML Fashion or Gooberry[2] to acquire Denim & Soul and promote the "MARCUS" brand | ¶¶ 156-161 | ¶¶ 110-112 |

---

[1] The Delaware Complaint refers to ML Fashion purchasing Runway, but also refers in the same paragraph to Gooberry purchasing Runway, in an apparent case of copying and pasting gone awry.  *See* Delaware Compl. ¶ 137.  Strangely, or tellingly, Plaintiffs did not fix this error in their Amended Complaint in this action.

[2] The Delaware Complaint first states that Gooberry purchased Denim & Soul, but later states that ML Fashion acquired Denim & Soul—another error that Plaintiffs did not fix when amending their Complaint.  *See* Delaware Compl. ¶¶ 76, 156.  Similarly, the New York Complaint first states Gooberry purchased Denim & Soul, but later states that "Gooberry or ML Fashion" acquired Denim & Soul.  *See* New York Compl. ¶¶ 86, 110.

| Common Allegations | DE | NY |
|---|---|---|
| When Plaintiffs questioned Lemonis, he threatened to fire Plaintiffs' mother | ¶ 165 | ¶ 108 |
| Lemonis then fired Plaintiffs' mother, who was informed of her firing by Giovanni Senafe; moved Goureau to various companies; and ultimately fired Goureau | ¶¶ 166-168 | ¶¶ 107-109 |
| Lemonis abruptly cut Menkin off from the businesses in spring 2020 | ¶ 169 | ¶ 116 |
| Lemonis used the pandemic to take his alleged misconduct "to the next level," including by flying employees around the country to take furniture, fixtures, and equipment from closed stores | ¶¶ 14-15, 172-176, 187-188 | ¶ 14, 116-119 |
| Plaintiffs are entitled to bring derivative claims without making a demand upon the Derivative Entity because such a demand would be futile due to Lemonis' control | ¶¶ 191-201 | ¶¶ 121-132 |
| Lemonis, ML Retail, and Marcus Lemonis, LLC fraudulently induced Plaintiffs to enter into agreements relating to the Derivative Entity | ¶¶ 202-209 | ¶¶ 133-142 |
| Lemonis, ML Retail, and Marcus Lemonis, LLC committed fraud, including with respect to the Derivative Entity's acquisition of other brands and additional debt. | ¶¶ 210-217 | ¶¶ 144-153 |
| Lemonis breached his fiduciary duties by, *inter alia*, "saddling" the Derivative Entity with expensive inventory, reducing its profits, making it reliant on loans from other Lemonis entities, and using it as a vehicle to foreclose on other businesses | ¶¶ 218-221 | ¶¶ 155-157 |
| Lemonis, ML Retail, and Marcus Lemonis, LLC breached the implied covenant of good faith and fair dealing by, *inter alia*, "saddling" the Derivative Entity with expensive inventory, reducing its profits, making it reliant on loans from other Lemonis entities, and using it as a vehicle to foreclose on other businesses | ¶¶ 230-233 | ¶¶ 159-162 |
| Plaintiffs assert their unjust enrichment claim in the alternative and "[s]uch alternative pleading is proper where, as here, Plaintiffs are seeking rescission of the [relevant contract(s)] through their claim for Fraudulent Inducement"; Lemonis, ML Retail, and Marcus Lemonis, LLC were unjustly enriched by, *inter alia*, reducing the Derivative Entity's profits, increasing the debts of the Derivative Entity, and taking actions that benefitted ML Retail at the expense of the Derivative Entity | ¶¶ 249-254 | ¶¶ 164-172 |
| Lemonis, ML Retail, and Marcus Lemonis, LLC engaged in mismanagement by, *inter alia*, "saddling" the Derivative Entity with expensive inventory, | ¶¶ 255-256 | ¶¶ 178-183 |

| Common Allegations | DE | NY |
|---|---|---|
| reducing its profits, making it reliant on loans from other Lemonis entities, and closing retail stores | | |
| Lemonis, ML Retail, and Marcus Lemonis, LLC wasted and converted the assets of the Derivative Entity | ¶¶ 257-271 | ¶¶ 174-176, 185-189 |
| Plaintiffs are entitled to appointment of a receiver, injunctive relief, and dissolution with respect to each Derivative Entity | ¶¶ 272-281 | ¶¶ 226-247 |

4