UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------ x

NICOLAS GOUREAU and STEPHANIE
MENKIN, individually and derivatively on
behalf of GOOBERRY CORP., a New York
Corporation,

      Plaintiffs,

     - against -

MARCUS LEMONIS, an individual, ML
RETAIL, LLC, a Delaware limited liability
company, and MARCUS LEMONIS, LLC, a
Delaware limited liability company, and
MACHETE CORPORATION d/b/a MACHETE
PRODUCTIONS, a California corporation,

      Defendants,
and

GOOBERRY CORP., a New York corporation,

      Nominal Defendant.

------------------------------------------------------------ x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 20-cv-4691-MKV

ECF Case

Oral Argument Requested

**MEMORANDUM OF LAW IN SUPPORT OF MACHETE CORPORATION
D/B/A MACHETE PRODUCTIONS' MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Jonathan L. Segal
Rachel R. Goldberg
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:  (213) 633-8667
E-mail:  jonathansegal@dwt.com
E-mail:  rachelgoldberg@dwt.com

Samuel M. Bayard
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
E-mail: samuelbayard@dwt.com
*Attorneys for Machete Corporation d/b/a
Machete Productions*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND.................................................................................. 3

ARGUMENT .................................................................................................. 6

I.    THE COURT LACKS JURISDICTION BECAUSE PLAINTIFFS FAILED TO
      PARTICIPATE IN MANDATORY MEDIATION. ........................................... 6

II.   PLAINTIFFS' FAILURE TO STATE A CLAIM ALSO WARRANTS DISMISSAL..... 9

      A.    Plaintiffs' Fraudulent Inducement Claim Must Be Dismissed. ...........................10

      B.    Plaintiffs' RICO § 1962 Claim Must Be Dismissed.............................................16

      C.    The Statute of Limitations Has Run On All of Plaintiffs' Claims Against
            Machete..........................................................................................................19

      D.    Plaintiffs' Remaining Causes of Action Must Be Dismissed. ..............................20

      E.    Plaintiffs' Conclusory Allegations of Agency Are Insufficient. ..........................21

III.  IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER TO THE CENTRAL
      DISTRICT OF CALIFORNIA, PURSUANT TO THE PARTIES' FORUM-
      SELECTION CLAUSE. ............................................................................ 22

CONCLUSION................................................................................................ 24

4829-6517-0383v.2 0112823-000003

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co.*,
   96 F. Supp. 3d 182 (S.D.N.Y. 2015)........................................................................................10

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
   404 F.3d 566 (2d Cir. 2005)..............................................................................................11, 12

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)....................................................................................................................18

*Arial Techs., LLC v. Aerophile S.A.*,
   No. 14 CV 4435, 2015 WL 1501115 (S.D.N.Y. Mar. 31, 2015)...........................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................................9

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
   571 U.S. 49 (2013)........................................................................................................21, 22, 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................................9

*Bennett v. U.S. Tr. Co. of New York*,
   770 F.2d 308 (2d Cir. 1985)......................................................................................................15

*Bigsby v. Barclays Capital Real Estate, Inc.*,
   170 F. Supp. 3d 568 (S.D.N.Y. 2016).................................................................................11, 16

*Brookhaven Town Conservative Comm. v. Walsh*,
   258 F. Supp. 3d 277 (E.D.N.Y. 2017) ....................................................................................13

*Brosnan v. Dry Cleaning Station, Inc.*,
   No. C–08–02028, 2008 WL 2388392 (N.D.Cal. June 6, 2008) ..........................................6, 7

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991)....................................................................................................................22

*Centaur Corp. v. ON Semiconductor Components Indus., LLC*,
   No. 2010 WL 444715 (S.D. Cal. Feb. 2, 2010) .......................................................................8

*Choi v. Samsung Heavy Indus. Co.*,
   129 F. App'x 394 (9th Cir. 2004) .............................................................................................23

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ..................................................................................................20

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)..................................................................................4

*Cortes v. Twenty-First Century Fox Am., Inc.*,
  285 F. Supp. 3d 629 (S.D.N.Y. 2018)................................................................12

*Crede CG III, Ltd. v. 22nd Century Grp., Inc.*,
  No. 16 Civ. 3103, 2017 WL 280818 (S.D.N.Y. Jan. 20, 2017)................................4

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
  758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...............................................................16

*Delamater v. Anytime Fitness, Inc.*,
  722 F. Supp. 2d 1168 (E.D. Cal. 2010)................................................................7

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) ...........................................................................10

*Diaz v. NBC Universal, Inc.*,
  536 F. Supp. 2d 337 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009).........9

*Duckett v. Williams*,
  86 F. Supp. 3d 268 (S.D.N.Y. 2015)..................................................................10

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
  902 F.3d 132 (2d Cir. 2018).......................................................................16, 18

*Fieger v. Pitney Bowes Credit Corp.*,
  251 F.3d 386 (2d Cir. 2001)............................................................................10

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)..............................................................................9

*Gander Mountain Co. v. Islip U-Slip LLC*,
  923 F. Supp. 2d 351 (N.D.N.Y. 2013), *aff'd*, 561 F. App'x 48 (2d Cir. 2014) .......19

*GenopsGroup LLC v. Pub. House Invs. LLC*,
  67 F. Supp. 3d 338 (D.D.C. 2014) .....................................................................7

*Giordano v. UBS, AG*,
  134 F. Supp. 3d 697 (S.D.N.Y. 2015)............................................................22, 23

*Grupo Verzatec S.A. de C.V. v. RFE Inv. Partners*,
  No. 17-CV-9887, 2019 WL 1437617 (S.D.N.Y. Mar. 29, 2019) ...........................21

*Gutchess Lumber Co. v. Wieder*,
  No. 5:13-CV-1013, 2013 WL 5346857 (N.D.N.Y. Sept. 23, 2013 .........................9

*Hamzaraj v. ABM Janitorial Ne. Inc.*,
  No. 15 CIV. 2030 (ER), 2016 WL 3571387 (S.D.N.Y. June 27, 2016)....................7

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010)..................................................................................................18

*Holmes v. Securities Investor Protection Corporation*,
    503 U.S. 258 (1992)........................................................................................17, 18

*Hyung Jin Moon v. Hak Ja Han Moon*,
    431 F. Supp. 3d 394 (S.D.N.Y. 2019)..................................................................19

*In re Loral Space & Commc'ns Ltd. Sec. Litig.*,
    No. 01 CIV.4388, 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004)............................12

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
    980 F. Supp. 2d 417 (S.D.N.Y. 2013)..................................................................19

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) .........................................................................16

*Kemiron Atl., Inc. v. Aguakem Intern., Inc.*,
    290 F.3d 1287 (11th Cir. 2002) .............................................................................7

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...............................................................................4

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)..........................................................................19, 20

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 1991) ...............................................................................17

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
    478 F. App'x 679 (2d Cir. 2012) .........................................................................13

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
    821 F. Supp. 2d 616 (S.D.N.Y. 2011), *aff'd*, 478 F. App'x 679 (2d Cir. 2012).....................10

*Leathers v. Medlock*,
    499 U.S. 439 (1991)............................................................................................19

*Makarova v. U.S.*,
    201 F.3d 110 (2d Cir. 2000).............................................................................4, 6

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)...........................................................................22, 23

*Matsumura v. Benihana Nat. Corp.*,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008)..................................................................12

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
    14 F. Supp. 3d 191 (S.D.N.Y. 2014)....................................................................21

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964)..................................................................................................18

*Nat'l Org. for Women, Inc. v. Scheidler*,
   510 U.S. 249 (1994)............................................................................................18, 19

*Pallamary v. Elite Show Servs., Inc.*,
   No. 17CV2010-WQH-BGS, 2018 WL 3064933 (S.D. Cal. June 19, 2018) ..........................21

*PetEdge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017).....................................................................10, 11, 14

*Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*,
   888 F. Supp. 2d 491 (S.D.N.Y. 2012)..........................................................................16

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
   420 F. Supp. 3d 123 (S.D.N.Y. 2019)..........................................................................13

*Prestige Brands Inc. v. Guardian Drug Co.*,
   951 F. Supp. 2d 441 (S.D.N.Y. 2013)..........................................................................21

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)........................................................................................12

*Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*,
   No. 17-CV-07076-LHK, 2019 WL 2569545 (N.D. Cal. June 21, 2019) ................................7

*Schnall v. Marine Midland Bank*,
   225 F.3d 263 (2d Cir. 2000).........................................................................................4

*Sor Tech., LLC v. MWR Life, LLC*,
   No. 3:18-CV-2358 JLS (NLS), 2019 WL 4060350 (S.D. Cal. Aug. 28, 2019) ......................8

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ......................................................................................17

*Tattoo Art, Inc. v. Tat Int'l, LLC*,
   711 F. Supp. 2d 645 (E.D. Va. 2010) ........................................................................6, 7

*Three Crown Ltd. P'ship v. Caxton Corp.*,
   817 F. Supp. 1033 (S.D.N.Y. 1993).............................................................................11

*Tung v. Bristol-Myers Squibb Co.*,
   No. 1:18-CV-01611 (MKV), 2020 WL 5849220 (S.D.N.Y. Sept. 30, 2020) .................12, 14

*United States v. Turkette*,
   452 U.S. 576 (1981)...................................................................................................17

*Vess v. Ciba-Geigy, Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................................................9

v

*Wexler v. Allegion (UK) Ltd.*,
    No. 16 CIV. 2252, 2018 WL 1626346 (S.D.N.Y. Mar. 30, 2018) .........................................14

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ...................................................................................17

*Yi v. Circle K. Stores, Inc.*,
    258 F. Supp. 3d 1075 (C.D. Cal. 2017) .................................................................................10

**State Cases**

*Kirk/Marsland Advert., Inc. v. Cunard Line Ltd.*,
    188 A.D.2d 440, 591 N.Y.S.2d 1013 (1992) .........................................................................13

*Pope v. New York Prop. Ins. Underwriting Ass'n*,
    66 N.Y.2d 857, 489 N.E.2d 247 (1985)................................................................................13

**Federal Statutes**

18 U.S.C. § 1961 ...........................................................................................................................16, 17

18 U.S.C. § 1962 ...............................................................................................................................16

18 U.S.C. § 1964 ...............................................................................................................................17

28 U.S.C. § 1404 ................................................................................................................1, 4, 21, 22

**Rules**

Fed. R. Civ. P. 9 .......................................................................................................................... *passim*

Fed. R. Civ. P. 12 ........................................................................................................................ *passim*

Fed. R. Civ. P. 56 ...............................................................................................................................4

**Constitutional Provisions**

U.S. Const. Amend. I ...................................................................................................................18, 19

Defendant Machete Corporation d/b/a Machete Productions ("Machete" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b), or, in the alternative, to transfer under 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

Machete is surprised and perplexed as to its inclusion in this lawsuit as Plaintiffs do not and cannot include a credible allegation that Machete has input into or control of the conduct of Marcus Lemonis's collected businesses.  The First Amended Complaint ("FAC") falsely portrays Machete as a cog in the Marcus Lemonis machine – basically a front controlled by Lemonis to help him exploit unwitting businesses.  Reality is demonstrably different.  Machete is engaged exclusively in the business of developing and producing critically acclaimed content.  In addition to The Profit, that content includes the unscripted series *WAGs* (LA, Miami and Atlanta*), Relatively Nat & Liv, Back in the Game, and Dirty Soap*.

In contrast to the conclusory allegations in the FAC, which are unsupported by any specific facts, Machete is not controlled by or an agent of Lemonis or his entities.  Indeed, Plaintiffs do not allege Machete created or developed The Profit or hired Lemonis.  Rather, CNBC retained Machete for the second season of the show to serve as the production company, a full season after CNBC retained Lemonis.  Plaintiffs do not allege any facts plausibly suggesting that Machete's relationship with Lemonis himself is anything but at arm's length or that Machete has a relationship with, or interest in, Lemonis's business.  Indeed, Lemonis's contract is with the network, not Machete.  Likewise, Machete produces The Profit under a contract with CNBC.  Casting decisions, which neither Lemonis nor Machete has final power over, are driven by what will make a compelling story, without reviewing a company's books or balance sheet, and subject to CNBC's review and approval.  And Plaintiffs do not allege that

Machete has any involvement with Lemonis's business dealings with featured companies outside of the context of the show.  In fact, contestants agree to conduct their official business with Lemonis off camera, without Machete's involvement.   Accordingly, Plaintiffs' suit is frivolous at best, and extortionate at worst.

The only contact alleged in the First Amended Complaint between Machete and Plaintiffs occurred more than six years ago when Machete produced an episode of The Profit featuring Plaintiffs.  To appear in that episode, Plaintiffs signed substantial release agreements (collectively, the "Release Agreements"[1]) that included, among other provisions, mandatory mediation and arbitration clauses; choice-of-venue clauses for Los Angeles, California; full releases of claims against Machete; explicit disclaimers against reliance on Machete; and the assumption of all risks related to Lemonis's advice.  Notably, there is no allegation in the FAC that the Release Agreements were obtained by fraud: given their contents, it is unsurprising that Plaintiffs omitted any mention of them from the FAC.  As for the agreements at the core of this case – the purportedly fraudulent Stock Purchase Agreements between Plaintiffs and Lemonis's entities – they were executed months after filming the episode and Machete is not a party to them.

Given this background, it is unsurprising that Plaintiffs' claims against Machete must be dismissed or, in the alternative, transferred.  First, this Court lacks jurisdiction over Plaintiffs' claims against Machete due to the mandatory mediation provision to which each Plaintiff agreed.  Second, Plaintiffs' claims against Machete fail on substantive grounds:  Specifically, Plaintiffs' Fraudulent Inducement and civil RICO claims fail to satisfy the heightened pleading

---

[1] Declaration of Kimberly Donnan ("Donnan Decl."), Exhibits A (Goureau Appearance Release Form, Arbitration Provision and Voluntary Participation Agreement) ("Goureau Release Agreement"), B (Menkin Appearance Release Form, Arbitration Provision and Voluntary Participation Agreement) ("Menkin Release Agreement"), C (Gooberry Reality Participant Agreement, Release & Arbitration Provisions – Business) ("Gooberry Release Agreement").

requirements of Rule 9(b).  Third, if the Court does not dismiss Plaintiffs' claims against

Machete, it should transfer the case, pursuant to their Agreements, to the Central District of

California.

Plaintiffs seek to hold Machete responsible for purported acts with which it is not

involved.  The FAC outlines a years-long history consisting of multiple business dealings,

complex agreements, and independent judgments by the other parties in this dispute.  But it does

not allege any involvement by Machete in these actions beyond producing a television show and

casting these Plaintiffs – Plaintiffs who independently sought out the opportunity to be on the

show and spent years afterward working with Lemonis as his executives.  Machete therefore

respectfully requests the Court dismiss, or, in the alternative, transfer Plaintiffs' claims against

Machete to the Central District of California.

## FACTUAL BACKGROUND

The Profit is an unscripted television series, which portrays Marcus Lemonis's

interactions with small businesses.  FAC ¶¶ 39-41.  CNBC has aired The Profit for

approximately seven years.  *Id.* at ¶¶ 38.  Although Machete was not involved in the creation of

The Profit or the production of its premiere season, CNBC hired Machete to produce The Profit

from the second season onward.  *Id.* at ¶ 12.  Machete's contract to produce The Profit is with

CNBC, not Lemonis.  Donnan Decl. at ¶ 4.

Plaintiffs Nicolas Goureau ("Goureau") and Stephanie Menkin ("Menkin"), along with

their mother Neomi Goureau, run Courage.B, a luxury women's fashion line and retail stores.

*Id.* at ¶ 31.  The clothing enterprise is held by Plaintiff Gooberry Corporation ("Gooberry").  *Id.*

at ¶ 32.  After seeing an episode of The Profit, Goureau applied to have Gooberry appear on the

show.  *Id.* at ¶ 46.  Only after receiving his application did Machete reach out to Goureau.  *Id.* at

¶ 46-47.  Plaintiffs allege that, during the screening process, Machete made representations

"about Lemonis' ability to help small businesses, the deals Lemonis makes on the show, and how Lemonis has helped business [sic] that appeared on previous episodes of 'The Profit.'" *Id.* at ¶ 48.  Plaintiffs also allege that Machete made advertisements and websites promoting the show ("Alleged Promotions"), but do not allege the content of the Alleged Promotions, whether they saw the Alleged Promotions, or when they saw the Alleged Promotions. *Id.* at ¶ 50.

After the screening process, Plaintiffs were selected to appear on The Profit. *Id.* at ¶¶ 51-52.  Prior to filming, each Plaintiff entered into a release, mediation, and arbitration agreement with Machete.[2]  Donnan Decl., Exs. A-C.  Notably, Defendants entered into the Release Agreements after reviewing them for two weeks and negotiating specific changes to the Release Agreements with Machete and CNBC. *Id.* at ¶¶ 8-10.

In the Release Agreements, Plaintiffs agreed to the following broad mandatory mediation clause:

> The parties agree that if any controversy or claim arising out of or relating to this Agreement, the breach of any term hereof, or company participation in or in connection with the Series cannot be settled through direct discussions, the parties agree to endeavor first to settle the controversy or claim by mediation conducted in the County of Los Angeles and administered by JAMS . . . .

Gooberry Release Agreement at ¶ 29; Goureau Release Agreement at ¶ 20(A); Menkin Release Agreement at ¶ 20(A).  This language is bolded and capitalized in all of the Release Agreements.

---

[2] The Court may consider evidence outside the pleadings on a motion to dismiss pursuant to Rule 12(b)(1) and on a motion to transfer pursuant to 28 U.S.C. § 1404. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (evidence outside of pleadings considered on motion to dismiss under 12(b)(1)); *Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16 Civ. 3103, 2017 WL 280818, at *8 (S.D.N.Y. Jan. 20, 2017) ("To consider a motion to transfer, 'a court may consider material outside of the pleadings.'").  Even under Rule 12(b)(6), the court may consider materials referenced in a pleading under the "'incorporation by reference doctrine," even if a plaintiff failed to attach those material to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). *See also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48, 50 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.") (affirming motion to dismiss); *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (considering on a Rule 12(b)(6) motion plaintiff's "Agreement, account history and monthly statements [with defendant] because they are integral to this claims and [plaintiff] had notice of that information.").

*Id.* The Release Agreements also include mandatory forum selection and venue clauses. *See* Gooberry Release Agreement at ¶¶ 24, 29; Goureau Release Agreement at ¶¶ 17, 20(B); Menkin Release Agreement at ¶¶ 17, 20(B). For example, the Gooberry Release Agreement provides:

> Company consents to the exclusive personal jurisdiction and venue of any state or federal court located in the County of Los Angeles, California to the extent any court proceedings are commenced; provided, however, that the foregoing shall not in any way diminish or limit the mediation and arbitration provisions set forth below.

Gooberry Release Agreement at ¶ 24. *See also* Goureau Release Agreement at ¶ 17; Menkin Release Agreement at ¶ 17. The Release Agreements also contain broad releases and assumptions of risk related to following any advice provided by Lemonis and specifically disclaiming any reliance on Lemonis's advice. *E.g.*, Gooberry Release Agreement ¶¶ 1B.(i), 1B(iii), 11, 12. In the unlikely event this case continues beyond the pleading stage to summary judgment, these provisions will also bar Plaintiffs' claims.

On June 18, 2020, six years after filming their episode, Plaintiffs brought suit against their former partner and employer Lemonis and his various companies. Dkt. 1. Two months later, for reasons that are still unclear, Plaintiffs amended their complaint to add Machete as a defendant in an attempt to hold Machete responsible for purported acts with which it is not involved. Indeed, the crux of Plaintiffs' claims against Machete are that Machete somehow fraudulently induced it to enter into a series of business deals with the Lemonis Defendants to which Machete is not a party, and which have no obvious benefit to, or involvement with Machete. FAC ¶¶ 9, 69-70, 134, 138. In fact, Plaintiffs entered into the first of the agreements with the Lemonis Defendants – a Stock Purchase Agreement – on November 8, 2014. *Id.* at ¶¶ 9, 69-70, 134. This was a month after the episode aired and months after filming of the episode had wrapped. *Id.* at ¶¶ 6, 52. There are no allegations that Machete was involved in the negotiation of that agreement or that it reviewed or even saw that agreement until encountering it

in this lawsuit.  *See id.* at ¶¶ 9, 134, 138.  Nor are there any allegations that Machete was involved in the subsequent business dealings between Plaintiffs and the Lemonis Defendants. *See id.* at ¶¶ 7-8, 11-12, 9, 134, 138.  This is because, as alleged in the FAC, the limited involvement Machete had with Plaintiffs was related to casting, filming and editing The Profit.

Not only do Plaintiffs fail to allege Machete engaged in any actionable conduct, but they also fail to allege Machete engaged in any conduct whatsoever after filming Plaintiffs' episode in June 2014.   As such, Machete respectfully requests that the causes of action against it be dismissed or, in the alternative, transferred to the Central District of California.

## ARGUMENT

## I.   THE COURT LACKS JURISDICTION BECAUSE PLAINTIFFS FAILED TO PARTICIPATE IN MANDATORY MEDIATION.

It is undisputed that Plaintiffs filed this suit against Machete without so much as sending a demand letter, let alone complying with their mandatory obligations in the Release Agreements to attempt to settle any dispute through mediation prior to initiating other formal proceedings. When a party fails to mediate as is required as a condition precedent, a court does not have subject matter jurisdiction over the dispute.  *Tattoo Art, Inc. v. Tat Int'l, LLC,* 711 F. Supp. 2d 645, 651 (E.D. Va. 2010); *Brosnan v. Dry Cleaning Station, Inc.,* No. C–08–02028, 2008 WL 2388392, at *2 (N.D.Cal. June 6, 2008).

Therefore, the Court must dismiss this suit because it lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court "may refer to evidence outside of the pleadings."  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exists."  *Id.*

Here, Plaintiffs agreed to mandatory mediation with exclusive jurisdiction in Los Angeles, California.  Gooberry Release Agreement at ¶¶ 24, 29; Goureau Release Agreement at ¶¶ 17, 20(B); Menkin Release Agreement at ¶¶ 17, 20(B).  The mandatory mediation provisions are bolded and capitalized in each of the Release Agreements.  *See* Gooberry Release Agreement at ¶ 29; Goureau Release Agreement at ¶ 20(A); Menkin Release Agreement at ¶ 20(A).  Nevertheless, Plaintiffs failed to mediate prior to bringing suit.  "'[F]ailure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal.'"  *Tattoo Art, Inc.,* 711 F. Supp. 2d at 651 (*quoting Brosnan,* 2008 WL 2388392, at *2).  In *Tattoo Art*, the parties agreed to a clause that stated that "the parties agree to submit the dispute to mediation . . . prior to filing any action to enforce this Agreement."  *Id.* at 649-50.  Disregarding that language, the plaintiff instead filed suit directly.  The Court found that the language "unambiguously shows that the parties elected not to be subject to this Court's jurisdiction . . . until one of the parties either requests mediation and that request is denied or mediation commences and fails."  *Id.* at 650.   *See also Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, No. 17-CV-07076-LHK, 2019 WL 2569545, at *7 (N.D. Cal. June 21, 2019) (dismissing case because plaintiffs failed to satisfy "mediation condition precedent"); *Hamzaraj v. ABM Janitorial Ne. Inc.,* No. 15 CIV. 2030 (ER), 2016 WL 3571387, at *5 (S.D.N.Y. June 27, 2016) ("Plaintiff's claims are thus subject to mandatory mediation" under a collective bargaining agreement); *GenopsGroup LLC v. Pub. House Invs. LLC*, 67 F. Supp. 3d 338, 343-44 (D.D.C. 2014) (dismissing claim against defendant where plaintiff failed to mediate which was a condition precedent); *Delamater v. Anytime Fitness, Inc.*, 722 F. Supp. 2d 1168, 1180-81 (E.D. Cal. 2010) (dismissing complaint as "premature" where plaintiff failed to mediate which was "the condition precedent necessary to trigger the right to initiate litigation");

*Brosnan*, 2008 WL 2388392, at *1 ("Failure to mediate a dispute pursuant to a contract that makes mediation a precedent to filing a lawsuit warrants dismissal."); *Kemiron Atl., Inc. v. Aguakem Intern., Inc.*, 290 F.3d 1287, 1288, 1291 (11th Cir. 2002) (affirming dismissal and denial of motion to stay pending arbitration where plaintiff failed to satisfy condition precedent of requesting mandatory mediation).

Likewise, Plaintiffs' claims against Machete fall within the language of the mediation provision, which requires that "any controversy or claim arising out of or relating to this Agreement . . . or company participation in or in connection with the Series" be subject to "mediation conducted in the County of Los Angeles and administered by JAMS" before commencing any proceedings.  *See* Gooberry Release Agreement at ¶ 29; Goureau Release Agreement at ¶ 20(A); Menkin Release Agreement at ¶ 20(A).  Such language "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *See Sor Tech., LLC v. MWR Life, LLC,* No. 3:18-CV-2358 JLS (NLS), 2019 WL 4060350, at *4 (S.D. Cal. Aug. 28, 2019) (dismissing case for failure to mediate as condition precedent) (*quoting Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir. 1999) (collecting cases broadly construing the language *arising out of or relating to this Agreement*)).  It is clear from the face of the FAC that the allegations purportedly arise out of Plaintiffs' participation in The Profit, which is governed by the terms of the Release Agreements. For example, the FAC discusses Machete's casting (FAC ¶ 47) and creation of a story (*id.* at ¶ 52) and alleges that Machete made various representations "over the course of preparing to film the show, and during the filming" of The Profit.  *Id.* at ¶ 136.

Accordingly, the Release Agreements require Plaintiffs to engage in mandatory mediation prior to bringing this claim, and they have failed to do so.  "As mediation is a

condition precedent to litigation between the parties, the current lawsuit is premature." *Centaur Corp. v. ON Semiconductor Components Indus., LLC*, No. 2010 WL 444715, at *4 (S.D. Cal. Feb. 2, 2010) (granting defendant's motion to dismiss).  The Court therefore lacks jurisdiction over Plaintiffs' claims against Machete and they must be dismissed.

## II.    PLAINTIFFS' FAILURE TO STATE A CLAIM ALSO WARRANTS DISMISSAL.

If the Court determines it does have jurisdiction, Plaintiffs' FAC is deficient in numerous other ways that warrant dismissal.  To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible only if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 341 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009).

Here, Plaintiffs' primary causes of action[3] against Machete, fraudulent inducement and civil RICO, both sound in fraud.  This triggers the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178-80 (2d Cir. 2004).  Under these exacting standards, "[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or

---

[3] Although Plaintiffs allege a separate cause of action for a permanent injunction (FAC ¶¶ 234-39), a permanent injunction is a remedy, not an independent cause of action. *See Gutchess Lumber Co. v. Wieder*, No. 5:13-CV-1013 FJS/DEP, 2013 WL 5346857, at *3, n.1 (N.D.N.Y. Sept. 23, 2013).  Likewise, as discussed further below, Plaintiffs' claims for appointment of a temporary receiver and dissolution have no bearing against Machete because it has no business relationship with Plaintiffs.

misleading about a statement, and why it is false." *Vess v. Ciba-Geigy, Corp. USA*, 317 F.3d 1097, 1103-04, 1106 (9th Cir. 2003). "To satisfy Rule 9(b)'s particularity requirement, the complaint must include an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019). "In other words, the pleading "must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Id.  See also Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 622 (S.D.N.Y. 2011), *aff'd,* 478 F. App'x 679 (2d Cir. 2012) (dismissing claim where "allegations do not give defendants notice of the particulars: the 'who, what, when, where and how . . .' required to support a fraud claim").

A.     **Plaintiffs' Fraudulent Inducement Claim Must Be Dismissed.**

"To state a claim for fraudulent inducement under New York law, a plaintiff must allege: 'a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (*quoting Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001)).  Similarly, under California law, "[t]he elements of fraudulent inducement are (1) misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages."[4] *Yi v. Circle K. Stores, Inc.*, 258 F. Supp. 3d 1075, 1087 (C.D. Cal. 2017).  In order to survive a

---

[4] "In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001).  "An actual conflict exists where the applicable law from each jurisdiction provides differing rules that have the potential to affect the outcome of the case significantly." *2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 199 (S.D.N.Y. 2015).  Where, as here, there is no actual conflict between the law regarding fraudulent inducement in New York and California, no further analysis is required.

motion to dismiss, Plaintiffs must plead each of these elements with the requisite heightened standards of Rule 9(b).  *Duckett v. Williams*, 86 F. Supp. 3d 268, 274-75, 277 (S.D.N.Y. 2015) (granting motion to dismiss in its entirety).  This requires pleading "the who, what, when, where and how" of the alleged claim.  *PetEdge, Inc.*, 234 F. Supp. 3d at 490.  Here, Plaintiffs' FAC falls woefully short of this exacting standard.

*No allegation as to Machete.*  Plaintiffs' fraudulent inducement claim fails because Plaintiffs improperly attribute the vaguely pled statements to "Defendants," opposed to any particular individual.  FAC ¶¶ 134, 137.  In other words, Plaintiffs do not plead the "who" as required to maintain a claim for fraudulent inducement as a matter of law.  *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 581 (2d Cir. 2005) (dismissing fraudulent inducement claim because plaintiff had "not spelled out its claim of fraudulent inducement with sufficient specificity under Rule 9(b)" where plaintiff failed to identify which defendants made which false representations); *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F. Supp. 3d 568, 577, 579 (S.D.N.Y. 2016) (dismissing claim because plaintiffs did not allege "when and where the misrepresentations were made and who made them"); *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993) ("Under Rule 9(b), where multiple defendants are charged with fraud, the complaint must be specific as to the nature of each defendant's alleged participation in the fraud.").  Thus, the Court should dismiss this claim because Plaintiffs fail to identify the "who."

*No misrepresentation of fact.*  Plaintiffs' fraudulent inducement claim also fails because Plaintiffs do not allege any specific misrepresentation of fact, the most basic requirement of a claim for fraudulent inducement, let alone with particularity.  Instead, Plaintiffs allege that (unspecified) Defendants made various broadly worded representations, but fail to allege

precisely what representations were made.  *E.g.*, FAC ¶ 137.  The allegations are insufficient

because they do not identify a specific misstatement of fact, as required to satisfy Rule 9(b).

*Aetna Cas. & Sur. Co.*, 404 F.3d at 580  (finding "broad allegations" that defendant made

material representations were "insufficient to meet the requirements of Rule 9(b)"); *Cortes v.*

*Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 639 (S.D.N.Y. 2018) (allegations such

as unspecified "intentional misrepresentations, made in a deliberate attempt to have [plaintiff]

rely on those misrepresentations" failed to "satisfy the particularity requirements of Rule 9(b)").

Even if Plaintiffs had identified a *statement* with particularity, which they have not, they

still fail to identify a statement of *fact*.  Plaintiffs' allegations, including that Defendant Lemonis

helps the businesses featured on The Profit, that Defendants wanted to help Plaintiffs, and that

Defendants cared for Plaintiffs' family and their business, are statements of opinion and/or

predictions of future events.  *See* FAC at ¶ 137.  Such statements cannot support a claim for

fraudulent inducement.  *Tung v. Bristol-Myers Squibb Co.*, No. 1:18-CV-01611 (MKV), 2020

WL 5849220, at *8 (S.D.N.Y. Sept. 30, 2020) (granting motion to dismiss where allegations

were "non-actionable forward-looking statements or opinion"); *Matsumura v. Benihana Nat.*

*Corp.*, 542 F. Supp. 2d 245, 252, 259 (S.D.N.Y. 2008) ("It is axiomatic, however,

that predictive or opinion statements about future events, without more, are not

misrepresentations.") (granting Rule 12(b)(6) motion); *In re Loral Space & Commc'ns Ltd. Sec.*

*Litig.*, No. 01 CIV.4388(JGK), 2004 WL 376442, at *18 (S.D.N.Y. Feb. 27, 2004) (officers'

statements about predicted future events that reflected their optimism was not actionable)

(granting Rule 12(b)(6) motion); *Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir. 2004)

("'[P]uffery' or 'misguided optimism' is not actionable as fraud.") (affirming dismissal).

Indeed, even if these statements were more than mere puffery, such forward-looking

representations of future intent are not actionable, particularly where Plaintiffs do not allege facts to show that "at the time [any] representation was made, [Machete] never intended to honor the promise." *Pope v. New York Prop. Ins. Underwriting Ass'n*, 66 N.Y.2d 857, 859, 489 N.E.2d 247 (1985). *See also Kirk/Marsland Advert., Inc. v. Cunard Line Ltd.*, 188 A.D.2d 440, 440, 591 N.Y.S.2d 1013 (1992) ("Defendants' November 23, 1987 letter, upon which plaintiffs rely, was not a binding commitment of the production job by defendants to plaintiffs, but rather a statement of future intentions, promises or expectations not actionable as a fraud."). In short, because Plaintiffs fail to identify the "what," the claim for fraudulent inducement must be dismissed.

*No scienter.* Plaintiffs' fraudulent inducement claim also fails because Plaintiffs do not plead the requisite intent. To maintain a claim for fraudulent inducement, Plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 147 (S.D.N.Y. 2019). "A strong inference of fraudulent intent may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 147-48. Under the first prong, "'allegations that a defendant stands to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b).'" *Brookhaven Town Conservative Comm. v. Walsh*, 258 F. Supp. 3d 277, 286 (E.D.N.Y. 2017). *See also Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681, 683 (2d Cir. 2012) (affirming motion to dismiss because, in part, "general profit motive common to all corporations" was not sufficient to create a "strong inference" of fraudulent intent).

4829-6517-0383 v.2 0112823-000003

Here, Plaintiffs provide no facts to create an inference of fraudulent intent, let alone the "strong inference" required.  Plaintiffs do not allege, and indeed cannot allege, why Machete would want "to induce them into entering the Gooberry Shareholder Agreement and Stock Purchase Agreement" with the Lemonis entities, which would not benefit Machete.  FAC ¶ 134. *See Tung*, 2020 WL 5849220, at *7 (granting motion to dismiss because plaintiffs had "not provided sufficient facts to support a strong inference of scienter based on motive and opportunity to commit the fraud"); *Wexler v. Allegion (UK) Ltd.,* No. 16 CIV. 2252 (ER), 2018 WL 1626346, at *6-8 (S.D.N.Y. Mar. 30, 2018) (granting motion to dismiss where plaintiff "failed to plead a strong inference of fraudulent intent" and "the Second Circuit has held that "motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud"); *PetEdge, Inc.*, 234 F. Supp. 3d at 495 (dismissing fraud claim because plaintiff failed to allege "*personal* benefit to [defendant] himself").  Indeed, Machete's interest in making a television program is satisfied regardless of whether a participant enters into business with Lemonis months after shooting ceases.

Likewise, Plaintiffs make no allegations regarding conscious misbehavior or recklessness, let alone the strong showing that is required.  Plaintiffs' entire theory requires Machete to have had advance knowledge that Lemonis would somehow harm their business – but at the time Machete encountered Plaintiffs, it was just starting to work on The Profit.  Indeed, the FAC alleges no *facts* – as opposed to conclusory assertions – demonstrating that Machete had knowledge of Lemonis's purportedly predatory business practices at the time that Goobery applied to be and appeared on the show.  The FAC's entire theory of fraud is based on nothing

but 20-20 hindsight. In other words, because Plaintiffs fail to identify the "why," their claim for fraudulent inducement must be dismissed.

*No proximate cause.* Plaintiffs' fraudulent inducement claim also fails because Plaintiffs do not allege the necessary causal connection between their alleged damages, which they supposedly recognized nearly six years after they appeared on The Profit, and Machete's unspecified misrepresentations. "To establish the required causation, the plaintiff must show that the loss was a 'direct result of the defendant's wrongful actions and [that it was] independent of other causes.'" *Bennett v. U.S. Tr. Co. of New York*, 770 F.2d 308, 316 (2d Cir. 1985) (affirming dismissal where plaintiffs failed to establish causation). "[B]ut-for allegations are insufficient to state a cause of action." *Id.* Here, Plaintiffs' conclusory allegations of causation defy logic. FAC ¶ 142. Under Plaintiffs' theory, Machete would be responsible for causing Plaintiffs' damages despite a multitude of intervening acts between Machete's alleged misconduct casting Plaintiffs to be on the show, and the losses Plaintiffs allegedly suffered years later.

These intervening acts by Plaintiffs and Lemonis, which are not alleged to involve Machete at all, include: negotiating and entering into the Stock Purchase Agreement and related dealings seven months after filming the episode and one month *after* the episode aired (FAC ¶¶ 6, 52. 69); deciding to expand and invest in additional businesses together by forming ML Fashion, LLC *two years after* Machete cast Plaintiffs (*id.* at ¶¶ 89-92); executing a credit agreement and a security agreement between ML Fashion and Gooberry (*id.* at ¶¶ 93-95); issuing a promissory note (*id.* at ¶ 98); purchasing and renovating another business (*id.* at ¶¶ 99-100); willingly working as executives in Lemonis's other businesses including ML, LLC and Camping World (*id.* at ¶ 107); and establishing MLG retail and transferring assets from Gooberry to that company (*id.* at ¶¶ 113-15). <u>*None of these actions, which include at least five transactions and*</u>

*formation of multiple other business entities, involves Machete in any way.*   Indeed, the FAC illustrates that Plaintiffs' alleged damages resulted from numerous intervening business decisions they made independently or with Lemonis – decisions that have nothing to do with Plaintiffs' initial casting on The Profit.   Plaintiffs' allegations against Machete rely on a convoluted causal chain that is simply too attenuated to maintain a claim of fraudulent inducement.   Therefore, because Plaintiffs fail to identify the "how," the claim for fraudulent inducement must be dismissed.[5]

**B.      Plaintiffs' RICO § 1962 Claim Must Be Dismissed.**

Plaintiffs' Ninth Cause of Action for a civil RICO violation also fails as a matter of law. To maintain such a claim, Plaintiffs must allege "'(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'"   *Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 503 (S.D.N.Y. 2012).   Further, Rule 9(b)'s heightened pleading requirements apply to Plaintiffs' RICO claim, which sounds in fraud.  *Curtis & Assocs.*, *P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010) ("[W]here, as here, a plaintiff alleges RICO predicate acts based upon fraudulent activities such as mail or wire fraud, a plaintiff must additionally satisfy the particularity requirements of . . . Rule 9(b)").   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).   In applying these pleading requirements, "courts should strive to flush out frivolous RICO allegations at an

---

[5] In addition to the reasons set forth in Section B, Plaintiffs' RICO claim, which is based on identical allegations as the fraudulent inducement claim, must be dismissed for the same reasons. *Bigsby*, 170 F. Supp. 3d at 575 ("RICO predicate acts sounding in fraud must also satisfy Federal Rule of Civil Procedure 9(b) which requires that the complaint 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'").

early stage of the litigation" given the stigmatizing effect of RICO claims.  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996).  Here, Plaintiffs fall short of these requirements and their claim must therefore be dismissed.

*No enterprise.*  Plaintiffs fail to adequately plead an enterprise, as required to maintain their RICO claim.  A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]"  18 U.S.C. § 1961(4).  An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette,* 452 U.S. 576, 583 (1981).  In pleading a course of conduct, a plaintiff must identify the specific role of each defendant in each scheme.  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).  Indeed, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and internal quotation marks omitted).  Here, Plaintiffs' conclusory allegations are utterly deficient in this regard.  FAC ¶¶ 195-201.  For example, Plaintiffs do not, and cannot, allege a common purpose between Lemonis and Machete with any degree of specificity: it is clear that Machete's purpose is to make a television program to fulfill its obligation to CNBC; it is not to enrich Lemonis or allow him to acquire businesses or deal with businesses over the course of years.

*No predicate acts.*  In order to establish a violation of 18 U.S.C. § 1962, a complaint must set forth "two predicate acts occurring within ten years of each other" to allege a pattern of racketeering activity.  *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496

(S.D.N.Y. 2007). Here, Plaintiffs fail to allege that *Machete* committed *any* predicate acts with specificity. *See* ¶¶ 202-206. As such, their RICO claim fails and must be dismissed.

*No proximate causation.* Further, Plaintiffs fail to adequately plead causation. Under 18 U.S.C. § 1964(c), Plaintiffs must establish that their asserted injuries came about "by reason of" the allegedly fraudulent conduct. As the Supreme Court explained in *Holmes v. Securities Investor Protection Corporation*, to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was a proximate cause as well." 503 U.S. 258, 268 (1992). This is known as RICO's proximate cause requirement. *Empire Merch., LLC*, 902 F.3d at 140. Proximate cause requires a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. "When a Court evaluates a RICO claim for proximate causation, the central question is whether the alleged violation led directly the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-61 (2006). "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). In this regard, courts "rarely 'go beyond the first step' when assessing causation under civil RICO.'" *Empire Merch.*, 902 F.3d at 141 (*quoting Hemi Grp., LLC*, 559 U.S. at 10). Here, Plaintiffs' ask the Court to take numerous steps, many beyond the first. These steps include numerous business deals two which Machete was not a party, formation of corporate entities that do not include Machete, and Plaintiffs' own decisions to become co-founders and executives in Lemonis's businesses over the course of years. *See supra* pp. 14-15.

*First Amendment bar.* Finally, the First Amendment bars this RICO claim as to Machete, as the claim arises from protected activity. First Amendment protection does not depend on the label given to a cause of action. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). Almost

two decades ago, Supreme Court Justices Souter and Kennedy warned about the danger of allowing "harassing RICO suits" that "could deter protected advocacy," and advised "courts applying RICO to bear in mind the First Amendment interests that could be at stake."  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264-65 (1994) (Souter, J., concurring).  Justice Souter noted that "[c]onduct alleged to amount to . . . one of the . . . somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal on that basis."  *Id.* at 264.  Here, Plaintiffs' allegations turn directly on Machete's production of a television show.  *E.g.*, FAC ¶ 199.d. ("Machete produced the show "The Profit" which the Lemonis Enterprise used to advertise and sell their fraudulent scheme.").  The production of a television show is expressive conduct protected by the First Amendment. *Cf. Leathers v. Medlock*, 499 U.S. 439, 444 (1991) ("Cable television provides to its subscribers news, information, and entertainment.  It is engaged in 'speech' under the First Amendment, and is, in much of its operation, part of the 'press.'").  Where, as here, the allegations cannot be disentangled from protected activity, dismissal is warranted.  *Cf. Hyung Jin Moon v. Hak Ja Han Moon*, 431 F. Supp. 3d 394, 412 (S.D.N.Y. 2019) (dismissing plaintiff's RICO claims based on protected activity under the First Amendment).

### C.   The Statute of Limitations Has Run On All of Plaintiffs' Claims Against Machete.

Plaintiffs' claims are also time-barred under the four-year statute of limitations that governs RICO suits and the three-year statute of limitations that governs claims for fraudulent inducement.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012) (applying four-year statute of limitations for RICO); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 980 F. Supp. 2d 417, 423 (S.D.N.Y. 2013) (applying CCP § 338's three-year statute of

limitations).[6]  Here, Plaintiffs allege no acts by Machete since 2014, let alone acts subject to

liability.  FAC ¶¶ 47 (spring 2014); 51 (spring 2014), 52 (June 2014); 136 (spring 2014, June

2014).  As such, the statute of limitations has run on Plaintiffs' claims as to Machete and they

must be dismissed.  *Koch*, 699 F.3d at 145 (affirming dismissal because RICO claim was time-

barred); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (finding

fraud claim was barred by the three-year statute of limitations).[7]  Given the length of time

Plaintiffs have been affiliated with the Lemonis Defendants and the degree to which they

themselves allege their business and apparent employment are bound up with them, any

argument that they only recently discovered purportedly predatory business practices is

untenable.

###     D.      Plaintiffs' Remaining Causes of Action Must Be Dismissed.

Finally, the remaining claims also fail because they are remedies, and because Machete

has no ongoing business relationship with Plaintiffs.  FAC ¶¶ 226-247.  Indeed, Machete never

had any business relationship with Plaintiffs.  Instead, Machete is merely the production

company that makes a show on which Plaintiffs appeared over six years ago.  As such, the

remaining causes of action, for Appointment of Temporary Receiver, Permanent Injunction

Restraining Defendants from Continuing to Maintain Control over the Company's Finances and

---

[6] Even if New York law did apply, Plaintiffs' allegations regarding Machete occurred in June 2014.  FAC ¶¶ 51-52.  Thus, even New York's six-year statute of limitations has run.  *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 364 (N.D.N.Y. 2013), *aff'd*, 561 F. App'x 48 (2d Cir. 2014) (dismissing fraud claim as barred by the statute of limitations; "General assertions of ignorance and due diligence without more specific explanation . . . will not satisfy the [ ] pleading requirements.").

[7] In their October 15, 2020 letter to the Court, Plaintiffs argue that the statute of limitations runs from the discovery of a defendant's wrongs.  But the delayed discovery doctrine does not apply where, as here, Plaintiffs were aware of all of Machete's alleged conduct in 2014 and do not allege any conduct *by Machete* in over six years.  *Koch*, 699 F.3d at 148-150 ("RICO claim accrues upon the discovery of the injury alone."); *Clemens*, 534 F.3d at 1024 ("A plaintiff must affirmatively excuse his failure to discover the fraud within three years by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.").

Assets, and Dissolution, are nonsensical as applied to Machete.  For these reasons, Machete respectfully moves to dismiss these untenable causes of action.

> **E.**      **Plaintiffs' Conclusory Allegations of Agency Are Insufficient.**

To establish an agency relationship, a complaint must plead "facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent.  In addition, the principal must maintain control over key aspects of the undertaking." *Grupo Verzatec S.A. de C.V. v. RFE Inv. Partners*, No. 17-CV-9887 (ALC), 2019 WL 1437617, at *7 (S.D.N.Y. Mar. 29, 2019).  Plaintiffs' two substantive claims are both based on a thinly plead theory that Machete is an agent of Lemonis, ML Retail, LLC and ML, LLC.  Indeed, Plaintiffs' allegations regarding the so-called agency relationship are entirely conclusory.  *See* FAC ¶¶ 22 ("Machete Corporation is the agent for [the Lemonis Entities]."); ¶ 48 ("Machete is the agent of [the Lemonis Entities].  Machete acted on the Lemonis Entities [sic] behalf , and with their authority").  These conclusory allegations regarding agency, which are unsupported by any facts, are insufficient as a matter of law.  *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 215 (S.D.N.Y. 2014) ("a simple conclusory allegation to the effect that 'defendant A acted as defendant B's agent,' without more, would not plausibly state an agency relationship"); *Pallamary v. Elite Show Servs., Inc.*, No. 17CV2010-WQH-BGS, 2018 WL 3064933, at *14 (S.D. Cal. June 19, 2018) (granting motion to dismiss because "conclusory statement is insufficient to establish an agency theory"); *Prestige Brands Inc. v. Guardian Drug Co.*, 951 F. Supp. 2d 441, 448 (S.D.N.Y. 2013) (granting motion to dismiss because allegations were "insufficient to establish an agency relationship").  Thus, to the extent Plaintiffs' claims are based on a theory of agency, they fail and must be dismissed.

4829-6517-0383v.2 0112823-000003

III.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER TO THE
        CENTRAL DISTRICT OF CALIFORNIA, PURSUANT TO THE PARTIES'
        FORUM-SELECTION CLAUSE.

In the event this Court does not dismiss the claim against Machete pursuant to the mandatory mediation clause or Rule 12(b)(6), the claims against Machete must be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a).  *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 52 (2013) (holding that a motion to enforce a forum-selection clause and transfer a case is treated as a motion under 28 U.S.C. § 1404(a)).

Where, as here, there is a valid forum-selection clause, courts need not consider the traditional Section 1404(a) factors.  *Atl. Marine Constr. Co.*, 571 U.S. at 62-63.  Instead, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases" since it "protects [the parties'] legitimate expectations and furthers vital interests of the justice system."  *Id.* at 63.  "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable."  *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014).  If the clause is enforceable, "the plaintiff's choice of forum merits no weight" and the plaintiff "bear[s] the burden of showing why the court should not transfer the case to the forum to which the parties agreed."  *Atl. Marine Constr. Co.*, 571 U.S. at 63-64*; see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (party seeking to avoid a forum-selection clause bears a "heavy burden of proof")*.  Applying these principles here, if the Court does not dismiss the claims against Machete for failure to mediate or state a claim, it must enforce the Parties' forum-selection clause and transfer this case to the Central District of California.

First, the forum clauses clearly were communicated to Plaintiffs.  *See Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 703 (S.D.N.Y. 2015) (granting motion to dismiss because claims were subject to forum-selection clause).  In *Giordano*, the court found that the forum-selection clause

was communicated to plaintiffs where the plaintiffs signed the agreements and the forum-selection clauses contained "operative language in boldface, underlined type". *Id.* Likewise, here, Plaintiffs signed the Release Agreements, initialed each page including the pages with the forum-selection provisions, and the provisions were bolded and capitalized. *See* Gooberry Release Agreement at ¶¶ 24, 30; Goureau Release Agreement at ¶¶ 17, 20(B); Menkin Release Agreement at ¶¶ 17, 20(B). Thus, the first prong of enforceability is clearly met.

Second, the forum clauses are mandatory. A clause is "mandatory" where parties are "required to bring any disputed to the designated forum" and is "permissive" where the parties are "simply *permitted* to do so." *Martinez*, 740 F.3d at 217. Here, the language is mandatory. *See* Gooberry Agreement at ¶ 30 (disputes that fail to resolve in mediation "**shall** be resolved by binding arbitration conducted in the County of Los Angeles") (emphasis added). *Cf. Choi v. Samsung Heavy Indus. Co.*, 129 F. App'x 394, 395 (9th Cir. 2004) (finding forum selection clause which contained the word "shall" was mandatory); *Arial Techs., LLC v. Aerophile S.A.*, No. 14 CV 4435, 2015 WL 1501115, at *4 (S.D.N.Y. Mar. 31, 2015) (same). Likewise, "'[a] forum clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum.'" *Giordano*, 134 F. Supp. 3d at 703 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007)). Here, the provisions explicitly confer "exclusive personal jurisdiction and venue of any state or federal court located in the County of Los Angeles, California". *See* Gooberry Agreement at ¶ 24. As such, based on both the plain language of the Release Agreements and the exclusive jurisdiction provision, the forum clauses are mandatory and the second prong is met.

Third, the forum clauses' "broad, inclusive language" unquestionably covers the claims and parties involved in the dispute. *Giordano*, 134 F. Supp. 3d at 703 (quoting *Phillips v. Audio*

*Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007)).  Specifically, the forum clauses apply to "any controversy or claim . . . including the scope or applicability of this Agreement".  Gooberry Release Agreement at ¶¶ 29, 30; Goureau Release Agreement at ¶ 29(A), (B); Menkin Release Agreement at ¶ 29(A).   *See also* Gooberry Release Agreement at ¶ 19 ("This Agreement is intended to operate and be construed as broadly as possible under applicable law.").  Thus, the third prong is met.

Finally, no "extraordinary circumstances" exist that warrant denying the motion to transfer.  *Atl. Marine Constr. Co.*, 571 U.S. at 62 (reversing the judgment of the Fifth Circuit denying defendant's motion to transfer).  Thus, if this Court does not dismiss Plaintiffs' claims against Machete, it should transfer those claims to the Central District of California.

## CONCLUSION

For the foregoing reasons, Machete respectfully submits that the Court should dismiss the First Amended Complaint.  In the alternative, Machete respectfully submits that the Court should transfer the claims against Machete to the Central District of California.

4829-6517-0383v.2 0112823-000003

Dated: Los Angeles, CA
October 30, 2020

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jonathan L. Segal*
    Jonathan L. Segal

Jonathan L. Segal
Rachel R. Goldberg
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:  (213) 633-8667
E-mail:  jonathansegal@dwt.com
E-mail:  rachelgoldberg@dwt.com

1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
E-mail: samuelbayard@dwt.com

*Attorneys for Machete Corporation d/b/a
Machete Productions*

4829-6517-0383v.2 0112823-000003