# Exhibit A

## APPEARANCE RELEASE FORM, ARBITRATION PROVISION AND VOLUNTARY PARTICIPATION AGREEMENT

### THIS IS A LEGAL DOCUMENT AFFECTING YOUR RIGHTS AND RESPONSIBILITIES PLEASE READ IT CAREFULLY BEFORE SIGNING

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, including the potential opportunity to appear as a participant in a television series, I hereby enter into this Appearance Release Form, Arbitration Provision and Voluntary Participation Agreement (the "Agreement") with Machete Corporation ("Producer"), in connection with the television series/entertainment production currently titled "The Profit" (the "Program"), which is tentatively scheduled for initial exhibition on one or more television networks or cable platforms of NBCUniversal Media, LLC ("Network"). In connection therewith, I hereby represent, warrant and agree as follows:

1.      (a)      Producer would like for me to voluntarily participate in the production of the Program by engaging in some or all of the following activities and/or possibly others: all activities associated with my participation in the Program, including, without limitation performing certain duties as associated with my employment and/or the services I provide (the "Activity"). In connection with my participation in the Activity, including, without limitation, any rehearsals for the Activity, I hereby grant to Producer the right to take motion and still pictures of me and record my voice and any sounds made by me, and to obtain other information about me, including but not limited to my name, likeness, photograph, voice, dialogue, sounds, biographical information, personal characteristics and other personal identification (collectively, the "Footage and Materials"), and to use the Footage and Materials in and in connection with the development, production, distribution and exploitation of the Program and any other production, and in the advertisements, merchandising, ancillary exploitation, publicity, and promotions for the Program, any other production and for any entity that may sponsor, advertise in or exhibit in any manner the Program, the Footage and Materials, or any other production (the "Advertisements"). The Footage and Materials, the Program and the Advertisements may be exploited throughout the universe at any time, in perpetuity, in any and all media, now known and hereafter devised, without any compensation to me whatsoever. The rights granted herein shall also include the right to edit, delete, dub and fictionalize the Footage and Materials, the Program, and the Advertisements as Producer sees fit in Producer's sole discretion.

(b)      The Footage and Materials shall also include any and all material that I may create, write, provide or contribute to in connection with the Program, at any time, including, without limitation, personal journals, photographs, webisodes, vlogs, blogs, video diaries, e-mails, text/picture messages, and promotional/advertising spots for the Program, tradeout and/or product integration partners, the exhibitor of the Program, its advertisers and sponsors, and any of their respective products and services. As between Producer and me, Producer shall be the sole and exclusive owner of all rights (including, without limitation, copyrights) in and to the Footage and Materials, the Program, and the Advertisements. Any and all such Footage and Materials shall be deemed "works made for hire" specially ordered as part of a motion picture or other audio-visual work, and I waive the exercise of any "moral rights," "*droit moral*," and any analogous rights, however denominated, in any jurisdiction of the world, which I have. To the extent I retain any interest in the Footage and Materials, I hereby grant and assign to Producer all rights of any nature in and to all such Footage and Materials. Furthermore, the rights granted to Producer include any so-called "rental and lending" or similar rights and any and all allied, ancillary and subsidiary rights (including, without limitation, remake, sequel, theatrical, digital, television, radio, publishing, merchandising, soundtrack album and other similar rights) for any purpose, by and in any and all media whether now known or hereafter devised, throughout the universe, in perpetuity, as part of the Program or otherwise. If I perform (live or otherwise), write, or include any music (other than music supplied to me by Producer) as part of my appearance in the Program, I represent and warrant that: (a) such music shall be deemed part of the Footage and Materials; (b) I have obtained all rights, including, without limitation, synchronization rights, necessary for Producer to exploit such music as part of the Program or otherwise in all media now known or hereafter devised in perpetuity throughout the universe; and (c) I grant Producer the right to record, reproduce and publicly perform any such music in and in connection with the Program or otherwise in all media now known or hereafter devised in perpetuity throughout the universe. Without in any way limiting the waivers and releases set forth below, I hereby waive any claims to royalties of any kind, whether accruing now or in the future, from Producer and any other party for the use of any such music, including, without limitation, any applicable copyright, public performance, mechanical and synchronization royalties.

Initialed: _____[1]

(c)    **Producer and Network shall have the right to record me using concealed cameras or other devices.** FILM, TAPE, AUDIO, VIDEOTAPE, AND OTHER RECORDINGS OF MY ACTIONS AND STATEMENTS, AND THE ACTIONS AND STATEMENTS OF THE OTHER PARTICIPANTS IN THE PROGRAM, MAY BE MADE USING CONCEALED OR HIDDEN CAMERAS, AND OTHER DEVICES LOCATED THROUGHOUT THE LOCATIONS (DEFINED BELOW), INCLUDING IN AREAS IN WHICH A PERSON UNDER OTHER CIRCUMSTANCES MIGHT HAVE A REASONABLE EXPECTATION OF PRIVACY (EXCEPT IN THE BEDROOMS, BATHROOMS AND DRESSING ROOMS OF ANY LOCATIONS, WHERE THERE WILL BE NO CONCEALED OR HIDDEN CAMERAS). **I consent to any such recordings made using concealed cameras or any other devices. I need not be given any further notice of the use of concealed or hidden cameras and other devices being used to record my actions and statements. In addition, I give my express, unconditional and irrevocable permission to Producer to fully exploit all materials made using any type of filming or recording equipment (including concealed cameras and other devices), irrespective of whether the making or exhibition of such materials might constitute a breach of any rights of privacy I otherwise might have in the absence of this express Agreement, and irrespective of whether such materials violate any rights I otherwise would hold or might hold in the future. (For the avoidance of doubt, all such materials shall constitute "Footage and Materials" as defined above.)**

(d)    Producer shall have the exclusive and irrevocable option to film or tape one or more additional episodes, including, without limitation, a reunion, "making of," or casting program or series (the "Special Episodes"), to be produced within three (3) years after the initial exhibition of the final episode of the Program (the "Special Episodes Option"). Producer shall exercise the Special Episodes Option in writing at least twelve (12) days prior to the commencement date of principal photography or taping of the Special Episodes. I shall participate in production of the Special Episodes for a period to be determined by Producer, at one or more Locations (as defined below), and to participate in the Special Episodes to the same extent and degree that I have agreed to participate in the Program. I grant Producer all rights in the Special Episodes as if the same had been included in the Footage and Materials, and all other provisions of this Agreement, as well as all other documents and agreements that I have executed or that I may execute in connection with the Program, shall apply equally to my participation in and in connection with any Special Episodes.

(e)    I acknowledge that the nature of the Program is such that, for dramatic effect, Producer may make certain misrepresentations to others and me prior to and during the course of my participation in the Program (including prior to my signing this Agreement), which misrepresentations may relate to any and all topics of every kind and nature whatsoever, and shall include any and all Released Claims (as defined hereinbelow).

(f)    I acknowledge that my participation in the Program may lead to critique of my abilities and possible termination, dismissal, demotion, or promotion from the business and/or my job, and I hereby assume all risks related thereto.

2.    Producer has no obligation to me whatsoever. Without in any way limiting the foregoing, I acknowledge and agree that Producer is under no obligation to select me to participate in the Activity or to include the Activity or the Footage and Materials in the Program or in any such other production, or in the Advertisements, or to broadcast, exhibit, transmit, distribute or otherwise exploit the Footage and Materials, the Program or the Advertisements in any manner or media.

3.    I will follow all rules made and directions given by Producer in connection with the Activity.

4.    I represent and warrant the following: (a) I will not be under the influence of any medication or drugs that might impair my physical or mental ability to safely engage in the Activity or that might impair my judgment while engaging in the Activity; (b) I am not currently, and during one (1) year from today do not intend to be, a candidate for any public office; (c) I will follow and obey all local, city, state and federal laws, including those governing my profession (e.g., requirement of a license), if any, and those governing the activities in which I will participate in connection with the Program; (d) I have all necessary licenses (if any) required to perform the activities in which I will participate in connection with the Program and I will provide Producer with a copy of any such license and any other proof that Producer may require upon Producer's request; and (e) my appearance in the Program is not a performance and is not employment and is not subject to any union or guild collective bargaining agreement, and does not entitle me to wages, salary, corporate benefits, unemployment or workers' compensation benefits, or other compensation under any such collective bargaining agreement or otherwise. Based on my understanding of the physical, emotional and/or mental requirements for participating in the Program, I represent that I am able to perform the essential functions of a participant in the Program, including without limitation, the Activity, with or without reasonable accommodation. To the extent that I determine during the Program that I

Initialed:  _____  2

am unable to perform the essential functions of a participant, I promise to inform Producer as soon as possible either that I cannot perform the essential functions or how I can perform the essential functions with or without reasonable accommodation. I understand that I am solely responsible for determining whether I am physically, emotionally, psychologically and mentally able to participate in the Program. I acknowledge and understand that, as with participating in other hazardous activities, my participation in the Program carries with it the potential for serious physical injury, extreme emotional distress, and mental or physical illness.

5.     I understand that it may be a federal offense, unless disclosed to Producer prior to the exhibition of the Program, if any, to do any of the following: (a) give or agree to give any member of the production staff and anyone associated in any manner with the Program or any representative of Producer any portion of my compensation (if any) or anything else of value to arrange my appearance in the Program or the Advertisements, or (b) accept or agree to accept anything of value to promote any product, service or venture on the air or to use any prepared material containing such a promotion. I represent and warrant that I gave nothing of value nor did I agree to give anything of value to anyone so I could be in the Program or the Advertisements. I know that Producer does not permit it and that it may be a federal offense not to tell Producer if I had. I shall notify Producer and any network on which the Program will air immediately if any person attempts or has attempted to induce me to do anything in violation of the foregoing or which is in any way dishonest.

6.     I understand that I will not be paid for participating in the Activity, for appearing in the Program, in the Advertisements, and in the Footage and Materials, for giving Producer the rights listed in this Agreement, or for Producer's exercise of any and all of the rights listed in this Agreement. I hereby waive any and all rights I may have to any compensation whatsoever in connection with the Program. I acknowledge and agree that a significant element of the consideration I am receiving under this Agreement is the opportunity for publicity that I may receive if Producer includes the Footage and Materials in the Program or in the Advertisements. I know Producer will incur significant costs and expenses in reliance upon this Agreement, so I will not attempt to cancel it or to revoke any of the rights granted to Producer herein and I agree that I shall not have the right to cancel or terminate this Agreement. I acknowledge that I am a volunteer and that I shall not be deemed to be an employee of Producer, nor shall I be entitled to the benefits provided by Producer to its employees. To the extent that I receive any consideration or payment of any kind, including but not limited to good and services, in connection with the Program, I shall be responsible for all taxes and other obligations that are or may become due.

7.     (a) I shall keep in strictest confidence and shall not disclose to any other participant or other third party at any time (i.e., prior to, during, or after the taping or exhibition of the Program) any information or materials of any kind, including without limitation, any information or materials concerning or relating to Producer or Network, the business of Producer or Network, any program produced by Producer or exhibited by Network, including, without limitation, any information concerning or relating to the Program, the Program participants, the location(s) of the Program, the events contained in the Program or the outcome of any event in the Program, that I read, hear or otherwise acquire or learn in connection with or as a result of my participation on the Program (collectively, the "Confidential Information"). I acknowledge and agree that the Confidential Information is confidential and the exclusive property of Producer or Network. At no time will I ever, directly or indirectly, divulge in any manner, or use or permit others to use, any of the Confidential Information. My obligations with respect to confidentiality as set forth in this paragraph shall continue in perpetuity, or until terminated by Network in writing. In no event shall I have the right to terminate my confidentiality obligations under this Agreement.

        (b) I acknowledge that any breach by me of any of the confidentiality provisions of this Agreement would cause Producer and Network irreparable injury and damage that cannot be reasonably or adequately compensated by damages in an action at law, and, therefore, I hereby expressly agree that Producer and Network shall be entitled to injunctive and other equitable relief (without posting any bond) to prevent or cure any breach or threatened breach of the confidentiality provisions of this Agreement by me. I also recognize that proof of damages suffered by Producer and Network in the event that I breach any of these confidentiality provisions will be costly, difficult, and inconvenient to ascertain. Accordingly, I agree to pay Producer and Network the sum of Fifty Thousand Dollars ($50,000) per breach plus disgorgement of any income that I may receive in connection with my breach as liquidated damages in the event that I breach any of the confidentiality provisions of this Agreement. I agree that Fifty Thousand Dollars ($50,000) plus disgorgement of any income that I may receive in connection with my breach is a reasonable estimate of the amount of damages that Producer and Network are each likely to suffer in the event that I breach any of these confidentiality provisions, considering all of the circumstances existing as of the date of this Agreement. Furthermore, I will defend, indemnify and hold harmless Producer, Network, their parent, subsidiary and affiliated companies, and each of their respective officers, directors, agents,

Initialed: _MX_    3

representatives and employees, from and against any and all claims, actions, damages, liabilities, losses, costs and expenses (including, without limitation, attorneys' fees) that in any way arise out of or result from my breach of any of the confidentiality provisions of this Agreement. I shall not mention or "plug" any product, service, venture or thing on the Program whatsoever, except insofar as I may be asked to describe or explain my business as part of the Program. Any references to my business shall be subject to the approval of Producer and Network, and Producer and Network shall not be obligated to include any such references in the Program.

(c) Without in any way limiting the foregoing, I further agree that without the prior approval of Network in each instance, I shall not discuss the Program or my participation in the Program with any third party, except that I may make incidental, non-derogatory mention that I participated in the Program (i.e., "I participated in the program 'The Profit.") only after the earlier of the exhibition of the episode(s) in which I appear or the public announcement by Network of my participation in the Program.

(d) I acknowledge that during certain events and activities in connection with the Program alcohol may be available for consumption. I agree that if I partake in the consumption of alcohol at any time during my participation in the Program, that I will do so only in moderation. Further, I represent and warrant that I will not drive a car after I have consumed alcohol until such time as my blood-alcohol level is considered by law to be safe and not unlawful. In addition, I agree that I assume any and all risk associated with my consumption of alcohol and being in the presence of others who may have consumed alcohol. I expressly agree and affirm that the waivers, releases and indemnities in this Agreement and any other agreement that I have executed or that I may execute in connection with the Program expressly apply to any act or occurrence of any nature that results from my consumption of alcohol during my participation in the Program. Further, I understand that participating in the Program may involve activities that are not recommended during pregnancy.

8. I agree not to make any commercial or any other use of the fact that I appeared in the Program or that Producer used the Footage and Materials in the Program. Neither I nor anyone acting on my behalf shall at any time use any of Producer's or Network's names, logos, trade names or trademarks (including, but not limited to, the title of the Program), or those of any of Producer's or Network's related companies, for any purpose or in any manner whatsoever.

9. I agree to participate in connection with the production of the Program and related materials as and to the extent required by Producer on such dates and at such locations as Producer shall designate in its sole discretion (the "Locations"), and which dates and locations Producer may change in its sole discretion. Without in any way limiting the foregoing, I shall participate in all advertising, publicity and other activities (including, but not limited to, the creation of blogs, vlogs, video diaries, webisodes, e-mails, text/picture messages, and promotional/advertising spots for the Program, Producer, Producer's tradeout and/or product integration partners, the exhibitor of the Program, its advertisers and sponsors, and any of their respective products and services) in and in connection with the Program as requested by Producer or Network.

10. To the maximum extent permitted by law, Producer and Network shall have the right to use all information obtained about me in connection with the Program or otherwise; provided, however, that Producer shall have no right to use any information regarding the confidential Settlement Agreement and Mutual General Release, dated as of July 1, 2013, by and among Olivier Goureau and Olivier Goureau, Inc., on one side, and Sacha Goureau, Nicolas Goureau, Noemi Goureau, Gooberry Corp. and Fopps, Inc., on the other side. Without in any way limiting the foregoing, I and others may reveal or relate, and other parties (including, without limitation, other participants, the Producer, the host of the Program (if any), and Network) may reveal or relate information about me of a personal, private, surprising, defamatory, disparaging, embarrassing or unfavorable nature, and that my actions and the actions of others participating in the Program may be embarrassing or of an otherwise unfavorable nature that may be factual or fictional. I further understand that my appearance, depiction, and portrayal in and in connection with the Program or otherwise, and my actions and the actions of others displayed in and in connection with the Program or otherwise, may be disparaging, defamatory, embarrassing or of an otherwise unfavorable nature, may expose me to public ridicule, humiliation or condemnation, and may portray me in a false light. I further understand that any information regarding me that Producer may disclose during the Program may be more or less favorable than similar information disclosed by Producer regarding other participants. I acknowledge and agree that Producer, Network, and any entity that sponsors, advertises in, exhibits or otherwise exploits the Footage and Materials, the Program or any other production, and any of their licensees, successors and assigns, shall have the right (but not the obligation): (a) to include any such information (with the exception of medical information obtained about me, which will not be included in the Program unless such medical information was revealed by me on-camera or another participant on-camera in connection with the Program) and any

Initialed: _NDG_ 4

such appearance, depiction, portrayal, actions and statements in the Program or in any other exhibition or exploitation of the Footage and Materials, and in any and all Advertisements, and (b) to exhibit, broadcast and otherwise exploit the Footage and Materials, the Program, and the Advertisements containing any such information (with the exception of medical information obtained about me, which will not be included in the Program unless such medical information was revealed by me on-camera or another participant on-camera in connection with the Program) and any such appearance, depiction, portrayal or actions. I understand and acknowledge that, while such conduct might otherwise constitute an actionable tort, I have freely and knowingly consented to such conduct. The waivers, releases and indemnities in this Agreement and any other agreement that I have executed or that I may execute in connection with the Program and any other production expressly apply to any such inclusion and exploitation. My participation in the Program may cause me to be exposed to conversations, banter, and behavior of other participants that may contain explicit references to sex, gender, race, sexual orientation, national origin, violence, and other topics that could be considered offensive. I freely and knowingly consent to being in an environment where such conversations, banter and behavior may take place. However, I will inform Producer immediately if I feel harassed by, threatened by, or uncomfortable with the behavior of any other individual connected with the production of the Program at any time, and I understand that I will not be penalized or retaliated against, in any way, for doing so.

10A.    (i) Without limiting Paragraph 9 in any way, in the event that Network requests that I participate in any advertising, promotion, or production (including, without limitation, as on-camera talent) in connection with any products, services, or entertainment productions other than the Program, in connection with the Program, or as otherwise required pursuant to Paragraph 9, or in connection with any productions or events other than the Program, in connection with the Program, or as otherwise required pursuant to Paragraph 9, in any and all media now known or hereafter       devised       in       the       following       fields: _____
_____ (collectively, the "Fields"), I hereby agree to participate in same during the time period which begins upon my execution of this Agreement and ends three (3) years after the initial exhibition of the final episode of the cycle of the Program in which I participate, to the extent that I am professionally available to do so based on my then-current full-time employment. In connection with same, Network agrees to pay me a fee of Five Hundred Dollars ($500) per day for each full (*i.e.*, eight [8] hours or more) day that I complete my participation (reduced pro rata for any day on which my participation lasts less than eight [8] hours). Notwithstanding the foregoing, I shall not receive any such fee in the event such participation is solely promotional for the Program or is otherwise required pursuant to Paragraph 9, as determined in the Network's sole and absolute discretion, and such compensation is only payable if such participation is required after the initial exhibition of the final episode of the cycle of the Program in which I participate and is not payable or applicable in relation to my participation in the Program pursuant to Paragraph 1(d), Paragraph 9 or Paragraph 11 herein.

(ii) In connection with Producer's distribution and exploitation rights of the Program outside of the United States, without limiting Paragraph 1 in any way and notwithstanding anything to the contrary in this Agreement, in the event that Producer requests that I participate in any advertising, promotion, and/or production (including, without limitation, as on-camera talent) in connection with any products, services, productions, or events in any and all media now known or hereafter devised in the Fields, I hereby agree to participate in same during the time period which begins upon my execution of this Agreement and ends three (3) years after the initial exhibition of the final episode of the Program in which I participate, to the extent that I am professionally available to do so based on my then current full-time employment. In connection with same, Producer agrees to pay me a fee of Five Hundred U.S. Dollars (US $500) per day for each full day (i.e. eight (8) hours or more) that I complete my participation (reduced pro rata for any day on which my participation lasts less than eight (8) hours). Notwithstanding the foregoing, I shall not receive any such fee in the event that such participation is solely promotional for the Program or is otherwise required pursuant to Paragraph 9 as determined in Producer's sole and absolute discretion, and such compensation is only payable if such participation is not payable or applicable in relation to my participation in the Program pursuant to Paragraph 1(d), Paragraph 9, or Paragraph 11 herein.

(iii) I agree that, in the event that I participate in the Program, then for the period commencing upon my execution of this Agreement and continuing through and including the date which is three (3) years after the initial exhibition of the last episode of the cycle of the Program in which I appear, the activities that the Network or Producer may request that I participate in pursuant to paragraphs 10A(i) and 10A(ii) above shall include, without limitation, participating in and advertising, promotion (whether as an endorser of a product or otherwise),

Initialed:  *ADG*            5

production, or otherwise (including, without limitation, as talent or otherwise) in and in connection with any entertainment productions, entertainment-related products, or entertainment-related services (other than the Program) in the Fields, in any and all media now known or hereafter devised (which may include, without limitation: (a) books; (b) entertainment programs (*e.g.* television, Internet, infomercials, subscription based clubs, home video, mobile, etc.) other than the Program and programming related to the Program; and (c) Program-related ancillary products). I further agree that during the period commencing upon my execution of this Agreement and continuing through and including the date which is three (3) years after the initial exhibition of the last episode of the cycle of the Program in which I appear, I shall not have the right, without the prior written approval of Producer and the Network, to participate in the manufacturing, distribution, promotion (whether as an endorser of a product or otherwise), production, ownership of or in any way be associated with (including, without limitation, as talent or otherwise) any products, services, entertainment productions, seminars, conferences, productions, or other events related to any on-camera talent for the Program or any entity associated with any on-camera talent for the Program.

(iv) In the event that Producer or the Network requires my participation pursuant to paragraphs 10A(i) or 10A(ii) above after the completion of my participation in the production of the Program at a Location which is more than one hundred (100) miles from any Location at which I maintain a residence, the entity requesting my participation (i.e. Producer or the Network) shall furnish me with roundtrip coach class air transportation, one (1) hotel room (room and tax only), and a per diem to be determined by the entity requesting my participation in its sole discretion. If any such participation is required at a Location less than one hundred (100) miles from any Location at which I maintain a residence, then in lieu of coach class air transportation, the entity requesting my participation shall furnish ground transportation to and from the participation Location, and shall furnish a hotel room and per diem as described above only if the entity requesting my participation requires me to remain overnight at the participation Location. The transportation, accommodations and per diem provided for in this Paragraph shall be provided only if the entity requesting my participation notifies me in writing prior to the commencement of any travel that such travel will be furnished for the applicable activity and is only applicable if such participation is required after the initial exhibition of the final episode of the cycle of the Program in which I participate, and is not applicable in relation to my participation in the Program pursuant to Paragraph 1(d), Paragraph 9 or Paragraph 11 herein.

11.     If I appear in the Program, Network shall have the right and option to require me to participate in any future unscripted, "reality-based" programs in which I appear as myself (the "Reality Hold"), according to the following terms and conditions:

(a) From the date of this Agreement through twelve (12) months after the initial exhibition of the final episode of the cycle of the Program in which I appear (the "Reality Hold Period"), I shall be exclusively available to Network to participate, and shall participate as reasonably required, in any unscripted, "reality-based" programs in which I appear as myself, as designated by Network and pursuant to the terms of this Agreement.

(b) During the Reality Hold Period I shall not participate in any unscripted, "reality-based" program in which I appear as myself without Network's written consent.

(c) These provisions do not apply to any appearance by me as a Performer. As used herein, the term "Performer" shall be defined to include only those services rendered by performers for which they receive compensation under any applicable guild agreements.

11A.    **To the maximum extent permitted by law, I shall sign any additional authorizations that Producer or the Network may require. Additionally, I consent to Producer's use of force to restrain me, if my behavior and actions create circumstances that, in the sole judgment of Producer, pose a threat of injury to myself or to anyone else; provided that I understand that Producer has no duty or obligation to restrain me or any other person. I knowingly and voluntarily accept all risks to my person or property arising from my interaction with other participants in the Program (including, without limitation, from my choice to engage in any relationship with any other person or persons) before, during or after my participation in the Program.**

12.     I ACKNOWLEDGE THAT NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER HAVE BEEN MADE TO ME BY PRODUCER REGARDING MY QUALIFICATIONS OR ABILITY TO PARTICIPATE IN THE ACTIVITY, THE PROGRAM OR REGARDING ANY OF THE EQUIPMENT OR SERVICES TO BE USED BY ME OR OTHER PARTICIPANTS IN CONNECTION WITH THE ACTIVITY OR

Initialed:  _____  6

THE PROGRAM, AND I ACKNOWLEDGE AND AGREE THAT I WILL USE THE EQUIPMENT AND SERVICES ENTIRELY AT MY OWN RISK. WITHOUT LIMITING THE FOREGOING, I ACKNOWLEDGE THAT THE PROGRAM MAY INVOLVE ACTIVITIES THAT ARE OR MAY BECOME HAZARDOUS AND DANGEROUS AND THAT MAY EXPOSE ME TO RISKS OF PHYSICAL, EMOTIONAL, AND MENTAL STRESS OR INJURY WHETHER OR NOT I PARTICIPATE IN THE ACTIVITIES. SUCH ACTIVITIES MAY INCLUDE, BUT ARE NOT LIMITED TO, USING DANGEROUS EQUIPMENT OR INSTRUMENTS RELATED TO THE ACTIVITY, EXPOSURE TO HARMFUL ELEMENTS, AGENTS OR ANIMALS INVOLVED IN THE ACTIVITY, AND DEALING WITH DISGRUNTLED CLIENTS WHO ARE PARTICIPATING IN THE ACTIVITY. I UNDERSTAND THE RISKS OF PARTICIPATING IN SUCH ACTIVITIES, AND WHILE CONDUCT THAT GIVES RISE TO SUCH SITUATIONS MIGHT OTHERWISE CONSTITUTE AN ACTIONABLE TORT OR GIVE RISE TO OTHER CLAIMS OR CAUSES OF ACTION, I HAVE FREELY CONSENTED TO SUCH CONDUCT AND HAVE ASSUMED THE RISKS THEREOF. THE WAIVERS, RELEASES AND INDEMNITIES CONTAINED IN THIS AGREEMENT AND ANY OTHER AGREEMENT THAT I HAVE EXECUTED OR MAY EXECUTE IN THE FUTURE RELATED TO THE PROGRAM EXPRESSLY APPLY TO MY PARTICIPATION IN OR PRESENCE AROUND ANY SUCH ACTIVITIES AND IN ANY SUCH LOCATIONS. PRODUCER, DIRECTLY OR THROUGH OTHERS, MAY PROVIDE VARIOUS SERVICES AND EQUIPMENT IN CONNECTION WITH THE PROGRAM. NO ONE HAS MADE ANY WARRANTIES WHATSOEVER WITH RESPECT TO ANY SUCH EQUIPMENT AND SERVICES, INCLUDING, BUT NOT LIMITED TO, INSTRUMENTS OR TOOLS USED IN CONNECTION WITH THE ACTIVITY AND THERE ARE NO WARRANTIES OF ANY KIND FROM ANYONE REGARDING FITNESS OR SUITABILITY FOR USE OF ANY SUCH EQUIPMENT AND SERVICES FOR ANY PURPOSE IN CONNECTION WITH THE PROGRAM. I WAIVE ANY RIGHT I OTHERWISE MIGHT HAVE TO WARNINGS OR INSTRUCTIONS REGARDING ANY ASPECT OF THE PROGRAM OR ANY EQUIPMENT OR SERVICES UTILIZED IN CONNECTION WITH THE PROGRAM.

13.     **RELEASE, AGREEMENT NOT TO SUE AND INDEMNITY.** To the maximum extent permitted by law, I agree that I will never sue Producer, NBCUniversal Media, LLC, Network or anyone because I do not like the manner in which Producer or its licensees or assignees took or used the Footage and Materials or used the Footage and Materials in the Program or in any other program or for any cause of action based on any of the Released Claims (as defined below). In addition, I understand that my participation in the Activity, and any travel by me in connection with the Activity, is at my own risk. To the maximum extent permitted by law, I, for myself and on behalf of my heirs, executors, agents, successors and assigns, hereby release, hold harmless, and forever discharge Producer, NBCUniversal Media, LLC, Network, and any station or network that exhibits the Program, and each of their respective parent, subsidiary and affiliated entities, and each of their respective officers, directors, agents, representatives, employees and contractors (the "Released Parties"), from any and all claims, actions, damages, losses, liabilities, costs, expenses (including, without limitation, attorneys' fees), injuries or causes of action whatsoever (collectively "Claims") that in any way are caused by, arise out of or result from this Agreement, my appearance and participation in the Activity, the Footage and Materials, the Program, or in the Advertisements, including without limitation, my transfer, suspension, dismissal or termination from the business and/or my job (if at all) or my demotion or failure to be promoted at the business and/or my job (if at all); my promotion at the business and/or my job (if at all); any loss or decrease of commissions, sales, wages, salaries, bookings, customers, or appointments; the creation of the Footage and Materials; my presence at or travel to any Location in connection with my participation in the Activity; or the broadcast or other exhibition of the Program, the Footage and Materials, or the Advertisements, on any legal theory whatsoever (including, but not limited to, personal injury, intentional infliction of emotional distress, negligent infliction of emotional distress, rights of privacy and publicity, defamation, false light, or loss of income), regardless of whether caused by the negligence or willful misconduct of the Released Parties (collectively, the "Released Claims"). Additionally, Producer is not responsible for any items that are discarded, damaged, lost, or stolen (including, but not limited to, personal items located in the business) during the time Producer is using the business and any potential Claims with respect thereto shall be included within the Released Claims. I will defend, indemnify and hold the Released Parties harmless from any and all such claims, actions, damages, losses, liabilities, costs, expenses, injuries or causes of action, as well as all those that in any way are caused by, arise out of or result from any breach or alleged breach by me of any of the representations or warranties made by me in this Agreement.

14.     TO THE MAXIMUM EXTENT PERMITTED BY LAW, I WAIVE ANY AND ALL RIGHTS I MAY HAVE UNDER SECTION 1542 OF THE CIVIL CODE OF CALIFORNIA, AND EVERY LIKE PROVISION IN ANY FOREIGN JURISDICTION. SECTION 1542 PROVIDES AS FOLLOWS:

Initialed: _____ [7]

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

15.     I authorize Producer and Network to, in accordance with applicable law, investigate, access and collect information about me and any of the statements made by me in this Agreement or otherwise in connection with my application (if any) to participate in the Program. I authorize Producer and Network to secure information from my current and former employers, associates, family members, educational institutions, government agencies, and any references I have provided or that are developed by or for Producer or Network, and I authorize such parties to provide information concerning me. I unconditionally and irrevocably release and forever discharge all such parties and persons from any and all claims, actions, damages, liabilities and losses arising out of or in connection with such investigations. I specifically authorize investigation of my employment records, and government records (including, but not limited to, my motor vehicle records, criminal records, military records and consumer reports). Any information obtained by Producer or Network may be used for (a) evaluation of my application to participate in the Program, (b) selecting participants in the Program, and (c) any other purposes as designated by Producer or Network in their sole discretion to the maximum extent permitted by law. Without in any way limiting the foregoing, any such information may be used, broadcast, exhibited, distributed, advertised, publicized, promoted or otherwise exploited as part of the Program or otherwise to the maximum extent permitted by law. Furthermore, I understand and agree that any such information may be disclosed to other participants in the Program and may be disclosed on-camera, with the exception of medical information obtained during this process, which will not be disclosed on-camera as a part of the Program unless revealed by me on-camera or another participant on-camera in connection with the Program.

16.     In case of an emergency, I authorize Producer to arrange for or otherwise provide medical assistance to me as Producer may determine to be necessary. I also authorize any licensed physician, health care personnel or medical facility to provide any medical or surgical care (including the use of anesthetics) and to hospitalize me, as such licensed physician, health care personnel or medical facility determines necessary or advisable, pending receipt of a specific consent from me. I also authorize any reasonably necessary care by paramedics, emergency medical technicians, or other first responders. In connection with the foregoing, I shall also execute a copy of the Emergency Medical Release attached hereto as Exhibit A, which is incorporated herein as if set forth here in full, and therefore forms a part of this Agreement. Any injury I may suffer and any treatment I may receive is part of the Footage and Materials, and may be filmed and broadcast, exhibited, and otherwise exploited by Producer and Network as with all other Footage and Materials.

17.     This Agreement shall be interpreted under the internal, substantive laws of the State of California without regard to the conflicts of law provisions thereof. To the extent that the arbitration provisions of this Agreement are not enforced or court proceedings are otherwise required, commenced or maintained, the parties submit to the *in personam* jurisdiction of the Los Angeles County Superior Courts and the United States District Court for the Central District of California, and waive any objections that they may have as to jurisdiction or venue in any such courts.

18.     As used herein, "Producer" shall include Producer, its licensees, successors and assigns, and each of their respective parents, subsidiaries, and affiliated entities, and each of their respective officers, directors, shareholders, employees, contractors, agents, representatives, successors, licensees and assigns. Network is an express intended third party beneficiary of this Agreement, with full standing to enforce each, every, any and all of its provisions as if it was an express party thereto. I agree that Producer may license, assign, and otherwise transfer this Agreement and all rights granted by me to Producer under this Agreement to any person or entity.

19.     This Agreement (including Exhibits A and B attached hereto and incorporated by reference herein) is the complete and binding agreement between Producer and me, and it supersedes all prior understandings and communications, both oral and written, with respect to its subject matter. The illegality, invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any of the remainder of this Agreement, which shall be enforced to the maximum extent permitted by law. This Agreement cannot be terminated, rescinded or amended, except by a written agreement signed by both Producer and me. Any signed copy of this Agreement transmitted via e-mail or facsimile shall be deemed an original.

20.     MEDIATION, ARBITRATION & LIMITATION OF REMEDIES.

Initialed: _____  8

(A) MEDIATION. THE PARTIES AGREE THAT IF ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE BREACH OF ANY TERM HEREOF, OR MY PARTICIPATION IN OR IN CONNECTION WITH THE PROGRAM CANNOT BE SETTLED THROUGH DIRECT DISCUSSIONS, THE PARTIES AGREE TO ENDEAVOR FIRST TO SETTLE THE CONTROVERSY OR CLAIM BY MEDIATION CONDUCTED IN THE COUNTY OF LOS ANGELES AND ADMINISTERED BY JAMS OR ITS SUCCESSOR ("JAMS") UNDER ITS APPLICABLE RULES, BEFORE COMMENCING ANY PROCEEDINGS UNDER THE PROCEDURES SET FORTH IN PARAGRAPH 20(B) BELOW. NOTWITHSTANDING THE FOREGOING, IF ANY PARTY FILES SUIT IN COURT, THE OTHER PARTY OR PARTIES NEED NOT DEMAND MEDIATION TO ENFORCE THE RIGHT TO COMPEL ARBITRATION.

(B) ARBITRATION. THE PARTIES AGREE THAT IF ANY CONTROVERSY OR CLAIM IS NOT OTHERWISE RESOLVED THROUGH DIRECT DISCUSSIONS OR MEDIATION, AS SET FORTH ABOVE, THEN THE PARTIES AGREE THAT THE CONTROVERSY OR CLAIM, INCLUDING THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE RESOLVED BY BINDING ARBITRATION CONDUCTED IN THE COUNTY OF LOS ANGELES, AND ADMINISTERED BY JAMS IN ACCORDANCE WITH ITS STREAMLINED ARBITRATION RULES AND PROCEDURES OR SUBSEQUENT VERSIONS THEREOF, INCLUDING THE OPTIONAL APPEAL PROCEDURE (THE "JAMS RULES", INCLUDING, WITHOUT LIMITATION, THE RULES PROVIDING FOR LIMITED DISCOVERY AND OTHER EXCHANGE OF INFORMATION). THE JAMS RULES ARE AVAILABLE AT WWW.JAMSADR.COM AND WILL BE PROVIDED TO ME BY PRODUCER UPON MY REQUEST. THE JAMS RULES FOR SELECTION OF AN ARBITRATOR SHALL BE FOLLOWED, EXCEPT THAT THE ARBITRATOR SHALL BE AN ARBITRATOR EXPERIENCED IN THE ENTERTAINMENT INDUSTRY AND LICENSED TO PRACTICE LAW IN CALIFORNIA OR A RETIRED JUDGE. PRODUCER SHALL PAY ALL TYPES OF COSTS THAT ARE UNIQUE TO ARBITRATION. ANY APPELLATE PANEL SHALL CONSIST OF THREE NEUTRAL MEMBERS, SUBJECT TO THE FOREGOING REQUIREMENTS. UPON CONCLUSION OF ANY ARBITRATION PROCEEDINGS HEREUNDER, THE ARBITRATOR SHALL RENDER FINDINGS OF FACT AND CONCLUSIONS OF LAW AND A WRITTEN OPINION SETTING FORTH THE BASIS AND REASONS FOR ANY DECISION HE OR SHE HAS REACHED AND SHALL DELIVER SUCH DOCUMENTS TO EACH PARTY TO THE AGREEMENT ALONG WITH A SIGNED COPY OF THE AWARD IN ACCORDANCE WITH SECTION 1283.6 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.

(C) CONFIDENTIALITY OF PROCEEDINGS. THE PARTIES AGREE THAT ANY MEDIATION OR ARBITRATION PROCEEDINGS, TESTIMONY, OR DISCOVERY, ALONG WITH ANY DOCUMENTS FILED OR OTHERWISE SUBMITTED IN THE COURSE OF ANY SUCH PROCEEDINGS (AND INCLUDING THE FACT THAT THE MEDIATION OR ARBITRATION IS EVEN BEING CONDUCTED) SHALL BE CONFIDENTIAL AND SHALL NOT BE DISCLOSED TO ANY THIRD PARTY EXCEPT TO THE MEDIATORS OR ARBITRATORS AND THEIR STAFF, THE PARTIES' ATTORNEYS AND THEIR STAFF AND ANY EXPERTS RETAINED BY THE PARTIES, OR AS REQUIRED BY LAW. NOTWITHSTANDING THE FOREGOING, A PARTY MAY DISCLOSE LIMITED INFORMATION IF REQUIRED IN ANY JUDICIAL PROCEEDING BROUGHT TO ENFORCE THESE ARBITRATION PROVISIONS OR ANY AWARD RENDERED HEREUNDER.

(D) LIMITATION OF REMEDIES. THE PARTIES AGREE THAT REMEDIES FOR ANY BREACH OF THIS AGREEMENT, OR ANY OTHER CLAIMS CONCERNING OR RELATING TO THE PROGRAM, SHALL BE LIMITED TO ACTUAL DAMAGES, AND IN NO EVENT SHALL ANY PARTY BE ENTITLED TO RECOVER PUNITIVE OR EXEMPLARY DAMAGES OR TO RESCIND THIS AGREEMENT OR SEEK OR OBTAIN INJUNCTIVE OR ANY OTHER EQUITABLE RELIEF, EXCEPT THAT PRODUCER AND THE NETWORK SHALL HAVE THE RIGHT TO DO SO AS PROVIDED IN PARAGRAPHS 7 AND 20(E). NOTWITHSTANDING THE FOREGOING, IF AND TO THE EXTENT REQUIRED BY LAW, THE PARTIES AGREE THAT WITH RESPECT TO THE ARBITRATION OF ANY CLAIM NOT OTHERWISE WAIVED HEREIN AND BROUGHT UNDER ANY FEDERAL OR STATE STATUTE THAT MANDATES SPECIFIC TYPES OF UNWAIVABLE REMEDIES, THE ARBITRATOR MAY AWARD ANY REMEDY MANDATED BY SUCH STATUTE.

(E) PROTECTION OF CONFIDENTIALITY AND INTELLECTUAL PROPERTY. NOTWITHSTANDING PARAGRAPH 20(D) AND NOTWITHSTANDING THE REQUIREMENTS SET FORTH IN PARAGRAPHS 20(A) AND 20(B) ABOVE, I RECOGNIZE AND ACKNOWLEDGE THAT GIVEN THE UNIQUE NATURE OF THE PROGRAM AND THE COMMERCIAL REALITIES OF THE ENTERTAINMENT INDUSTRY, WHICH RELY UPON CONFIDENTIALITY AND INTELLECTUAL PROPERTY RIGHTS, ANY ACTUAL OR ANTICIPATED BREACH OF MY PUBLICITY OR CONFIDENTIALITY OBLIGATIONS PURSUANT TO THIS AGREEMENT, OR ANY INFRINGEMENT BY ME OF PRODUCER'S OR THE NETWORK'S INTELLECTUAL PROPERTY RIGHTS WOULD CAUSE PRODUCER AND THE NETWORK IRREPARABLE INJURY AND DAMAGE THAT CANNOT BE REASONABLY OR ADEQUATELY COMPENSATED BY MONEY AND, THEREFORE, I HEREBY AGREE THAT PRODUCER AND THE NETWORK SHALL ALSO BE ENTITLED TO SEEK AND OBTAIN INJUNCTIVE AND OTHER EQUITABLE RELIEF FROM ANY COURT OF COMPETENT JURISDICTION FOR ANY SUCH BREACH OR INFRINGEMENT.

Initialed: _MW_ 9

(F) **SEVERABILITY.** IF ANY PORTION OF THE DISPUTE RESOLUTION MECHANISM SET FORTH IN PARAGRAPH 20 IS FOUND TO BE INVALID, ILLEGAL OR UNENFORCEABLE FOR ANY REASON, THAT PORTION SHALL BE SEVERED FROM THE REST AND SHALL NOT AFFECT THE PARTIES' AGREEMENT TO RESOLVE ALL CONTROVERSIES AND CLAIMS THROUGH MEDIATION AND ARBITRATION.

**I UNDERSTAND THAT I AM GIVING UP CERTAIN LEGAL RIGHTS UNDER THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, MY RIGHT TO FILE A LAWSUIT IN COURT WITH RESPECT TO ANY CLAIM ARISING IN CONNECTION WITH THIS AGREEMENT.**

Signature: _____ Date: 6-3-14  Phone: 646-823-9995

Print Name: NICOLAS GOXREAU  Date of Birth*: 6-11-1980

Address: 136 East 55 Street New York NY 10022

If participant is under eighteen years of age:  I represent and warrant that I am the parent or guardian of the minor whose name appears above.  I acknowledge that I have read the foregoing Agreement and am familiar with each and all of the terms contained therein, I am satisfied that the Agreement is fair and equitable, and I hereby give my express consent to its execution by my child/ward and will not revoke my consent at any time.  I hereby release the Released Parties as defined in Paragraph 13 above from any claims and causes of action I may have against them of any nature whatsoever.  I hereby fully and unconditionally guarantee the performance of my child's/ward's obligations and the grant of rights in and to the results and proceeds of my child's/ward's activities as set forth above.

Signature of Parent or Guardian: _____ Date: _____

Print Name: _____ Phone: _____

Signature of Parent or Guardian: _____ Date: _____

Print Name: _____ Phone: _____

---

* For verification purposes pursuant to 18 U.S.C. §§ 2256 et seq.

10

Initialed: _____

## EXHIBIT A

### EMERGENCY MEDICAL RELEASE

Return Completed Form To:          Machete Corporation
                                   [ADDRESS]

**IN CASE OF EMERGENCY**, I authorize Machete Corporation, NBCUniversal Media, LLC, each of their respective parent, subsidiary, and affiliate entities, and each of their respective agents, employees, representatives, and contractors, to arrange for or provide such medical assistance to me as any of them determines to be necessary.

**IN CASE OF EMERGENCY**, I also authorize any physician, other medical or paramedical provider, and any medical facility to provide any medical or surgical care, including without limitation anesthetization and hospitalization, which any of them may determine to be necessary or advisable, pending receipt of a specific consent from me.

SIGNED: _____          DATED: _6-3-14_

_Nicolas Gourceee_
*Print your name*                           *Print your Social Security No.*

_Yaffe Rudin_
*Print your primary Physician's name*

_212-879-4700_
*Print your current Physician's telephone number*

EMERGENCY CONTACT INFORMATION: _Gabrel Menken_

*Print your Emergency Contact's Name*

Relationship: _Brother in law_

Phone Numbers:

Home: (_917_) _697-7780_ Work: (____) _____ Cell: (____)_____
       *Area Code*              *Area Code*          *Area*
*Code* Address:_____

City: _New York_    State: _NY_    Zip:_____

11

Initialed: _____