**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NICOLAS GOUREAU and STEPHANIE MENKIN, individually and derivatively on behalf of GOOBERRY CORP., a New York corporation, | : : : : | |
| Plaintiffs, | : : | Civil Action No. 20-cv-4691-MKV |
| v. | : : : | |
| MARCUS LEMONIS, an individual, ML RETAIL, LLC, a Delaware limited liability company, and MARCUS LEMONIS, LLC, a Delaware limited liability company, and MACHETE CORPORATION d/b/a/ MACHETE PRODUCTIONS, a California corporation, | : : : : : : : | |
| Defendants, and | : : : : | |
| GOOBERRY CORP., a New York corporation, | : : : | |
| Nominal Defendant. | : : : : | |

**PLAINTIFFS NICOLAS GOUREAU AND STEPHANIE MENKIN'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MARCUS LEMONIS, ML RETAIL, LLC, MARCUS LEMONIS, LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 1

LEGAL STANDARD ................................................................................................ 3

ARGUMENT .......................................................................................................... 4

    A.   This Action Should Not Be Dismissed Under Rule 12 (b) (3) ............................. 4

    B.   Plaintiffs Have Not Engaged In Claim Splitting ................................................ 7

    C.   Plaintiffs Have Successfully Plead Demand Futility ........................................ 11

    D.   Plaintiffs' Tort Claims Are Not Barred By Contract ........................................ 12

          1. Plaintiffs Have Properly Pled Alter Ego ........................................................ 13

          2. Plaintiffs Have Plead Fraud With Particularity ............................................. 15

          3. Plaintiffs' Claims Are Not Barred By The Economic Loss Doctrine ............ 16

          4. Plaintiffs' Claim For Breach Of The Implied Covenant Of Good Faith And

             Fair Dealing Should Not Be Dismissed ..................................................... 18

          5. Plaintiffs' Unjust Enrichment Claim Is Not Barred By Contract .................. 19

    E.   Plaintiffs' RICO Claim Should Not Be Dismissed ......................................... 20

    F.   Plaintiffs' Equitable Claims Should Not Be Dismissed .................................. 24

LEAVE TO AMEND .............................................................................................. 25

CONCLUSION ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.V.E.L.A., Inc. v. Estate of Monroe,*
    34 F. Supp. 3d 311 (S.D.N.Y. 2014)..................................................................... 13, 14

*Adams v. Key Tronic Corp.,*
    94 Civ. 0535 (MBM), 1996 U.S. Dist. LEXIS 19244 (S.D.N.Y. Dec. 31, 1996) .................... 4

*Adams v. Raintree Vacation Exch., LLC,*
    702 F.3d 436 (7th Cir. 2012) ...................................................................................... 6

*AEI Life, LLC v. Lincoln Ben. Life Co.,*
    305 F.R.D. 37, (E.D.N.Y. 2015)................................................................................. 5

*Am. Stock Exchange v. Mopex, Inc.,*
    215 F.R.D. 87 (S.D.N.Y. 2002) ................................................................................. 8

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n,*
    328 F. Supp. 3d 141 (S.D.N.Y. 2018)................................................................... 16, 18

*Ambase Corp. v. City Investing Co. Liquidating Tr.,*
    326 F.3d 63 (2d Cir. 2003)....................................................................................... 11

*Arar v. Ashcroft,*
    585 F.3d 559  (2d Cir. 2009)...................................................................................... 3

*ARI & Co. v. Regent Int'l Corp.,*
    273 F. Supp. 2d 518 (S.D.N.Y. 2003)......................................................................... 18

*Arnold v. Goetz,*
    245 F.Supp.2d 527 (S.D.N.Y.2003)............................................................................. 1

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................. 3

*Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,*
    268 F.3d 103 (2d Cir.2001)...................................................................................... 21

*Aziz v. Tsappas,*
    No. 2018-0871-TMR, 2019 Del. Ch. LEXIS 1396 (Ch. Nov. 1, 2019) ................................ 25

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo,*
    346 F. Supp. 3d 432 (S.D.N.Y. 2018).......................................................................... 22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544  (2007)................................................................................................. 3

*Bertuglia v. City of New York,*
   839 F. Supp. 2d 703 (S.D.N.Y. 2012)........................................................................ 3

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,*
   98 F.3d 13 (2d Cir.1996)......................................................................................... 17

*Buffet Crampon S.A.S. v. Schreiber & Keilwerth,*
   No. 3:09-CV-347RM, 2009 U.S. Dist. LEXIS 101391 (N.D. Ind. Nov. 2, 2009) .................. 6

*Burton v. Iyogi, Inc.,*
   No. 13-CV-6926 DAB, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015)................................ 20

*Carvel Corp. v. Diversified Mgmt. Grp., Inc.,*
   930 F.2d 228 (2d Cir. 1991)..................................................................................... 19

*Casella Waste Sys., Inc. v. GR Tech., Inc.,*
   No. 409-6-07, 2009 Vt. Super. LEXIS 14 (Vt. Super. Ct. Feb. 6, 2009) ........................ 11

*Cedric Kushner Promotions, Ltd. v. King,*
   533 U.S. 158 (2001)............................................................................................... 21

*Chanayil v. Gulati,*
   169 F.3d 168 (2d Cir.1999)..................................................................................... 23

*Citicorp Int'l Trading Co. v. Western Oil & Refining Co.,*
   771 F.Supp. 600 (S.D.N.Y.1991) ............................................................................. 14

*Coleman v. B.G. Sulzle, Inc.,*
   402 F. Supp. 2d 403 (N.D.N.Y. 2005)......................................................................... 8

*Components Direct, Inc. v. European Am. Bank & Trust,*
   175 A.D.2d 227 (App.Div.1991). ............................................................................. 19

*Computech Int'l, Inc. v. Compaq Computer Corp.,*
   No. 02 CIV.2628(RWS), 2004 WL 1126320 (S.D.N.Y. May 21, 2004) ............................ 17

*Cross & Cross Properties, Ltd. v. Everett Allied Co.,*
   886 F.2d 497 (2d Cir.1989)..................................................................................... 19

*Cruz v. FXDirectDealer, LLC,*
   720 F.3d 115 (2d Cir. 2013)..................................................................................... 22

*deCiutiis v. Nynex Corp.,*
   No. 95 CIV. 9745 (PKL), 1996 WL 512150 (S.D.N.Y. Sept. 9, 1996)............................. 19

*DLJ Mortg. Capital, Inc. v. Kontogiannis,*
   726 F.Supp.2d 225 (E.D.N.Y.2010) ......................................................................... 21

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   387 F.Supp.2d 265 (S.D.N.Y.2004)..................................................................... 16, 17

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012)................................................................................................... 9

*Elsevier, Inc. v. Grossman*,
   199 F. Supp. 3d 768 (S.D.N.Y. 2016).................................................................. 21

*Estes v. City of New York*,
   No. 01 CV 5158 SLT, 2006 WL 2299350 (E.D.N.Y. Apr. 11, 2006)................... 16

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005)............................................................................................... 8

*Ferrara v. Smithtown Trucking Co.*,
    29 F.Supp.3d 274 (E.D.N.Y. 2014) ..................................................................... 14

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir.1994)..................................................................................... 21

*Fisher v. Smithkline Beecham Corp.*,
   No. 07-CV-0347A(F), 2009 U.S. Dist. LEXIS 147171 (W.D.N.Y. Mar. 11, 2009)................. 9

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
   848 F.2d 24 (2d Cir.1988)....................................................................................... 1

*G2 Enterprises, LLC v. Nee*,
   2006 WL 1647518 (N.D. Ill. June 7, 2006) ........................................................... 7

*Hart v. BHH, LLC*,
   No. 15CV4804, 2017 WL 2912519 (S.D.N.Y. July 7, 2017).................................. 17

*Hugel v. Corp. of Lloyd's*,
   999 F.2d 206 (7th Cir. 1993) ............................................................................... 5, 6

*In re Raharney Capital, LLC v. Capital Stack LLC*,
   138 A.D.3d 83 (N.Y. App. Div. 2016) .................................................................. 11

*In re Sumitomo Copper Litig.*,
   995 F.Supp. 451 (S.D.N.Y.1998) .......................................................................... 23

*In re TGM Enters., L.L.C.*,
   Civil Action No. 3565-CC, 2008 Del. Ch. LEXIS 130, (Ch. Sep. 12, 2008).......... 11

*In Touch Concepts v. Cellco P'ship*,
   949 F. Supp. 2d 447 (S.D.N.Y. 2013)................................................................... 19

*Intertrust GCN, LP v. Interstate Gen. Media, LLC*,
   No. 99, 2014 Phila. Ct. Com. Pl. LEXIS 434 (Phila. Ct. Com. Pl. Feb. 11, 2014) ................ 11

*Jackson v. Onondaga Cty.*,
   549 F. Supp. 2d 204 (N.D.N.Y. 2008) .................................................................................... 3

*Kanciper v. Suffolk Cty. SPCA, Inc.*,
   722 F.3d 88 (2d Cir. 2013) ..................................................................................................... 8

*LG Elecs., Inc. v. Wi-Lan USA, Inc.*,
   No. 13-CV-2237 (RA), 2015 U.S. Dist. LEXIS 98873 (S.D.N.Y. July 29, 2015) ................... 8

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015) ................................................................................................... 3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ................................................................................................. 25

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
   137 F. Supp. 3d 430 (S.D.N.Y. 2015) .................................................................................. 23

*Marx v. Akers*,
   88 NY2d 189 (1996) ............................................................................................................ 12

*Minnie Rose LLC v. Yu*,
   169 F. Supp. 3d 504 (S.D.N.Y. 2016) .................................................................................. 15

*Monco v. Zoltek Corp.*,
   2019 WL 952138  (N.D. Ill. Feb. 27, 2019) ........................................................................... 7

*Moses v. Martin*,
   360 F. Supp. 2d 533 (S.D.N.Y. 2004) .................................................................................. 22

*Net2Globe Int'l, Inc., v. Time Warner Telecom of N.Y.*,
   273 F.Supp.2d 436 (S.D.N.Y.2003) ...................................................................................... 20

*Network Enterprises, Inc. v. APBA Offshore Prods., Inc.*,
   No. 01 CIV. 11765 (CSH), 2002 WL 31050846  (S.D.N.Y. Sept. 12, 2002) ......................... 14

*Newspaper & Mail Deliverers' Union of New York & Vicinity v. United Magazine Co.*,
   829 F. Supp. 561 (E.D.N.Y. 1993) ....................................................................................... 14

*Niesig v. Team I*,
   76 N.Y.2d 363 (1990) .......................................................................................................... 16

*Patriot Resource Partners II, LLC v. Service Disabled Veterans Business Assocs., Inc.*,
   2008 WL 4534017 (N.D. Ill. Oct. 3, 2008) ............................................................................. 7

*Pereira v. United States,*
　　347 U.S. 1 (1954) ................................................................................................ 23

*Pramer S.C.A. v. Abaplus Int'l Corp.,*
　　76 A.D.3d 89 (2010) ........................................................................................... 20

*Prisco v. New York,*
　　91 Civ. 3990 (RLC), 1992 U.S. Dist. LEXIS 5273, at *16 (S.D.N.Y. Apr. 22, 1992)............ 11

*Ramiro Aviles v. S & P Glob., Inc.,*
　　380 F. Supp. 3d 221 (S.D.N.Y. 2019) ................................................................... 16

*Rana v. Islam,*
　　305 F.R.D. 53 (S.D.N.Y.2015) .............................................................................. 15

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
　　30 F.3d 339 (2d Cir. 1994) ..................................................................................... 22

*Rolls-Royce Motor Cars, Inc. v. Schudroff,*
　　929 F. Supp. 117 (S.D.N.Y. 1996) ....................................................................... 13

*Rutledge v. Arizona Board of Regents,*
　　859 F.2d 732 (9th Cir. 1988) ................................................................................... 8

*Schmuck v. United States,*
　　489 U.S. 705 (1989) ............................................................................................... 23

*Schonholz v. Long Island Jewish Med. Ctr.,*
　　858 F. Supp. 350 (E.D.N.Y. 1994) ......................................................................... 1

*SCS Commc'ns, Inc. v. Herrick Co.,*
　　360 F.3d 329 (2d Cir. 2004) ................................................................................... 25

*Sedima, S.P.R.L. v. Imrex Co.,*
　　473 U.S. 479 (1985) ............................................................................................... 21

*Steinberg v. Nationwide Mut. Ins. Co.,*
　　418 F. Supp. 2d 215 (E.D.N.Y. 2006) ..................................................................... 8

*Sullivan v. Cox,*
　　78 F.3d 322 (7th Cir. 1996) ..................................................................................... 7

*Tera Grp, Inc. v. Citigroup, Inc.,*
　　2019 U.S. Dist. LEXIS 128107 (S.D.N.Y. July 30, 2019) ................................... 8, 9

*TGG Ultimate Holdings, Inc. v. Hollett,*
　　224 F. Supp. 3d 275 (S.D.N.Y. 2016) ..................................................................... 5

*TVT Records and TVT Music, Inc. v. The Island Def Jam Music Group,*
    244 F.Supp.2d 263 (S.D.N.Y.2003) ................................................................ 18

*Tymshare, Inc. v. Covell,*
    727 F.2d 1145 (D.C.Cir.1984) ........................................................................ 19

*U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co.,*
    No. 19-cv-7884 (MKV), 2020 U.S. Dist. LEXIS 85177 (S.D.N.Y. May 14, 2020) ................. 3

*United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC,*
    866 F. Supp. 2d 247 (S.D.N.Y. 2012) .............................................................. 24

*United States v. Funds Held in the Name or for the Benefit of Wetterer,*
    210 F.3d 96 (2d Cir.2000) ............................................................................ 13

*Wajilam Exports (Singapore) Pte Ltd. v. ATL Shipping Ltd.,*
    475 F.Supp.2d 275 (S.D.N.Y.2006) ................................................................ 13

*Waldman v. Dill. of Kiryas Joel,*
    207 F.3d 105 (2d Cir. 2000) ............................................................................ 8

*Weisblum v. Prophase Labs, Inc.,*
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) .......................................................... 16, 17

*Williams v. Citigroup Inc.,*
    659 F.3d 208 (2d Cir. 2011) .......................................................................... 25

*Zinaman v. USTS New York, Inc.,*
    798 F. Supp. 128 (S.D.N.Y. 1992) ................................................................ 13

**Statutes**

6 Del. C. § 18-802 .......................................................................................... 11

18 U.S.C. § 1341 ............................................................................................ 23

18 U.S.C. § 1962 ...................................................................................... 20, 21

18 U.S.C. § 1964 ............................................................................................ 21

28 U.S.C. § 1391 .............................................................................................. 4

N.Y. Bus. Corp. Law § 1104 .......................................................................... 24

New York C.P.L.R. § 6301 .............................................................................. 24

New York C.P.L.R. § 6401 .............................................................................. 24

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................... 3, 17, 24, 28

Fed. R. Civ. P. 9 ................................................................................................................. 16, 18

Fed. R. Civ. P. 12 ...................................................................................................................... 3

Fed. R. Civ. P. 15 ............................................................................................................... 31, 32

Fed. R. Civ. P. 56 ...................................................................................................................... 1

SDNY USDC Div. of Bus. Rule 13 ......................................................................................... 11

## PRELIMINARY STATEMENT

Plaintiffs Nicolas Goureau ("Goureau"), Stephanie Menkin ("Menkin") (collectively, "Plaintiffs"), hereby submit their memorandum of law in opposition to Defendants Marcus Lemonis ("Lemonis"), ML Retail, LLC ("ML Retail"), Marcus Lemonis, LLC's ("ML, LLC") (collectively "Lemonis Defendants" or "Defendants") Motion to Dismiss.  The Lemonis Defendants Motion to Dismiss relies on personal attacks on Plaintiffs, red herrings, and faulty arguments in an attempt to dismiss Plaintiffs' well-pled claims.[1]  As set forth below, Plaintiffs have properly alleged the claims in their First Amended Complaint ("FAC") and Defendants' motion should be denied.

## STATEMENT OF FACTS

The facts of this case are fully set forth in Plaintiffs' FAC, a brief summary is provided herein.[2]  For years Plaintiffs ran a successful retail business that focused on high end women's fashion.  (FAC ¶¶ 31-38.)  Plaintiffs were looking to take their business to the next level and were trying to find an investor with experience with family owned businesses and retail stores.  (*Id*. ¶ 37.)  Unfortunately, that is the exact persona that Defendant Marcus Lemonis ("Lemonis") portrays on his show "The Profit."

---

[1]    All internal alterations, quotation marks, footnotes and citations herein are omitted and all emphasis is added unless otherwise noted.  All "Ex." References are to the documents attached to Plaintiffs' FAC.

[2]    Defendants' Motion contains several factual allegations (mostly personal attacks on Plaintiffs) that are outside of the FAC.  These statements should not be considered.  For purposes of Rule 12 (b), "[f]actual allegations contained in legal briefs or memorandum are ... treated as matters outside the pleadings." *Fonte v. Bd. of Managers of Cont'l Towers Condo.,* 848 F.2d 24, 25 (2d Cir.1988).  When provided with materials outside the pleadings, in the context of a Rule 12(b)(6) motion to dismiss, "the court may exclude the additional materials and decide the motion on the complaint alone or convert the motion to one for summary judgment." *Arnold v. Goetz,* 245 F.Supp.2d 527, 540 (S.D.N.Y.2003).  However, "the court is not permitted to consider factual matters submitted outside of the complaint unless the parties are given notice that the motion to dismiss is being converted to a motion for summary judgment under Rule 56 and are afforded an opportunity to submit additional affidavits." *Schonholz v. Long Island Jewish Med. Ctr.*, 858 F. Supp. 350, 352 (E.D.N.Y. 1994).  As such, the information outside of the FAC, discussed by Defendants, should not be considered.  *Id.* ("since the parties have not had an opportunity to submit all of the pertinent material for a summary judgment motion, the court will not consider these affidavits and additional factual material in assessing the sufficiency of the complaint.").

In 2014, Plaintiffs' store Courage.B, owned by Nominal Defendant Gooberry Corp. ("Gooberry") appeared on an episode of the show.  In order to get Plaintiffs to appear on the show Defendants made several misrepresentations to Plaintiffs.  Defendant Machete conducted Skype calls with Plaintiffs telling them that Lemonis truly helps the businesses that appeared on the show and that he could and would help their business go to the next level.  (*Id*. ¶¶ 48-51.)  All Defendants worked to create Lemonis' persona, advertising, and marketing for the show which included false representations that Lemonis helped the businesses that appeared on the show.  (*Id*. ¶¶ 38-42, 201, 203.)  Based on these representation, Plaintiffs agreed to appear on the show.  (*Id*. ¶¶ 38-42, 48-51, 201, 203.)

While the show was filming, Defendants continued making representations to Plaintiffs in order to gain Plaintiffs' trust and induce them into a business relationship with Lemonis and his entities.  (*Id*. ¶¶ 53-63, 67-68.)  Defendants kept Plaintiffs in the dark about the renovations and changes being made to their business, and did not tell Plaintiffs they were exceeding the previously agreed upon budget for the work.  (*Id*.)  When Plaintiffs asked about the over spending, they were told the only way to back out would be to repay what Defendants had put into the stores, which Plaintiffs could not afford.  (*Id*.)  Thus, when it came time to paper the deal, Plaintiffs believed they had no choice but to move forward.  (*Id*. ¶ 65.)

Defendant ML Retail, LLC purchased an interest in Gooberry and the Shareholder Agreement gave Lemonis and ML Retail nearly unbridled control over the company.  (*Id*. ¶¶ 70-74.)  As detailed extensively in the First Amended Complaint ("FAC"), Defendants used this power over Gooberry to drown it in debt, mismanage the company, and misappropriate its assets.  (*Id*. ¶¶ 75-120.)

2

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). "Such a statement must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 212 (N.D.N.Y. 2008). Rule 12 (b) (6) allows a defendant to bring a motion to dismiss the claim for failing to meet this standard. Fed. R. Civ. P. 12 (b)(6).

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12 (b)(6) where the plaintiff has plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In viewing the complaint, a court accepts "all factual allegations in the complaint as true and draws all inferences in the plaintiff's favor." *U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, No. 19-cv-7884 (MKV), 2020 U.S. Dist. LEXIS 85177, at *4 (S.D.N.Y. May 14, 2020) (Vyskocil, M) *citing Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015); *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) ("The Court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff."). The court's role at this stage is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012). Under this standard, Defendants' motion should be denied.

## ARGUMENT

**A.      This Action Should Not Be Dismissed Under Rule 12 (b) (3)**

Venue is proper in this district.  Defendants state, in passing, that no Defendant is a citizen of this district, however, this district is where the actions that gave rise to Plaintiffs' claims took place.  Under 28 U.S.C. § 1391(b), an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b).  Here, that is the Southern District of New York.  As alleged in the FAC, Gooberry maintained its principal offices in New York, that is where a substantial part of the events giving rise to this claim took place.  As this district has a connection to Plaintiffs' claims, dismissal would be improper.  *See Adams v. Key Tronic Corp.*, 94 Civ. 0535 (MBM), 1996 U.S. Dist. LEXIS 19244, at *10 (S.D.N.Y. Dec. 31, 1996) ("Thus, so long as there is some connection between the chosen venue and the facts or issues of the case, plaintiffs' choice of forum will be disturbed only if the other factors weigh strongly in favor of transfer.").

Defendants' reliance on the Credit Agreement and Security Agreement for "mandatory venue selection clauses" is a red herring.  The Credit Agreement and Security Agreement are between Nominal Defendant Gooberry and ***non-party*** ML Fashion, LLC.  Plaintiffs are not signatories to either agreement and neither are Defendants.  The fact that none of the Plaintiffs or Defendants are parties to the Credit Agreement and Security Agreement emphasizes the point that Plaintiffs' claims ***do not arise from those agreements***.  Plaintiffs have not sued under those agreements and none of their claims assert any breach of those agreements.  Instead, the Credit Agreement and Security Agreement are attached to the FAC to illustrate some of the mechanisms through which Defendants were able to saddle Gooberry with debt.

Additionally, the only other party to the agreements, ML Fashion, LLC, is not involved in this litigation at all.  Plaintiffs have not sued ML Fashion, LLC, and are not seeking any recourse from ML Fashion, LLC, or any Defendant, arising from the Credit Agreement and Security Agreement.  To be sure, the Credit Agreement and Security Agreement were entered into roughly two years after the contracts from which Plaintiffs' claims actually arise—the Shareholder Agreement and the Stock Purchase Agreement.  As Defendants concede, **_neither of those agreements have forum selection clauses_**.  The simple fact that those agreements have provisions applying Illinois law but do not have forum selection clauses shows that the Parties did not anticipate litigating those claims in Illinois.  Indeed, as courts have noted, "[a] choice-of-law provision, however, does not determine where the litigation will proceed."  _TGG Ultimate Holdings, Inc. v. Hollett_, 224 F. Supp. 3d 275, 281 (S.D.N.Y. 2016); _AEI Life, LLC v. Lincoln Ben. Life Co._, 305 F.R.D. 37, 43 (E.D.N.Y. 2015) (finding that choice of law provision providing for application of New Jersey law did not defeat venue in the Eastern District of New York.).

It bears repeating that Defendants are non-signatories to the Credit Agreement and Security Agreement, and yet, they are attempting to enforce the forum selection clauses therein against the non-signatory Plaintiffs.  There does not appear to be any case law supporting what Defendants are attempting here—a non-signatory enforcing a forum selection clause against another non-signatory.

Further, even if non-signatory Defendants could enforce the forum selection clause against non-signatory Plaintiffs, it would be improper here.  Under Illinois law, which governs the Credit Agreement and Security Agreement, "to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."  _Hugel v. Corp. of Lloyd's_, 999 F.2d 206, 209 (7th Cir. 1993).  The driving force behind this rule

is mutuality and affiliation. *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439 (7th Cir. 2012) ("This is a vague standard, but it can be decomposed into two reasonably precise principles, which we'll call affiliation and mutuality.").

"Pursuant to the principle of mutuality, a non-signatory may invoke a forum-selection clause to the extent the clause could be invoked against it." *Buffet Crampon S.A.S. v. Schreiber & Keilwerth*, No. 3:09-CV-347RM, 2009 U.S. Dist. LEXIS 101391, at *28 (N.D. Ind. Nov. 2, 2009). Mutuality is simply not a concern here, neither Defendants nor Plaintiffs are signatories to the Credit Agreement or Security Agreement.

Similarly, Plaintiffs are not the types of affiliates against whom enforcing a forum selection clause would be appropriate. *Hugel*, 999 F.2d at 210 (signatory owned 100% of stock in one non-signatory and 99% of the stock of another, and both non-signatories were "equally bound" by the forum selection clause.) Here, neither Plaintiff is a majority owner of Gooberry. (FAC ¶ 69, Ex. A.) While Menkin may have signed the agreement in her capacity as Gooberry's President, there can be no doubt that she did not have actual power over the content of the agreements or the subject matter therein. As the FAC alleges, Menkin did not participate in the decision to enter into the agreements or have any participation in their preparation or negotiation.[3] (FAC ¶ 94.) To be sure, Lemonis was vested with the sole power to control the operations of Gooberry, including its debt facilities, a category under which the Credit Agreement and Security Agreement surely fall. (FAC ¶¶ 71-74, 93-94.) Defendants' argument that Menkin is listed individually as the person to receive notice for Gooberry is based on a tortured reading of the actual agreement. Only the Credit Agreement has a notice provision, and that provision actually states "Attention: President," then provides Menkin's e-mail address. It does not however, state "Attention: Stephanie Menkin."

---

[3]      Plaintiff Goureau did not sign either agreement in any capacity whatsoever. As such, there is ***absolutely no basis*** to enforce the forum selection clauses as to him.

Clearly, this is not the typically "affiliation" situation where a non-signatory negotiated the agreement, accepted its benefits, and tries to escape the forum selection clause it negotiated.

Moreover, the Northern District of Illinois would not have personal jurisdiction over Plaintiffs.  Menkin is a citizen of New York and Goureau is a citizen of Illinois.  (FAC ¶¶ 16-17.)  Indeed, the interaction with Illinois, as touted by Defendants in their letter, was done by Gooberry, the company, and not Plaintiffs individually.

Moreover, the Credit Agreement and Security Agreement are not sufficient to confer personal jurisdiction over Plaintiffs.  Again, Plaintiff Goureau did not sign either agreement in any capacity whatsoever.  Plaintiff Menkin **only** signed the agreements in her capacity as an officer of Nominal Defendant Gooberry.   This is not enough to confer jurisdiction under the Credit Agreement and Security Agreement.  *See Monco v. Zoltek Corp.*, 2019 WL 952138, at *15-17 (N.D. Ill. Feb. 27, 2019) (rejecting the notion of "closely-related" parties for purposes of jurisdiction based on a forum selection clause where the signatory is an officer who "signs an agreement on behalf of a corporation and indicates next to his signature his corporate affiliation," thus signifying that "the officer is not personally bound), citing, *inter alia*, *Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996).[4]  Therefore, Plaintiffs' FAC should not be dismissed under Rule 12 (b) (3).

### B.      Plaintiffs Have Not Engaged In Claim Splitting

Defendants trot forth yet another red herring with their claim splitting argument.  Claim splitting is a variant of the res judicata doctrine that bars a plaintiff from "splitting his claim into

---

[4]       *Patriot Resource Partners II, LLC v. Service Disabled Veterans Business Assocs., Inc*., 2008 WL 4534017, at *6 (N.D. Ill. Oct. 3, 2008) (holding that officer did not waive personal jurisdiction by signing an agreement containing a forum selection clause where he signed it in his representative capacity on behalf of corporation, and agreement did not mention him personally), and *G2 Enterprises, LLC v. Nee*, 2006 WL 1647518, at *3 (N.D. Ill. June 7, 2006) (holding that officer did not waive personal jurisdiction by signing contract containing forum selection clause where he signed in his official capacity and contract did not mention him personally).

various suits, based on different legal theories." *Waldman v. Dill. of Kiryas Joel*, 207 F.3d 105,

110 (2d Cir. 2000); *see also Am. Stock Exchange v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y.

2002) ("It is well established, under the doctrine of 'claim splitting,' that a party cannot avoid the

effects of res judicata by splitting her cause of action into separate grounds of recovery and then

raising the separate grounds in successive lawsuits."). Thus, claim splitting occurs "when the first

suit, assuming it were final, would preclude the second suit." *Tera Grp, Inc. v. Citigroup, Inc.*,

2019 U.S. Dist. LEXIS 128107, at *28 (S.D.N.Y. July 30, 2019).

However, "claim splitting does not apply to parallel state and federal actions." *Kanciper

v. Suffolk Cty. SPCA, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013) *citing Steinberg v. Nationwide Mut. Ins.

Co.*, 418 F. Supp. 2d 215, 223 (E.D.N.Y. 2006); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

544 U.S. 280, 292 (2005) ("[T]he pendency of an action in the state court is no bar to proceedings

concerning the same matter in the Federal court having jurisdiction."). Indeed, Courts have

consistently declared that "where there is concurrent jurisdiction, however, it is permissible for a

plaintiff to file parallel state and federal actions simultaneously." *Rutledge v. Arizona Board of

Regents,* 859 F.2d 732, 736 (9th Cir. 1988).

Rather, the claim splitting doctrine applies to an attempt to "maintain two actions on the

same subject in the same court, against the same defendant at the same time." *Coleman v. B.G.

Sulzle, Inc.,* 402 F. Supp. 2d 403 (N.D.N.Y. 2005); *Kanciper*, 722 F.3d at 92 (finding that the claim

splitting doctrine applies "where [a] plaintiff had previously filed related claims that were pending

in the *same federal court* against the same defendants."); *see LG Elecs., Inc. v. Wi-Lan USA, Inc.*,

No. 13-CV-2237 (RA), 2015 U.S. Dist. LEXIS 98873, at *11 (S.D.N.Y. July 29, 2015) (finding

claim splitting inapplicable between federal court and arbitration.).

Moreover, when there is claim splitting, it is in a court's discretion to dismiss a suit or

allow it to proceed.[5]  Thus, even if claim splitting were applicable in this situation, it would not

serve as a basis to dismiss the FAC because Plaintiffs have not engaged in claim splitting.  In

analyzing whether a plaintiff has engaged in claim splitting, the courts in the Southern District of

New York look to:

> [W]hether (A) the actions concern the same or substantially similar parties, property, transactions or events; (B) there is substantial factual overlap; (C) the parties could be subjected to conflicting orders; and (D) whether absent a determination of relatedness there would be a substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses.

*Tera Grp*, 2019 U.S. Dist. LEXIS 128107 at *28-29 *citing* SDNY USDC Div. of Business Rule

13.  Here, none of the factors support dismissing the FAC based on claim splitting.  This action

and the SDNY Action do not concern the same or substantially similar parties, property,

transactions or events.  The two cases do not involve the same parties.  Nominal Defendant

Gooberry Corp. and Defendant Machete Productions are not a part of the Delaware Action,

whereas Nominal Defendant ML Fashion—the entity at issue in that case—and defendants in the

Delaware Action, Roberta Raffel and MLG Retail, LLC,  are not a part of this case.  Further the

two actions arise from different transactions, subject matters, and address different harms.  This

instant suit deals with Lemonis, ML Retail, ML, LLC, and Machete's fraud, misrepresentations,

mismanagement, relating to Plaintiffs' involvement on the show "The Profit," and their entity

Gooberry.  To be sure, Plaintiffs' claims in this action relate to Plaintiffs' original clothing brand

and company Gooberry.  The FAC alleges that Defendants Lemonis, ML Retail, ML, LLC, and

Machete used the guise of the television show to fraudulently insert themselves in Plaintiffs'

---

[5]      *Elgin v. Dep't of Treasury*, 567 U.S. 1, 14, 132 S. Ct. 2126, 183 L. Ed. 2d 1 (2012) ("[A] tribunal generally has discretion to decide whether to dismiss a suit when a similar suit is pending elsewhere.");  *Fisher v. Smithkline Beecham Corp.*, No. 07-CV-0347A(F), 2009 U.S. Dist. LEXIS 147171, at *57-58 (W.D.N.Y. Mar. 11, 2009) ("[I]t is within the District Judge's discretion whether to allow parallel actions in federal and state courts to proceed depending on the nature of the proceedings.").

business, take control of the business, and systematically run it into the ground just to taking the pieces for themselves.

On the contrary, the Delaware Action stems from a separate business venture between Goureau, Menkin, and Lemonis run through the entity ML Fashion, LLC which was formed specifically for that separate venture years after Plaintiffs were on "The Profit." (*See e.g.* Dkt. No. 46-1 at ¶¶ 9-12.) ML Fashion, LLC was supposed to be the umbrella entity through which Lemonis, Goureau, and Menkin equally owned and controlled the fashion and retail arm of their various businesses. The claims in the Delaware Action arise from those defendants' fraud, misrepresentations, and mismanagement surrounding the entity ML Fashion, LLC and have nothing to do with Plaintiffs' episode of "The Profit." Again, that action is based on a completely separate business transaction.

The charts Defendants have included in with their motion do not show that the two complaints are "identical." While the names of the causes of action may be the same, they clearly address different harms and seek different relief. The contract based claims in the two actions arise from different contracts, the breach of fiduciary duty claims arise from different fiduciary duties, the fraud claims arise from different misrepresentations and inducements, the derivative claims arise from two different and distinct corporate entities.

The parties are not at risk of conflicting orders between the Delaware Court and this Court. Again, the two Courts are dealing with completely separate contracts, separate companies, and separate actions underlying the claims in each case. Even further, this case has claims the Delaware court cannot decide and the Delaware Action has claims that this Court cannot decide. The Court of Chancery for the State of Delaware simply does not have jurisdiction over Plaintiffs' RICO claim or their claim for judicial dissolution of Gooberry. *Prisco v. New York*, 91 Civ. 3990

(RLC), 1992 U.S. Dist. LEXIS 5273, at *16 (S.D.N.Y. Apr. 22, 1992) (finding no claim splitting where "several of plaintiffs' claims are cognizable exclusively in federal court, and could not have been brought in the Court of Claims.")

Similarly, this Court does not have jurisdiction over the derivative and dissolution claims regarding ML Fashion, LLC.  *In re TGM Enters., L.L.C.*, Civil Action No. 3565-CC, 2008 Del. Ch. LEXIS 130, at *4 (Ch. Sep. 12, 2008) ("The Court understands that jurisdiction rests solely with the Court of Chancery where a party moves for dissolution of a company.").[6]

The case Defendants rely on *Ambase Corp. v. City Investing Co. Liquidating Tr.* is readily distinguishable.  In *Ambase*, the plaintiff had received an adverse ruling on their first litigation in the Court of Chancery for the State of Delaware and subsequently brought the same claims against the same parties in the Southern District of New York.  *Ambase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 71 (2d Cir. 2003).  The court determined that the decision in the Delaware court has a res judicata effect on the claims brought in the Southern District.  *Id*.  That is very different from the situation here.  There is no previous case with a res judicata effect, Plaintiffs are not seeking a second bite at the apple on claims that have previously been decided. As such, Plaintiffs have not engaged in claim splitting and the FAC should not be dismissed.

### C.    Plaintiffs Have Successfully Plead Demand Futility

The FAC makes it clear that any demand on Gooberry to commence this action would have been futile.  Defendants argue that because Plaintiffs, along with their mother, Neomi—who is

---

[6]        *See also In re Raharney Capital, LLC v. Capital Stack LLC*, 138 A.D.3d 83, 25 N.Y.S.3d 217, 217-18 (N.Y. App. Div. 2016) (holding that New York courts do not have subject matter jurisdiction to judicially dissolve a Delaware LLC); *Intertrust GCN, LP v. Interstate Gen. Media, LLC*, No. 99, 2014 Phila. Ct. Com. Pl. LEXIS 434, at *7 (Phila. Ct. Com. Pl. Feb. 11, 2014) (stating that the language of section 18-802 "grants exclusive subject [matter] jurisdiction to the Delaware Court of Chancery to hear and determine petitions for judicial dissolution."); *Casella Waste Sys., Inc. v. GR Tech., Inc.*, No. 409-6-07, 2009 Vt. Super. LEXIS 14, at *7-8 (Vt. Super. Ct. Feb. 6, 2009) ("[A] plain reading of [section 18-802] suggests that the default rules governing dissolution grant subject matter jurisdiction only to the Delaware Court of Chancery, and not to any other court.").

not a party to this lawsuit—make up a majority of the shareholders and the board of directors that Plaintiffs could have made a demand for Gooberry to initiate a lawsuit that would not have been futile.   However the Shareholder Agreement makes it patently clear that Gooberry cannot undertake litigation without the affirmative vote of ML Retail.   Thus, no matter how what percentage of the company Plaintiffs and their mother owned, they could not force the company to initiate this litigation without ML Retail's affirmative vote.

To be sure, Defendants' argument simply ignores the language of the Shareholder Agreement which in no uncertain terms requires the affirmative vote of ML Retail for any action: (1) outside of the normal course of business, (2) amending the Shareholder Agreement, (3) removing company management, (4) amending any company contract with ML Retail, and (5) dissolving the company.   (*Id*. ¶¶ 71-73, 125-126, Ex. B.)   Thus, as alleged, despite the fact that Plaintiffs are majority shareholders, Gooberry would not have been able to seek or obtain the relief requested by this lawsuit without the affirmative vote of ML Retail.   (*Id*. ¶¶ 125-132.)

In addition, the FAC sets forth that Lemonis was a self-interested director.   (*Id*.)   Lemonis, as a director and controller of ML Retail, had the ability to determine whether or not the board of Gooberry would have decided to bring suit.   (*Id*.)   The FAC makes it clear that he would not have affirmatively voted for this lawsuit.   (*Id*.)   This fulfils the requirements of showing demand futility. *See Marx v. Akers*, 88 NY2d 189, 200 (1996) (holding that "[d]emand is excused because of futility when a complaint alleges with particularity that a majority of the board of directors is interested in the challenged transactions … or is controlled by a self-interested director.")   As such, Defendants' motion should be denied.

### D.   Plaintiffs' Tort Claims Are Not Barred By Contract

Defendants argue that Causes of Action 1-8 fail to state a plausible claim outside of

contract.  As shown herein, these arguments are unpersuasive.

### 1.      Plaintiffs Have Properly Pled Alter Ego

Defendants argue that Plaintiffs have not plead sufficient allegations as to each of the

Defendants.  However, as set forth in Section D.2., below, the FAC includes specific allegations

as to each Defendants' wrongdoings.  Nevertheless, the FAC also sufficiently pleads alter ego.

Courts in New York will disregard the corporate form "either when there is fraud or when the

corporation has been used as an alter ego."  *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F.

Supp. 117, 121 (S.D.N.Y. 1996).  To establish alter ego, a plaintiff must allege, "(1) that the parent

exercised such complete domination in respect to the transaction attacked that the subsidiary had

at that time no separate will of its own, and (2) that this domination was used to commit fraud or

wrong against the plaintiff."  *Zinaman v. USTS New York, Inc.,* 798 F. Supp. 128, 132 (S.D.N.Y.

1992).

In determining alter ego, courts analyze a number of factors including: "(1) the absence of

corporate formalities; (2) inadequate capitalization; (3) overlap in ownership, officers, directors,

and employees; (4) common office space, address, and telephone numbers; (5) the amount of

business discretion displayed by the allegedly dominated corporation; and (6) arm[']s length

business dealings between the related corporations."  *A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F.

Supp. 3d 311, 320 (S.D.N.Y. 2014).  "In making an alter ego determination, a court is concerned

with reality and not form, and with how the corporation operated."  *Wajilam Exports (Singapore)*

*Pte Ltd. v. ATL Shipping Ltd.,* 475 F.Supp.2d 275, 282 (S.D.N.Y.2006) (internal quotation marks

omitted); *see United States v. Funds Held in the Name or for the Benefit of Wetterer,* 210 F.3d 96,

106 (2d Cir.2000) (noting that alter ego determination must be made based on totality of facts).

Contrary to Defendants' argument, allegations of alter ego do not have to be stated with

particularity under Rule 9(b).  *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 122

(S.D.N.Y. 1996) ("But because a veil piercing claimant can prevail without proving fraud, plaintiff's alter ego allegations will not be held to the particularity requirement of Fed. R. Civ. P. 9 (b).").   "Instead, the allegations properly are judged according to the liberal notice pleading standard of Fed.R.Civ.P. 8 (a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief."  *Rolls-Royce*, 929 F. Supp. at 122; *see Citicorp Int'l Trading Co. v. Western Oil & Refining Co.,* 771 F.Supp. 600, 608 (S.D.N.Y. 1991).

Here, Plaintiffs' FAC contain more than enough allegations to support alter ego against the Lemonis Defendants.  Plaintiffs have alleged that Defendants Lemonis, ML Retail, and ML, LLC failed to observe corporate formalities, that Lemonis is the sole natural person involved in the ownership/management of each entity, that the entities share the same address, that the various corporate entities were merely a façade for Lemonis' operations, and that Lemonis used the corporate entities and their assets to further his personal interests.  (FAC ¶¶ 19-26, 98, 134-135, 144-145.)  The FAC alleges unity in ownership between Lemonis, ML Retail, and ML, LLC such that Lemonis is the only natural person in charge of each defendant.  (*Id*. ¶¶ 19-26.)  Indeed, ML Retail and ML, LLC could only act through Lemonis.  (*Id*.  ¶¶ 19-26, 135, 145.)  The FAC alleges that Lemonis solely controls the operations of ML Retail and ML, LLC.  (*Id*.)  These allegations sufficiently allege alter ego.[7]

Further, the FAC alleges that Defendants' alter ego relationship perpetrated a wrong or

---

[7]   *See A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 320 (S.D.N.Y. 2014) (finding alter ego allegations sufficient where one person was "the sole shareholder, officer, director, and employee" of the entity at issue."); *Ferrara v. Smithtown Trucking Co.*, 29 F.Supp.3d 274, 284-85 (E.D.N.Y. 2014) (finding "extensive allegations" of common management, supervision, and ownership, inadequate capitalization, and shared operations, equipment, and customers sufficient to support alter ego claims); *Newspaper & Mail Deliverers' Union of New York & Vicinity v. United Magazine Co.*, 829 F. Supp. 561, 566 (E.D.N.Y. 1993) (Complaint that alleged that an individual defendant dominated and controlled decision-making processes of defendant employer sufficiently alleged that such individual was an alter ego.); *Network Enterprises, Inc. v. APBA Offshore Prods., Inc.*, No. 01 CIV. 11765 (CSH), 2002 WL 31050846, at *4 (S.D.N.Y. Sept. 12, 2002) (finding allegations of same address and telephone number, "complete domination" by same chairman, and financial inconsistencies sufficient to allow proposed amendment adding alter ego claims, and collecting cases.)

fraud against Plaintiffs. Lemonis used his corporate relationships with ML Retail and ML, LLC to invest in Gooberry, take control over Gooberry, and shield himself from personal liability. (FAC ¶¶ 69-75.) Lemonis used his power over Gooberry to run up its liabilities and then, when Gooberry could not afford the exorbitant expenses he was thrusting upon it, used his control over Gooberry's debt facilities with ML Retail and ML, LLC to make the entity ever beholden to him. (FAC ¶¶ 69-75, 84, 96-97.) There can be no doubt that this practice wronged and defrauded Plaintiffs. As such, Defendants' motion should be denied.

### 2. Plaintiffs Have Plead Fraud With Particularity

Defendants' argument that Plaintiffs have failed to fulfill Rule 9 (b)'s particularity requirements hinges almost entirely on its alter ego argument, addressed above. Even without the Lemonis Defendants' actions being imputed onto each other—which they should be—Plaintiffs have alleged fraud with particularity. Rule 9 (b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 511 (S.D.N.Y. 2016). To be sure, "a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y.2015).

There can be no doubt that the FAC meticulously details the actions of Defendants putting them on notice of the misconduct they are charged with in this matter. Indeed, Defendants ***only*** argument relating to the particularity of Plaintiffs' fraud allegations relates to the "who" element of fraud. However, Plaintiffs have sufficiently alleged the "who" element of fraud for each Defendant.

As alleged in the FAC, Lemonis was the only natural person involved in the corporate governance of ML Retail and ML, LLC. (FAC ¶¶ 23-26, 134-135, 144-145.) As such, those entities could only operate through Lemonis and his actions should be imputed onto them. *Estes*

*v. City of New York*, No. 01 CV 5158 SLT, 2006 WL 2299350, at *1 (E.D.N.Y. Apr. 11, 2006) (a

company's alter egos can impute liability onto the company.") *citing Niesig v. Team I,* 76 N.Y.2d

363, 374, (1990); *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 302 (S.D.N.Y. 2019)

("[T]raditional agency principles impute a corporate agent's acts to the corporation even where the

agent acts less than admirably, exhibits poor business judgment, or commits fraud.")

The FAC sets forth in painstaking detail the various misrepresentations that form the basis

of Plaintiffs' fraud causes of action.  These include statements by Machete and its employees,

statements by Lemonis, and statements by Lemonis' representatives.  (*Id*. ¶¶ 39-42, 48-65, 67-68,

74-75, 93-98, 107, 137-138, 146-147.)  Thus, Plaintiffs have alleged the "who" element of fraud

with particularity.

### 3.    Plaintiffs' Claims Are Not Barred By The Economic Loss Doctrine

Defendants' argument that Plaintiffs' claims for fraud, breach of fiduciary duty, unjust

enrichment, misappropriation of corporate assets, mismanagement and waste, and conversion fail

under the economic loss doctrine fall flat.  In general, the economic loss doctrine provides that "a

plaintiff who has suffered economic loss, but not personal or property injury, may not recover in

tort if the damages are the type remedial in contract."  *Weisblum v. Prophase Labs, Inc.*, 88 F.

Supp. 3d 283, 297 (S.D.N.Y. 2015).  However, "the applicability of the economic loss rule outside

the product-liability context from which it originated is doubtful."  *Ambac Assurance Corp. v. U.S.*

*Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 159 (S.D.N.Y. 2018).

To be sure, New York does not apply the economic loss doctrine to fraud claims.

*Weisblum*, 88 F. Supp. 3d at 297–98 ("the Court declines to dismiss Plaintiffs' fraud claims on the

basis of the economic loss doctrine."); *EED Holdings v. Palmer Johnson Acquisition Corp.,* 387

F.Supp.2d 265, 278 (S.D.N.Y.2004) (noting that the Court was not aware of any cases where New

York courts applied the economic loss doctrine to fraud claims); *Computech Int'l, Inc. v. Compaq*

*Computer Corp.*, No. 02 CIV.2628(RWS), 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004) ("In the absence of any articulation to the contrary by the New York courts, the economic loss doctrine will not be presumed to extend to fraud claims."); *Hart v. BHH, LLC*, No. 15CV4804, 2017 WL 2912519, at *2 (S.D.N.Y. July 7, 2017)  ("The economic loss rule does not bar tort claims for fraud or intentional misrepresentation if the allegedly tortious conduct is independent of the conduct constituting a breach.").

Defendants' argument that Plaintiffs' fraud claim is duplicative of their breach of contract claims also fails.  "To maintain a claim of fraud, a plaintiff may demonstrate a fraudulent misrepresentation collateral or extraneous to the contract." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 298 (S.D.N.Y. 2015) *citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir.1996).  Further, "it is well established that a misrepresentation of present fact which is the inducement for a contract ... can support a separate fraud claim." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 279 (S.D.N.Y. 2004).  Here, Plaintiffs have clearly alleged that they were fraudulently induced into the very contracts which Defendants claim bar their claims.  As such, the economic loss doctrine is inapplicable.

Even if the economic loss doctrine did apply, it would not bar Plaintiffs' fraud claims. Defendants attempt to paint the misrepresentations, inducements, and fraudulent statements that form the core of Plaintiffs' fraud claims as claims that Plaintiffs did not get the benefit of the bargain under the Shareholder Agreement and the Stock Purchase Agreement.  That is not the crux of Plaintiffs' fraud claims.  The FAC alleges that Defendants made statements in order gain a position of trust with Plaintiffs, induce Plaintiffs into allowing Defendants to invest in their business, and using the control they gained over Plaintiffs' business to run it into the ground and enrich themselves with the pieces of the business.  (FAC ¶¶ 134-53.)  These are harms separate

from any harms governed by the Shareholder Agreement and the Stock Purchase Agreement.

Defendants have not provided any law supporting the application of the economic loss doctrine to Plaintiffs' claims for breach of fiduciary duty, unjust enrichment, misappropriation of corporate assets, mismanagement and waste, and conversion.  That is because it does not.  *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 160 (S.D.N.Y. 2018) (refusing to apply the economic loss doctrine to a breach of fiduciary duty claim arising outside of the product liability context because "it is unlikely that the New York Court of Appeals would apply it.").

Finally, there is no breach of contract cause of action that bars Plaintiffs' claims for fraud, breach of fiduciary duty, unjust enrichment, misappropriation of corporate assets, mismanagement and waste, and conversion could be duplicative of.  Indeed, the claims for fiduciary duty, unjust enrichment, misappropriation of corporate assets, mismanagement and waste, and conversion are all derivative claims brought on behalf of Nominal Defendant Gooberry and not Plaintiffs individually.

### 4.    Plaintiffs' Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Should Not Be Dismissed

"It is axiomatic that implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance."  *ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 521 (S.D.N.Y. 2003).  The purpose of the implied covenant of good faith is to further an agreement by protecting a promisee against "breach of the reasonable expectations and inferences otherwise derived from the agreement."  *TVT Records and TVT Music, Inc. v. The Island Def Jam Music Group,* 244 F.Supp.2d 263, 278 (S.D.N.Y.2003).

The core of Defendants' argument is that Plaintiffs' claim for breach of the implied covenant is a contract claim in disguise.  While, there is some case law stating that a claim for breach of the implied covenant cannot exists where there is also a claim for breach of contract.

Here, there is no standalone breach of contract claim.  Thus, Plaintiffs' cause of action for breach of the implied covenant is not duplicative.

Moreover, a breach of implied covenant claim will survive where a contract gives one party sole discretion over an issue.  Indeed, "New York courts have imposed an implied covenant of good faith to terms granting sole discretion to one party to a contract."  *deCiutiis v. Nynex Corp.*, No. 95 CIV. 9745 (PKL), 1996 WL 512150, at *3 (S.D.N.Y. Sept. 9, 1996).[8]

In these situations, "the implied covenant mandates that the party exercise such discretion in good faith, rather than in an arbitrary or irrational manner." *In Touch Concepts v. Cellco P'ship*, 949 F. Supp. 2d 447, 470 (S.D.N.Y. 2013).  This is because "the phrase sole discretion is not necessarily the equivalent of for any reason whatsoever, no matter how arbitrary or unreasonable." *deCiutiis*, 1996 WL 512150 at *3 *citing Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1154 (D.C.Cir.1984).  Here, the Shareholder Agreement gave Lemonis and ML Retail the sole discretion to manage and control Gooberry's bank accounts, open certain retail locations and control Gooberry's revolving line of credit with the Lemonis Entities.  (FAC ¶¶ 160-161, Ex. 2 at § 2.) Lemonis and ML Retail were obligated to exercise that discretion in good faith.  As alleged in the FAC, Defendants breached the implied covenant by failing to exercise their discretion in good faith.  (FAC ¶¶ 160-161.)  Therefore, Plaintiffs' FAC should not be dismissed.

### 5.    Plaintiffs' Unjust Enrichment Claim Is Not Barred By Contract

Rule 8 allows parties to plead in the alternative. Fed. R. Civ. Pro. 8 (d).  Here, the FAC makes it clear that Plaintiffs' unjust enrichment claim has been brought in the alternative to its

---

[8]     *See also Cross & Cross Properties, Ltd. v. Everett Allied Co.,* 886 F.2d 497, 502 (2d Cir.1989) ("Since the duty of good faith and fair dealing is implied in every contract, contracting parties' fields of discretion under a contract are bounded by the parties' mutual obligation to act in good faith."); *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 231 (2d Cir. 1991); *Components Direct, Inc. v. European Am. Bank & Trust,* 175 A.D.2d 227, 229–30, 572 N.Y.S.2d 359, 361 (App.Div.1991).

contract based claims—though, again, Plaintiffs have not brought a claim for breach of contract. (FAC ¶ 164.)

Defendants' motion unsuccessfully tries to skirt around the fact that, "[p]articularly where, as here, there are allegations of fraud in the inducement and a dispute as to whether a valid contract exists, parties can and routinely do plead in the alternative fraud, unjust enrichment, and breach of contract. *Burton v. Iyogi, Inc.*, No. 13-CV-6926 DAB, 2015 WL 4385665, at \*11 (S.D.N.Y. Mar. 16, 2015); *Net2Globe Int'l, Inc., v. Time Warner Telecom of N.Y.,* 273 F.Supp.2d 436, 466 (S.D.N.Y.2003) ("The dispute over the validity of [the] contracts permits [plaintiff] to assert unjust enrichment as an alternative to breach of contract, and ... unjust enrichment may serve as a basis for recovery should a trier of fact determine that, in fact, no valid contract was formed or that the contractual obligations did not encompass the events underlying ... [plaintiff]'s unjust enrichment claim."); *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 100 (2010) ("[A] claim for unjust enrichment is not duplicative of a breach of contract claim where the plaintiff alleges that the contracts were induced by fraud.").  Because Plaintiffs are seeking to invalidate the relevant contracts as induced by fraud, their claim for unjust enrichment is not duplicative and should not be dismissed.

### E.   Plaintiffs' RICO Claim Should Not Be Dismissed

Plaintiffs have properly alleged civil RICO against Defendants.  Under the RICO statutes, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  Section 1962(d) makes it "unlawful for any person to conspire to violate ... the provisions of subsection ... (c)."  18 U.S.C. § 1962(d).  "When

§ 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees." *DLJ Mortg. Capital, Inc. v. Kontogiannis,* 726 F.Supp.2d 225, 236 (E.D.N.Y.2010) (citing 18 U.S.C. § 1964(c)). Specifically, RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). "From this language, courts have extracted the conditions a plaintiff must meet to satisfy RICO's standing requirements: (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767 (2d Cir.1994).

Although civil RICO presents hurdles for a plaintiff to overcome, the Supreme Court has also "made clear that it would not interpret civil RICO narrowly." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,* 268 F.3d 103, 139 n. 6 (2d Cir.2001) *citing Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985).

Defendants argue that Plaintiffs cannot allege an "enterprise" because the Defendants are one "unified corporate structure." As an initial matter, this argument fails as to Defendant Lemonis. As a natural person, Lemonis is legally district from the corporate defendants. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that."); *Elsevier, Inc. v. Grossman*, 199 F. Supp. 3d 768, 780 (S.D.N.Y. 2016) (holding that even if the corporate entity were an "improper defendant, that would not change the fact that Plaintiffs raised a proper RICO claim against" the individual and sole officer of the entity.).

Moreover, the enterprise alleged is not just the corporate amalgamation of Lemonis' limited liability companies.  It includes the Lemonis Defendants' employees and other agents, Machete, and its employees and other agents.  Indeed, "a defendant may be a RICO 'person' and one of a number of members of the RICO 'enterprise.'"  *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994).  To be sure, there need not be "complete overlap of RICO persons and RICO enterprises.  Rather, the core question is whether the RICO enterprise is distinct from each of the RICO persons, in which case it satisfies the distinctness requirement or if the RICO enterprise is deemed associated with itself, which is not permissible." *Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 454 (S.D.N.Y. 2018).

The FAC's allegations of alter ego do not doom Plaintiffs' RICO claims.  Indeed, a complaint may allege that parties are alter egos and district entities under RICO.  *Moses v. Martin*, 360 F. Supp. 2d 533, 546–47 (S.D.N.Y. 2004) (denying to dismiss RICO claims where the plaintiff alleged the two defendants were alter egos, stating such pleading "however, does not preclude plaintiff from pleading both theories, even though they are mutually exclusive.  Under Rule 8 (e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency.").

Further, while Machete, may be the agent of the Lemonis Defendants, it does not exist solely to further the Lemonis Defendants' businesses.  Indeed, as set forth in Machete's Motion to Dismiss, it also produces "the unscripted series *WAGs* (LA, Miami and Atlanta), *Relatively Nat & Liv*, *Back in the Game*, and *Dirty Soap*."  (Dkt. No. 50 at p. 8.)  Thus, this is not a situation where Machete is only carrying out the "regular affairs of" the Lemonis Defendants operating a single corporate structure.  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013).

The FAC has also properly alleged the pattern of racketeering activity of mail fraud and wire fraud.  To state a claim for mail and wire fraud, a plaintiff must allege: "(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire, mail, or television communications in interstate commerce in furtherance of the scheme." *Chanayil v. Gulati,* 169 F.3d 168, 170–71 (2d Cir.1999).  In short, a RICO complaint must provide "a detailed description of the underlying [fraudulent] scheme and the connection of the mail and/or wire communications to the scheme."  *In re Sumitomo Copper Litig.,* 995 F.Supp. 451, 456 (S.D.N.Y.1998).

Further, to prove mail or wire fraud, "it is not necessary to show that [defendants] actually mailed [or wired] ... anything themselves."  *Pereira v. United States,* 347 U.S. 1, 8 (1954).  Instead, "it is sufficient if [defendants] caused it to be done."  *Id.*  Moreover, "where the mails or wires are used in furtherance of fraud, the communications need not contain false or misleading information themselves."  *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 479 (S.D.N.Y. 2015); *see Schmuck v. United States,* 489 U.S. 705, 715 (1989) ("It is sufficient for the mailing [or transmission] to be incident to an essential part of the scheme or a step in the plot.").  To be sure, "to prove a violation of 18 U.S.C. § 1341, one need only show that a defendant was one of the participants in a scheme to defraud, and that the mails were used in furtherance of that scheme."  *Martin*, 137 F. Supp. 3d at 479.

Here, the FAC includes allegations which make clear that Defendants used mails, wires, and television in furtherance of their fraudulent scheme.  The FAC alleges that the Lemonis Enterprise used the mails and wires in connection with the transaction that allowed the Lemonis Enterprise to gain an ownership stake in and control over their business.  (FAC ¶¶ 69, 203.)  This transaction was undoubtedly part of the Lemonis Enterprises' scheme to defraud small businesses

and take their assets, goodwill, and established business relationships for themselves.  The FAC also discusses several other transactions involving the communications made via mails, wires, and television that were conducted in furtherance of the Lemonis Enterprises' scheme.  (*Id.* ¶¶ 85-88.)

Additionally, the FAC alleges that the Lemonis Enterprise consistently maintained a website and ran advertising which contained false misrepresentations the Lemonis helped small businesses that appeared on the show when in reality the Lemonis Defendants were dismantling them for their own benefit.  (*Id.* ¶ 203.)

Plaintiffs also detail the misrepresentations that Machete made to them via Skype in the spring of 2014.  These are specific misrepresentations that Lemonis would actually help their business, that the deals reached on the show are real, and that businesses that had appeared on the show are thriving.  (*Id.* ¶¶ 51, 203.)  Thus, there is not merely one well plead allegation of mail and wire fraud.  Instead, Plaintiffs FAC includes several allegations that make clear that the Lemonis Enterprise used the mails, wires, and television in furtherance of their fraudulent scheme to defraud and take over small businesses.  Thus, Plaintiffs' RICO claim should not be dismissed.

F.     **Plaintiffs' Equitable Claims Should Not Be Dismissed**

Plaintiffs' causes of action for a receiver, injunction, and dissolution are proper claims that should not be dismissed.  C.P.L.R. § 6301 provides Plaintiffs with a right to a preliminary injunction and C.P.L.R. § 6401(a) provides Plaintiffs with a right to the appointment of a receiver.  When these rights are pursued in federal court, they are a cause of action and a remedy.  *United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 255 n.4 (S.D.N.Y. 2012).  Moreover, N.Y. Bus. Corp. Law § 1104-a gives Plaintiffs the right to petition the Court for dissolution.  This is undoubtedly an affirmative claim and not a remedy.  As such Plaintiffs' equitable claims should not be dismissed.

## **LEAVE TO AMEND**

Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15 (a)(2). This is a liberal standard and "is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Thus, leave to amend is properly granted "when factors such as undue delay or undue prejudice to the opposing party are absent." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004).

None of Defendants' arguments that leave to amend should be denied hold water. As discussed above, Plaintiffs have not engaged in any improper claim splitting and the claims in the FAC are not actually subject to any venue provisions. Thus, Defendants' arguments that this claim has been brought in bad faith fall flat.

Also, Defendants have not pointed to any case law limiting a plaintiff to only one amendment of their claims. This is not the situation where Plaintiffs have had multiple opportunities to amend or guidance from the Court on any potential issues with the claim. As such, Plaintiffs' previous amendment of the complaint should not prevent them from further amendment. Again, Rule 15 requires that leave to amend be freely given. Thus, to the extent the Court finds merit in Defendants' motion, Plaintiffs should be granted leave to amend.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety, and to the extent the Court grants any portion of Defendants' motion, Plaintiffs request leave to amend.

Dated: November 20, 2020                    Gerard Fox Law P.C.


                                            /s/ Maja Lukic
                                            Gerard P. Fox (admitted *pro hac vice*)
                                            Maja Lukic (SBN 4888038)
                                            1345 Sixth Avenue, 33rd Floor
                                            New York, New York 10105
                                            Telephone: (646) 690-4980
                                            Facsimile: (646) 368-9328
                                            gfox@gerardfoxlaw.com
                                            mlukic@gerardfoxlaw.com

                                            Lauren M. Greene (admitted *pro hac vice*)
                                            1880 Century Park East, Suite 1410
                                            Los Angeles, California 90067
                                            Telephone: (310) 441-0500
                                            Facsimile: (310) 441-4447
                                            lgreene@gerardfoxlaw.com