**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICOLAS GOUREAU and STEPHANIE MENKIN, individually and derivatively on behalf of GOOBERRY CORP., a New York corporation, | : : : : |
| Plaintiffs, | : Civil Action No. 20-cv-4691-MKV |
| | : |
| v. | : : |
| MARCUS LEMONIS, an individual, ML RETAIL, LLC, a Delaware limited liability company, and MARCUS LEMONIS, LLC, a Delaware limited liability company, and MACHETE CORPORATION d/b/a/ MACHETE PRODUCTIONS, a California corporation, | : : : : : : |
| Defendants, and | : : : : |
| GOOBERRY CORP., a New York corporation, | : : |
| Nominal Defendant. | : : : |

**PLAINTIFFS NICOLAS GOUREAU AND STEPHANIE MENKIN'S**
**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MACHETE**
**CORPORATION'S MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

LEGAL STANDARD............................................................................................. 2

ARGUMENT ....................................................................................................... 3

    A.  This Court Should Not Dismiss This Action For Lack Of Jurisdiction.................. 3

    B.  Plaintiffs Have Plead Fraudulent Inducement ........................................... 5

    C.  Plaintiffs' RICO Claims Should Not Be Dismissed ................................... 9

    D.  Plaintiffs' Claims Are Not Barred By The Statute Of Limitations........................ 13

    E.  Plaintiffs' Equitable Claims Should Not Be Dismissed ........................................ 14

    F.  Plaintiffs Have Properly Plead Agency ................................................... 15

THE COURT SHOULD NOT TRANSFER THE CLAIMS AGAINST MACHETE..... 16

LEAVE TO AMEND ............................................................................................ 19

CONCLUSION.................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Key Tronic Corp.*,
  94 Civ. 0535 (MBM), 1996 U.S. Dist. LEXIS 19244 (S.D.N.Y. Dec. 31, 1996) .................. 16

*Amusement Indus., Inc. v. Stern*,
  693 F. Supp. 2d 327(S.D.N.Y. 2010)...................................................................................... 15

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009)..................................................................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 3

*Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
  268 F.3d 103 (2d Cir.2001)..................................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 3

*Bertuglia v. City of New York*,
  839 F. Supp. 2d 703 (S.D.N.Y. 2012)...................................................................................... 3

*Brosnan v. Dry Cleaning Station Inc.*,
  No. C-08-02028 EDL, 2008 WL 2388392 (N.D. Cal. June 6, 2008) ....................................... 5

*Cosmas v. Hassett*,
  886 F.2d 8 (2d Cir. 1989)......................................................................................................... 6

*Delamater v. Anytime Fitness, Inc.*,
  722 F. Supp. 2d 1168 (E.D. Cal. 2010).................................................................................... 4

*Dep't of Fair Employment & Hous. v. Law Sch. Admission Council Inc.*,
  896 F. Supp. 2d 849 (N.D. Cal. 2012) ..................................................................................... 4

*Deswal v. U.S. Nat. Ass'n*,
  603 F. App'x 22 (2d Cir. 2015) ............................................................................................... 13

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987)................................................................................................... 5

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  726 F.Supp.2d 225(E.D.N.Y.2010) ....................................................................................... 10

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................................. 9

*Elbit Sys., Ltd. v. Credit Suisse Grp.*,
   917 F. Supp. 2d 217 (S.D.N.Y. 2013)........................................................................ 15

*Essex Capital Corp. v. Garipalli*,
   No. 17 CIV. 6347 (JFK), 2018 WL 6618388 (S.D.N.Y. Dec. 18, 2018) ........................ 13, 14

*Factors Etc., Inc. v. Pro Arts, Inc.*,
   579 F.2d 215 (2d Cir.1978)...................................................................................... 18

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   783 F.3d 395 (2d Cir. 2015)................................................................................... 8, 9

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir.1994)...................................................................................... 10

*GenopsGroup LLC v. Pub. House Investments LLC*,
   67 F. Supp. 3d 338 (D.D.C. 2014) ........................................................................... 4

*Gutkowski v. Steinbrenner*,
   680 F. Supp. 2d 602 (S.D.N.Y. 2010)....................................................................... 13

*Hamzaraj v. ABM Janitorial Ne. Inc.*,
   No. 15 CIV. 2030 (ER), 2016 WL 3571387 (S.D.N.Y. June 27, 2016)................................. 4

*Heyco v. Heyman*,
   636 F. Supp. 1545 (S.D.N.Y.1986)........................................................................... 17

*Huang v. Siam Commercial Bank Pub. Co.*,
   247 F. App'x 299 (2d Cir. 2007) ............................................................................. 13

*Hyung Jin Moon v. Hak Ja Han Moon*,
   431 F. Supp. 3d 394 (S.D.N.Y. 2019)........................................................................ 12

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
   538 U.S. 600 (2003)............................................................................................. 13

*In re Merrill Lynch Ltd. P'ships Litig.*,
   154 F.3d 56 (2d Cir. 1998).................................................................................... 14

*In re S. African Apartheid Litig.*,
   617 F. Supp. 2d 228 (S.D.N.Y. 2009)....................................................................... 13

*Jackson v. Onondaga Cty.*,
   549 F. Supp. 2d 204 (N.D.N.Y. 2008)........................................................................ 3

*John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors, Inc.*,
   22 F.3d 51 (2d Cir.1994)....................................................................................... 17

*Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*,
   290 F.3d 1287 (11th Cir. 2002) ......................................................................... 5

*Laub v. Faessel*,
   297 A.D.2d 28 (1st Dep't 2002) ....................................................................... 8

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015)............................................................................... 3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)............................................................................. 19

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972).............................................................................................. 5

*Mattel, Inc. v. Robarb's, Inc.*,
   139 F.Supp.2d 487 (S.D.N.Y.2001)................................................................ 18

*Minnie Rose LLC v. Yu*,
   169 F. Supp. 3d 504 (S.D.N.Y. 2016).............................................................. 5

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999)............................................................................ 12

*Moss v. BMO Harris Bank, N.A.*,
   258 F. Supp. 3d 289 (E.D.N.Y. 2017)............................................................ 10

*Nat'l Org. for Women, Inc. v. Scheidler*,
   510 U.S. 249 (1994)................................................................................... 10, 12

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Konvalinka*,
   No. 10 CIV. 9355(AKH), 2011 WL 13070859 (S.D.N.Y. Mar. 17, 2011) ............................. 5

*New York Islanders Hockey Club, LLP v. Comerica Bank--Texas*,
   71 F. Supp. 2d 108 (E.D.N.Y. 1999) ................................................................ 7

*Ouaknine v. MacFarlane*,
   897 F.2d 75 (2d Cir. 1990)................................................................................ 7

*Pecorino v. Vutec Corp.*,
   934 F. Supp. 2d 422 (E.D.N.Y. 2012) ............................................................ 18

*Plumley v. Massachusetts*,
   155 U.S. 461 (1894)........................................................................................ 13

*Posven, C.A. v. Liberty Mut. Ins. Co.*,
   303 F.Supp.2d 391 (S.D.N.Y.2004)................................................................ 18

*Precision Orthopedic Implants Inc. v. Limacorporate S.P.A.*,
    16-cv-2945-ODW, 2016 WL 7378878 (C.D. Cal. Dec. 20, 2016)........................................ 13

*Rana v. Islam*,
    305 F.R.D. 53 (S.D.N.Y.2015) ........................................................................................ 6

*Reliance Ins. Co. v. Six Star, Inc.*,
    155 F. Supp. 2d 49 (S.D.N.Y. 2001)............................................................................... 17

*Robinson v. Deutsche Bank Tr. Co. Americas*,
    572 F. Supp. 2d 319 (S.D.N.Y. 2008)............................................................................... 5

*S.K. & Co. v. Legacy Grp. of Am., Inc.*,
    No. 95 Civ. 6748 (HB), 1996 WL 5072 (S.D.N.Y. Jan. 5, 1996)................................ 17, 18

*Sabo v. Delman*,
    3 N.Y.2d 155 (1957) ........................................................................................................ 6

*Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*,
    No. 17-CV-07076-LHK, 2019 WL 2569545, (N.D. Cal. June 21, 2019) ............................ 4

*SCS Commc'ns, Inc. v. Herrick Co.*,
    360 F.3d 329 (2d Cir. 2004)............................................................................................ 19

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)........................................................................................................ 10

*Shields v. Citytrust Bancorp. Inc.*,
    25 F.3d 1124 (2d Cir.1994)............................................................................................... 7

*Skanga Energy & Marine Ltd. v. Arevenca S.A.*,
    875 F. Supp. 2d 264 (S.D.N.Y. 2012)............................................................................. 15

*Stamelman v. Fleishman-Hillard, Inc.*,
    No. 02 CIV.8318 SAS, 2003 WL 21782645 (S.D.N.Y. July 31, 2003).............................. 7

*Stewart Organization, Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988).......................................................................................................... 18

*Stewart v. Jackson & Nash*,
    976 F.2d 86 (2d Cir. 1992)................................................................................................ 6

*Tattoo Art, Inc. v. Tat Int'l, LLC*,
    711 F. Supp. 2d 645 (E.D. Va. 2010) ................................................................................ 4

*U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*,
    No. 19-cv-7884 (MKV), 2020 U.S. Dist. LEXIS 85177 (S.D.N.Y. May 14, 2020) ............ 3

*United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*,
    866 F. Supp. 2d 247 (S.D.N.Y. 2012)..................................................................... 14

*United States v. Rybicki*,
    354 F.3d 124 (2d Cir. 2003).................................................................................. 13

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011).................................................................................. 19

**Statutes**

18 U.S.C. § 1341 ........................................................................................................ 11

18 U.S.C. § 1962 ........................................................................................................ 10

18 U.S.C. § 1964 ........................................................................................................ 10

28 U.S.C. § 1391 ........................................................................................................ 16

28 U.S.C. § 1404 ........................................................................................................ 18

Cal. Code of Civ. P. § 338 ......................................................................................... 13

New York Bus. Corp. Law § 1104 ............................................................................. 14

New York C.P.L.R. § 6301 ......................................................................................... 14

New York C.P.L.R. § 6401 ......................................................................................... 14

New York C.P.L.R. §213 ............................................................................................ 13

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 2

Fed. R. Civ. P. 9 .......................................................................................................... 5

Fed. R. Civ. P. 12 ................................................................................................... 3, 15

Fed. R. Civ. P. 15 ...................................................................................................... 19

## PRELIMINARY STATEMENT

Plaintiffs Nicolas Goureau ("Goureau"), Stephanie Menkin ("Menkin") (collectively, "Plaintiffs"), hereby submit their memorandum of law in opposition to Defendant Machete Corporation d/b/a/ Machete Productions' ("Machete") Motion to Dismiss.  As set forth below, Plaintiffs have properly alleged the claims in their First Amended Complaint ("FAC") and Machete's motion should be denied.[1]

## STATEMENT OF FACTS

The facts of this case are fully set forth in Plaintiffs' FAC, a brief summary is provided herein.  For years Plaintiffs ran a successful retail business that focused on high end women's fashion.  (FAC ¶¶ 31-38.)  Plaintiffs were looking to take their business to the next level and were trying to find an investor with experience with family owned businesses and retail stores.  (*Id*. ¶ 37.)  Unfortunately, that is the exact persona that Defendant Marcus Lemonis ("Lemonis") portrays on the show "The Profit," produced by Defendant Machete.

In 2014, Plaintiffs' store Courage.B, owned by Nominal Defendant Gooberry Corp. ("Gooberry") appeared on an episode of the show.  In order to get Plaintiffs to appear on the show Defendants made several misrepresentations to Plaintiffs.  Defendant Machete conducted Skype calls with Plaintiffs telling them that Lemonis truly helps the businesses that appeared on the show and that he could and would help their business go to the next level.  (*Id*. ¶¶ 48-51.)  All Defendants worked to create Lemonis' persona, advertising, and marketing for the show which included false representations that Lemonis helped the businesses that appeared on the show.  (*Id*. ¶¶ 38-42, 201, 203.)  Based on Defendants' representation, Plaintiffs agreed to appear on the show.  (*Id*. ¶¶ 38-

---

[1] All internal alterations, quotation marks, footnotes and citations herein are omitted and all emphasis is added unless otherwise noted.  All "Ex." References are to the documents attached to Plaintiffs' First Amended Complaint.

1

42, 48-51, 201, 203.)

While the show was filming, Machete, as the producer of on the show, along with the other Defendants continued making misrepresentations to Plaintiffs in order to induce them into a business relationship with Lemonis and his entities ML Retail, LLC ("ML Retail") and Marcus Lemonis, LLC ("ML, LLC"), (collectively with Lemonis, the "Lemonis Defendants"). (*Id*. ¶¶ 53-63, 67-68.) Machete and the Lemonis Defendants kept Plaintiffs in the dark about the renovations and changes being made to their business, and did not tell Plaintiffs they were greatly exceeding the previously agreed upon budget for the work. (*Id*.) When Plaintiffs learned about the exorbitant costs, Lemonis stated that if Plaintiffs wanted out they would have to pay back all of the money the Lemonis Entities had spent without Plaintiffs' permission—something Plaintiffs simply could not afford to do. (*Id*.) Thus, when it came time to paper the deal, Plaintiffs believed they had no choice but to move forward. (*Id*. ¶ 65.) As detailed in the FAC, Machete played a large role in the false representations made to Plaintiffs before and during the filming of the show, all with the intent that the Lemonis Defendants actually invest in Plaintiffs' business.

Defendant ML Retail purchased an interest in Gooberry and the Shareholder Agreement gave Lemonis and ML Retail nearly unbridled control over the company. (*Id*. ¶¶ 70-74.) As detailed extensively in the First Amended Complaint ("FAC"), Defendants used this power over Gooberry to drown it in debt, mismanage the company, and misappropriate its assets. (*Id*. ¶¶ 75-120.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must give the defendant fair notice of what the plaintiff's claim is and the grounds

upon which it rests." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 212 (N.D.N.Y. 2008). Rule 12 (b)(6) allows a defendant to bring a motion to dismiss the claim for failing to meet this standard. Fed. R. Civ. P. 12 (b)(6).

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) where the plaintiff has plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In viewing the complaint, a court accepts "all factual allegations in the complaint as true and draws all inferences in the plaintiff's favor." *U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, No. 19-cv-7884 (MKV), 2020 U.S. Dist. LEXIS 85177, at *4 (S.D.N.Y. May 14, 2020) (Vyskocil, M) *citing Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015); *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) ("The Court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff."). The court's role at this stage is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012). Under this standard, Defendants' motion should be denied.

## ARGUMENT

### A.    This Court Should Not Dismiss This Action For Lack Of Jurisdiction

Machete claims that this case should be dismissed because of a mandatory mediation clause. However, the mediation clause at issue is permissive, not mandatory. The clauses at issue in Goureau and Menkin's agreements state, in relevant part, "THE PARTIES AGREE TO ENDEAVOR FIRST TO SETTLE THE CONTROVERSY OR CLAIM BY MEDIATION."

(Dkt. No. 51-1 at p. 9; Dkt. No. 51-2 at p. 9.)  The use of the permissive work "endeavor" without a mandatory word such as "shall" or "must" indicates that the clause is not mandatory.  *See GenopsGroup LLC v. Pub. House Investments LLC*, 67 F. Supp. 3d 338, 343 (D.D.C. 2014) (describing a similar mediation provision as permissive, but determining mediation was mandatory because of the use of the word "shall" in another provision discussing mediation.); *see also Dep't of Fair Employment & Hous. v. Law Sch. Admission Council Inc.*, 896 F. Supp. 2d 849, 864 (N.D. Cal. 2012) (describing the word "endeavor" as permissive.)  Indeed, the mediation provision itself contemplates the situation where, as here, a party would file a lawsuit without first engaging in mediation stating, "NOTWITHSTANDING THE FOREGOING, IF ANY PARTY FILES SUIT IN COURT, THE OTHER PARTY OR PARTIES NEED NOT DEMAND MEDIATION TO ENFORCE THE RIGHT TO COMPEL ARBITRATION."  (Dkt. No. 51-1 at p. 9; Dkt. No. 51-2 at p. 9.)

The cases relied on by Machete all have mediation clauses with much stronger mandatory language than found in the agreements here.  *Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 649–50 (E.D. Va. 2010) (mediation provision stated, "the parties ***agree to submit*** the dispute to mediation in Virginia Beach, Virginia, prior to filing any action to enforce this Agreement."); *Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, No. 17-CV-07076-LHK, 2019 WL 2569545, at *4 (N.D. Cal. June 21, 2019) (mediation provision stated that disputes "***will be submitted*** to mediation."); *Hamzaraj v. ABM Janitorial Ne. Inc.*, No. 15 CIV. 2030 (ER), 2016 WL 3571387, at *3 (S.D.N.Y. June 27, 2016) (CBA stated that, "[a]ll such claims shall be subject to the grievance and arbitration procedure."); *Delamater v. Anytime Fitness, Inc.*, 722 F. Supp. 2d 1168, 1177 (E.D. Cal. 2010) (provision stated, "[w]e each agree to enter into mediation of all disputes…prior to initiating any legal action or arbitration against the other.");

*Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008) ("[t]he Company and the Franchisee each agree to enter into mediation of all disputes."); *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1289 (11th Cir. 2002) (provision stated "the matter shall be mediated.").  As there is no mandatory mediation clause, the case should not be dismissed.

Even if the mediation clause were mandatory, it would not be applicable because the allegations in the FAC show the releases containing the mediation provision were obtained by fraud.  (FAC ¶¶ 48-51.)  In situations such as these, Courts will not enforce such agreements when they were obtained by fraud or when enforcing them would be unjust.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Konvalinka*, No. 10 CIV. 9355(AKH), 2011 WL 13070859, at *2 (S.D.N.Y. Mar. 17, 2011); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

### B.    Plaintiffs Have Plead Fraudulent Inducement

Under New York law, to sustain a claim for fraudulent inducement a plaintiff must successfully allege "(1) a knowingly false representation of a material fact and (2) detrimental reliance thereon. The false representation can be either a misrepresentation or the material omission of a fact. Reliance means 'reasonable' reliance.  *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008).  Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 511 (S.D.N.Y. 2016).  "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  To be sure, "a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which

it is based." *Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y.2015).  As discussed herein, the FAC contains allegations sufficient to give Machete fair and reasonable notice of Plaintiffs' claims against it and the grounds therefore.

Machete first argues that Plaintiffs have not alleged the "who" element of fraudulent inducement.  This is not the case.  The FAC details the statements that Machete made which form the basis for Plaintiffs' fraud claims.  Machete made representations in spring 2014 that Lemonis actually wanted to help and invest in Plaintiffs' business, that the deal made during the show would be real, that Lemonis actually helped the businesses that appeared on the show, and that the success stories shown on the show were real.  (FAC ¶¶ 49-51, 136-137.)  While the show filmed in June 2014, Machete continued making those representations, and in addition, helped to conceal the amount of money that the Lemonis Defendants were actually incurring on the renovations and repeatedly represented to Plaintiffs that they could "trust the process."  (*Id*. ¶¶ 52-58, 136-137.)  The allegations in the FAC are enough to give Machete fair and reasonable notice that statements it made in the spring and summer of 2014 during the vetting and filming process for "the Profit" form the basis of Plaintiffs' fraudulent inducement claim against it.  These statements not only fulfil the "who" element as to Machete, but also "specif[ies] the statements [Plaintiffs'] claim[] were false or misleading."  *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989) .

Moreover, these statements are actionable fraud.  Indeed, "[w]hile [m]ere promissory statements as to what will be done in the future are not actionable, ... it is settled that, *if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact* upon which an action for recision [sic] [based on fraudulent inducement] may be predicated."  *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (emphasis in original) *citing Sabo v. Delman,* 3 N.Y.2d 155, 160 (1957) (stating

that plaintiff's allegation that defendant, at the time it made a future promise, "knew it did not intend" to fulfill it, makes the alleged representation an allegation of present fact which gives rise to a claim of fraudulent inducement); *New York Islanders Hockey Club, LLP v. Comerica Bank-- Texas*, 71 F. Supp. 2d 108, 118 (E.D.N.Y. 1999) ("[A] relatively concrete representation as to a defendant's future performance, if made at a time when the speaker knows that the represented performance cannot be achieved, may ground a claim of fraud.").

The statements made by Machete and the Lemonis Defendants were not merely non-actionable puffery or forward looking statements.  Instead, they were specific statements about what the Lemonis Defendants would do and how they would help Plaintiffs' business.  (FAC ¶¶ 50-58, 136-137.)  To be sure, statements such as these have been held to be actionable fraud. *Stamelman v. Fleishman-Hillard, Inc.*, No. 02 CIV.8318 SAS, 2003 WL 21782645, at *5 (S.D.N.Y. July 31, 2003) (finding that similar statements about helping a business grow, connecting plaintiff with clients, providing adequate staffing supported claim for fraudulent inducement.).

Further, the FAC properly alleges scienter.  In the Second Circuit, scienter need not be alleged with great specificity, however, "there must be some factual basis for conclusory allegations of intent."  *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990).  "Allegations of scienter are sufficient if supported by facts giving rise to a strong inference of fraudulent intent." *Id*. at 80.  The requisite "strong inference" of fraud may be shown by alleging either: (1) facts to show that the defendant had both motive and opportunity to commit fraud, or (2) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness.  *Shields v. Citytrust Bancorp. Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).

Machete's argument on scienter seems to revolve around the idea that Machete could not

have had intent because it supposedly had no interest in whether Plaintiffs allowed the Lemonis Defendants into their business.  This argument ignores the simple fact that Machete is creating a television show that revolves around Lemonis successfully investing in small businesses.  If Machete could not convince people to go onto the show and allow Lemonis to invest in their businesses then Machete would simply not have a television show.  As such, Machete had every motive to induce Plaintiffs into appearing on the show and into allowing the Lemonis Defendants to invest in their business.  Machete would then be able to tout anther "successful investment" by Lemonis into a business featured on the show in their advertising for the show and in their pitches to other potential businesses that Machete wanted to induce to the show.

The FAC includes allegations giving rise to a strong inference of this fraudulent intent. (FAC ¶¶ 48-52, 58, 136-139.)  Indeed, the FAC alleges that Machete used examples of other businesses that Lemonis "helped" to induce Plaintiffs to appear on the show, putting the fraud in motion.  (*Id*. ¶ 51.)  The FAC alleges that Machete helped keep Plaintiffs in the dark while the Lemonis Defendants spent exorbitant amounts of money renovating the stores.  (FAC ¶ 58.)  A tactic used by the Defendants to give them financial leverage over Plaintiffs and ensure they had no choice but to allow the Lemonis Defendants to obtain an ownership stake in their businesses. (FAC ¶ 65.)

Machete's argument that it was not a cause of Plaintiffs' fraudulent inducement claim falls flat.  In pleading causation, the "plaintiff must allege both that the defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation)." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015) *citing Laub v. Faessel,* 297 A.D.2d 28 (1st Dep't 2002).

"The purpose of the loss causation element is to require a plaintiff to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind, not to make a conclusive proof of that causal link." *Fin. Guar.*, 783 F.3d at 404; *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 337 (2005) (explaining that the requirement is not intended to "impose a great burden" on a plaintiff.)

Here, the FAC properly alleges transaction causation and loss causation.  Plaintiffs' fraudulent inducement claim surrounds Defendants' inducement of Plaintiffs into letting the Lemonis Defendants invest in their business, and into the Shareholder Agreement and Stock Purchase Agreement.  The idea that Machete talking up Lemonis, telling Plaintiffs that Lemonis would actually help their business, telling Plaintiffs that the investments on the show were real, telling Plaintiffs that the results shown on the show are real, and telling Plaintiffs not to worry about the renovations made during filming of the show did not proximately cause Plaintiffs to allow Lemonis into their business and sign those agreements does pass muster.  Further, there can be no doubt that it was letting the Lemonis Defendants invest into Plaintiffs' family business which caused Plaintiffs' harm.  The FAC alleges that Machete knew its representations were false and importantly that several businesses which appeared on "the Profit" were no longer operating. (FAC ¶¶ 137- 138, 199.)  Thus, it was foreseeable to Machete that if Plaintiffs allowed the Lemonis Defendants into their business it would destroy the business.  As such, Plaintiffs have properly alleged fraudulent inducement against Machete.

### C.      Plaintiffs' RICO Claims Should Not Be Dismissed

Plaintiffs have properly alleged civil RICO against Machete.  Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it "unlawful for any person to conspire to violate ... the provisions of subsection ... (c)." 18 U.S.C. § 1962(d). "When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees." *DLJ Mortg. Capital, Inc. v. Kontogiannis,* 726 F.Supp.2d 225, 236 (E.D.N.Y.2010) (citing 18 U.S.C. § 1964(c)). Specifically, RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). "From this language, courts have extracted the conditions a plaintiff must meet to satisfy RICO's standing requirements: (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767 (2d Cir.1994).

Although civil RICO presents many hurdles for a plaintiff to overcome, the Supreme Court has also "made clear that it would not interpret civil RICO narrowly." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,* 268 F.3d 103, 139 n. 6 (2d Cir.2001) *citing Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985).

Plaintiffs have properly pled an association-in-fact enterprise between the Defendants. "An association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 298 (E.D.N.Y. 2017). To be sure, "RICO broadly defines enterprise." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 257 (1994).

Contrary to Machete's arguments, there is a common purpose among the Defendants.[2]  As discussed above, Machete and the Lemonis Defendants have the common purpose of finding business for the Lemonis Defendants to invest in and convincing those businesses to allow the Lemonis Defendants to invest in them.  Again, Machete would not have a television show if they could not convince people to be on it and if the people on the show did not allow the Lemonis Defendants to invest in their businesses.  The Lemonis Defendants then used the businesses they invested into and defrauded to increase their own assets, boost Lemonis' public persona, and make the show more successful—benefiting all Defendants.  This is a common purpose between all of the Defendants.

Machete makes a threadbare argument that the FAC does not allege any predicate acts.  However, the FAC clearly alleges that Machete has engaged in several predicate acts of mail and wire fraud, from at least July 2013 to present, of using the wires, mails, and television to make fraudulent and misleading statements and making fraudulent statements to Plaintiffs via Skype in 2014.  (FAC ¶¶ 51, 200-203.)  The FAC continues to allege predicate acts of mail and wire fraud by other participants in the Lemonis Enterprise.  (FAC ¶¶ 69, 85-88, 203.)  To be sure, "to prove a violation of 18 U.S.C. § 1341, one need only show that a defendant was one of the participants in a scheme to defraud, and that the mails were used in furtherance of that scheme."  *Martin*, 137 F. Supp. 3d at 479.  Thus, the FAC has properly alleged the predicate acts done by the Lemonis Enterprise.

As discussed above in Section B, the FAC alleges that Machete has caused Plaintiffs' injury.  Like causation for Plaintiffs' fraudulent inducement claim, claims for RICO liability for

---

[2]      In passing, Machete intimates that Plaintiffs have not plead Machete's role in the enterprise, however, the FAC very much details Machete's role in the enterprise.  (FAC ¶ 199.)

mail and wire fraud require "transaction causation, meaning that the misrepresentation must have led the plaintiffs to enter into the transactions at issue," and "loss causation, meaning that the misrepresentation must be both an actual and a proximate source of the loss that the plaintiffs suffered." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169–70 (2d Cir. 1999).

Again, Machete made false communications through wires, mails, and television that were intended to, and did induce Plaintiffs, and other small businesses, to appear on "the Profit" and allow the Lemonis Defendants into their businesses.   It is clear that without Machete's misrepresentations Plaintiffs would not have appeared on the show and would not have allowed the Lemonis Defendants into their business.   Machete's representations, made through wires, mails, and television, directly lead to Plaintiffs being defrauded.   Indeed, Machete knew this would happen (or were at least reckless to the fact that it would happen) as that several businesses which appeared on "the Profit" were no longer operating, despite Machete's representations otherwise. (FAC ¶¶ 137-138, 199.)   Thus, it is Machete's representations and involvement in the enterprise caused Plaintiffs' harms.

Machete has failed to provide any case law actually supporting its argument that the First Amendment exculpates predicate acts performed as part of a television show from RICO liability. Instead, Machete cites a concurring opinion for the general idea that courts should be aware of RICO's potential impact on the First Amendment.   *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264-65 (1994).   Notably, the case relied on by Machete for dismissal based on predicate acts based on the First Amendment deals with the First Amendment's ecclesiastical abstention doctrine, not the freedom of speech.   *Hyung Jin Moon v. Hak Ja Han Moon*, 431 F. Supp. 3d 394, 404 (S.D.N.Y. 2019).

Rather, the Second Circuit has already determined that fraud done in violation of the mail

and wire fraud statutes "enjoys no constitutional protection."   *United States v. Rybicki*, 354 F.3d 124, 150–51 (2d Cir. 2003); *see Plumley v. Massachusetts,* 155 U.S. 461, 479 (1894) ("The constitution of the United States does not secure to any one the privilege of defrauding the public."); *see also Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.,* 538 U.S. 600 (2003) (noting that fraud is not conduct protected by the First Amendment).   As such, Machete's predicate acts of mail and wire fraud are not protected by the First Amendment.

### D.     Plaintiffs' Claims Are Not Barred By The Statute Of Limitations

Machete half-heatedly claims that the statute of limitations bars Plaintiffs' claims against it because it has not engaged in any acts since 2014.  However, the affirmative defense of statute of limitations "normally cannot be decided on a motion to dismiss."  *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009).  Indeed, it is only where the defense appears on the face of the complaint that such a determination is appropriate.  *Deswal v. U.S. Nat. Ass'n*, 603 F. App'x 22, 23–24 (2d Cir. 2015).

Whether the California statute or New York statute of limitations are applied to Plaintiffs' fraud claims, neither are apparent from the face of the FAC.  "California's statute of limitations for fraudulent inducement is three years ***from the discovery of the fraud***."  *Essex Capital Corp. v. Garipalli*, No. 17 CIV. 6347 (JFK), 2018 WL 6618388, at *3 (S.D.N.Y. Dec. 18, 2018) *citing Precision Orthopedic Implants Inc. v. Limacorporate S.P.A.*, 16-cv-2945-ODW, 2016 WL 7378878, at *4 (C.D. Cal. Dec. 20, 2016); Cal. Code of Civ. P. § 338(d).  Similarly, New York's statute of limitations, "begins to run six years from the commission of the fraud or two years from discovery, ***whichever is longer***."  *Huang v. Siam Commercial Bank Pub. Co.*, 247 F. App'x 299, 301 (2d Cir. 2007); *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 615 (S.D.N.Y. 2010); NY CPLR §213(8).

Here, the FAC does not include facts that make it apparent that Plaintiffs discovered, or should have discovered, the Machete's fraud three or two years prior to filing this suit in June 2020.  *See Essex Capital Corp. v. Garipalli*, No. 17 CIV. 6347 (JFK), 2018 WL 6618388, at *3 (S.D.N.Y. Dec. 18, 2018) (denying to apply the statute of limitations on a motion to dismiss stating, "[a]s the FAC lacks any allegations from which this Court can determine the date of the fraud's discovery, there is insufficient information in the FAC to facially show noncompliance with the limitations period.").

Likewise, the limitations period for Plaintiffs' RICO cause of action begins to run when the plaintiff "discovers or should have discovered the RICO injury."  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998).  Here, it is not apparent, on the face of the FAC, that Plaintiffs discovered, or should have discovered, their claim more than three years before the filing of this suit.  As such, dismissal pursuant to the statute of limitations would be improper.

### E.    Plaintiffs' Equitable Claims Should Not Be Dismissed

Plaintiffs' causes of action for a receiver, injunction, and dissolution are proper claims that should not be dismissed.  In passing, Machete argues that these claims should be dismissed because they are remedies, however, that does not warrant their dismissal.  C.P.L.R. § 6301 provides Plaintiffs with a right to a preliminary injunction and C.P.L.R. § 6401(a) provides Plaintiffs with a right to the appointment of a receiver.  When these rights are pursued in federal court, they are a cause of action and a remedy.  *United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 255 n.4 (S.D.N.Y. 2012).  Moreover, N.Y. Bus. Corp. Law § 1104-a gives Plaintiffs the right to petition the Court for dissolution.  This is undoubtedly an affirmative claim and not a remedy.  Machete also argues that these should be dismissed because Machete had no involvement with Plaintiffs after 2014.  However, the allegations in the FAC, taken as true,

properly state these claims against Machete.  As such Plaintiffs' equitable claims should not be dismissed.

### F.  Plaintiffs Have Properly Plead Agency

To establish an agency relationship, a complaint must plead only "facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent.  In addition, the principal must maintain control over key aspects of the undertaking." *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 225 (S.D.N.Y. 2013); *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012) ("To adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority.").  "[C]ourts have recognized that to survive a motion to dismiss under 12(b)(6) on this issue, a plaintiff need only raise a sufficient inference that some sort of agency relationship existed between the purported principal and agent. *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010).

Machete's argument that the FAC only contains cursory allegations of agency ignores the plethora of allegations regarding Machete's agency relationship with the Lemonis Defendants. Indeed, the FAC has numerous facts, taken together, which allow a reasonable inference that the Lemonis Defendants gave Machete actual authority to act on their behalf in recruiting people and businesses, including Plaintiffs, to appear on "The Profit" and convince them to allow the Lemonis Defendants to invest in their business.  The FAC alleges that Machete was the production company for the show "The Profit."  (FAC ¶ 47.)  As part of that role, Machete searched for, interviewed, and screened potential people and small businesses for the show.  (*Id*. ¶¶ 47-50.)  To be sure, these were businesses that the Lemonis Defendants were supposed to invest in.  (*Id*.)  The FAC alleges

that Machete was authorized to make representations to potential participants, and the general public, about the Lemonis Defendants in order to entice people to apply for the show.  (*Id.* ¶¶ 47-48.)  The FAC alleges that Machete was authorized to vet applicants for the show.  (*Id.* ¶¶ 47-51.) The FAC alleges that Machete was authorized to make several representations to Plaintiffs while they filmed the show in order to get Plaintiffs to "trust the process" and allow the Lemonis Defendants to make unchecked renovations and changes to their retail stores which eventually entrapped Plaintiffs into allowing the Lemonis Defendants to invest in their company.  (*Id.* ¶¶ 51-58.)  These are more than just cursory allegations of agency.  Moreover, the idea that there was no agency relationship between Machete, the entity finding participants and small businesses for "the Profit," and the Lemonis Defendants who then invested in the small businesses Machete located is implausible.  As such, the FAC has successfully plead an agency relationship between Machete and the Lemonis Defendants.

### THE COURT SHOULD NOT TRANSFER THE CLAIMS AGAINST MACHETE

Venue is proper in this district.  This district is where the actions that gave rise to Plaintiffs' claims took place.  Under 28 U.S.C. § 1391(b), an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b).  Here, that is the Southern District of New York.  As alleged in the FAC, Gooberry maintained its principal offices in New York, that is where a substantial part of the events giving rise to this claim took place.  As this district has a connection to Plaintiffs' claims, dismissal would be improper.  *See Adams v. Key Tronic Corp.*, 94 Civ. 0535 (MBM), 1996 U.S. Dist. LEXIS 19244, at *10 (S.D.N.Y. Dec. 31, 1996) ("Thus, so long as there is some connection between the chosen venue and the facts or issues of the case, plaintiffs' choice of forum will be disturbed only if the other factors weigh strongly in

favor of transfer.").

Machete's reliance on the forum selection clause in the release agreements does not change this fact.  Much like the mediation clause discussed above, the forum selection clauses in Goureau and Menkin's releases are both permissive as opposed to mandatory.[3]  The clause at issue states, "the parties submit to the *in personam* jurisdiction of the Los Angeles County Superior Courts and the United States District Court for the Central District of California."  (Dkt. No. 51-1 at p. 9; Dkt. No. 51-2 at p. 9.)  Courts interpreting this type of forum selection clause have found it to be permissive as opposed to mandatory.  This is because "an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." *John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors, Inc.,* 22 F.3d 51, 53 (2d Cir.1994) (holding a forum-selection clause to be permissive which stated that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts"); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 58 (S.D.N.Y. 2001) (clause stating the parties "will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court [sic] jurisdiction" was permissive.); *Heyco v. Heyman,* 636 F. Supp. 1545 (S.D.N.Y.1986) (clause that stated "the parties expressly hereby submit to the personal jurisdiction of the courts of original jurisdiction of the State of New Jersey for resolution of all disputes arising under this Agreement" was permissive.); *S.K. & Co. v. Legacy Grp. of Am., Inc.*, No. 95 Civ. 6748 (HB), 1996 WL 5072, at *1 (S.D.N.Y. Jan. 5, 1996) (finding clause providing "that plaintiffs will submit to the

---

[3]      The only potentially mandatory clause, cited in Machete's brief, is found in Gooberry's release alone. Gooberry is a nominal Defendant which does not impact jurisdiction.  Plaintiffs, individually are not parties to that agreement and enforcing the forum selection clause therein against Plaintiffs would be improper.  This is especially true considering Plaintiffs' own agreements have permissive forum selection clauses.

jurisdiction of" particular courts was permissive.).

Indeed, "Where the language of the forum selection clause is permissive, the parties have consented to jurisdiction in that forum but have not waived their right to bring an action in another forum that has jurisdiction." *S.K. & Co.*, 1996 WL 5072 at *1.

Because the forum selection clause is not mandatory, an analysis of the 28 U.S.C. § 1404(a) factors of transferring venue. Under a section 1404(a) analysis, courts determine motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). The moving party has the burden of establishing that transfer is appropriate. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978).

First, the court must determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. *Mattel, Inc. v. Robarb's, Inc.,* 139 F.Supp.2d 487, 490 (S.D.N.Y.2001). In conjunction with this first step, before a court "can properly transfer a case involving multiple defendants, it must first be determined that all defendants would have been subject to personal jurisdiction in the transferee court *at the time the case was originally filed*." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 430–31 (E.D.N.Y. 2012) (emphasis in original) *citing Posven, C.A. v. Liberty Mut. Ins. Co.,* 303 F.Supp.2d 391, 401 (S.D.N.Y.2004) ("[A]n action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court."). Here, Machete, who has the burden of showing transfer would be appropriate, has made absolutely no showing that all Defendants would be subject to personal jurisdiction in the Central District of California. Having failed to show the first step in the analysis to transfer venue, Machete's request to transfer

must be denied.

## **LEAVE TO AMEND**

Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This is a liberal standard and "is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).  Thus, leave to amend is properly granted "when factors such as undue delay or undue prejudice to the opposing party are absent." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004).

Here, there would be no undue delay or prejudice if Plaintiffs are allowed to amend the FAC.  Thus, to the extent the Court finds merit in Machete's motion, Plaintiffs should be granted leave to amend.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Machete's motion in its entirety, and to the extent the Court grants any portion of Machete's motion, Plaintiffs request leave to amend.

Dated: November 27, 2020

Gerard Fox Law P.C.

/s/ Maja Lukic

Gerard P. Fox (admitted *pro hac vice*)
Maja Lukic (SBN 4888038)
1345 Sixth Avenue, 33rd Floor
New York, New York 10105
Telephone: (646) 690-4980
Facsimile: (646) 368-9328
gfox@gerardfoxlaw.com
mlukic@gerardfoxlaw.com

Lauren M. Greene (admitted *pro hac vice*)
1880 Century Park East, Suite 1410
Los Angeles, California 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447
lgreene@gerardfoxlaw.com