UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

---

| | |
|---|---|
| NICOLAS GOUREAU and STEPHANIE MENKIN, individually and derivatively on behalf of GOOBERRY CORP., a New York Corporation, | : : : : : |
| Plaintiffs, | : |
| - against - | : Civil Action No. 20-cv-4691-MKV : |
| MARCUS LEMONIS, an individual, ML RETAIL, LLC, a Delaware limited liability company, and MARCUS LEMONIS, LLC, a Delaware limited liability company, and MACHETE CORPORATION d/b/a MACHETE PRODUCTIONS, a California corporation, | : : ECF Case : : : Oral Argument Requested |
| Defendants, and | : : : |
| GOOBERRY CORP., a New York corporation, | : : |
| Nominal Defendant. | : |

---

### REPLY IN SUPPORT OF MACHETE CORPORATION D/B/A MACHETE PRODUCTIONS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Jonathan L. Segal
Rachel R. Goldberg
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 633-8667
E-mail: jonathansegal@dwt.com
E-mail: rachelgoldberg@dwt.com

Samuel M. Bayard
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
E-mail: samuelbayard@dwt.com
*Attorneys for Machete Corporation d/b/a Machete Productions*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I. THE COURT LACKS JURISDICTION BECAUSE PLAINTIFFS FAILED TO ENGAGE IN MANDATORY MEDIATION. ........................................................................ 1

II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM. ....................................................... 3

    A.    Plaintiffs Fail To State A Fraudulent Inducement Claim. ........................................ 3

    B.    Plaintiffs Fail to State A RICO Claim. ..................................................................... 6

    C.    The Statute of Limitations Has Run On All Claims Against Machete. .................. 10

    D.    Plaintiffs' Remaining Causes of Action Must Be Dismissed. ............................... 10

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)...................................................................................................3

*AUSA Life Ins. Co. v. Ernst & Young*,
    119 F. Supp. 2d 394 (S.D.N.Y. 2000).....................................................................................6

*Centaur Corp. v. ON Semiconductor Components Indus., LLC*,
    No. 09 CV 2041, 2010 WL 444715 (S.D. Cal. Feb. 2, 2010)..................................................3

*Clean Coal Techs., Inc. v. Leidos, Inc.*,
    377 F. Supp. 3d 303 (S.D.N.Y. 2019).....................................................................................2

*Dep't of Fair Employment & Hous. v. LSAC Inc.*,
    896 F. Supp. 2d 849 (N.D. Cal. 2012) ...................................................................................1

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)...................................................................................................7

*Fonseca v. Columbia Gas Sys., Inc.*,
    37 F. Supp. 2d 214 (W.D.N.Y. 1998) ....................................................................................3

*GenopsGroup LLC v. Pub. House Inv.*,
    67 F. Supp. 3d 338 (D.D.C. 2014) .........................................................................................1

*Greenspan v. Allstate Ins. Co.*,
    937 F. Supp. 288 (S.D.N.Y. 1996) ........................................................................................4

*Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*,
    No. 04 CIV. 3318 (LAP), 2005 WL 736217 (S.D.N.Y. Mar. 30, 2005), *aff'd*,
    159 F. App'x 317 (2d Cir. 2005) ...........................................................................................5

*In re South African Apartheid Litig.*,
    617 F. Supp. 2d 228 (S.D.N.Y. 2009)..................................................................................10

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)...................................................................................................5

*Kaufman v. Sony Pictures Television, Inc.*,
    No. 16-12027, 2017 WL 3090256 (D. Mass. July 20, 2017) .................................................2

*Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*,
    876 F. Supp. 41 (S.D.N.Y. 1995) ..........................................................................................4

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
    137 F. Supp. 3d 430 (S.D.N.Y. 2015) ................................................................................. 8

*Nat'l Org. for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994) (Souter, J., concurring) ..................................................................... 9

*Psenicska v. Twentieth Century Fox Film Corp.*,
    409 F. App'x 368 (2d Cir. 2009) ........................................................................................ 3

*Stamelman v. Fleishman-Hillard, Inc.*,
    No. 02 Civ. 8138, 2003 WL 21782645 (S.D.N.Y. July 31, 2013) ..................................... 5

*Town of Islip v. Datre*,
    245 F. Supp. 3d 397 (E.D.N.Y. 2017) ................................................................................ 6

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ................................................................................ 8

**Federal Statutes**

18 U.S.C. § 1961, *et seq.* ........................................................................................... passim

**Rules**

Fed. R. Civ. P. 9 ......................................................................................................... passim

**Constitutional Provisions**

U.S. Const. Amend. I ............................................................................................................ 9

Defendant Machete Corporation d/b/a Machete Productions ("Machete" or "Defendant") submits this reply in support of its Motion to Dismiss Plaintiffs' First Amended Complaint.

## PRELIMINARY STATEMENT

Machete's Motion to Dismiss sets forth several simple, independent arguments to justify the dismissal of the meritless First Amended Complaint ("FAC"): First, this Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs failed to engage in mandatory mediation. Second, Plaintiffs fail to state a claim due to their failure to satisfy Rule 9(b) and the applicable statutes of limitations.[1] Rather than address these arguments, the Opposition distorts the contents of Plaintiffs' own FAC and misconstrues the law. It does this to distract from the paucity of Plaintiffs' pleading and the undisputed reality: aside from casting and producing The Profit for CNBC, Machete has nothing to do with six years of dealings between Plaintiff and Lemonis.

## ARGUMENT

### I. THE COURT LACKS JURISDICTION BECAUSE PLAINTIFFS FAILED TO ENGAGE IN MANDATORY MEDIATION.

It is undisputed that Plaintiffs failed to engage in mandatory mediation. Mot. at 6-9. Plaintiffs' contractual interpretation also defies common sense: why include the clauses if not mandatory? Attempting to avoid clear mandatory mediation provisions, which state "the parties agree to endeavor to first settle the controversy or claim by mediation" (Mot. at 4), Plaintiffs misrepresent case law. For instance, Plaintiffs claim that *GenopsGroup LLC v. Pub. House Inv.*, 67 F. Supp. 3d 338 (D.D.C. 2014) involves "a similar mediation provision". Opp. at 11. But the operative clause in that case stated: "**By mutual consent**, the parties **may** endeavor to resolve their disputes by mediation." *Id.* at 341 (emphasis added). Plaintiffs conveniently omit the bold terms from their explication of the case. Plaintiffs' discussion of *Dep't of Fair Employment &*

---

[1] In the alternative, Machete respectfully requests that the Court transfer the case to the Central District of California pursuant to the parties' forum selection clause. *See* Mot. at 22-24.

*Hous. v. LSAC Inc.*, 896 F. Supp. 2d 849, 864 (N.D. Cal. 2012) is even more distorted. Opp. at 4. That case does not even interpret a contract, but a California statute requiring the Department of Fair Employment and Housing to "endeavor" to reach informal resolution of its disputes before bringing formal complaints. The court found that "endeavor" was permissive in the sense that the parties had to try to engage in "good faith conciliation," not that the parties had to reconcile successfully. *Id.* at 864. (Indeed, the parties in that case had already engaged in a day-long mediation.) Here, Machete is not suggesting that this dispute must be resolved by mediation, rather that Plaintiff was obligated to first try mediation prior to filing this lawsuit.[2] Mot. at 6-9.[3]

To avoid the mandatory mediation provisions, Plaintiffs not only misconstrue case law, but also add a new theory to this case: that they were fraudulently induced into signing the Releases. This new theory, which was not alleged in the FAC, violates the axiom that "a complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321 (S.D.N.Y. 2019). But even if Plaintiffs had alleged they were fraudulently induced into entering the Releases, that argument would be a dead-end: Plaintiffs specifically and explicitly disclaimed that exact claim over and over in the Releases.[4] When a release "expressly states that the releasor disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was

---

[2] Plaintiffs' attempts to distinguish the cases cited in Machete's Motion to Dismiss should likewise be disregarded, as Plaintiffs provide *no* explanation as to how such cases deal with "stronger mandatory language" than those found in the Releases. *See* Opp. at 11-12.
[3] Indeed, additional cases are in accord. For example, in *Pacelli v. Augustus Intelligence, Inc.*, an arbitration provision stated that "the parties agree to endeavor first to settle the dispute by mediation . . . before resorting to arbitration." 459 F. Supp. 3d 597, 606 (S.D.N.Y. 2020). The court held that the provision (which is actually similar to the provisions at hand), required the parties to mediate the dispute prior to submitting any unresolved claims to arbitration. *Id. See also Kaufman v. Sony Pictures Television, Inc.*, No. 16-12027, 2017 WL 3090256, at *6 (D. Mass. July 20, 2017) (explaining that provision, "parties agree to endeavor first to settle the matter by mediation" required parties to first attempt mediation).
[4] Gooberry Release Agreement at ¶¶ 11, 13, 21; Goureau Release Agreement at ¶¶ 12, 19; Menkin Release Agreement at ¶¶ 12, 19.

defrauded into entering the contract in reliance on those representations." *Fonseca v. Columbia Gas Sys., Inc.*, 37 F. Supp. 2d 214, 229 (W.D.N.Y. 1998). *See also Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368 (2d Cir. 2009) (holding fraudulent inducement claims were barred where plaintiffs expressly disclaimed reliance on defendants' statements in release agreements).

Where, as here, "mediation is a condition precedent to litigation between the parties, the current lawsuit is premature." *Centaur Corp. v. ON Semiconductor Components Indus., LLC*, No. 09 CV 2041, 2010 WL 444715, at *4 (S.D. Cal. Feb. 2, 2010) (granting defendant's motion to dismiss). The Court therefore lacks jurisdiction over Plaintiffs' claims against Machete.

## II.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM.

Even if the Court determines that it has jurisdiction, the case should be dismissed because Plaintiffs fail to state a claim, especially under the heightened pleading standards of Rule 9(b).

### A.     Plaintiffs Fail To State A Fraudulent Inducement Claim.

***Plaintiffs do not allege "who" with specificity.*** The FAC does not specifically allege which defendants made which misrepresentation – a requirement to maintain a fraud claim.[5] Instead, Plaintiffs improperly attribute vaguely pled misrepresentations to "Defendants" generally, as opposed to any particular defendant, conflating the Lemonis Defendants with Machete over and over again. FAC ¶¶ 13, 61, 66, 134, 137-142, 191, 194-195, 199-201, 203-205, 207-213, 215-216, 227. Indeed, one merely needs to look at the paragraphs cited in the Opposition to see that Plaintiffs' claim fails in this regard. *E.g.*, Opp at 6 (citing to FAC ¶ 137 ("*Defendants'* false material misrepresentations and/or failures to disclose") (emphasis added)). Plaintiffs' motivation is transparent: Plaintiffs are trying to conceal that their material allegations are against Lemonis and his entities, not Machete. *E.g.*, Opp. at 6 (citing to FAC ¶¶ 53

---

[5] *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 581 (2d Cir. 2005).

("Lemonis spoke to Plaintiffs"), 54 ("Lemonis doubled-down"), 55 ("Lemonis first offered $800,000"); 56 ("Lemonis failed to mention"); 58 ("Lemonis made renovations")).

And where a representation is attributed to Machete, Plaintiffs still fail to identify the specific individual who made the representation as required by law. [6] *See Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*, 876 F. Supp. 41, 44 (S.D.N.Y. 1995) ("Allegedly fraudulent statements must be linked to individual speakers; vague references to 'defendants' as speakers are insufficient."); *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 291 (S.D.N.Y. 1996) (dismissing fraud claim because plaintiff did not "link the allegedly fraudulent statement to an individual speaker; attribution to a corporate entity or its representative is insufficient."). Thus, even in the few instances where Plaintiffs specifically name Machete, Plaintiffs mostly fail to identify which individuals within Machete made any misrepresentations.

**The "what" is insufficient.** Plaintiffs claim the alleged misrepresentations are "not merely non-actionable puffery or forward looking statements" and cite to various paragraphs in the FAC. Opp. at 7 (citing to FAC ¶¶ 50-58, 136-137). To be clear, Plaintiffs only allege these "statements" by Machete[7]:

- Machete made "representations to potential applicants, including Plaintiffs, about Lemonis' ability to help small business, the deals Lemonis makes on the show, and how Lemonis has helped business that appeared on previous episodes of 'The Profit.'" FAC ¶¶ 48, 50.

- Machete "represented that stories, investments, and successes portrayed on the show are real" and "that *if* Lemonis was interested in investing they would make a deal while the show was being filmed and that deal *would be* real." FAC ¶ 51 (emphasis added).

- Machete said "appearing on 'The Profit' and making a deal with Lemonis would save their business and/or help successfully expand their business." FAC ¶ 199.d.

- Machete made "representations about the success the businesses featured on the show had achieved . . . ." FAC ¶ 199.d.

---

[6] And, for the one instance in which Plaintiffs do identify a specific individual (FAC ¶ 51), the claim still fails because Plaintiffs do not allege any actionable statements.
[7] FAC ¶¶ 52-58, 136-137 are not allegations of misrepresentations by Machete.

4

To the extent these vague allegations contain statements at all, they constitute non-actionable puffery, opinion and/or forward-looking statements.

Plaintiffs misconstrue the law to try to fix flaws in their case, such as citing *Stamelman v. Fleishman-Hillard, Inc.*, No. 02 Civ. 8138, 2003 WL 21782645 (S.D.N.Y. July 31, 2003) for the proposition that "similar statements" were found actionable for fraudulent inducement. However, the alleged misrepresentations in *Stamelman* were materially more specific, including that defendant would "allow plaintiff at least one year to develop this entertainment marketing practice;" "introduce plaintiff to existing clients on a regular basis;" "provide plaintiff with an adequate travel budget to allow plaintiff to personally meet with potential clients;" and most importantly that the "regional offices had all been briefed on, and that they had agreed to support, the entertainment practice". *Id.* at *5. First, these statements are not mere puffery (like Lemonis could "help small businesses") or forward-looking, conditional statements (like something might occur "if Lemonis was interested in investing"). FAC ¶¶ 50-51. Second, *the court in Stamelman still granted the motion to dismiss because Plaintiffs failed to plead fraud with particularity under 9(b))*. *Id.* at *1. Thus, this case actually supports dismissal.

**Scienter: Plaintiffs do not allege "why" with specificity.** Plaintiffs also fail to "assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). In *Kalnit*, the Second Circuit affirmed dismissal of a fraud claim because plaintiffs had "not pointed to any specific benefit that would inure to the defendants" and thus did not sufficiently allege motive. *Id.* at 142. Additionally, "allegations of irrational motive cannot support a fraud claim under Rule 9(b)." *Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, No. 04 CIV. 3318 (LAP), 2005 WL 736217, at *3 (S.D.N.Y. Mar. 30, 2005), *aff'd*, 159 F. App'x 317 (2d Cir. 2005). Here, despite their attempt to conflate the issues,

Plaintiffs allege that Machete fraudulently induced them to enter into an investment agreement with Lemonis. FAC ¶ 134. But Machete's sole and undisputed goal, to create a compelling television program, is accomplished whether or not Lemonis invests in a business: indeed, in many entertaining and dramatic episodes, there is no deal. And it is undisputed that Machete is not a party to the business dealings between Lemonis and businesses. Plaintiffs have thus failed to raise *any* inference of fraudulent intent, let alone the strong inference required.[8]

      ***Proximate Cause: Plaintiffs fail to allege "how" with specificity.*** In their Opposition, Plaintiffs inadvertently highlight numerous intervening acts that break the attenuated causation chain between Machete and the loss of Plaintiffs' business. Opp. at 9. As in *AUSA Life Ins. Co. v. Ernst & Young*, 119 F. Supp. 2d 394 (S.D.N.Y. 2000), such an attenuated chain of causation undermines a showing of proximate cause. In that case, after a company's involuntary bankruptcy, investors sued the company's auditor, claiming reliance on fraudulent audit reports in deciding to invest in the company. *Id.* at 398-99. Even if the investors relied on the fraudulent reports, the court dismissed because numerous intervening events, as well as general market forces, broke the chain of *proximate* causation. *Id.* at 401, 407. Here, Plaintiffs pled six years of intervening acts by Lemonis and themselves, including negotiating and entering into the Stock Purchase Agreement (FAC ¶¶ 6, 52, 69); and deciding to work for, expand and invest in additional businesses together by forming ML Fashion, LLC *two years after* Machete cast Plaintiffs (*id.* at ¶¶ 89-92); and executing a credit agreement and a security agreement (*id.* at ¶¶ 93-95). This destroys any plausible argument of proximate causation. *See* Mot. at 15-16.

      **B.    Plaintiffs Fail to State A RICO Claim.**

      Plaintiffs' RICO claim is also subject to the heightened pleading standards of Rule 9(b)

---

[8] In neither their First Amended Complaint nor their Opposition do Plaintiffs allege that Machete engaged in conscious misbehavior or recklessness and thus do not make the required strong showing.

and fails for the same reasons discussed above. Mot. at 16. *See Town of Islip v. Datre*, 245 F. Supp. 3d 397, 413, 416 (E.D.N.Y. 2017) (dismissing plaintiff's RICO claim for failing to meet Rule 9(b)). Plaintiffs' RICO claim should also be dismissed on the following grounds:

> ***Plaintiffs do not allege an enterprise with specificity.*** To constitute an enterprise, "individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174, 183 (2d Cir. 2004) (affirming motion to dismiss). *Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.* is instructive. 759 F. Supp. 2d 1267, 1277 (W.D. Wash. 2010), *aff'd,* 467 F. App'x 738 (9th Cir. 2012). There, property appraisers brought a RICO claim against mortgage brokers and lenders based on allegations that defendants blacklisted them for refusing to inflate property values. The court dismissed because plaintiffs did not adequately allege a common purpose among the lenders and independent mortgage brokers. *Id.* at 1277-78. Specifically, while the complaint alleged lenders wanted to "steer as many borrowers as possible into inappropriate subprime loans and/or to write as much business as possible," it did not explain "how or why brokers would have any reason to help [lenders] achieve that goal." *Id.*

Here, while Plaintiffs make conclusory allegations of Defendants' common purpose (Opp. at 11), their explanation of each Defendant's alleged purpose highlights their differences. The Lemonis Defendants, Plaintiffs argue, have the purpose of convincing "businesses to allow the Lemonis Defendants to invest in them" and then "us[ing] the businesses they invested into and defrauded to increase their own assets . . . ." *Id.* In contrast, Plaintiffs admit that Machete has the purpose of creating a television show and "mak[ing] the show more successful." *Id.* As long as Machete delivers episodes to CNBC, that purpose is fulfilled, regardless of whether an investment is made. Thus, Plaintiffs do not allege a common purpose.

7

4828-3698-4019v.4 0112823-000003

***Plaintiffs do not allege predicate acts with specificity.*** Plaintiffs also failed to set forth "two predicate acts occurring within ten years of each other" to allege a pattern of racketeering activity and maintain their RICO claim. *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496 (S.D.N.Y. 2007). Plaintiffs point to acts by other Defendants, but fail to allege *any* specific acts by Machete. *See* Opp. at 11 (discussing FAC ¶¶ 51, 69, 85-88, 200-03). And as discussed above, the claim for fraud fails (*supra* at 3-6). The RICO claim likewise fails.

The sole case Plaintiffs cite to establish sufficient predicate acts, *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430 (S.D.N.Y. 2015), is readily distinguishable. That case involved a scheme by art galleries and dealers to sell millions of dollars' worth of forged paintings. The galleries and dealers were all unified in their purpose of *selling fraudulent artwork* and profited directly from its sale. *Id.* at 440-53. The acts involved, forging pieces of artwork and then knowingly selling the art to unwitting collectors, were much closer to the racketeering conduct the RICO statute was designed to combat. Indeed, prior to the civil suit, an investigation by the United States Attorney's Office resulted in the arrest and conviction of many defendants involved in the alleged scheme. *Id.* at 450-53. In short, *Martin*, which involved years of felonious activity for which defendants were convicted, looks nothing like this dispute. Plaintiffs therefore provide no precedent to support their argument that their allegations are sufficient to establish predicate acts by Machete as required to maintain their RICO claim.

***Plaintiffs again fail to allege proximate cause.*** As with its fraudulent inducement claim (*see supra* at 6), Plaintiffs' argument regarding proximate cause also misses the mark. Plaintiffs allege that "Machete made false communications through wires, mails, and television that were intended to, and did induce Plaintiffs, and other small businesses, **to appear on 'the Profit'** and allow the Lemonis Defendant into their business" (Opp. at 12 (emphasis added)), but cannot

allege that merely appearing on The Profit proximately caused their harm after their years of doing business with Lemonis on their own volition after agreeing to appear on the show.

Plaintiffs cite to the easily distinguishable *Moore v. Painewebber, Inc.*, in which plaintiffs alleged that defendant tricked them into buying a life insurance policy disguised as an investment package. 189 F.3d 165, 167 (2d Cir. 1999). Unlike here, the defendant in *Moore* was itself party to the transactions that plaintiffs claimed they had been fraudulently induced into entering. *Id.* at 172-73. Here, in contrast, Machete was not a party to the transaction – "the Shareholder Agreement and Stock Purchase Agreement that gave Defendants [not Machtete] an equity interest in and control over Gooberry" (FAC ¶ 203.b.ii) – that Plaintiffs allege caused their harm. Indeed, Plaintiffs do not allege any of the resulting harm – Lemonis Defendants investing in Gooberry, the Lemonis Defendants obtaining control of Gooberry, or the Lemonis Defendants obtaining control of Gooberry's line of credit (FAC ¶ 205) – involved Machete at all.

Plaintiffs also allege that Machete "knew this would happen" because "several businesses which appeared on 'the Profit' were no longer operating". Opp. at 12 (FAC ¶ 137-138, 199). But the timeline defies logic: Plaintiffs claim Machete made misrepresentations prior to their appearance on the show in 2014, after The Profit had only been on air for one season. FAC ¶¶ 38, 203.b.i. Thus, even if Plaintiffs' vague claim in their Opposition that "several businesses which appeared on 'the Profit' were no longer operating" (Opp. at 12) is true, Machete would not have known that when it made any alleged representations. In short, Plaintiffs improperly attempt to hold Machete to a standard based on 20/20 hindsight.

**The First Amendment bars Plaintiffs' claims.** "[H]arassing RICO suits" should be dismissed where, as here, the predicate acts "turn out to be fully protected First Amendment activity" like television production. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264-

65 (1994) (Souter, J., concurring). Ironically, in criticizing Machete's use of this oft-cited concurance, Plaintiffs cite to a concurrence in the Second Circuit, though they fail to note it as such. Opp. at 19 (citing *U.S. v. Rybicki*, 354 F.3d 124, 150-51 (2d Cir. 2003) (Raggi, J., concurring in the judgment)). Indeed, that case, in which the Second Circuit rejected defendants' *facial challenge* to the RICO statute as unconstitutionally vague, has little relevance here. *Id.* at 148.

### C. The Statute of Limitations Has Run On All Claims Against Machete.

All of Plaintiffs' claims against Machete must also be dismissed because they are time-barred by the applicable statutes of limitations. Mot. at 19-20. Contrary to Plaintiffs' arguments (Opp. at 13), Machete's statute of limitations defense *does* appear on the face of the FAC: Plaintiffs allege no acts by Machete since 2014. FAC ¶¶ 47 (spring 2014); 51 (spring 2014), 52 (June 2014); 136 (spring 2014, June 2014). Plaintiffs' reliance on *In re South African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009) is as callous as it is nonsensical, as plaintiffs in that case clearly alleged the basis for equitable tolling – the fear of violent retaliation[9] – on the face of their complaint. Here, Plaintiffs do not allege *any basis* for equitable tolling in their FAC, let alone the tragic basis discussed in *In re South African Apartheid Litig.*

### D. Plaintiffs' Remaining Causes of Action Must Be Dismissed.

Finally, the remaining claims fail because they are remedies, and because Machete has no ongoing business relationship with Plaintiffs. Mot. at 20-21. As such, they must be dismissed.

### CONCLUSION

For the foregoing reasons, Machete respectfully submits that the Court should dismiss, or alternatively transfer, the First Amended Complaint, which lays out a series of agreements and dealings made by Plaintiffs that do not involve Machete.

---

[9] The complaints noted "there was no practical, or safe or effective way for Plaintiffs to bring these claims without risk of retaliation by the apartheid state" as evidenced by the "12,000 civilians [that] were killed and at least 20,000 injured by the security forces of apartheid South Africa." *Id.* at 286-87.

10

4828-3698-4019v.4 0112823-000003

Dated: Los Angeles, CA
December 18, 2020

                        Respectfully submitted,

                        DAVIS WRIGHT TREMAINE LLP

                        By: */s/ Jonathan L. Segal*
                              Jonathan L. Segal

                        Jonathan L. Segal
                        Rachel R. Goldberg
                        DAVIS WRIGHT TREMAINE LLP
                        865 S. Figueroa Street, Suite 2400
                        Los Angeles, CA 90017
                        Telephone: (213) 633-8667
                        E-mail: jonathansegal@dwt.com
                        E-mail: rachelgoldberg@dwt.com

                        1251 Avenue of the Americas, 21st Floor
                        New York, New York 10020
                        Telephone: (212) 489-8230
                        Fax: (212) 489-8340
                        E-mail: samuelbayard@dwt.com

                        *Attorneys for Machete Corporation d/b/a Machete Productions*