UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLAS   GOUREAU   and   STEPHANIE :
MENKIN, individually and derivatively on behalf :
of GOOBERRY CORP., a New York corporation, :
                                                                            :
                                                                            :
                    Plaintiffs,                          :          Civil Action No.  1:20-cv-04691
                                                                            :
          v.                                                  :
                                                                            :
                                                                            :
MARCUS   LEMONIS,   an   individual,   ML :
RETAIL,  LLC,  a  Delaware  limited  liability :
company, and MARCUS LEMONIS, LLC, a :
Delaware limited liability company,            :          **AFFIDAVIT OF GERARD P. FOX IN**
                                                                            :          **SUPPORT OF PLAINTIFFS' MOTION**
                    Defendants,                       :          **FOR LEAVE TO FILE THEIR SECOND**
and                                                             :          **AMENDED COMPLAINT**
                                                                            :
GOOBERRY CORP., a New York corporation,   :
                                                                            :
                    Nominal Defendant.            :
                                                                            :
                                                                            :

I, Gerard P. Fox, Esq., declare as follows:

1.      I am the founding partner and the current managing partner in the law firm of Gerard Fox Law, P.C., in Los Angeles, California.  I am counsel of record for Plaintiffs in this case.

2.      I am over the age of 18, and I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

3.      When I initiated the case ta bar on behalf of my clients, I believed that it was a relatively isolated matter arising from their participation in the CNBC show *The Profit.*  Although I also represented another business similarly harmed in the case styled *Nourieli, et al. v. Lemonis, et al.* (S.D.N.Y. Case No. 20-CV-8233), I was not aware that there were other similarly situated victims.

4.      On or around February 2021, I was contacted by another former participant on the show, who was seeking to halt further airings of the episode featuring his business, a toy company, including an "Inside Look" recap episode that was scheduled to air on February 16, 2021.  This former participant contended that the episode falsely portrayed him and his business.

5.      Upon further investigation, I learned that the episode featuring this business first aired in early 2014 and kept re-airing, even though it was heavily edited to make the owners appear uncooperative and rude.  Indeed, lines were dubbed, images were doctored, and edits were maliciously constructed in order to make the company's management look idiotic and deplorable, including a scene in which one of the owners was edited to appear as if he insulted a child.

6.      That scene was edited as follows.  During the filming of the show, Lemonis asked a woman at a local toy dealer to be difficult with the owner.  The woman frustrated him to a point where he pointedly asked the woman, "can you read?"  The show used that dialogue to insert it into a completely different scenario where the same owner was doing a focus group with small children.  The episode falsely made it seem as though the past participant in question snapped at a little girl asking her, "can you read?"

7.      As a result, this past participant received numerous threats from shocked and angry

parents.  Each time NBC aired the episode, this past participant received another wave of hate, and each NBC's re-air caused new injuries and damages.  As I later found out, other contestants on the show report similar experiences.

8.      On February 11, 2021, I sent a cease & desist letter to Ms. Kimberly Harris, General Counsel at NBC, and Ms. Andra Shapiro, General Counsel for Cable Entertainment at NBC, demanding that NBC refrain from any further airings of the episode featuring my client because the episode contains known falsehoods and is generally defamatory.

9.      On February 12, 2021, I received an email from Rachel R. Goldberg of Davis Wright Tremaine LLP, who stated that the episode would not air until further review.  On February 19, 2021, Ms. Goldberg requested further details of the improprieties featured in the episode at issue.  I followed up with a further, more detailed letter to Ms. Goldberg on February 25, 2021.

10.     Shortly thereafter, I learned that NBC launched a formal investigation into the matter.  In the meanwhile, some of my clients have come across a network of support for former *The Profit* participants, which allowed me to interview other victims that were harmed by the show or whose businesses were destroyed as a result of their appearance on the show.

11.     By March 24, 2021, I was already representing nineteen additional past participants, whose stories of hurt and betrayal were all eerily repetitive.  Accordingly, I put together all their stories and sent them with a detailed letter to, among others, the General Counsel at NBC.

12.     On March 30, 2021, I followed up with additional letter to NBC's general counsel, advising them that Mr. Lemonis has been running loose, attempting to intimidate and harass my clients identified in the March 24, 2021 letter by persistent late-night texts and phone calls.  I attached logs of those calls and tests so that NBC could reason with Mr. Lemonis and reel him in.

13.     On the same day, the Delaware court in the related action filed by Plaintiffs in the Delaware chancery court stemming from Lemonis' abuses of the joint company he formed with Plaintiffs after *TheProfit* issued an order staying that action and directing that Plaintiffs litigate the claims they brought in Delaware in this Court (*see* Dkt. No 57-1).  Attached as **Exhibits 1, 2, and**

**3** are true and correct copies of the briefs addressing the viability of Plaintiffs' Delaware claims filed by the parties in the Delaware action.

14.     Although by letter to this Court on March 30, 2021, I requested an opportunity to amend the complaint to account for the Delaware claims (*see* Dkt. No. 57), I reasoned that it was prudent to make the amendment a comprehensive one by including the additional evidence I have been uncovering (and continue uncovering to this day on the daily basis) based on my interviews of the past contestants on the show.  For context, to date I have interviews more than seventy businesses that participated on the show.

15.     As I continued to investigate and came to represent more businesses that were harmed by the show, in late March 2021, I was contacted by Mr. Saul Shapiro of Patterson Belknap Webb & Tyler LLP, who has been retained by NBC to conduct their internal investigation of the matter.

16.     On April 6, 2021, I wrote to Mr. Shapiro to address the legal issues concerning NMBC's liability in connection with the show.

17.     By May 7, 2021, twelve more past participants have come forward, and I wrote to Mr. Shapiro to advise him of their heartbreaking stories.  Two more stories of additional victims followed on May 21, 2021.

18.     It was around this time that the parties agreed to start moving toward a global resolution, based on Mr. Shapiro's representations on behalf of NBC.  This process of global resolution, together with amassing further evidence, provided additional reasons to avoid "serial" amendments and seek to amend the complaint pending at bar only when the comprehensive picture of all the misconduct involved behind *TheProfit* was finally complete or near complete.

19.     By June 1, 2021, seven more businesses have come forward, and I shared their stories with Mr. Shapiro, along with additional evidence of NBC's direct involvement with recruiting of businesses for the show.  Along with that evidence, I shared a personal letter by one of my clients, which provided a first-person account of how *TheProfit* destroys its participants lives to the point where they wonder whether they could ever go on.  In fact, I found that one of

the former participants has been driven to suicide, and many have seriously contemplated the same.

20.     On June 30, 2021, I emailed Mr. Shapiro to advise him that one of the businesses that had come forward received an offer to share information in exchange for $5,000. This attempted bribe was documented through a sworn declaration, which I also shared with Mr. Shapiro. In addition, I now had declarations from Mr. Lemonis' former accountants, who testified about the improper practices they observed while in Mr. Lemonis' employ. One of them specifically talked about Mr. Lemonis' stated intention to mislead the participants on *TheProfit* concerning his promised investment.

21.     In addition, the June 30, 2021 correspondence included a transcript from a related federal case, wherein Mr. Lemonis most likely lied under oath that he: (1) never discussed his dealings with the show's participants with Mr. Ackerman, a former NBC executive, and (2) was never involved in the editing or post-production activity on the show. This is because I have uncovered public statements that contradict these sworn representations.

22.     On June 21, 2021, I shared with Mr. Shapiro additional evidence confirming NBC's in-depth involvement in the production of *TheProfit*.

23.     On July 30, 2021, I provided Mr. Shapiro with nine additional stories of *TheProfit*'s victims. As of this point, I represented fifty one such victims. The letter also included a discarded "Call Sheet" retained by one of my clients from the show, which confirmed that NBC executives were complacent in the false narrative created on the show.

24.     By this time, the global resolution process was imminent, and Mr. Lemonis appeared to have come on board, since, as I described in my previous communications with the Court, he had instructed his counsel to stay all the pending litigation arising from the show while the parties pursued settlement talks. (*See* Dkt. Nos 64 & 62.)

25.     As the combined effect of the events set forth above demonstrates, there was good cause to continue amassing additional evidence and avoid "serial" amendments in order to present one comprehensive amended complaint, which Plaintiffs now seek this Court's permission to file.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 19th day of August 2021 at Kiawah Island, South Carolina.

Gerard P. Fox