EXHIBIT – 1 –

EFiled:  Sep 16 2020 04:07PM EDT
Transaction ID 65938397
Case No. 2020-0486-MTZ

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| NICHOLAS GOUREAU and STEPHANIE MENKIN, individually and derivatively on behalf of ML FASHION, LLC, a Delaware Limited Liability Company,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARCUS LEMONIS, an individual, ML RETAIL, LLC, a Delaware Limited Liability Company, MARCUS LEMONIS, LLC, a Delaware Limited Liability Company, ROBERTA RAFFEL a/k/a BOBBI LEMONIS, an individual, and MLG RETAIL, LLC, a Delaware Limited Liability Company,<br><br>*Defendants*,<br><br>And<br><br>ML FASHION, LLC, a Delaware Limited Liability Company,<br><br>*Nominal Defendant*. | C.A. No. 2020-0486-MTZ |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS

Dated:  September 16, 2020

Brian E. Farnan (# 4089)
Michael J. Farnan (# 5165)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300

bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael D. Wexler (admitted *pro hac vice*)
SEYFARTH SHAW LLP
Willis Tower
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5559

Jesse M. Coleman (admitted *pro hac vice*)
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas  77002
(713) 238-1805

*Attorneys for Defendants ML Retail, LLC,
Marcus Lemonis, LLC, MLG Retail, LLC,
Marcus Lemonis, and Roberta Raffel*

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   NATURE AND STAGE OF PROCEEDINGS .............................................1

III.  STATEMENT OF FACTS ........................................................................3

IV.   ARGUMENT .........................................................................................8

    A.    The Complaint must be dismissed for improper venue under
        Chancery Court Rule 12(b)(3). ..............................................................8

    B.    Legal Standard for Chancery Court Rule 12(b)(6) Motion to
        Dismiss..............................................................................................11

    C.    Plaintiffs' lawsuit must be dismissed because it is barred by the
        prohibition against claim splitting. .......................................................11

    D.    MLG Retail must be dismissed because Plaintiffs' claims for
        conversion (Count 11) and breach of contract (Count 15) fail to
        state a plausible claim. ........................................................................13

        1.    Plaintiffs' claim for conversion (Count 11) against MLG
            Retail fails because Plaintiffs' own facts establish MLG
            Retail did not take anything or otherwise interfere with
            Plaintiffs' rights. ........................................................................13

        2.    Plaintiffs fail to state a claim for conversion (Count 11)
            against any Defendant because this claim arises solely
            under contract. ...........................................................................14

        3.    Plaintiffs' breach of contract (Count 15) claim against
            MLG Retail fails because Menkin did not attach any
            contract entitling her to payment, nor is there a claim
            outside of ML Fashion's LLC Agreement. ...............................16

    E.    Raffel must be dismissed because Plaintiffs' derivative claims for
        aiding and abetting (Count 5) and conversion (Count 11) fail to
        state a plausible claim. ........................................................................17

1.    Plaintiffs' claim for aiding and abetting (Count 5) lacks sufficient facts regarding Raffel's required scienter to aid and abet a fiduciary breach. ....................................................17

2.    Plaintiffs' conversion claim (Count 11) is devoid of plausible facts regarding Raffel's conversion of anything. ......21

F.    Plaintiffs' claims for fraud (Counts 1 & 2), breaches of fiduciary duty (Counts 3 & 4) and the implied covenant of good faith and fair dealing (Count 6), aiding and abetting (Count 5), unjust enrichment (Count 8), "gross mismanagement" (Count 9), "waste and misappropriation of corporate assets" (Count 10), and conversion (Count 11) fail to state a plausible claim outside of contract. ...............................................................................22

1.    Plaintiffs' nebulous alter ego pleading fails to set forth the individual acts of wrongdoing by Lemonis, ML Retail, and Marcus Lemonis, LLC. ..........................................................22

2.    Plaintiffs' claims for fraudulent inducement and fraud (Counts 1 & 2) lack the requisite particularity due to group pleading and the nebulous alter ego allegations. .....................27

3.    The economic loss doctrine and the fact that Plaintiffs' claims are duplicative of their breach of contract claims further bar Plaintiffs' claims. ....................................................28

4.    Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing (Count 6) that is distinct from the contemplated terms of ML Fashion's LLC Agreement. ......................................................................33

5.    Plaintiffs' unjust enrichment (Count 8) claim is barred by contract. ...................................................................................35

G.    Plaintiffs' equitable claims for receiver (Count 12), dissolution (Count 14), and for injunctive relief (Count 13) should be dismissed because these are fundamentally remedies—not causes of action. ...........................................................................................36

H.    Leave to amend should be denied. ....................................................37

V.    CONCLUSION .............................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affy Tapple, LLC v. ShopVisible, LLC,*
   2019 Del. Super. LEXIS 867 (Del. Super. Mar. 7, 2019) ..................................29

*Airborne Health, Inc. v. Squid Soap, LP,*
   984 A.2d 126 (Del. Ch. 2009) .................................................................35

*Allen v. Encore Energy Partners, L.P.,*
   72 A.3d 93 (Del. 2013)...........................................................................11

*Allied Capital Corp. v. GC–Sun Hldgs., L.P.,*
   910 A.2d 1020 (Del. Ch. 2006) ..................................................17, 21

*In re Arrow Inv. Advisors, LLC,*
   2009 WL 1101682 (Del. Ch. Apr. 23, 2009)......................................37

*Bakerman v. Siney Flenk Importing Co.,*
   2006 WL 3927242 (Del. Ch. Oct. 16, 2006)......................................35

*Brasby v. Morris,*
   2007 Del. Super. LEXIS 73 (Del. Sup. Ct. Mar. 29, 2007)...............28

*Cartanza v. Lebeau,*
   2006 WL 903541 (Del. Ch. Apr. 3, 2006).........................................38

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC,*
   27 A.3d 531 (Del. 2011)..........................................................................11

*Charlotte Broad. LLC v. Davis Broad. of Atlanta, L.L.C.,*
   2015 WL 3863245 (Del. Super. June 10, 2015)................................33

*Cincinnati SMSA Ltd. Partnership v. Cincinnati Bell Cellular Sys.
   Co.,*
   708 A.2d 989 (Del. 1998).......................................................................33

*Clark v. State Farm Mut. Auto. Ins. Co.,*
   131 A.3d 806 (Del. 2016).......................................................................39

*Cont'l Fin. Co., LLC v. TD Bank, N.A.*,
  2018 WL 565305 (Del. Super. Jan. 24, 2018) ....................................................29

*Cornell Glasgow, LLC v. La Grange Props., LLC*,
  2012 WL 2106945, at *8-9 (Del. Super. June 6, 2012) ......................................30

*Crosse v. BCBSD, Inc.*,
  836 A.2d 492 (Del. 2003) ...................................................................................24

*Danforth v. Acorn Structures, Inc.*,
  608 A.2d 1194 (Del. 1992) .................................................................................29

*Dunlap v. State Farm Fire & Cas. Co.*,
  878 A.2d 434 (Del. 2005) ...................................................................................34

*In re Essendant, Inc. Stockholder Litigation*,
  2019 WL 7290944 (Del. Ch. Dec. 30, 2019) .....................................................23

*In re Ezcorp. Inc. Consulting Agreement Derivative Litig.*,
  2016 WL 301245 ................................................................................................36

*Franklin Balance Sheet Inv. Fund v. Crowley*,
  2006 WL 3095952 (Del. Ch. Oct. 19, 2006) ......................................................39

*Furman v. Del. Dept. of Transp.*,
  2014 WL 3406509 (Del. Super. July 9, 2014) ...................................................11

*Goodwin v. Live Entm't, Inc.*,
  CIV. A. 15765, 1999 WL 64265 (Del. Ch. Jan. 25, 1999), *aff'd*,
  741 A.2d 16 (Del. 1999) .....................................................................................20

*Haisfield v. Cruver*,
  1994 WL 497868 (Del. Ch. Aug. 25, 1994) .......................................................24

*Hupan v. Alliance One Int'l, Inc.*,
  2015 WL 7776659 (Del. Sup. Ct. Nov. 30, 2015) ..............................................23

*Ingres Corp. v. CA, Inc.*,
  8 A.3d 1143 (Del. 2010) .......................................................................................9

*J.L. v. Barnes*,
  33 A.3d 902 (Del. Sup. Ct. 2011) .......................................................................12

*Jackson Nat. Life Ins. Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999) ....................................................................20, 21

*Kuroda v. SPJS Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch. 2009) .................................................................*passim*

*Lillis v. AT&T Corp.*,
    896 A.2d 871 (Del. Ch. 2005), *decision clarified*, 2005 WL
    3111991 (Del. Ch. Nov. 17, 2005) ....................................................................39

*Maldonado v. Flynn*,
    417 A.2d 378 (Del. Ch. 1980) ...........................................................................12

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001)..................................................................................17

*Mesirov v. Enbridge Energy Co., Inc.*,
    2018 WL 4182204 (Del. Ch. Aug. 29, 2018) ....................................................21

*Metro Commun. Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
    854 A.2d 121 (Del. Ch. 2004) ...........................................................................23

*MHS Capital LLC v. Goggin*,
    2018 WL 2149718 (Del. Ch. May 10, 2018) ...............................................27, 30

*MidCap Funding X Trust v. Graubel Companies, Inc.*,
    2020 WL 2095899 (Del. Ch. Apr. 30, 2020)......................................................36

*Miller v. HCP & Co.*,
    2018 WL 656378 (Del. Ch. Feb. 1, 2018), *aff'd sub nom. Miller v.
    HCP Trumpet Investments, LLC*, 194 A.3d 908 (Del. 2018),
    *reargument denied* (Oct. 9, 2018) .....................................................................33

*In re Nat'l Collegiate Student Loan Trusts Litig.*,
    2020 WL 3960334 (Del. Ch. July 13, 2020) ........................................................3

*Nat'l Indus. Group (Holding) v. Carlyle Inv. Mgmt.*,
    67 A.3d 373 (Del. 2013).......................................................................................9

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010).........................................................................30, 34

*Noah v. Enesco Corp.*,
    911 F. Supp. 305 (N.D. Ill. 1995)........................................................37

*Otto Candies, LLC v. KPMG, LLP*,
    2019 WL 1856766 (Del. Ch. Apr. 25, 2019)......................................38

*Outokumpu Eng'g Enters. v. Kvaerner Enviropower*,
    685 A.2d 724 (Del. Sup. Ct. 1996)....................................................24

*RBC Capital Markets, LLC v. Jervis*,
    129 A.3d 816 (Del. 2015)..................................................................20

*Ross Holding & Mgmt. Co. v. Advance Realty Grp., LLC*,
    2010 WL 3448227 (Del. Ch. Sept. 2, 2010)......................................37

*In re Tangoe, Inc. Stockholders Litigation*,
    2018 WL 6074435 (Del. Ch. Nov. 20, 2018)......................................23

*Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*,
    691 A.2d 609 (Del. 1996)..................................................................11

*Vanover v. NCO Fin. Services, Inc.*,
    857 F.3d 833 (11th Cir. 2017)..........................................................13

*In re Wheelabrator Technologies, Inc. Shareholder Litig.*,
    1992 WL 212595 (Del. Ch. Sept. 1, 1992)..........................................3

*Winner Acceptance Corp. v. Return on Capital Corp.*,
    2008 WL 5352063 (Del. Ch. Dec. 23, 2008) ....................................12

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008)..................................................................23

*Wood v. U.S. Bank Nat. Ass'n*,
    2018 WL 4643801 (Del.Ch. Sep. 26, 2018)......................................23

**Statutes**

6 Del. C. § 18-802 ..............................................................................37

**Other Authorities**

Del. Ch. Ct. R. 8 ................................................................................23

Del. Ch. Ct. R. 9(b)..................................................................................................27

Del. Ch. Ct. R. 11 ....................................................................................................39

Del. Ch. Ct. R. 12(b)(3) ........................................................................................8, 39

Del. Ch. Ct. R. 12(b)(6) ......................................................................................21, 39

Del. Ch. Ct. R. 15 ....................................................................................................38

Del. Ch. Ct. R. 15(aaa) ...........................................................................................38

I.      **PRELIMINARY STATEMENT**

Rather than stand firm, Plaintiffs made the call to untimely amend their complaint (and without first seeking leave, in violation of this court's precedents) after seeing the faults in their claims exposed by Defendants' motion to dismiss in the District Court.  Despite this free bite at the apple and the benefit of seeing Defendants' challenges, Plaintiffs' claims remain deficient, and further repleading would be futile.

This purported shareholder derivative lawsuit arises from the operation of a company owned in near-equal shares between Plaintiffs and various corporate and individual Defendants.  At its core, the Complaint wrongly purports to set forth claims for breach of contract and alleged breaches of fiduciary duty that result from such derivative actions.  Plaintiffs' claims are almost entirely duplicative of a copycat lawsuit in the Southern District of New York and should be dismissed as an improper attempt at claim splitting.  In addition, Plaintiffs' claims should be dismissed for improper venue.  On the merits, Plaintiffs' causes of action are nothing but extravagant "made for TV" sensationalism that should be dismissed for failing to state a claim.

II.     **NATURE AND STAGE OF PROCEEDINGS**

On June 18, 2020, Plaintiffs Nicholas Goureau ("Goureau") and Stephanie Menkin ("Menkin," collectively "Plaintiffs") filed a Verified Complaint against

Defendant ML Retail, LLC ("ML Retail"); Defendant Marcus Lemonis, LLC;

Defendant MLG Retail, LLC ("MLG Retail"); Defendant Marcus Lemonis,

individually ("Lemonis"); Defendant Roberta Raffel a/k/a Bobbi Lemonis

("Raffel"); and Nominal Defendant ML Fashion, LLC ("ML Fashion"); Case No.

2020-0486-MTZ, in this Court (the "Delaware Lawsuit").  On August 24, 2020,

Plaintiffs unilaterally filed their Verified First Amended Complaint (the "Complaint"

or "Compl.").[1]

On the same day that Plaintiffs commenced the Delaware Lawsuit, Plaintiffs

Goureau and Menkin filed a nearly identical lawsuit against Defendants ML Retail;

Marcus Lemonis, LLC; Lemonis; and Nominal Defendant Gooberry Corp.

("Gooberry"), Civil Action No. 20-cv-4691, in the United States District Court for

the Southern District of New York (the "New York Lawsuit").  They filed an

Amended Complaint in the New York Lawsuit on August 17, 2020 to add another

Defendant, Machete Corporation (who is also referenced in the Complaint in the

---

[1] In support, Plaintiffs attached the following exhibits to the Complaint: Exhibit A: March 29, 2016, Limited Liability Company Agreement of ML Fashion, LLC; Exhibit B: March 29, 2016 Credit Agreement between ML Fashion, LLC and ML Retail, LLC; Exhibit C: March 29, 2016 Security Agreement between ML Fashion, LLC and ML Retail, LLC; Exhibit D: March 17, 2020 Letter from Stephanie Menkin to Nicolas Goureau; Exhibit E: March 26, 2016 between ML Retail, LLC and Marcus Lemonis, LLC; Exhibit F: Security Agreement between ML Retail, LLC and Marcus Lemonis, LLC; Exhibit G: April 16, 2018 email chain between Marcus Lemonis, Stephanie Menkin, and Jeremy Dombroski; and Exhibit H: August 5, 2020 Letter from the Minnesota Department of Revenue to MLG Retail, LLC.

Delaware Lawsuit).  A copy of the Amended Complaint in the New York lawsuit is attached hereto as **Exhibit 1.**  The Delaware Lawsuit and New York Lawsuit share the same common nucleus of operative fact—namely the business disagreements between Plaintiffs and the various defendant entities and individuals.  Moreover, the parties, allegations, and causes of action in the Delaware Lawsuit and New York Lawsuit are nearly identical, with only purposeful, strategic differences.  Thus, the Delaware lawsuit should be dismissed as duplicative.

## III.  STATEMENT OF FACTS

Plaintiffs Nicolas Goureau and Stephanie Menkin ran a failing clothing retailer that, as Plaintiffs told millions of television viewers of the CNBC television series "The Profit,"[2] lost "[a]bout half a million" dollars in 2013,[3] although Plaintiffs now claim that this statement was false.  Compl. ¶ 56.  Those losses followed what Goureau described as "poor business management" and work that "wasn't up to par."  Goureau told millions of television viewers that he was worried about "the bank,"

---

[2] *Available at* https://www.youtube.com/watch?v=bEhjsXfFCyk.

[3] On a motion to dismiss, the Court can consider statements made by Plaintiffs during the October 15, 2014 episode of "The Profit," as that episode of "The Profit" is integral to their Complaint, as well as other public statements by Plaintiffs that are part of the public record.  *See, e.g., In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334, at *2 n.8 (Del. Ch. July 13, 2020); *In re Wheelabrator Technologies, Inc. Shareholder Litig.*, 1992 WL 212595, at *11-12 (Del. Ch. Sept. 1, 1992).

"the landlords," and "the people that call me for bills," likely referencing, among other things, Plaintiffs' default under a store lease in Atlanta.

Hoping to save their business, in or about June 2014, Plaintiffs begged Defendant Marcus Lemonis to invest in their business as part of his successful television series "The Profit." *See* Compl. ¶ 52. Lemonis agreed to invest $800,000, taking a significant risk on a business that had lost hundreds of thousands of dollars the year before. *See id.* ¶¶ 55, 59. Before investing, Lemonis told Plaintiffs, on national television and in no uncertain terms, that if he took on this risk, he would be in control of the business: "Let me be very clear. I'm going to be 100% in charge." *See also* Compl. ¶ 59. Plaintiffs agreed to these terms, shook Lemonis' hand, and eagerly welcomed his significant investment into their struggling business. *See id.* ¶¶ 55, 59, 69. But Plaintiffs had other plans for Lemonis' funds.

Lemonis and Plaintiffs formed ML Fashion, LLC, to not only oversee Plaintiffs' struggling retail brand "Courage B," but to allow Plaintiffs to help manage other brands acquired by Lemonis as well. *See* Compl. ¶ 82. In an interview for "The Profit Effect" television special, which aired in or about January 2017, Plaintiffs raved about this opportunity: as Goureau put it, "[t]he way our roles have really evolved is a huge credit to Marcus."[4] Lemonis eventually gave Goureau opportunities within Lemonis' other business ventures, including a job at a publicly-

---

[4] https://www.youtube.com/watch?v=gDsaNA6fKg8.

traded company, Camping World, with a salary of $300,000 per year—a far cry from being the owner of a failing clothing retailer just a few years before.  *See* Compl. ¶ 168.

Lemonis invested heavily in ML Fashion, without ever receiving a payment from ML Fashion, and made business decisions aimed at saving Plaintiffs' struggling business.  Thanks to Lemonis' investments and business decisions, ML Fashion still operates today, still pays its employees, and still sells retail products nationwide.  *See, e.g.,* Compl. ¶ 19.

Plaintiffs are still the majority equity owners of ML Fashion.  *See* Compl. ¶¶ 17-18.  Yet, unlike Lemonis, ***Plaintiffs never put any money into ML Fashion***— they only took money out.  Over the years, they extracted well in excesses of $2 million from the company in the form of undeserved escalated salaries and/or consulting fees in the hundreds of thousands of dollars per year, as well as other monetary perks, and their use of company funds to pay personal expenses, to buy extravagant cars, travel, to pay for stays at the poshest hotels, and to even pay for a nanny.

Moreover, since appearing on Lemonis' "The Profit" television series, Plaintiffs continuously used Lemonis' name, image, and likeness and his "The Profit" television series to boost their own profiles.  Both Goureau and Menkin frequently posted pictures of themselves with Lemonis, or used his name or "The Profit" in

their social media posts.[5]   In or about July 2018, Menkin appeared on another episode of "The Profit," helping Lemonis coach a struggling business owner, and promoted the appearance on Twitter.[6]   Menkin posted about Lemonis, "The Profit," and Lemonis' "MARCUS" brand as recently as late 2019 and early 2020, and even today, her Instagram profile links to Lemonis' "MARCUS" brand and "The Profit" TV series.[7]

For years, Plaintiffs were content to extract millions from ML Fashion and use Lemonis' fame to promote themselves.  But in late 2018, Plaintiffs, and Goureau in particular, apparently began to sour on their relationship with Lemonis as Plaintiffs' treachery began to reveal itself.  Goureau was fired from his position at Camping World, *see* Compl. ¶ 168, due to issues in his personal life that affected his job performance and eventually led to, among other things, Goureau being arrested in Miami, Florida in or about September 2019.  Ironically, Goureau continues to leverage his association with Lemonis—now a negative association—to promote his ventures, bragging on social media that the Complaint "is just the tip of the iceberg"

---

[5] https://twitter.com/NGoureauNYC/status/874739760782348290?s=20; https://twitter.com/NGoureauNYC/status/1014337877331804160?s=20.
[6]. https://twitter.com/shopmarcus/status/1021950143594196992?s=20.
[7] https://www.instagram.com/stephanie_goureau/.

and that Goureau is "working with NetFlix" to produce a documentary about Lemonis.[8]

Indeed, Plaintiffs' misappropriation of ML Fashion property has blatantly continued even to the present day.  On or about August 23, 2020, Plaintiffs Menkin and Goureau opened a new, competing fashion store called Nobelle out of ML Fashion's former Greenwich, Connecticut storefront.  *See* August 31, 2020, Supplemental Declaration of Marcus Lemonis, attached hereto as **Exhibit 2**.  Using ML Fashion Inventory (including exclusive MARCUS branded products) wrongfully taken from ML Fashion's Illinois stores, along with fixed furniture and equipment ("FFE") and computers with confidential information, Plaintiffs are advertising and selling ML Fashion products for their own personal benefit.  *Id*. at ¶¶ 4-9.  In addition to being the property of ML Fashion, the inventory and FFE that Plaintiffs have misappropriated are collateral for the loans made to ML Fashion by ML Retail via the Credit and Security Agreements, which Plaintiffs seek to obviate. *Id*. at ¶¶ 10-12.  Plaintiffs' ongoing and continued misappropriation of ML Fashion assets reveals that, though self-portrayed as victims, Plaintiffs are the real perpetrators here who do not have ML Fashion's best interests at heart, but only their own.

---

[8] https://twitter.com/NGoureauNYC/status/1279174182836883457?s=20; https://twitter.com/NGoureauNYC/status/1275081999523311627?s=20.

The truth here is simple.  Plaintiffs lived lavish lives, promoted themselves and wasted company assets, at ML Fashion's and Lemonis' expense, while Lemonis shouldered all of the losses of the business.  Lemonis pumped money into a failing business with partners, Plaintiffs, who were only interested in extracting as much money from ML Fashion as they could for their own personal gain.

In this action, Plaintiffs concocted a false and convoluted theory that Lemonis' investments and business decisions aimed at saving Plaintiffs' struggling business are a fraudulent scheme that Lemonis perpetrated against Plaintiffs.  They are wrong and simply trying to hide their own malfeasance.  Ultimately, this case is nothing more than a run-of-the-mill suit for purported breach of contract (which ultimately will also fail).  Plaintiffs' farcical attempt to extract even more money from Lemonis and ML Fashion fails, and their claims should be dismissed for the reasons set forth below.

## IV.   ARGUMENT

### A.   The Complaint must be dismissed for improper venue under Chancery Court Rule 12(b)(3).

Venue is improper in this Court.  Defendants Lemonis and Raffel reside in Illinois, and venue is improper as to all claims asserted against them.  Plaintiffs' claims against the corporate defendants are also improper because they do not reside in Delaware and are further subject to mandatory venue selection clauses in Illinois based on the relevant agreements attached to the Complaint.  *See* Compl., Ex. B, §

7.4 ("The parties hereby agree to irrevocably submit to the personal and subject matter jurisdiction of the federal and state courts sitting in Chicago, Cook County, Illinois, and agree not to object to such venue for any reason at law or in equity."); Compl., Ex. C, § 8 ("ANY LITIGATION BASED HEREON…SHALL BE BROUGHT AND MAINTAINED EXCLUSIVELY IN THE COURTS OF THE STATE OF ILLINOIS OR IN THE UNITED STATES DISTRICT COURT FOR WITH JURISDICTION IN CHICAGO, ILLINOIS[.]").

Forum selection clauses are presumptively binding. *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010) ("Forum selection clauses are presumptively valid and should be specifically enforced unless the resisting party clearly shows that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud and overreaching" (internal quotations and brackets omitted)).  The party seeking to avoid a forum selection clause "bears the burden of establishing one of the recognized exceptions." *Nat'l Indus. Group (Holding) v. Carlyle Inv. Mgmt.*, 67 A.3d 373, 381 (Del. 2013).

Here, Plaintiffs' allegations, and their attachment of these agreements to their Complaint, tell the story of how intrinsic these agreements are to Plaintiffs' claims.[9]

---

[9] *See*, *e.g.*, Compl. ¶¶ 202-209 (fraudulent inducement based in part on alleged representations "that ML Fashion's Credit Agreement with ML Retail, and the corresponding agreement with ML Retail and ML, LLC, would be used to provide [ML Fashion] will cost-effective capital not to make [ML Fashion] insurmountably indebted to ML Retail and ML, LLC" and "use [of] credit agreements to force debt

Ultimately, Plaintiffs seek to covertly recover the loans granted to ML Fashion pursuant to these agreements *as their own damages*, styling the original capital loans as "saddling" the entities with debt that Lemonis allegedly withdrew from ML Fashion and MLG Retail.  *See* Compl. ¶¶ 198, 204-205, 212-213, 220, 224, 228, 232, 243, 252, 255, & 280.

Despite the fact that these agreements with mandatory forum selection clauses are integral to Plaintiffs' claims, Plaintiffs have not even attempted to plead their heavy burden to show that the forum selection clauses are not binding.  Nor could they: Plaintiff Menkin signed the Credit and Security Agreements, and is the individual to receive notice under these agreements, on behalf of the entity for whom Plaintiffs are purportedly bringing derivative suit in this action, ML Fashion.  The venue clauses to which Menkin, on behalf of ML Fashion, agreed are binding upon ML Fashion and, by extension, Plaintiffs in this purported derivative lawsuit.

Because this litigation arises out of agreements with mandatory forum-selection clauses requiring that suit be brought in another court, this suit must be dismissed.

---

upon ML Fashion"); 210-217 (fraud based on, *inter alia*, the foregoing and on "increas[ing] ML Retail's and ML, LLC's debt position in ML Fashion"); 218-221 (breach of fiduciary duty based on "purposefully increasing the debt of the Company and forcing it to take loans from Lemonis, and/or other companies owned and/or controlled by him"); 230-233 (breach of implied covenant, same); 234-248 (breach of contract by making " ML Fashion take on debt and forced ML Fashion to take loans from ML Retail,"); 249-254 (unjust enrichment, same).

**B.      Legal Standard for Chancery Court Rule 12(b)(6) Motion to Dismiss.**

The Court must dismiss a complaint for failure to state a claim if, based on the plaintiff's allegations, the plaintiff "could not recover under any reasonably conceivable set of circumstances susceptible of proof." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).   When considering a motion to dismiss for failure to state a claim, the Court is not required to "credit conclusory allegations that are unsupported by specific facts or draw unreasonable inferences in the plaintiff's favor." *Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 100 (Del. 2013).   The Court may consider "'the well-pleaded allegations in the complaint'" and any documents that are both "integral to" the plaintiff's claims and "incorporated into" the pleadings. *Furman v. Del. Dept. of Transp.*, 2014 WL 3406509, at *2 & n.26 (Del. Super. July 9, 2014) (citing, *inter alia, Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)).

**C.      Plaintiffs' lawsuit must be dismissed because it is barred by the prohibition against claim splitting.**

Duplicative litigation, like Plaintiffs achieved here by filing simultaneous Delaware and New York lawsuits, is barred by the doctrine of claim splitting.  The prohibition against claim splitting requires "a plaintiff to present all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories,"

11

rather than "prosecute overlapping or repetitive actions in different courts or at different times." *Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980).  Claim splitting encompasses claims in different courts irrespective of procedural status and "is meant to prevent burdening the same defendant with duplicative proceedings in different courts brought by the same plaintiff based on different causes of action arising out of a common underlying nucleus of facts." *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *18 (Del. Ch. Dec. 23, 2008); *see also J.L. v. Barnes*, 33 A.3d 902, 918 (Del. Sup. Ct. 2011) ("The claim splitting doctrine presumes that the interest of fairness will require a plaintiff to present all of his theories relating to one transaction in a single action" in order to avoid "a multiplicity of suits" and "prevent a litigant from getting 'two bites at the apple'").

Plaintiffs cannot possibly dispute that they could have asserted all of the causes of action and theories presented in New York and Delaware in a single lawsuit.  Plaintiffs' two lawsuits indisputably share the same common nucleus of operative fact and share many paragraphs that are word-for-word identical.  A line-by-line comparison of the two complaints show the causes of action, facts, and annexed exhibits are nearly identical, with only strategic differences that do not prevent dismissal.  *See* Exhibit 3 (Comparison of Lawsuits' Claims); Exhibit 4,

(Comparison of Lawsuits' Facts).[10]   Because each lawsuit is based on the parties' entire business dealings across various jointly-owned entities, their common nucleus of operative fact mandates dismissal as improper claim splitting.

> **D.    MLG Retail must be dismissed because Plaintiffs' claims for conversion (Count 11) and breach of contract (Count 15) fail to state a plausible claim.**
>
> > **1.    Plaintiffs' claim for conversion (Count 11) against MLG Retail fails because Plaintiffs' own facts establish MLG Retail did not take anything or otherwise interfere with Plaintiffs' rights.**

Plaintiffs' first cause of action against MLG Retail is conversion, which is alleged generally as a "Derivative Claim against Defendants."  Compl. ¶¶ 264-271. With respect to MLG Retail, Plaintiffs allege only that "Defendants additionally converted ML Fashion's property by taking *at least $3,023,004.47 from ML Fashion and MLG Retail's bank accounts* to pay personal, non-Company related, expenses that Defendants put on Defendant Lemonis' personal credit card."  Compl. ¶ 266. (emphasis added.)

Factually, Plaintiffs failed to state a claim because, taking their allegations as true, they have described only that funds were taken *from* MLG Retail, not that MLG

---

[10] *See also Vanover v. NCO Fin. Services, Inc.*, 857 F.3d 833, 843 (11th Cir. 2017) (holding "the addition of separate causes of action in [second lawsuit] does not prevent application of the claim-splitting doctrine.  To rule otherwise would defeat the objective … to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket.").

Retail itself ***took*** any funds or otherwise wrongfully asserted dominion over any of Plaintiffs' property. Conversion is "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889–90 (Del. Ch. 2009). Here, Plaintiffs do not allege that MLG Retail took funds belonging to Plaintiffs. Rather, Plaintiffs allege that Lemonis—not MLG Retail—took these funds to pay his personal expenses. Compl. ¶¶ 134, 266 ("Lemonis took $3,023,004.47 from MLG Retail's bank account to make payments to his personal credit card."). Plaintiffs' conversion claim fails because they do not allege any facts showing how MLG Retail specifically dispossessed any of Plaintiffs' property. Instead, the only reasonable inference from Plaintiffs' pleading is that Lemonis alone is alleged to have converted these funds, which is untrue in any event.

> **2.    Plaintiffs fail to state a claim for conversion (Count 11) against any Defendant because this claim arises solely under contract.**

Legally, Plaintiffs conversion claim against all Defendants fails because they do not show that they had a right to the money—other than a right pursuant to a contract. Plaintiffs' allege that Lemonis "treated the bank accounts of ML Fashion, and its wholly owned subsidiary MLG Retail, as his own personal piggy bank" and that "the funds taken from MLG Retail to pay [Lemonis's AMEX] card were not correlated to the amount of actual business expenses Lemonis put on the card."

Compl. ¶¶ 132-133.  Plaintiffs also complain ML Fashion had a property interest in the "inventory and furniture, fixtures, and equipment in its retail stores."  Compl. ¶ 264.

The crux of Plaintiffs' allegations are that the funds in the corporate Defendants' bank accounts, inventory, and fixtures were only to be used for legitimate business reasons for each business.  However, the use (or misuse) of all Defendant entities' bank accounts, inventory, and fixtures, however, is entirely governed by their respective LLC operating agreements; no matter the facts, the Plaintiffs' rights to these company assets flow through contract.  Plaintiffs concede this point by asserting near identical facts and seeking near identical damages to support their claim for breach of ML Fashion's LLC Agreement (Count 7).  Compl. ¶¶ 234-239.  Because Plaintiffs' only entitlement to the bank account funds of any Defendant arises by contract, Plaintiffs' separate conversion claim fails and must be dismissed.  *See Kuroda*, 971 A.2d at 889–90 ("Where, however, the plaintiff's claim arises solely from a breach of contract, the plaintiff 'generally must sue in contract, and not in tort.'  Thus, in order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract.").

Moreover, Plaintiffs' conversion claim fails as a matter of law because Plaintiffs are seeking satisfaction of a contractual obligation that could be satisfied

"by the payment of money." *Kuroda*, 971 A.2d at 890 (Del. Ch. 2009) ("Generally, an action in conversion will not lie to enforce a claim for the payment of money.").

> **3.**  **Plaintiffs' breach of contract (Count 15) claim against MLG Retail fails because Menkin did not attach any contract entitling her to payment, nor is there a claim outside of ML Fashion's LLC Agreement.**

To state a claim for breach of contract, Plaintiffs "must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *Kuroda*, 971 A.2d at 883. Here, Plaintiff Menkin alleges that in exchange for her services as the President of ML Fashion and MLG Retail, these Defendants agreed to pay Menkin bimonthly payments of $11,558. Compl. ¶ 282. However, Menkin neither references any entitling provision from ML Fashion's LLC Agreement (Compl., Ex. A) nor attaches any employment or other contract with MLG Retail. Plaintiffs make no factual allegations relating to MLG Retail's alleged contract to pay Menkin a salary, but instead only make conclusory, circular arguments that because there was an agreement she would receive this bimonthly payment that "thus, a valid and enforceable contract existed between Menkin, ML Fashion, and MLG Retail." Compl. ¶¶ 282-283.

Tellingly, despite Defendants having already pointed out these fatal flaws, Plaintiffs did not add any additional factual allegations or attach the purported contracts when they filed their Amended Complaint.

As pled, to the extent Menkin is entitled to any contractual salary at all, the sole basis is the ML Fashion's company agreement—not MLG Retail.  As no agreement with MLG Retail was pled nor attached, this claim belongs only in Plaintiffs' claim for breach of the ML Fashion company agreement (Count 7). Because both claims against MLG Retail fail, MLG Retail must be dismissed from this lawsuit.

> **E.   Raffel must be dismissed because Plaintiffs' derivative claims for aiding and abetting (Count 5) and conversion (Count 11) fail to state a plausible claim.**
>
> **1.   Plaintiffs' claim for aiding and abetting (Count 5) lacks sufficient facts regarding Raffel's required scienter to aid and abet a fiduciary breach.**

Against Raffel, Plaintiffs allege aiding and abetting and then globally allege conversion as against all Defendants.  Both claims fail.  Plaintiffs cannot state a facially plausible aiding-and-abetting claim against Raffel because the Complaint is entirely devoid of scienter.  To succeed on a claim for aiding and abetting a breach of fiduciary duty, the Complaint must allege facts that prove: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach. *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001); *Allied Capital Corp. v. GC–Sun Hldgs., L.P.*, 910 A.2d 1020, 1039 (Del. Ch. 2006) ("[T]he test for stating

an aiding and abetting claim is a stringent one ...—a plaintiff must prove [its elements]").

Here, Plaintiffs allege Raffel "knowingly aided and abetted Defendants' breaches of their fiduciary duties by: (1) working with Lemonis to buy product for ML Fashion's retail stores far above ML Fashion's budget for product thus forcing ML Fashion to incur more debt from Lemonis so it was not able to cover its normal business expenses, such as payroll and rent, (2) making business decisions that were outside of her understanding such as managerial, staffing, discounting, and merchandising decisions, knowing that ML Fashion would have to expend time and resources to correct and redo her work, and (3) working with Defendants to make ML Fashion insolvent and indebted to ML Retail and ML, LLC so that they could use the assets of ML Fashion to grow Lemonis and Raffel's MARCUS brand." Compl. ¶ 228.

Plaintiffs fail to establish the first two elements of aiding and abetting because their allegations are premised on a nebulous alter ego theory wherein all Defendants are grouped together in conclusory fashion in an attempt to establish both a fiduciary duty and breach. The aiding-and-abetting claim is also barred because it is further premised upon breach of fiduciary duty claims that are themselves barred by the economic loss doctrine. *See* Compl. ¶¶ 178, 180, 183 (repeating breaches of contract 1-7 in support of breach of fiduciary duty claims). This rehashing of breach of

contract claims in order to assert tort claims is precisely what the economic loss doctrine prohibits.

In addition to their failure to establish the first two elements of aiding and abetting, Plaintiffs' claim fatally fails for lack of plausible facts relating to Raffel's "knowing participation" in the fiduciary's breach—which here is alleged to be purchasing too much inventory. Despite repleading this claim once, Plaintiffs' Complaint remains devoid of *any* allegations establishing Raffel's scienter in illegal conduct, much less plausible ones. *Cf.* Compl. ¶¶ 136, 138-145, 156-7, 164-5. The closest the Complaint comes to stating Raffel's alleged knowledge that purchasing inventory was a fiduciary breach is that ML Fashion's controller allegedly sent detailed monthly budgets and quarterly open-to-buys inventory budgets to Raffel, a third party not affiliated with any of these entities. Compl. ¶ 142. In other words, and even taking it as true, Raffel's actual knowledge that her purchasing inventory for ML Fashion was inherently wrongful is based solely on standard issued company inventory reports. These allegations belie belief and are precisely the type of conclusory allegation and unreasonable inferences that motions to dismiss are designed to parse through.

Worse, the Complaint does nothing to establish that Raffel purposefully induced the breach of care for her *own* improper motives beyond vague, conclusory information-and-belief allegations of a desire to grow ML Fashion's MARCUS

brand.  Compl. ¶ 157; *Goodwin v. Live Entm't, Inc*., CIV. A. 15765, 1999 WL 64265,
at *28 (Del. Ch. Jan. 25, 1999), *aff'd*, 741 A.2d 16 (Del. 1999) (rejecting an aiding-
and-abetting claim where the record did not support a finding that the third parties
"for improper motives of their own, intentionally duped the ... directors into
breaching their duty of care"); *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816,
862 (Del. 2015) ("It is the aider and abettor that must act with scienter. The aider
and abettor must act 'knowingly, intentionally, or with reckless indifference ...[;]'
that is, with an 'illicit state of mind.' To establish scienter, the plaintiff must
demonstrate that the aider and abettor had 'actual or constructive knowledge that
their conduct was legally improper.'").  Far from it, all Plaintiffs' Raffel allegations
detail how  she purchased too much inventory ***for ML Fashion***.  *See* Compl. ¶¶ 139
("Not long after Gooberry acquired Runway, Raffel was buying inventory for ML
Fashion's other retail stores despite not having a position with ML Fashion."), 140-
4, 156-7, 164-5.  Plaintiffs cannot have it both ways. Nor can the Court infer scienter
here, as "[a] court can infer a non-fiduciary's knowing participation ***only if*** a
fiduciary breaches its duty in an inherently wrongful manner, and the plaintiff
alleges ***specific facts*** from which that court could reasonably infer knowledge of the
breach."  *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 392 (Del. Ch. 1999)
(emphasis added).

Here, no such specific facts exist.  Taken individually or collectively, all Plaintiffs substantively allege is that Raffel bought too many products for ML Fashion and arguably made business decisions outside her understanding.  These vague allegations of purported wrongdoing are insufficient as a matter of law to establish knowing participation in legally improper behavior.  *See Kennedy*, 741 A.2d at 392 ("Mere conclusory statements devoid of factual details to support an allegation of knowing participation will fall short of the pleading requirement needed to survive a Rule 12(b)(6) motion to dismiss.") (cite omitted).  Given the "stringent test" for establishing aiding and abetting, *Allied Capital Corp.*, 910 A.2d at 1039, a pleading requirement that "***is among the most difficult in our law to satisfy***," *Mesirov v. Enbridge Energy Co., Inc.*, 2018 WL 4182204, at *13 (Del. Ch. Aug. 29, 2018) (emphasis added), Plaintiffs should not be permitted to pursue what is clearly a personal vendetta against their business partner's wife, dressed up as a nebulous and vindictive legal claim.  The aiding and abetting claim should be dismissed.

      **2.**     **Plaintiffs' conversion claim (Count 11) is devoid of plausible facts regarding Raffel's conversion of anything.**

As set forth above, Plaintiffs' conversion claim against all Defendants fails because it is based entirely on contract and does not demonstrate any right to the entities' bank account funds or inventory outside of contract.  Moreover, the Complaint does not allege any instance of Raffel taking corporate funds or inventory

belonging to Plaintiffs whatsoever.  Instead, Plaintiffs' only allege Raffel was purchasing inventory ***for the benefit of ML Fashion***.  *See* Compl. ¶¶ 139 ("Raffel was buying inventory for ML Fashion's other retail stores despite not having a position with ML Fashion,"), 143-4 (alleging Lemonis and Raffel purchased over $1M in inventory per quarter).  Plaintiffs do not even assert their mere conclusory conversion allegations against Raffel, as they do with other Defendants Lemonis and ML Fashion, because no conversion allegations are directed to Raffel specifically. There is no basis to even impute such conduct.  Therefore, Plaintiffs' claims against Raffel fail and she must be dismissed as a party to this lawsuit.

      **F.**      **Plaintiffs' claims for fraud (Counts 1 & 2), breaches of fiduciary duty (Counts 3 & 4) and the implied covenant of good faith and fair dealing (Count 6), aiding and abetting (Count 5), unjust enrichment (Count 8), "gross mismanagement" (Count 9), "waste and misappropriation of corporate assets" (Count 10), and conversion (Count 11) fail to state a plausible claim outside of contract.**

           **1.**      **Plaintiffs' nebulous alter ego pleading fails to set forth the individual acts of wrongdoing by Lemonis, ML Retail, and Marcus Lemonis, LLC.**

Plaintiffs' Complaint fails because nearly all of their causes of action are premised upon the notion that all alleged acts of Lemonis or ML Retail can be attributed to the other or to Marcus Lemonis, LLC, and thus Plaintiffs generally assert that "Defendants" engaged in purported misconduct without providing any

allegations as to which Defendant did what.  *See* Compl. ¶¶ 202, 210, 222, 226, 232, 235, 251, 255, 258-260, 265-269, 272, 276, & 280.

This sort of "group pleading" is improper.  *See, e.g., Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) (claims required to be pled with particularity failed because "the Complaint alleges many violations . . . but does not plead with particularity the specific conduct in which **each** defendant 'knowingly' engaged . . . ."); *In re Essendant, Inc. Stockholder Litigation*, 2019 WL 7290944, at *7 n.91 (Del. Ch. Dec. 30, 2019) ("group pleading is not sufficient to state a claim of breach against an individual fiduciary"); *In re Tangoe, Inc. Stockholders Litigation*, 2018 WL 6074435, at *12 (Del. Ch. Nov. 20, 2018) ("plaintiff must well-plead a loyalty breach against each individual director; so-called 'group pleading' will not suffice"); *Wood v. U.S. Bank Nat. Ass'n*, 2018 WL 4643801, at *1 (Del.Ch. Sep. 26, 2018) (dismissing defendant where "[t]he complaint uses group pleading to loosely allege [defendant's] involvement in the Transactions, but not in a way that might give rise to liability"); *Hupan v. Alliance One Int'l, Inc.*, 2015 WL 7776659, at *12 (Del. Sup. Ct. Nov. 30, 2015) ("Plaintiffs cannot satisfy Rule 8 or 9(b) by engaging in the group pleading as to . . . Defendants without providing [Defendants] notice of what they allegedly did wrong"); *Metro Commun. Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 146 n.48 (Del. Ch. 2004) ("oblique references to false statements

allegedly made by 'each defendant' will not serve to attribute misrepresentations to all defendants in an action").

Plaintiffs apparently hope to get around this fatal flaw by relying upon allegations that Lemonis, ML Retail, and Marcus Lemonis, LLC are alter egos of one another in order to avoid having to plead specific, wrongful acts by each Defendant. Plaintiff's allegations fall far short of the requirement for pleading alter ego status under Delaware law.

Courts in Delaware only disregard the separateness of entities "reluctantly," and then only in cases where an entity or individual exercises such domination and control over the alleged alter ego that the second entity is rendered a mere "dummy" or "shell" entity. *See Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003); *Haisfield v. Cruver*, 1994 WL 497868, at *3-4 (Del. Ch. Aug. 25, 1994) (piercing the veil as to a specific transaction between two entities with the same ownership). Moreover, merely pleading that an entity or individual exercised such extensive domination and control over the alleged alter egos that they were rendered "dummy" or "shell" entities is not enough. Plaintiffs must also plead facts sufficient to demonstrate that the alleged domination and control giving rise to the alter ego status was what caused the plaintiffs' injuries, *i.e.*, that the alleged alter ego was created to perpetrate a fraud against plaintiffs. *Crosse*, 836 A.2d at 497; *Outokumpu Eng'g Enters. v. Kvaerner Enviropower*, 685 A.2d 724, 729 (Del. Sup. Ct. 1996).

Here, Plaintiffs' bare-bones allegations regarding commingling of funds, disregard of the corporate form, and so forth are insufficient to meet the high burden of pleading alter ego status. *See* Compl. ¶¶ 25-28. Plaintiffs do not explain, for example, how these Defendants disregarded corporate formalities, what funds or assets were allegedly commingled, or anything else that would allow the Court to draw any such inferences as a result of Plaintiffs' conclusory statements. *See id.*

In fact, the Complaint concedes that, far from being a "dummy" or "shell" entity, ML Retail is an actual, operating corporation with real assets and businesses. *E.g.*, Compl. ¶¶ 69 (ML Retail owns 32% of Gooberry shares); 70 (ML Retail entered into a Shareholder Agreement); 75 (ML Retail operated Gooberry and related brands); 91 (ML Retail owns a membership interest in ML Fashion); 108 (ML Retail entered into Credit Agreement to extend loan to ML Fashion); 110 (ML Retail entered into Security Agreement and received security for loan); 130 (ML Retail purchased assets of Inkas, LLC).

With respect to Marcus Lemonis, LLC, the Complaint says almost nothing. Specifically, the Complaint includes general allegations about Marcus Lemonis, LLC, being a Delaware LLC formed by Lemonis (Compl. ¶ 22), the insufficient bare-bones allegations discussed above regarding purported alter-ego status (Compl. ¶¶ 12, 21-22, 26-28), and stray references to a credit agreement between Marcus Lemonis, LLC and MLG Retail (Compl. ¶¶ 106, 111-112), and to Lemonis giving

one of the Plaintiffs a position at Marcus Lemonis, LLC (Compl. ¶¶ 167-168).  Other than these passing references to Marcus Lemonis, LLC, the Complaint does not contain *any* allegations regarding Marcus Lemonis, LLC, or its activities, such that the Court could reasonably draw inferences about whether Marcus Lemonis, LLC, is a mere "dummy" or "shell" entity and the alter ego of Lemonis or ML Retail.

Even if Plaintiffs had adequately pled such extensive domination and control by certain Defendants over others so as to render both ML Retail and Marcus Lemonis, LLC, mere "dummy" or "shell" entities, Plaintiffs pleading still fails because they have not alleged that such domination or control caused their injuries.  Other than conclusory statements that Defendants are purportedly effectuating a fraud (*e.g.*, Compl. ¶¶ 27-28), Plaintiffs nowhere allege that Defendants' alleged disregard for the corporate form, commingling of funds, or other "evidence" injured Plaintiffs.

The Complaint primarily relies upon allegations that Lemonis individually misled Plaintiffs and then used their business to enrich himself and the other Defendant entities.  In other words, Plaintiffs allege that their injuries were caused by business decisions by Lemonis—not by ignoring corporate formalities, commingling entity funds and assets, and the like. *See, e.g.,* Compl. ¶¶ 204, 210-212, 222-224, 230-232, 234-238, 240-247, 251-254, 255-256, 258-261, 265-270, 272-274, 276, & 280.

Moreover, as set forth above, the Complaint contains hardly any allegations about Marcus Lemonis, LLC, at all, let alone that it was created as a "sham" entity to defraud Plaintiffs.  Plaintiffs' allegations regarding ML Retail, meanwhile, are simply that ML Retail benefited at Plaintiffs' expense, not that it is a "sham" entity created to commit a fraud against Plaintiffs.  Plaintiffs' failure to plead causation dooms their alter ego allegations, and all of the causes of action that rely upon those allegations.  In sum, Plaintiffs have not properly alleged that Lemonis, ML Retail, and Marcus Lemonis, LLC, are alter egos. As a result, their failure to plead individual acts of wrongdoing by each of these Defendants is fatal to Plaintiffs' claims.

> **2.      Plaintiffs' claims for fraudulent inducement and fraud (Counts 1 & 2) lack the requisite particularity due to group pleading and the nebulous alter ego allegations.**

Plaintiffs' claims for fraud and fraudulent inducement are subject to the heightened pleading requirement set forth in Chancery Court Rule 9(b). Accordingly,"[i]n all averments of fraud . . . the circumstances constituting fraud or must" must be "stated with particularity."   Ch. Ct. R. 9(b).   Put another way, "Delaware . . . generally calls upon plaintiffs to frame their allegations using the newspaper-story format by alleging (1) the time, place, and contents of the false representations; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations." *MHS Capital LLC*

*v. Goggin*, 2018 WL 2149718, at *9 (Del. Ch. May 10, 2018) (internal brackets omitted).  Here, Plaintiffs' ambiguous alter ego pleading leaves unanswered at least the "who" in Plaintiffs' various fraud claims.  The lack of this basic information makes it impossible to associate Plaintiffs' allegations with specific entities in order to determine whether a claim exists and its potential defenses.  As such, Plaintiffs' fraud claims fail and must be dismissed.

### 3.  The economic loss doctrine and the fact that Plaintiffs' claims are duplicative of their breach of contract claims further bar Plaintiffs' claims.

Plaintiffs' causes of action for fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty,[11] unjust enrichment, "gross mismanagement," "waste and misappropriation of corporate assets," and conversion are all barred by the economic loss doctrine.  Under Delaware law, the economic loss doctrine "prohibits certain claims in tort where overlapping claims based in contract adequately address the injury alleged," and the doctrine applies with particular force "where privity of contract exists."  *Brasby v. Morris*, 2007 Del. Super. LEXIS 73, at *18-20 (Del. Sup. Ct. Mar. 29, 2007) (fraud claimed barred).  The doctrine rests on

---

[11] Plaintiffs' assert two claims for fiduciary duty: the first as a derivative claim against Lemonis (Count 3, Compl. ¶ 218-221) and second as a derivative and direct claim against Lemonis, ML Retail, and Marcus Lemonis, LLC (Count 4, Compl. ¶ 222-225).   Count 3 is subsumed within the broader Count 4 and offers no independent claim—the listed breaches and damages are identical.  As such, Count 3 should be dismissed.

the idea that where the parties have a contract, they "allocated the risk" of nonperformance or breaches "through the bargaining process," and should therefore seek recovery through a breach of contract claim. *See Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1200 (Del. 1992); *see also Cont'l Fin. Co., LLC v. TD Bank, N.A.*, 2018 WL 565305, at *2 n.12 (Del. Super. Jan. 24, 2018) (plaintiff required to allege breaches of an independent duty rather than mere breaches of contract).

Accordingly, courts in Delaware frequently invoke the economic loss doctrine to bar tort claims that actually sound in breach of contract. *See, e.g., Affy Tapple, LLC v. ShopVisible, LLC*, 2019 Del. Super. LEXIS 867, at *8-9 (Del. Super. Mar. 7, 2019) ("intentional misrepresentation" claim that "arises solely from the performance of the [contract] and is not independent of the duties imposed under the contract" barred).

Similarly, courts routinely dismiss causes of action for fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty,[12] unjust enrichment, "gross mismanagement," "waste and misappropriation of corporate assets," and conversion where they are duplicative of contract claims. "This rule stems from 'the

---

[12] Plaintiffs assert two claims for fiduciary duty: the first as a derivative claim against Lemonis (Count 3, Compl. ¶ 218-221) and second as a derivative and direct claim against Lemonis, ML Retail, and Marcus Lemonis, LLC (Count 4, Compl. ¶ 222-225). Count 3 is subsumed within the broader Count 4 and offers no independent claim—the listed breaches and damages are identical. As such, Count 3 should be dismissed.

primacy of contract law over fiduciary law' in this statute," such that "where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim." *MHS Capital*, 2018 WL 2149718, at *8; *see also Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim" and "any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous"); *Kuroda*, 971 A.2d at 889 (same, conversion); *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *8-9 (Del. Super. June 6, 2012) ("Delaware courts will not permit a plaintiff to 'bootstrap' a breach of contract claim into a tort claim merely by intoning the *prima facie* elements of the tort while telling the story of the defendant's failure to perform under the contract" and dismissing fraud claim as duplicative of contract claim).

Here, Plaintiffs claims are barred, whether by the economic loss doctrine or the fact that the claims are duplicative of their breach of contract claim.  Plaintiffs dressed up their claims in the familiar tort language but their claims seek damages for economic losses that exclusively sound in breach of contract.  Plaintiffs' claims include a claim for breach of the LLC Agreement, which, in turn, alleges seven breaches of that Agreement: (1) "forcing ML Fashion to take on debt"; (2) "using ML Fashion as a vehicle to defraud and foreclose upon the businesses Lemonis was

purporting to save;" (3) "removing funds from [ML Fashion's] bank accounts"; (4) "closing ML Fashion's retail stores . . . and converting at least $377,377 worth of inventory and $197,255 worth of" other assets; (5) "moving all of the funds out of ML Fashion's bank accounts . . . and transferring them to a different company"; (6) "improperly taking at least $3,023,004.47 from ML Fashion and MLG Retail to pay personal, non-Company related, expenses that Defendants put on Defendant Lemonis' personal credit card"; and (7) removing cash and assets from ML Fashion "to the benefit of Defendants and detriment of [ML Fashion] and Plaintiffs." Compl. ¶¶ 243, 247.

Yet, Plaintiffs repeat some or all of these same purported breaches of contract, often verbatim, in their non-fraud tort claims. *See* Compl. ¶¶ 213 (repeating breach of contract 2 in support of fraud claim); 220, 224 (repeating breaches of contract 1-7 in support of breach of fiduciary duty claims);[13] 252 (repeating breaches of contract 1, 3, 4, 6, 7 in support of unjust enrichment claim); 255 (repeating breaches of contract 1, 3, 4, 6, 7 in support of "gross mismanagement" claim); 258-260 ("waste and misappropriation of corporate assets" claim based entirely on breaches of contract 4, 5, 6); & 265-268 (conversion claim based on breaches of contract 4, 5, 6). Moreover, and tellingly, all of these claims, other than fraud and unjust

---

[13] Because the aiding and abetting claim is premised upon breach of fiduciary duty claims that are themselves barred by the economic loss doctrine, the aiding and abetting claim is barred as well.

enrichment, seek the exact same amount of damages as the breach of LLC Agreement claim. *Compare* Compl. ¶ 248 *with id.* ¶¶ 221, 225, 256, 263, & 271. This rehashing of breach of contract claims in order to assert tort claims is precisely what the economic loss doctrine and the bar against "bootstrapping" contract claims into tort claims prohibit.

Other than the waste and conversion claims, which rely almost exclusively on alleged breaches that make up of the breach of the LLC Agreement claim, these tort claims also rely on allegations that, although not part of the breach of the LLC Agreement cause of action, are based on what are nonetheless contractual breaches. Plaintiffs' fraud cause of action specifically relates to investments, or failure to invest, "in stores, brands, and retail businesses," purchases made for ML Fashion, a failure to make payments relating to an American Express credit card, and a credit agreement with ML Fashion—allegations that either refer explicitly to purported contract obligations (e.g., the credit agreement) or are classic contractual-based claims (e.g., failure to pay a credit card). *See* Compl. ¶¶ 212-213.  Similarly, the breach of fiduciary duty claims, unjust enrichment claim, and "gross mismanagement" claim rely on allegations relating to purchasing inventory, decreasing profit margins, improperly using assets of ML Fashion, and use of tax write-offs for ML Fashion's charitable contributions, all of which directly or

indirectly relate to obligations and duties under the ML Fashion LLC Agreement. *See id.* ¶¶ 218, 220, 224, & 255.

In short, Plaintiffs' tort claims are based entirely on contract-related breaches and allegations. Those claims are, accordingly, barred by the economic loss doctrine or as duplicative of Plaintiffs' contract claim.

> ### 4. Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing (Count 6) that is distinct from the contemplated terms of ML Fashion's LLC Agreement.

The implied covenant of good faith and fair dealing serves a "narrow purpose" and thus "is only rarely invoked successfully." *Kuroda*, 971 A.2d at 888; *see also Miller v. HCP & Co.*, 2018 WL 656378, at *9 (Del. Ch. Feb. 1, 2018), *aff'd sub nom. Miller v. HCP Trumpet Investments, LLC*, 194 A.3d 908 (Del. 2018), *reargument denied* (Oct. 9, 2018). Delaware courts agree that implied covenant claims are viable only in narrow factual contexts (not present here): first, where a court must imply omitted provisions of a written agreement "so as to honor the parties' reasonable expectations," *see Cincinnati SMSA Ltd. Partnership v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998), or second, to ensure that parties to whom a contract entrusts "sole discretion" to perform a subjective task exercise that discretion in good faith. *See Charlotte Broad. LLC v. Davis Broad. of Atlanta, L.L.C.*, 2015 WL 3863245, at *7 (Del. Super. June 10, 2015). Plaintiff has failed to demonstrate such circumstances here.

33

As a general principle courts view the implied covenant as a way of implying terms in the agreement, whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions, but existing contract terms control such that implied good faith cannot be used to circumvent the parties' bargain. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 & n.19 (Del. 2005) (internal citations and quotation marks omitted).

Consequently, parties "cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement[,]" *id.*, nor can parties invoke the implied covenant "to override the express terms of the contract." *Kuroda*, 971 A.2d at 888 (internal citation omitted). "The implied covenant only applies to developments that could not be anticipated, not developments that the parties simply failed to consider--particularly where the contract authorizes [Defendant] to act exactly as it did here." *See Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

Here, Defendants' alleged breaches of the implied covenant do not involve unanticipated developments or gaps in ML Fashion's LLC Agreement. Rather, the breaches Plaintiffs allege relate to and are predominantly subsumed by the ***express terms*** of the LLC Agreement. *Compare* Compl. ¶ 243 (listing six breaches of ML Fashion LLC Agreement) *with id.* ¶ 232 (providing nearly identical breaches as listed for breach of contract, correlated as follows: ¶¶ 232(2) equals ¶ 243(1), 232(3) equals 243(3), 232(8) equals 243(2), 232(9) equals 243(4), 232(10) equals 243(5),

& 232(11) equals 243(6)). As with previous claims, the damages sought for each allegedly distinct claim are identical: "at least $4,198.960.49." *Compare* Compl. ¶ 248 *with id.* ¶ 233.

In essence, Plaintiff's implied covenant claim is that Defendants abused "the managerial power over the Company provided to them in the LLC Agreement." Compl. ¶ 232. Because the express terms of the LLC Agreement governs the managerial powers provided to members and directors, Plaintiff claim fails. *See Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009) ("[T]he implied covenant is not a means to re-write agreements.").

### 5.   Plaintiffs' unjust enrichment (Count 8) claim is barred by contract.

Plaintiffs allege that Defendants committed unjust enrichment by "using the Company as a self-enrichment vehicle while forcing the Company to take actions counter to the Company's interest and to assume increasing debt." Compl. ¶ 251. Delaware law is clear that where there is "an express, enforceable contract that controls the parties' relationship . . . a claim for unjust enrichment will be dismissed." *Bakerman v. Siney Flenk Importing Co.*, 2006 WL 3927242, at *18 (Del. Ch. Oct. 16, 2006). Here, there is no dispute that ML Fashion's LLC Agreement represents an express, enforceable contract that controls. Compl. ¶¶ 234-248 (alleging breaches of ML Fashion's LLC Agreement).

Nor is it sufficient for Plaintiffs to plead this claim "in the alternative." Delaware courts dismiss unjust enrichment claims, and reject alternative pleading, however, where, as here, the unjust enrichment claim is duplicative of the contract claim or other claims. *MidCap Funding X Trust v. Graubel Companies, Inc.*, 2020 WL 2095899, at *17 (Del. Ch. Apr. 30, 2020) (even if pled in the alternative, "the unjust enrichment claim cannot be duplicative of the accompanying breach of contract claim" and must have an "independent basis"); *In re Ezcorp. Inc. Consulting Agreement Derivative Litig.*, 2016 WL 301245, at *32 (unjust enrichment claim fails where "a remedy would lie for breach of fiduciary or waste" and "[t]he unjust enrichment count adds nothing").

Here, Plaintiffs' unjust enrichment claim is duplicative of multiple counts. *Compare* Compl. ¶¶ 251-252 (unjust enrichment), *with id.* ¶¶ 205 (fraudulent inducement), 213 (fraud), 220 (breach of fiduciary duty), 224 (second breach of fiduciary duty), 232 (breach of implied covenant), 243 (breach of contract), 255 (mismanagement), 258-261 (waste), & 265-269 (conversion).  As such, even when plead "in the alternative," Plaintiff cannot state a claim for unjust enrichment.

### G. Plaintiffs' equitable claims for receiver (Count 12), dissolution (Count 14), and for injunctive relief (Count 13) should be dismissed because these are fundamentally remedies—not causes of action.

Plaintiffs do not plead any basis nor cite any authority that entitles them to refashion Delaware remedies of appointment of a receiver, dissolution, and

injunctive relief as affirmative causes of action. *See* Compl. ¶¶ 272-275 (receiver), 276-277 (temporary, preliminary, and permanent injunction), & 278-281 (dissolution under 6 Del. C. § 18-802).  Nor do Plaintiffs provide sufficient facts to transform these into plausible claims; rather, Plaintiffs merely formulaically recite the statutes and tests for these remedies.  *Id.*

As such, Plaintiffs' receiver, injunction, and dissolution claims should be dismissed for both lack of factual sufficiency and as procedural remedies that are necessarily secondary to Plaintiffs' breach of contract and fiduciary duty claims. *Ross Holding & Mgmt. Co. v. Advance Realty Grp., LLC*, 2010 WL 3448227, at *6 (Del. Ch. Sept. 2, 2010) ("As a general matter, 'the appointment of a receiver is an extraordinary, a drastic and ... an heroic' remedy."); *Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995) ("[Plaintiff], however, fails to state a claim merely by stating that he is entitled to injunctive relief. An injunction is a remedy, not a cause of action."); *In re Arrow Inv. Advisors, LLC*, 2009 WL 1101682, at *1 (Del. Ch. Apr. 23, 2009) ("Dissolution is an extreme remedy" that should not be entertained when "premised on unproven breaches of fiduciary duty.").

### H.    Leave to amend should be denied.

In response to the preview they received of Defendants' motion to dismiss at the federal level, Plaintiffs here unilaterally availed themselves of leave to file an amended complaint on August 24, 2020, without permission by this Court.  To the

extent Plaintiffs request any further amendment, it should be denied because Plaintiffs already made their call: to amend rather than stand firm.  The letter, spirit, and underlying policies of Court of Chancery Rule 15(aaa) should apply on these facts to, "curtail the number of times that the Court of Chancery [is] required to adjudicate multiple motions to dismiss the same action." *See Otto Candies, LLC v. KPMG, LLP*, 2019 WL 1856766, at *3 (Del. Ch. Apr. 25, 2019) (internal citations omitted); Del. Ch. Ct. R. 15.

Even if Plaintiffs had not already used their mulligan to replead even after missing the deadline, the Court should nevertheless use its discretion to deny further amendment.  In exercising that discretion, "courts consider a number of factors, including bad faith, undue delay, dilatory motive, repeated failures to cure by prior amendment, undue prejudice, and futility of amendment." *Cartanza v. Lebeau*, 2006 WL 903541, at *5 (Del. Ch. Apr. 3, 2006).  Here, Plaintiffs' filing of simultaneous complaints in Delaware and New York, filing in an improper venue, and misrepresentations to this Court regarding service in order to obtain expedited schedules (*see* Trans. ID 65756000) and entry of their proposed status quo order (*see* Trans. ID 65907179 September 4, 2020 Letter, and Trans. ID 65909900 Defendants response dated September 8, 2020), demonstrate that Plaintiffs are acting in bad faith, and leave to amend should be denied.

Any request for leave to amend should be also denied because any amendment would be futile. "A motion for leave to amend a complaint is futile where the amended complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim." *Clark v. State Farm Mut. Auto. Ins. Co*., 131 A.3d 806, 811–12 (Del. 2016). Here, Plaintiffs' amendments would be futile because, as set forth above and in the Brief, the Complaint is barred by claim splitting and by Rule 12(b)(3) due to Plaintiffs' filing in an improper venue. No pleading of additional facts can cure those defects. Defendants submit that there are no additional facts Plaintiffs could plead while still complying with Rule 11—especially in light of their previous amendment. *See* Del. Ch. Ct. R. 11. This is particularly true with respect to the bare-bones, shotgun, improper nature of the existing allegations against Raffel and MLG Retail, and it is true with respect to all of the other claims against all other parties as well.

If the Court is inclined to allow Plaintiffs an additional opportunity to replead, Defendants request the Court exercise its discretion to condition such amendment upon Plaintiffs' payment of Defendants' costs and fees incurred as a result of Plaintiffs' procedural maneuverings. *Lillis v. AT&T Corp*., 896 A.2d 871, 879 (Del. Ch. 2005), *decision clarified*, 2005 WL 3111991 (Del. Ch. Nov. 17, 2005); *Franklin Balance Sheet Inv. Fund v. Crowley*, 2006 WL 3095952, at *6 (Del. Ch. Oct. 19, 2006).

Ultimately, Plaintiffs' sensationalized claims are, in fact, run-of-the-mill contract claims in disguise, which are more appropriately adjudicated in another forum and venue, and there is no way Plaintiffs can change these facts through amendment, short of more-self-contradiction and pure fabrication. Accordingly, this Court should deny Plaintiffs' request for leave to amend.

## V.    CONCLUSION

Defendants Marcus Lemonis, ML Retail, LLC, Marcus Lemonis, LLC, Roberta Raffel, and MLG Retail, LLC respectfully request the Court grant their Motion to Dismiss and for the Court to dismiss this case and all claims in their entirety. Defendants request all further relief to which they may be entitled.

Dated:  September 16, 2020                    Respectfully submitted,

                                             FARNAN LLP

                                             */s/ Brian E. Farnan*
                                             Brian E. Farnan (# 4089)
                                             Michael J. Farnan (# 5165)
                                             919 North Market Street
                                             12th Floor
                                             Wilmington, DE 19801
                                             (302) 777-0300
                                             bfarnan@farnanlaw.com
                                             mfarnan@farnanlaw.com

                                             Words: 9,449

                                             Michael D. Wexler (admitted *pro hac vice*)
                                             SEYFARTH SHAW LLP

Willis Tower
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5559

Jesse M. Coleman (admitted *pro hac vice*)
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas  77002
(713) 238-1805

*Attorneys for Defendants ML Retail, LLC,*
*Marcus Lemonis, LLC, MLG Retail, LLC,*
*Marcus Lemonis, and Roberta Raffel*