EXHIBIT – 2 –

EFiled:  Oct 19 2020 12:38PM EDT
Transaction ID 66032546
Case No. 2020-0486-MTZ

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

NICOLAS GOUREAU and STEPHANIE
MENKIN, individually and derivatively on
behalf of ML FASHION, LLC, a Delaware
limited liability company,

          Plaintiffs,

    v.

MARCUS LEMONIS, an individual, ML
RETAIL, LLC, a Delaware limited
liability company, MARCUS LEMONIS,
LLC, a Delaware limited liability
company, ROBERTA RAFFEL aka
Bobbi Lemonis, an individual, and MLG
RETAIL, LLC, a Delaware limited
liability company,

          Defendants,

    and

ML FASHION, LLC, a Delaware limited
liability company,

          Nominal Defendant.

                             C.A. No. 2020-0486-MTZ

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITON TO DEFENDANTS' MOTION TO DISMISS

**Gerard Fox Law P.C.**
Gerard P. Fox (*admitted pro hac vice*)
Lauren M. Greene (*admitted pro hac vice*)
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447
gfox@gerardfoxlaw.com
lgreene@gerardfoxlaw.com

Sean J. Bellew (#4072)
**Bellew LLC**
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808
Telephone: (302) 353-4951
sjbellew@bellewllc.com

*Attorneys for Plaintiffs Nicolas Goureau and
Stephanie Menkin*

# <u>TABLE OF CONTENTS</u>

<b>Page</b>

PRELIMINARY STATEMEMNT ...........................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

STATEMENT OF FACTS .................................................................................................2

ARGUMENT .....................................................................................................................4

    A.    Legal Standard ................................................................................................4

    B.    The Courts Should Not Consider Statements Outside Of The Complaint .....................5

    C.    Plaintiffs' Complaint Should Not Be Dismissed Under Rule 12 (b)(3) ..........................6

    D.    Plaintiffs' Claims Are Not Barred By Claim Splitting ................................................12

    E.    Plaintiffs Have Properly Alleged Claims Against MLG Retail .....................................15

        1.    Plaintiffs' Conversion Claim (Count 11) Against MLG Retail Should Not Be Dismissed ...............................................................................................15

        2.    Plaintiffs' Conversion Claim (Count 11) Does Not Solely Arise From Contract 16

        3.    Plaintiffs' Breach of Contract Claim (Count 15) Is Sufficiently Pled ...............18

    F.    The Claims Against Raffel Should Not Be Dismissed ..................................................19

        1.    Plaintiffs' Have Sufficiently Alleged Aiding And Abetting Breach Of Fiduciary Duty .........................................................................................................19

        2.    Plaintiffs' Conversion Claim Against Raffel Should Not Be Dismissed ...........21

    G.    Plaintiffs' Claims Are Not Barred By The LLC Agreement .........................................22

        1.    Plaintiffs Have Properly Alleged Alter Ego .....................................................22

        2.    Plaintiffs Have Pled Fraud With Particularity ..................................................26

        3.    Plaintiffs' Claims Are Not Barred By The Economic Loss Doctrine ...............28

        4.    Plaintiffs' Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Is Properly Pled ..................................................................................32

        5.    Plaintiffs' Unjust Enrichment Claim Is Not Barred By Contract .....................35

    H.    Plaintiffs' Claims for Receiver (Count 12), Injunctive Relief (Count 13), and Dissolution (Count 14) Should Not Be Dismissed ........................................................36

    I.    Leave To Amend ..........................................................................................................37

CONCLUSION .................................................................................................................38

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Achaian, Inc. v. Leemon Family LLC*,
  25 A.3d 800 (Del. Ch. 2011) .............................................................................36

*Airborne Health, Inc. v. Squid Soap, LP*,
  984 A.2d 126 (Del. Ch. 2009) ...........................................................................33

*Albert v. Alex. Brown Mgmt. Servs.*,
  Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133 (Ch. Aug. 26, 2005) ..........23, 35

*Alixpartners, LLP v. Benichou*,
  No. 2018-0600-KSJM, 2019 Del. Ch. LEXIS 165 (Ch. May 10,
  2019)....................................................................................................................18

*Allen v. Encore Energy Partners, L.P.*,
  72 A.3d 93 (Del. 2013).........................................................................................5

*Am. Fin. Corp. v. Computer Sciences Corp.*,
  558 F. Supp. 1182 (D. Del. 1983) ........................................................................8

*Aziz v. Tsappas*,
  Civil Action No. 2018-0871-TMR, 2019 Del. Ch. LEXIS 1396
  (Ch. Nov. 1, 2019)..............................................................................................38

*Baker v. Impact Holding, Inc.*,
  Civil Action No. 4960-VCP, 2010 Del. Ch. LEXIS 111, 2010 WL
  1931032 (Del. Ch. May 13, 2010).......................................................................9

*Balin v. Amerimar Realty Co.*,
  Civil Action No. 12896, 1995 Del. Ch. LEXIS 41 (Ch. Apr. 10,
  1995)....................................................................................................................12

*Battista v. Chrysler Corp.*,
  454 A.2d 286 (Del. Super. Ct. 1982)....................................................................5

*Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC*,
  2009 Del. Ch. LEXIS 54 (Del. Ch. Apr. 20, 2009) ...........................................33

*Bd. of Trs. v. Foodtown, Inc.*,
  296 F.3d 164 (3d Cir. 2002) ...............................................................................24

*Bear Stearns Mortg. Funding Tr. 2006-SL1 v. EMC Mortg. LLC*,
   No. 7701-VCL, 2015 Del. Ch. LEXIS 9 (Ch. Jan. 12, 2015) ...........................35

*Casella Waste Sys., Inc. v. GR Tech., Inc.*,
   No. 409-6-07, 2009 Vt. Super. LEXIS 14 (Vt. Super. Ct. Feb. 6,
   2009)..............................................................................................................13

*CLP Toxicology, Inc. v. Casla Bio Holdings LLC*,
   Nos. 2018-0783-PRW, N18C-10-332 PRW, 2020 Del. Ch. LEXIS
   230 (Ch. June 29, 2020) ...............................................................................35

*Cont'l Fin. Co., LLC v. TD Bank, N.A.*,
   No. N17C-07-002 MMJ .................................................................................30

*Danforth v. Acorn Structures, Inc.*,
   608 A.2d 1194 (Del. 1992)............................................................................28

*Data Mgmt. Internationale, Inc. v. Saraga*,
   No. 05C-05-108, 2007 Del. Super. LEXIS 412 (Super. Ct. July 25,
   2007)..............................................................................................................16

*Desimone v. Barrows*,
   924 A.2d 908 (Del. Ch. 2007) .........................................................................4

*Doberstein v. G-P Indus.*,
   No. 9995-VCP, 2015 Del. Ch. LEXIS 275 (Ch. Oct. 30, 2015) .................22, 23

*Drug, Inc. v. Hunt*,
   35 Del. 339, 168 A. 87 (1933).................................................................15, 16

*ESG Capital Partners II, LP v. Passport Special Opportunities Master
   Fund, LP*,
   No. 11053-VCL, 2015 Del. Ch. LEXIS 302 .....................................................18

*Gerber v. Enter. Prods. Holdings, LLC*,
   67 A.3d 400 (Del. 2013).................................................................................33

*Gott v. Newark Motors, Inc.*,
   267 A.2d 596 (Del. Super. Ct. 1970)..............................................................37

*Grayson v. Imagination Station, Inc.*,
   Civil Action No. 5051-CC, 2010 Del. Ch. LEXIS 169 (Ch. Aug.
   16, 2010)........................................................................................................31

*Haisfield v. Cruver*,
   1994 Del. Ch. LEXIS 155, 1994 WL 497868 (Del. Ch. 1994) .........................26

*Highway to Health, Inc. v. Bohn*,
   No. 2018-0707-AGB, 2020 Del. Ch. LEXIS 144 (Ch. Apr. 15,
   2020) ............................................................................................................11

*Intertrust GCN, LP v. Interstate Gen. Media, LLC*,
   No. 99, 2014 Phila. Ct. Com. Pl. LEXIS 434 (Phila. Ct. Com. Pl.
   Feb. 11, 2014) ..............................................................................................13

*Isr. Disc. Bank of N.Y. v. First State Depository Co., LLC*,
   No. 7237-VCP, 2012 Del. Ch. LEXIS 226 (Ch. Sep. 27, 2012) ......13, 17, 29, 31

*J.I. Kislak Mtg. Corp. v. William Matthews Bldr., Inc.*,
   287 A.2d 686 (Del. Super. 1972) .....................................................................27

*Juju, Inc. v. Native Media, LLC*,
   Civil Action No. 19-402-CFC, 2020 U.S. Dist. LEXIS 104387 (D.
   Del. June 15, 2020) ........................................................................................25

*Khanna v. McMinn*,
   No. 20545-NC, 2006 Del. Ch. LEXIS 86 (Ch. May 9, 2006) .........................5, 6

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
   844 F. Supp. 2d 519 (D. Del. 2012) ................................................................29

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009) .........................................................................18

*Livery Coach Sols., L.L.C. v. Music Express/East, Inc.*,
   245 F. Supp. 3d 639 (D. Del. 2017) ................................................................29

*LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*,
   Civil Action No. 12067-VCG, 2017 Del. Ch. LEXIS 49 (Ch. Mar.
   29, 2017) ......................................................................................................27

*Mabon, Nugent & Co. v. Tex. Am. Energy Corp.*,
   Civil Action No. 8578, 1990 Del. Ch. LEXIS 46 (Ch. Apr. 12,
   1990) .........................................................................................................23, 25

*Madison Realty Partners 7, LLC v. AG ISA, LLC*,
   No. CIV.A. 18094, 2001 Del. Ch. LEXIS 37, 2001 WL 406268
   (Del. Ch. Apr. 17, 2011) ...................................................................................8

*Mason v. Network of Wilmington, Inc.*,
    No. Civ. A. 19434-NC, 2005 Del. Ch. LEXIS 99, 2005 WL
    1653954 (Del. Ch. July 1, 2005) ......................................................................23

*McWane, Inc. v. Lanier*,
    No. 9488-VCP, 2015 Del. Ch. LEXIS 24 (Ch. Jan. 30, 2015)............................7

*MetLife Inv'rs USA Ins. Co. v. Star Lite Brokerage, Inc.*,
    No. C.A. 11-911-LPS, 2012 U.S. Dist. LEXIS 139431, 2012 WL
    4783231 (D. Del. Sept. 21, 2012)....................................................................26

*Miller v. HCP & Co.*,
    No. 2017-0291-SG, 2018 Del. Ch. LEXIS 40 (Ch. Feb. 1, 2018) ....................33

*Nat'l Indus. Group (Holding) v. Carlyle Inv. Mgmt.*,
    67 A.3d 373 (Del. May 29, 2013) ......................................................................8

*Nelson v. Emerson*,
    No. 2937-VCS, 2008 Del. Ch. LEXIS 56 (Ch. May 6, 2008)............................5

*Novipax Holdings LLC v. Sealed Air Corp.*,
    No. : N17C-03-1682 EMD ................................................................................35

*O'Rangers v. Cadia Rehab. Silverside*,
    No. N18C-12-253 DCS, 2019 Del. Super. LEXIS 181 (Super. Ct.
    Apr. 8, 2019)....................................................................................................13

*Pauley Petroleum, Inc. v. Cont'l Oil Co.*,
    239 A.2d 629, 43 Del. Ch. 516 (Del. 1968) ....................................................22

*Penn Mut. Life Ins. Co. v. Norma Espinosa*
    *2007-1*................................................................................................................28, 29

*Prairie Capital III, Ltd. P'ship v. Double E Holding Corp.*,
    132 A.3d 35 (Del. Ch. 2015) .......................................................................26, 27

*Progressive Cas. Ins. Co. v. Drive Trademark Holdings LP*,
    No. 09-902-JJF-MPT, 2010 U.S. Dist. LEXIS 152669 (D. Del.
    July 21, 2010) ..................................................................................................17

*In re Raharney Capital, LLC v. Capital Stack LLC*,
    138 A.D.3d 83, 25 N.Y.S.3d 217 (N.Y. App. Div. 2016)..................................13

*RBC Capital Mkts., LLC v. Jervis*,
    129 A.3d 816 (Del. 2015)..................................................................19

*RJ Assocs. v. Health Payors' Org. Ltd. Pshp.*,
    C.A. No. 16873, 1999 Del. Ch. LEXIS 161 (Ch. July 16, 1999)......................31

*Rushing v. Wells Fargo Bank, N.A.*,
    752 F. Supp. 2d 1254 (M.D. Fl. 2010) ........................................................27, 30

*Sammons v. Hartford Underwriters Insurance*,
    2010 Del. Super. LEXIS 134, 2010 WL 1267222 (Del. Super. Ct.
    Apr. 1, 2010)....................................................................................27

*Sandvik AB v. Advent Int'l Corp.*,
    83 F. Supp. 2d 442 (D. Del. 1999) ..................................................27

*Shandler v. DLJ Merch. Banking, Inc.*,
    No. 4797-VCS, 2010 Del. Ch. LEXIS 154 (Ch. July 26, 2010) .......................23

*Skye Mineral Inv'rs, LLC v. DXS Capital (U.S.) Ltd.*,
    No. 2018-0059-JRS, 2020 Del. Ch. LEXIS 72 (Ch. Feb. 24, 2020) .................20

*Stewart v. Wilmington Tr. SP Servs.*,
    112 A.3d 271 (Del. Ch. 2015) ..........................................................19

*Sustainability Partners LLC v. Jacobs*,
    No. 2019-0742-SG, 2020 Del. Ch. LEXIS 209 (Ch. June 11, 2020).............9, 10

*In re TGM Enters., L.L.C.*,
    Civil Action No. 3565-CC, 2008 Del. Ch. LEXIS 130 (Ch. Sep.
    12, 2008)........................................................................................13

*VTB Bank v. Navitron Projects Corp.*,
    No. 8514-VCN, 2014 Del. Ch. LEXIS 61 (Ch. Apr. 28, 2014) ........................36

*Wallace v. Wood*,
    752 A.2d 1175 (Del. Ch. 1999) .................................................7, 10, 11

*Weygandt v. Weco, LLC*,
    No. 4056-VCS, 2009 Del. Ch. LEXIS 87 (Ch. May 14, 2009)........................11

*In re Xura, Inc. Stockholder Litig.*,
    2018 Del. Ch. LEXIS 563 (Ch. Dec. 10, 2018)...........................................20, 21

*Zutrau v. Jansing*,
    No. 7457-VCP, 2013 Del. Ch. LEXIS 71 (Ch. Mar. 18, 2013) ........................36

**Statutes**

6 Del. C. § 18-802 ...............................................................................13, 36

6 Del. C. § 18-1101(c) ...............................................................................33

## PRELIMINARY STATEMEMNT

Plaintiffs Nicolas Goureau and Stephanie Menkin ("Plaintiffs"), by and through their undersigned counsel, hereby submit their brief in opposition to Defendants' Motion to Dismiss.[1]  Defendants' Motion to Dismiss relies on personal attacks on Plaintiffs, red herrings, and faulty arguments in an attempt to dismiss Plaintiffs' well-pled claims.[2]  As set forth below, Plaintiffs have properly alleged the claims in their First Amended Complaint and Defendants' motion should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

On June 18, 2020, Plaintiffs filed this action in the Court of Chancery for the State as Delaware.  That same day, Plaintiffs filed a Motion to Expedite Proceedings and for Entry of a *Status Quo* Order.  On July 9, 2020, Chancellor Zurn issued an order setting the schedule for Plaintiffs' Motion to Expedite Proceedings.  On July 14, 2020, the day their opposition was due, Defendants filed a notice of removal for Federal Court.  On August 21, 2020, the matter was remanded back to the Court of Chancery.  Plaintiffs filed their Verified First Amended Complaint ("FAC") on August 25, 2020.  Defendants filed this instant motion on September 16, 2020.

---

[1]    All internal alterations, quotation marks, footnotes and citations herein are omitted and all emphasis is added unless otherwise noted.  All abbreviations have the same meanings as provided in the FAC.

[2]    Additionally, Defendants have asked for Plaintiffs' entire FAC to be dismissed but have made no substantive argument regarding Count VII, breach of the LLC Agreement.  At minimum, Count VII must survive dismissal.

## STATEMENT OF FACTS

The facts of this case are fully set forth in Plaintiffs' FAC.  A brief summary is provided herein.  Through Defendant Marcus Lemonis' television show, "The Profit," he presents himself as a savior to struggling small business owners all the while preying on the business he purports to be saving.  (FAC ¶ 2.)  Lemonis strategically drowns these businesses in debt in order to foreclose on them and take their assets and IP to expand his own empire.  (*Id.*)

Plaintiffs Goureau and Menkin's family owned clothing line Courage.B was featured on a 2014 episode of the show.  (*Id.* ¶ 3.)  Courage.B began in 2008 as a business owned and operated by Noemi Goureau and her children, Plaintiffs Goureau and Menkin, through their entity Gooberry Corp.  (*Id.*)  Over the next six years, Courage.B became very successful.  In 2014, Courage.B had seven different retail stores around the country and was valued at over $2.6M.  (*Id.* ¶ 4.)

In their episode of the Profit, Lemonis agreed to invest in Courage.B by acquiring a 30% interest in Gooberry for $800,000.  (*Id.* ¶ 5.)  Plaintiffs were convinced that Lemonis was committed to further growth of the business.  (*Id.* ¶¶ 5-7.)  On November 18, 2014, Lemonis purchased his stake in Gooberry through Defendant ML Retail.[3]  (*Id.* ¶ 8.)

---

[3]     Plaintiffs Goureau and Menkin have brought separate claims against Lemonis, ML Retail, and ML, LLC related to their time on the show and the entity Gooberry in the United States District Court for the Southern District of New York (the

Eventually, Lemonis convinced Goureau and Menkin to start a new entity with him, ML Fashion. Lemonis represented to Plaintiffs that would be the umbrella entity through which the parties invest in various businesses, brands, and stores. (FAC ¶¶ 9-10.) Lemonis was sure to give himself unbridled control over ML Fashion as its Manager, Chairman/CEO, and owner of ML Retail, LLC, the biggest and most powerful member of ML Fashion. (*Id.* ¶¶ 89-103.) Lemonis used this unchecked control over ML Fashion for his personal gain to the detriment of ML Fashion and Plaintiffs. Time and time again, Lemonis hoisted unnecessary debts onto ML Fashion in order to force ML Fashion to obtain loans from one of Lemonis' other controlled entities to meet its obligations such as payroll. (*Id.* ¶¶ 106-165.)

Thus, for example, Lemonis forced ML Fashion to keep buying inventories of various businesses Lemonis pledged to save on "The Profit," which reduced ML Fashion's typical profit margins and resulted in growing debts. (*Id.* ¶¶ 117-122.) Lemonis also led ML Fashion to buy retail stores, invest exorbitant amounts of money to renovate them and swap out their inventories and then liquidate them at a loss. (*Id.* ¶¶ 117-123, 127-129, 140-146.) As a result of Defendants' actions, ML Fashion became deeply indebted, teetering on the brink of insolvency, while its brand that Plaintiffs worked so hard and so long to develop came to be gradually

---

"SDNY Action"). (Motion, Ex. 1.) As set forth below, the claims brought in that case, the parties, and the relief requested therein, are separate and distinct from the claims at issue and relief sought here.

weakened.

Starting on April 27, 2020, Defendants began systematically moving funds out of MLG Retail's account that was used to automatically pay several of MLG Retail's debts.  Importantly, the account was used to pay a payment plan for a Company American Express credit card tied to Goureau personally that was used for the business.  (*Id.* ¶ 177.)  On or around May 22, 2020, Lemonis, or someone acting at his direction, transferred all funds (roughly $601,324.02) in the ML Fashion and MLG Retail bank accounts into a new bank account under the name of MLG Retail.  (*Id*. ¶ 186.)  The new bank account was not tied to any of ML Fashion or MLG Retail's other accounts, and Menkin, a signatory on all of the bank accounts for both companies, does not have access to the account.  (*Id*.)  Even worse, Lemonis has been unilaterally closing its retail stores and moving ML Fashion's inventory to other entities and/or businesses owned or controlled by Lemonis.  Since April 2020, Defendants have removed at least $377,377 worth of inventory and $197,255 worth of fixtures, furniture, and equipment from the stores.  (*Id.* ¶ 173-176.)

## ARGUMENT

### A.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must plead enough facts to plausibly suggest that the plaintiff will ultimately be entitled to the relief [sought]."  *Desimone v. Barrows,* 924 A.2d 908, 929 (Del. Ch. 2007).  "A

complaint will not be dismissed unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof." *Battista v. Chrysler Corp.*, 454 A.2d 286, 287 (Del. Super. Ct. 1982). In evaluating a complaint under Rule 12(b)(6), "all well-pleaded facts in the complaint are assumed to be true." *Id*. To be sure, the court must "accept as true all well-pled allegations of fact in the complaint, and all reasonable inferences from non-conclusory allegations contained in the complaint must be drawn in favor of the plaintiff." *Khanna v. McMinn*, No. 20545-NC, 2006 Del. Ch. LEXIS 86, at *46 (Ch. May 9, 2006). Applying this standard, Defendants' motion should be denied.

**B.    The Courts Should Not Consider Statements Outside Of The Complaint**

In general, a court "should not consider matters outside of the pleadings when [it] rules on a Court of Chancery Rule 12(b)(6) motion." *Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 96 n.2 (Del. 2013). A court "may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint or (2) the document is not being relied upon to prove the truth of its contents." *Id*. A court may also take judicial notice of publicly filed documents on a motion to dismiss. *Nelson v. Emerson*, No. 2937-VCS, 2008 Del. Ch. LEXIS 56, at *7 n.2 (Ch. May 6, 2008).

The statements incorporated by Defendants do not fall into that narrow exception. Rather than address the facts alleged in the FAC, Defendants statement

of facts and entire opening brief is replete with personal attacks misconstrued from various social media postings and Plaintiffs' episode of the Profit.  Defendants have not attached these items to their motion, have not moved to have them judicially noticed, and have made no effort to assure the Court of their authenticity. Defendants also bring up flimsy allegations against Menkin regarding her new, separate store, Nobelle.  These factually inaccurate allegations have already been squashed in declarations filed by Menkin and Goureau in this Court.[4]  Again, this Court is bound to "accept as true all well-pled allegations of fact in the complaint, and all reasonable inferences from non-conclusory allegations contained in the complaint must be drawn in favor of the plaintiff."  *Khanna v. McMinn*, No. 20545-NC, 2006 Del. Ch. LEXIS 86, at *46 (Ch. May 9, 2006).  Thus, this Court should not consider the statements and materials outside of the FAC.

## C.    Plaintiffs' Complaint Should Not Be Dismissed Under Rule 12 (b)(3)

Defendants' argument that this action is in the wrong venue falls flat. Defendants based their argument on forum selection clauses found in contracts that are attached to the FAC.  However, this argument is a red herring intended to mislead the Court.   The forum selection clauses cited by Defendants are in the Credit

---

[4]      In an act of pure gamesmanship and attempted intimidation, Defendants filed a complaint against Menkin, her business partner, her new business, and Goureau in the United States District Court for the Northern District of Illinois, Case No. 1:20-cv-05124 based on these same flimsy and factually inaccurate accusations.

Agreement between ML Fashion and ML Retail and the Security Agreement between ML Fashion and ML Retail.   (FAC, Exs. B, C.)  Plaintiffs' FAC does not arise out of those agreements and they have not sued under those agreements.  To be sure, Plaintiffs are not even parties to those agreements.

Notably, Defendants are seeking to apply the forum selection clauses in these agreements to non-signatories.  While Menkin signed the agreements in her capacity as the President of ML Fashion, she is not a party to the agreements individually and is not bound to the agreements.  "Indeed, Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually."  *Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).  Here, none of the agreements with the supposed forum selection clauses purport to bind Menkin individually.

In this situation, "courts employ a three-part test to determine whether a nonsignatory to an agreement is bound by a forum selection clause in that agreement: First, is the forum selection clause valid? Second, are the nonsignatories third-party beneficiaries, or closely related to, the contract? Third, does the claim arise from their standing relating to the . . . agreement?"  *McWane, Inc. v. Lanier*, No. 9488-VCP, 2015 Del. Ch. LEXIS 24, at *23 (Ch. Jan. 30, 2015).  In order for the forum selection clause to apply all three questions must be answered in the affirmative.  *Id*.

As an initial matter, Plaintiffs have alleged that they were fraudulently

induced into ML Fashion and the corresponding ML Fashion paperwork.  As such, the allegations in the FAC show that Menkin's signature on the agreements, in her capacity as President for ML Fashion, was obtained by fraud.  *Nat'l Indus. Group (Holding) v. Carlyle Inv. Mgmt.*, 67 A.3d 373, 381 (Del. May 29, 2013) (a forum selection clause is invalid if it was obtained by "fraud or overreaching.").

Further, the second and third prongs of the three-part test are undoubtedly answered in the negative.  Plaintiffs are not third-party beneficiaries or closely related to the Credit Agreement and Security Agreement as required by the second prong.  Delaware courts have established a three-part test to determine whether an party qualifies as a third-party beneficiary of an agreement: "(i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract." *Madison Realty Partners 7, LLC v. AG ISA, LLC*, No. CIV.A. 18094, 2001 Del. Ch. LEXIS 37, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2011); *accord Am. Fin. Corp. v. Computer Sciences Corp.*, 558 F. Supp. 1182, 1185 (D. Del. 1983) (noting that "both parties must in some manner express an intent to benefit the third-party before third-party beneficiary status is found").  Here, there is absolutely nothing to imply that Plaintiffs are third-party beneficiaries of the Credit Agreement and Security

Agreement.

Similarly, Plaintiffs are not "closely related" to the Credit Agreement and Security Agreement.  In this context, there are two ways that a non-signatory can be closely related to an agreement: (1) it receives a direct monetary or non-monetary benefit from the agreement; or (2) it was foreseeable that the entity would be bound by the agreement.  *Baker v. Impact Holding, Inc.*, Civil Action No. 4960-VCP, 2010 Del. Ch. LEXIS 111, 2010 WL 1931032, at *4 (Del. Ch. May 13, 2010).

Here, Plaintiffs have not received any direct benefit from the Credit Agreement and Security Agreement between ML Fashion and ML Retail.  "This Court's case law on this point is clear: to be bound by forum selection clauses, non-signatories must ***actually receive*** a benefit under or by way of the contract."  *Sustainability Partners LLC v. Jacobs*, No. 2019-0742-SG, 2020 Del. Ch. LEXIS 209, at *13 (Ch. June 11, 2020) (analyzing cases that have found a direct benefit and noting that the non-signatories "in those cases received direct benefits from the contracts like permitted stock transfers, lucrative leases, a seat on a board of directors, or cash.")  Defendants have not and cannot point to any such benefit received by Plaintiffs individually.

"The foreseeability inquiry rests on the public policy that forum selection clauses promote stable and dependable public relations, and it would be inconsistent with that policy to allow the entities through which one of the parties chooses to act

to escape the forum selection clause." *Id*.  Plaintiffs could not have foreseen that they would be subject to the forum selection clause in the Credit Agreement and Security Agreement.  Defendants seem to argue that because Menkin signed the agreements in her capacity as President of ML Fashion it was foreseeable that she would be bound to it personally.  This does not make sense.  Again, "officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually." *Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).  There is no such language in either contract that purports to bind Menkin personally.  Moreover, as alleged in the FAC, Plaintiffs were not involved in the drafting, negotiation, or preparation of these agreements.  (FAC ¶ 90, 108-10.)  As such, they could not have foreseen being bound to the forum selection clause in the agreements.

Furthermore, as discussed in *Sustainability Partners*, where, as here, foreseeability would be the sole basis for finding a party is closely related to a contract—as Plaintiffs have received no direct benefit from the agreements—it has been applied only in two scenarios: "(1) when non-signatory *defendants* sought to enforce a forum selection clause, and the signatory *plaintiffs* sought to avoid it by arguing the non-signatory defendants lacked standing under the contract; and (2) when a controlled entity is subject to a forum selection clause agreed to by its controller and the controlled entity bears a clear and significant connection to the

subject matter of the agreement." *Id*. (collecting authorities).  Clearly neither of those two scenarios exist here.

As to the third prong of the test, Plaintiffs' claims to not arise from the Credit Agreement or the Security Agreement.  Courts recognize that the meaning of the third prong "is that the agreement containing the forum selection clause must also be the agreement that gives rise to the substantive claims brought by or against a non-signatory in order for the forum selection clause to be enforceable against the non-signatory." *Weygandt v. Weco, LLC*, No. 4056-VCS, 2009 Del. Ch. LEXIS 87, at \*12-14 n.15 (Ch. May 14, 2009).

There can be no doubt that the substance of Plaintiffs' claims arise from the LLC Agreement ***and not*** the Credit Agreement or Security Agreement.  To be sure, Plaintiffs have not sought any relief with respect to the Credit Agreement or Security Agreement.  *See Highway to Health, Inc. v. Bohn*, No. 2018-0707-AGB, 2020 Del. Ch. LEXIS 144, at \*15 (Ch. Apr. 15, 2020) (Declining to enforce a forum selection clause because "Plaintiffs have not requested any relief with respect to the Stockholders Agreement, let alone put at issue the circumstances giving rise to the SARs Holders' rights as third-party beneficiaries under Sections 5(c) and 28 of that agreement.")

Rather, the agreements illustrate how Defendants were able to saddle ML Fashion with unnecessary and insurmountable debt making ML Fashion and

Plaintiffs beholden to Defendants.  (FAC. ¶¶ 110-123.)  The Credit Agreement and Security Agreement are the vehicles through which Defendants harmed ML Fashion and Plaintiffs.  The contract from which Plaintiffs' contract claims arise is the LLC Agreement itself.  This agreement does not have a venue selection clause and has a choice of law clause requiring Delaware law be applied.  (FAC, Ex. A § 13.9.)  Thus, Plaintiffs' FAC should not be dismissed under Rule 12 (b)(3).

### D.  Plaintiffs' Claims Are Not Barred By Claim Splitting

Plaintiffs have not engaged in improper "claim-splitting."  "The rule against claim splitting, like its parent doctrine *(res judicata),* is designed to preclude a litigant from getting 'two bites at the apple.' The basic difference between the two doctrines is that *res judicata* precludes the relitigation of factual and legal issues previously decided in an earlier lawsuit, while the rule against claim splitting eliminates the contemporaneous litigation of the same factual or legal issues in different courts. *Balin v. Amerimar Realty Co.*, Civil Action No. 12896, 1995 Del. Ch. LEXIS 41, at *11-12 (Ch. Apr. 10, 1995) (finding no claim splitting where "the parties and the claims in the Delaware and Pennsylvania actions are not identical. The rule against claim splitting cannot be invoked to deny a plaintiff an opportunity to present in one forum, facts and theories of recovery that for jurisdictional reasons cannot be presented in a different forum.").

When considering whether to dismiss (or stay) an action for claim splitting,

Delaware courts apply a three-factor test: "(1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues?" *O'Rangers v. Cadia Rehab. Silverside*, No. N18C-12-253 DCS, 2019 Del. Super. LEXIS 181, at *14 (Super. Ct. Apr. 8, 2019). None of these three factors apply here.

*First*, there is no prior action. The SDNY Action was filed at the same time as this instant action, so there is no need to give it priority over this one. *Second*, the United States District Court for the Southern District of New York is not capable of resolving all of the claims brought here. Notably, Plaintiffs' FAC involves disputes between members of a Delaware limited liability company and seeks judicial dissolution under 6 Del. C. § 18-802. The Court of Chancery has exclusive jurisdiction to hear these claims. *In re TGM Enters., L.L.C.*, Civil Action No. 3565-CC, 2008 Del. Ch. LEXIS 130, at *4 (Ch. Sep. 12, 2008) ("The Court understands that jurisdiction rests solely with the Court of Chancery where a party moves for dissolution of a company.").[5]

---

[5]      *See also In re Raharney Capital, LLC v. Capital Stack LLC*, 138 A.D.3d 83, 25 N.Y.S.3d 217, 217-18 (N.Y. App. Div. 2016) (holding that New York courts do not have subject matter jurisdiction to judicially dissolve a Delaware LLC); *Intertrust GCN, LP v. Interstate Gen. Media, LLC*, No. 99, 2014 Phila. Ct. Com. Pl. LEXIS 434, at *7 (Phila. Ct. Com. Pl. Feb. 11, 2014) (stating that the language of section 18-802 "grants exclusive subject [matter] jurisdiction to the Delaware Court of Chancery to hear and determine petitions for judicial dissolution."); *Casella Waste Sys., Inc. v. GR Tech., Inc.*, No. 409-6-07, 2009 Vt. Super. LEXIS 14, at *7-8 (Vt. Super. Ct. Feb. 6, 2009) ("[A] plain reading of [section 18-802] suggests that

*Third*, as Plaintiffs have repeatedly argued, the two cases do not involve the same parties or the same issues.  Gooberry Corp.—the entity at issue in the SDNY Action—and Machete Productions are not a part of this instant action, whereas Nominal Defendant ML Fashion, Defendant Raffel and Defendant MLG Retail are not a part of the SDNY Action.

Further the two complaints arise from different subject matters and address different harms.  The SDNY Action deals with Lemonis, ML Retail, ML, LLC, and Machete's fraud, misrepresentations, mismanagement, relating to Plaintiffs' involvement on the show "The Profit," and their entity Gooberry.  To be sure, Plaintiffs' claims in the SDNY Action relate to Plaintiffs' original clothing brand and company Gooberry.  In short, that complaint alleges that Defendants Lemonis, ML Retail, ML, LLC, and Machete used the guise of the television show to fraudulently insert themselves in Plaintiffs' business, take control of the business, and systematically run it into the ground just to taking the pieces for themselves. (*See* e.g. Motion, Ex. 1.)

The claims at issue here stem from a separate business venture between Plaintiffs and Defendants run through the entity ML Fashion which was formed specifically for this separate venture years after Plaintiffs were on "The Profit."  (*See*

_____

the default rules governing dissolution grant subject matter jurisdiction only to the Delaware Court of Chancery, and not to any other court.").

*e.g.* FAC ¶¶ 9-12.)  ML Fashion was supposed to be the umbrella entity through which Lemonis and Plaintiffs equally owned and controlled the fashion and retail arm of Lemonis and Plaintiffs' various businesses.  Plaintiffs' claims here arise from Defendants fraud, misrepresentations, and mismanagement surrounding the entity ML Fashion and have nothing to do with Plaintiffs' episode of "The Profit."  These are different than those in the SDNY Action.

The charts Defendants have included in with their motion does not show that the two complaints are "identical."  While the names of the causes of action may be the same, they clearly address different harms and seek different relief.  Moreover, despite potentially having some overlap in background facts, the two complaints arise from two completely different transactions, the SDNY Defendants swindling Plaintiffs through the show "The Profit," and Plaintiffs' separate business venture with the Defendants in this action.  As such, Plaintiffs have not engaged in improper claim splitting.

### E. Plaintiffs Have Properly Alleged Claims Against MLG Retail

#### 1. Plaintiffs' Conversion Claim (Count 11) Against MLG Retail Should Not Be Dismissed

Contrary to Defendants' argument, Plaintiffs have alleged valid claims against Defendant MLG Retail.  Under Delaware law, "any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it, is a conversion."  *Drug, Inc. v. Hunt*, 35 Del. 339, 354, 168 A. 87, 93 (1933).

The crux of Defendants' argument regarding Plaintiffs' conversion claim is that the FAC only alleges that MLG Retail converted funds from its own bank accounts. That is not an accurate reading of Plaintiffs' conversion claim. Despite citing it in their brief, Defendants completely ignore the allegation that Defendants removed roughly $601,324.02 from ML Fashion's bank accounts improperly converting the funds. (FAC ¶¶ 186, 266.) Indeed, Plaintiffs' FAC makes it clear that MLG Retail was part of the transaction which constituted conversion as funds were taken from ML Fashion's bank accounts and put into a bank account in MLG Retail's name. (*Id*.) Moreover, Plaintiffs also allege that Defendants converted furniture, fixtures, and equipment belonging to ML Retail. (*Id*. ¶ 268) Again, this alleges that MLG Retail converted assets of ML Fashion. Accepting Plaintiffs' allegations as true, it is clear that Plaintiffs have alleged a claim of conversion against Defendant MLG Retail that should survive dismissal.

## 2. Plaintiffs' Conversion Claim (Count 11) Does Not Solely Arise From Contract

Defendants' argument that Plaintiffs' conversion claim should be dismissed because they solely arise from the LLC Agreement fall flat. "Because conversion is an intentional tort, there is a general duty grounded in tort law to refrain from converting another's property. A conversion claim may be asserted alongside a contract claim where the plaintiff alleges the defendant breached a tort duty independent of any obligations imposed by the contract." *Data Mgmt.*

*Internationale, Inc. v. Saraga*, No. 05C-05-108, 2007 Del. Super. LEXIS 412, at *10-11 (Super. Ct. July 25, 2007).  When there is uncertainty as to whether the contract covers the alleged acts of conversion, dismissal is not appropriate. *Progressive Cas. Ins. Co. v. Drive Trademark Holdings LP*, No. 09-902-JJF-MPT, 2010 U.S. Dist. LEXIS 152669, at *7-8 (D. Del. July 21, 2010).

Defendants only argument is that Plaintiffs' right to the assets converted by Defendants stem solely from the LLC Agreement, and thus sound only in contract. However, this argument ignores the fact that Count 11 of the FAC is brought derivatively against Defendants on behalf of Nominal Defendant ML Fashion. There can be no doubt that ML Fashion had a property right to the funds in its bank accounts, and inventory, and furniture, fixtures, and equipment in its stores separate and apart from the LLC Agreement.  Moreover, Plaintiffs' conversion claim is against all Defendants, including those who are not parties to the LLC Agreement. Thus, Plaintiffs' conversion claim could not be duplicative as against those Defendants.

Nevertheless, to the extent the Court finds Plaintiffs' conversion and breach of contract claims are mutually exclusive, Rule 8 allows Plaintiffs to pursue both claims in the alternative.  Del. Ch. Ct. R. 8; *see also Isr. Disc. Bank of N.Y. v. First State Depository Co., LLC*, No. 7237-VCP, 2012 Del. Ch. LEXIS 226, at *46 (Ch. Sep. 27, 2012) (Denying a motion to dismiss and stating, "[t]herefore, even if IDB's

breach of contract and conversion claims were mutually exclusive, that would not preclude IDB from pursuing both claims in the alternative."); *Alixpartners, LLP v. Benichou*, No. 2018-0600-KSJM, 2019 Del. Ch. LEXIS 165, at \*15 (Ch. May 10, 2019) (refusing to dismiss a conversion claim as duplicative of a breach of contract claim.); *ESG Capital Partners II, LP v. Passport Special Opportunities Master Fund, LP*, No. 11053-VCL, 2015 Del. Ch. LEXIS 302, at \*46 (Ch. Dec. 16, 2015 (same).

### 3.   Plaintiffs' Breach of Contract Claim (Count 15) Is Sufficiently Pled.

Under Delaware law, to state a claim for breach of contract a plaintiff "must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009).[6]  Plaintiffs' have alleged these elements.  Plaintiffs alleged that MLG Retail and ML Fashion agreed to pay Menkin a monthly salary of $11,558.  (FAC ¶¶ 170, 282-283.)  Defendants breached this agreement when they stopped paying Menkin the agreed upon compensation, harming Menkin.  (*Id.* ¶¶ 282-285.)  Defendants make an argument that such allegations are not enough to sufficiently plead breach

---

[6]   As an initial note, Defendants only argue this claim as against MLG Retail and not ML Fashion.  As such, in the event this Court finds merit in Defendants' arguments it should not dismiss this claim as against ML Fashion.

of contract, but point to no cases requiring more.  Again, under Rule 8, Plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Del. Ch. Ct. R. 8.  That is what Plaintiffs have done here.  The Complaint is clear, ML Fashion and MLG Retail were to pay Menkin $11,558 twice a month, and have not made payments since March 2020, breaching the contract. (*Id*. ¶¶ 282-285.)

### F.   The Claims Against Raffel Should Not Be Dismissed

#### 1.   Plaintiffs' Have Sufficiently Alleged Aiding And Abetting Breach Of Fiduciary Duty

Under Delaware law, "[t]o survive a motion to dismiss, a complaint must allege facts that satisfy the four elements of an aiding and abetting claim: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *Stewart v. Wilmington Tr. SP Servs.*, 112 A.3d 271, 320 (Del. Ch. 2015).

For aiding and abetting, "the sufficiency of the claims against the [defendants] in this regard largely comes down to what constitutes knowing participation." *Id*. at 321.  An adequate pleading of "knowing participation" requires the plaintiff to well plead scienter.  *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 862 (Del. 2015) ("The aider and abettor must act knowingly, intentionally, or with reckless indifference that is, with an illicit state of mind.").

19

Still, a claim of knowing participation need not be pled with particularity. *Skye Mineral Inv'rs, LLC v. DXS Capital (U.S.) Ltd.*, No. 2018-0059-JRS, 2020 Del. Ch. LEXIS 72, at *66 (Ch. Feb. 24, 2020).  Knowing participation may be inferred from the factual allegations in the complaint.  *In re Xura, Inc. Stockholder Litig.*, 2018 Del. Ch. LEXIS 563, at *34 (Ch. Dec. 10, 2018) ("Yet, it is necessary that the plaintiffs make factual allegations from which knowing participation may be inferred in order to survive a motion to dismiss.").

Defendants' arguments to the first two elements are based on their alter ego and economic loss doctrine arguments which, as discussed below, both fail.  As for scienter, the FAC, taken as true, properly alleges the element of scienter.  Indeed, Defendants argue that the FAC is devoid of allegations regarding scienter then spend nearly two pages discussing the FAC's detailed scienter allegations.  The FAC alleges that Raffel and Lemonis worked together to use the assets of ML Fashion to benefit their own fashion brand and retail concept MARCUS.  (FAC ¶ 13.)  The FAC includes allegations that Raffel knew she and Lemonis were overbuying inventory for ML Fashion.  (*Id.* ¶¶ 140-146.)  Raffel was involved in spending $1M in inventory a quarter, the stores did not have physical space for the inventory, and the inventory she purchased was being sold in liquidation stores at a loss.  (*Id.*)  Defendants seem to argue that forcing ML Fashion to overspend on inventory was somehow Raffel helping ML Fashion.  That was hardly the case, as alleged in the

FAC, and is fairly straightforward accounting, by forcing ML Fashion to overspend on inventory it meant ML Fashion did not have money for necessary business expenses such as rent or payroll.  (*Id*. ¶¶ 12, 81, 146, 165, 228.)  This forced ML Fashion to increase its indebtedness to Defendants giving them leverage to foreclose on its assets and use them to build MARCUS.  (*Id*.)

Further, it can be inferred from the allegations in the Complaint that Raffel knew that by making business decisions outside of her capabilities the employees of ML Fashion were expending time and energy fixing her mistakes providing a further smoke screen for her and Defendants' mismanagement and misappropriation.  (*Id*. ¶¶ 140-146, 155-165.)  Additionally, contrary to Defendants' argument, the FAC alleges that Raffel's motive by alleging that Raffel and Lemonis used and misused the assets ML Fashion in order to build MARCUS.  (*Id*. ¶¶ 156-165.)  Plainly, from the FAC it can be inferred that Raffel was not simply overspending for ML Fashion and distracting ML Fashion employees with her incompetence, she was doing so with the purpose that ML Fashion would become further indebted to Defendants and Defendants could use the assets of ML Fashion to grow MARCUS.  Thus, Plaintiffs have adequately pled aiding and abetting.

> ### 2.    Plaintiffs' Conversion Claim Against Raffel Should Not Be Dismissed

The FAC includes sufficient allegations to constitute a short and plain statement of conversion against Defendant.  Again, the FAC alleges that Raffel used

and misused the assets ML Fashion in order to build MARCUS.  (*Id.* ¶¶ 124-133.)

The FAC further explains how Defendants took funds, inventory, fixtures, furniture,

and equipment from ML Fashion.  This is enough to put Raffel on notice of

Plaintiffs' conversion claim.

### G.    Plaintiffs' Claims Are Not Barred By The LLC Agreement

Defendants argue that Counts 1-6 and 8-11 fail to state a plausible claim

outside of the LLC Agreement.  As shown herein, these arguments are unpersuasive.

### 1.    Plaintiffs Have Properly Alleged Alter Ego

The FAC alleges that Defendant Lemonis, ML Retail, and ML, LLC are each

the alter egos of one another.   Under Delaware law, courts will disregard the

corporate entity "in the interest of justice, when such matters as fraud, contravention

of law or contract, public wrong, or . . . equitable consideration among members of

the corporation . . . are involved."  *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239

A.2d 629, 633, 43 Del. Ch. 516 (Del. 1968).  "To state a veil-piercing claim, the

plaintiff must plead facts supporting an inference that the corporation, through its

alter-ego, has created a sham entity designed to defraud investors and creditors."

*Doberstein v. G-P Indus.*, No. 9995-VCP, 2015 Del. Ch. LEXIS 275, at *12 (Ch.

Oct. 30, 2015).

In determining whether to disregard corporate formalities courts consider a

variety of factors including: "(1) whether the company was adequately capitalized

for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Doberstein*, 2015 Del. Ch. LEXIS 275 at *12.[7]

The "corporate veil may be pierced where a subsidiary is in fact a mere instrumentality or alter ego of its parent." *Mabon, Nugent & Co. v. Tex. Am. Energy Corp.*, Civil Action No. 8578, 1990 Del. Ch. LEXIS 46, at *14-15 (Ch. Apr. 12, 1990); *Albert v. Alex. Brown Mgmt. Servs.*, Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133, at *32 (Ch. Aug. 26, 2005). Indeed, courts in Delaware have "allowed claims of alter-ego liability to survive where plaintiffs alleged that the boards of a parent company and its subsidiary were identical and one company appeared to operate as an instrumentality of the other, as well as where the officers and directors of two companies were the same, and the two companies shared a common address." *Shandler v. DLJ Merch. Banking, Inc.*, No. 4797-VCS, 2010 Del. Ch. LEXIS 154, at *57 (Ch. July 26, 2010).

"The purpose of alter ego liability and piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to

---

[7]     *Mason v. Network of Wilmington, Inc.*, No. Civ. A. 19434-NC, 2005 Del. Ch. LEXIS 99, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005) (In in assessing whether to disregard the corporate form, Delaware courts consider whether there has been a showing that the parent/subsidiary relationship would work an element of fraud, injustice or inequity.).

perpetrate fraud, to accomplish a crime, or otherwise to evade the law." *Bd. of Trs.*

*v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002).

Here, the FAC includes allegations from which it can be inferred that Defendants Lemonis, ML Retail, and ML, LLC operated as a single economic entity and are the mere instrumentalities of one another. Plaintiffs have alleged that Defendants Lemonis, ML Retail, and ML, LLC failed to observe corporate formalities, that Lemonis is the sole natural person involved in the ownership/management of each entity, that the entities share the same address, that the various corporate entities were merely a façade for Lemonis' operations, and that Lemonis used the corporate entities and their assets to further his personal interests. (FAC ¶¶ 21-28, 102-103, 106-107, 111-113, 222-225.) The FAC alleges unity in ownership between Lemonis, ML Retail, and ML, LLC such that Lemonis is the only natural person in charge of each defendant. (*Id*. ¶¶ 21-28.) Indeed, ML Retail and ML, LLC could only act through Lemonis. (*Id*. ¶¶ 21-28, 203, 211.) The FAC alleges that Lemonis solely controls the operations of ML Retail and ML, LLC. (*Id*.) The FAC alleges that Lemonis used both ML Retail ad ML, LLC to perpetrate his mismanagement and misappropriation from ML Fashion and his fraud on Plaintiffs. Lemonis used ML Retail as his investment vehicle for ML Fashion and used it to create a control group over ML Fashion. (*Id*. ¶¶ 11, 89-92, 102-103.) Lemonis used both ML Retail and ML, LLC as a vehicle to increase the indebtedness of ML

Fashion.  (*Id*. ¶¶ 12, 106-114.)

Further, the FAC alleges that Defendants' alter ego relationship creates an element of fraud, injustice, or inequity.  Here, it is clear that Lemonis has used his corporate relationships with ML Retail and ML, LLC to perpetrate fraud, injustice, and inequity in regards to Plaintiffs.  Lemonis used the corporate vehicles to invest in ML Fashion to shield himself from liability, and used his control over ML Retail and ML, LLC to saddle ML Fashion with debt rendering Plaintiffs' equity interest essentially worthless.  (*Id*. ¶¶ 12, 21-28, 87, 89-92, 106-116, 205, 213.)  The FAC alleges that Lemonis used the credit agreement and security agreement between ML Retail and ML, LLC as a means to defraud and frustrate creditors and investors by allowing Lemonis to foreclose on ML Fashion's assets through an entity without ML Retail's membership obligations and Lemonis' manager obligations.  (*Id*. ¶¶ 111-113.)

To be sure, alter ego allegations needs not be robust to survive a motion to dismiss.  *Juju, Inc. v. Native Media, LLC*, Civil Action No. 19-402-CFC, 2020 U.S. Dist. LEXIS 104387, at *25 (D. Del. June 15, 2020) ("And though not robust, they are sufficient to make out a plausible case for alter ego liability—i.e., they provide indication that Native may not have observed corporate formalities, and that it was simply 'a façade' for Mr. Schollmeyer and Mrs. Banks."); *Mabon, Nugent & Co. v. Texas Am. Energy Corp.,* 1990 Del. Ch. LEXIS 46, 1990 WL 44267, at *5 (Del. Ch.

Apr. 12, 1990) (Allowing claims of alter-ego liability to survive where plaintiffs alleged that the boards of a parent company and its subsidiary were identical and one company appeared to operate as an instrumentality of the other.); *Haisfield v. Cruver,* 1994 Del. Ch. LEXIS 155, 1994 WL 497868, at *3-4 (Del. Ch. 1994) (holding that a plaintiff had succeeded in alleging alter ego status where, on a motion to dismiss, facts were pled to show common financial interests, board members and officers, and a common address); *see also MetLife Inv'rs USA Ins. Co. v. Star Lite Brokerage, Inc.*, No. C.A. 11-911-LPS, 2012 U.S. Dist. LEXIS 139431, 2012 WL 4783231, at *4 (D. Del. Sept. 21, 2012) (allowing amendment of a claim to include allegations regarding piercing the corporate veil, where the individual defendant at issue was the owner and sole shareholder of the defendant corporation.).

Because Plaintiffs' FAC includes allegations sufficient to make out a plausible claim for alter ego, Defendants' motion should be denied.

### 2. Plaintiffs Have Pled Fraud With Particularity

Court of Chancery Rule 9(b) requires a plaintiff to plead fraud with particularity.  Del. Ch. Ct. R. 9.  Particularity "means that a plaintiff must allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim."  *Prairie Capital III, Ltd. P'ship v. Double E Holding Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015).  "The relevant circumstances are "the time, place, and contents of the false representations; the facts misrepresented; the identity of the

person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation." *Id*.

However, "Delaware courts have held that lack of specificity as to date, place, and time are not fatal, provided that the pleadings put defendants on sufficient notice of the actual misconduct with which they are charged." *LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, Civil Action No. 12067-VCG, 2017 Del. Ch. LEXIS 49, at *12 (Ch. Mar. 29, 2017); *Sammons v. Hartford Underwriters Insurance*, 2010 Del. Super. LEXIS 134, 2010 WL 1267222, *4-5 (Del. Super. Ct. Apr. 1, 2010).

There can be no doubt that Plaintiffs' FAC meticulously details the actions of Defendants putting them on notice of the misconduct they are charged with in this matter. Indeed, Defendants *only* argument relating to the particularity of Plaintiffs' fraud allegations relates to the "who" element of fraud. However, Plaintiffs' have sufficiently alleged the "who" element of fraud for each Defendant. As Defendants admit in their motion, the FAC is rife with specific fraud allegations against Lemonis. (Opening Brief p. 26 *citing* FAC ¶¶ 204, 210-212, 222-224, 230-232, 234-238, 240-247, 251-254, 255-256, 258-261, 265-270, 272-274, 276, 280.) Thus, *at a minimum*, Plaintiffs' fraud claims as to Lemonis should not be dismissed.

Plaintiffs' alter ego and agency allegations allow this fraud to be imputed to ML Retail and ML, LLC. *See e.g. Sandvik AB v. Advent Int'l Corp.*, 83 F. Supp. 2d 442, 448 (D. Del. 1999); *J.I. Kislak Mtg. Corp. v. William Matthews Bldr., Inc.*, 287

A.2d 686, 689 (Del. Super. 1972).  Again, as the only natural person controlling ML Retail and ML, LLC both entities could only act through Lemonis.  Nevertheless, the FAC alleges fraudulent actions of ML Retail and ML, LLC.  For example, the FAC alleges that ML Retail and ML, LLC used lending agreements to force debt upon ML Fashion.  (*Id*. ¶¶ 12, 106-116, 204-205, 212-213.)  The FAC alleges that ML Retail and ML, LLC used ML Fashion as a vehicle to defraud other small business owners.  (*Id*. ¶¶ 118, 130, 204-205, 212-213.)  Therefore, the FAC, taken as true, contains particularized allegations of fraud against Defendants and should not be dismissed.

### 3.    Plaintiffs' Claims Are Not Barred By The Economic Loss Doctrine

Defendants argue that all of Plaintiffs' claims arise from the LLC Agreement and, as such, are barred by the economic loss doctrine.  However, the doctrine is not applicable to Plaintiffs' claims.  "The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to other property) and, the only losses suffered are economic in nature."  *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992).  The economic loss doctrine is rooted in products liability law, but has been expanded to other contexts.  *Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Tr.*, No. 09-300-LPS, 2011 U.S. Dist. LEXIS 17172, at *9 (D. Del. Feb. 22, 2011).

However, "the economic loss doctrine is not widely used in Delaware jurisprudence." *Isr. Disc. Bank*, 2012 Del. Ch. LEXIS 226 at *52. Further, "[t]here are exceptions to the economic loss rule however, including claims of fraud, as well as other intentional torts. *Livery Coach Sols., L.L.C. v. Music Express/East, Inc.*, 245 F. Supp. 3d 639, 646 (D. Del. 2017); *Penn Mut.*, 2011 U.S. Dist. LEXIS 17172 at *9 (Claims of fraud, as well as other intentional torts, are exceptions to the economic loss rule.).  Notably, the economic loss doctrine does not apply to fraud in the inducement.  *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012) ("Fraudulent inducement is, however, a recognized exception to this doctrine.").

Here, the economic loss doctrine does not apply to Plaintiffs' claims. Plaintiffs' claim for fraudulent inducement (Count I) alleges that Defendants induced Plaintiffs into entering the LLC Agreement.  As set forth above, this is exactly the type of claim to which the economic loss doctrine does not apply.

Plaintiffs' claim for fraud (Count II) alleges fraud that is not encompassed by the LLC Agreement.  Count II revolves around Defendants misrepresentations that "that ML Fashion was investing in stores, brands, and retail businesses in order to further grow those businesses and ML Fashion,… that purchases made for ML Fashion were done to benefit the brand and not increase Lemonis' debt position in ML Fashion,… [and] that ML Fashion would make payments towards the American

Express balance on the account in Goureau's name."  (FAC ¶ 212.)  These representations are separate and apart from the obligations set forth in the LLC Agreement regarding the general operations of ML Fashion.

Further, the economic loss doctrine does not apply when the underlying contract contemplates tort claims.  *Cont'l Fin. Co., LLC v. TD Bank, N.A.*, No. N17C-07-002 MMJ CCLD, 2018 Del. Super. LEXIS 37, at *4 n.12 (Super. Ct. Jan. 24, 2018) ("Because the parties' contracts in this case specifically contemplate certain tort claims, the economic loss doctrine does not apply.").[8]  Here, the LLC Agreement recognizes potential liability for "fraud, breach of fiduciary duty, bad faith, a knowing violation of law or willful misconduct."  (FAC Ex. A p. 5, §§ 6.2, 6.4.)  All of the claims Defendants argue are barred by the economic loss doctrine fall into the category of claims contemplated by the LLC Agreement.

Additionally, Defendants have not provided any case law supporting their proposition that the economic loss rule applies to Plaintiffs' breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, gross mismanagement, waste, and conversion claims.  Given that "the economic loss doctrine is not widely used in Delaware jurisprudence" this Court should not expand

---

[8]     *Citing Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1263 (M.D. Fl. 2010) (finding the economic loss doctrine did not apply when the parties recognized in an agreement that the defendant could be held liable for its own negligence.)

the doctrine to apply to these claims.  *Isr. Disc. Bank*, 2012 Del. Ch. LEXIS 226 at *52.

Faced with the reality that the economic loss rule does not apply to Plaintiffs' claims, Defendants argue in the alternative that they should be dismissed as duplicative of Plaintiffs' breach of contract claims.[9]  This augment also fails.  As discussed above, the LLC Agreement itself expressly contemplates potentially duplicative tort claims.

As for Plaintiffs' breach of fiduciary duty claims, "[c]onduct by an entity that occupies a fiduciary position … may form the basis of both a contract and a breach of fiduciary duty claim."  *RJ Assocs. v. Health Payors' Org. Ltd. Pshp.*, C.A. No. 16873, 1999 Del. Ch. LEXIS 161, at *34 (Ch. July 16, 1999).  "Where there is an independent basis for the fiduciary duty claims apart from the contractual claims, even if both are related to the same or similar conduct the fiduciary duty claims will survive."  *Grayson v. Imagination Station, Inc.*, Civil Action No. 5051-CC, 2010 Del. Ch. LEXIS 169, at *20 (Ch. Aug. 16, 2010).

As an initial matter, the fiduciary duty that forms the basis of Count IV stems from Defendants being a control group.  The FAC makes clear that the fiduciary duties that the ML Control Group owe to the Company and Plaintiffs do not arise

---

[9]   Section E.2., above, discusses Defendants' argument that Plaintiffs' conversion claim (Count 11) is duplicative of their breach of contract claim.

from the LLC Agreement and are separate and apart from the fiduciary duties

Lemonis owed the Company and Plaintiffs as the manager of ML Fashion.  (FAC ¶¶

222-223.)

The fiduciary duty in Count III is also distinct from the LLC Agreement.  As

alleged in the FAC, Lemonis owes the Company fiduciary duties as an officer of ML

Fashion and these duties are not set forth in the LLC Agreement.  (*Id*. ¶ 219.)

Further, the claim as it relates to Lemonis as the Manager of ML Fashion relate to

his duties of care and loyalty to the Company not to specific provisions of the LLC

Agreement.  (*Id*. ¶¶ 218-220.)  Moreover, in the event that any of Plaintiffs' claims

were duplicative of their breach of contract claim, at this stage in the proceedings, it

would be premature to determine which of Defendants actions were covered under

the LLC Agreement and which ones were not.  As such, Defendants' motion should

be denied.[10]

### 4.   Plaintiffs' Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Is Properly Pled

The Delaware Limited Liability Company Act permits parties to an LLC

agreement to eliminate fiduciary duties that members or managers would otherwise

---

[10]   Defendants have not provided any case law to support their proposition that Plaintiffs' claims for gross mismanagement and waste misappropriation can be dismissed as duplicative of a breach of contract claim.  Plaintiffs' claims for unjust enrichment and breach of implied covenant of good faith and fair dealings are addressed below.

owe to one another.  6 Del. C. § 18-1101(c); *Miller v. HCP & Co.*, No. 2017-0291-SG, 2018 Del. Ch. LEXIS 40, at *21 (Ch. Feb. 1, 2018).  "But an LLC agreement may not eliminate the implied contractual covenant of good faith and fair dealing. Indeed, the implied covenant inheres in every contract governed by Delaware law." *Miller*, 2018 Del. Ch. LEXIS 40 at *21-22.

Nevertheless, when a contract confers discretion on one party, the implied covenant requires that the discretion be used reasonably and in good faith.  *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146-47 (Del. Ch. 2009); *Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC,* 2009 Del. Ch. LEXIS 54, at *7-8 (Del. Ch. Apr. 20, 2009) (denying motion to dismiss claim under implied covenant where plaintiff adequately alleged that managing entity used discretion to decline to cause entities it controlled to perform tasks in furtherance of agreement.).  As the Delaware Supreme Court has explained:

> Express contractual provisions always supersede the implied covenant, but even the most carefully drafted agreement will harbor residual nooks and crannies for the implied covenant to fill. In those situations, what is arbitrary or unreasonable—or conversely reasonable—depends on the parties' original contractual expectations, not a free-floating duty applied at the time of the wrong.

*Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013) (reversing a motion to dismiss a claim for breach of the implied covenant.).

Here, the LLC Agreement attempts to limit fiduciary duties of members and managers in Section 6.2.  (FAC Ex. A § 6.2.)  The LLC Agreement also confers

33

upon the manager, Lemonis, sole discretion to make a wide variety of decisions for ML Fashion.  (*Id*. §§ 6.1 (Manager), 6.2 (Duties and Obligations of the Manager), 7.7(d) (Non-Solicitation and Non-Competition).)  The LLC Agreement also confers upon ML Retail the sole discretion to select and remove a manager, conduct all tax matters for ML Fashion.  (*Id*. at §§ 6.1(b), 8.2.)  It in in these situations where there are grants of sole discretion where the implied covenant of good faith and fair dealing applies.

The FAC alleges that Defendants have breached the covenant in ways that relate to matters on which they were conferred sole discretion.  For example, ML Retail used its power of ML Retail's tax matters to improperly allow Lemonis to take ML Fashion's tax write-offs personally.  (FAC ¶¶ 101, 119, 125-126, 230.)  Additionally, Lemonis used his sole discretion to load ML Fashion with debt to his companies, and use ML Fashion to defraud small business owners.  (*Id*. ¶¶ 106-116, 212, 232.)  The types of bad faith decisions alleged in the FAC constitute breaches of the implied covenant of good faith and fair dealing.

Further, at this stage in the proceedings, the scope of the LLC Agreement's limitation on Defendants' duties have not been decided.  Thus, it would be premature for the Court to determine that the LLC Agreement covered the actions alleged in Plaintiffs' breach of the implied covenant claim.  As such, Defendants' motion should be denied.

### 5.   Plaintiffs' Unjust Enrichment Claim Is Not Barred By Contract

Defendants argue that Plaintiffs' unjust enrichment claim is barred by their breach of contract claim.  "However, breach of contract and an unjust enrichment claim may survive a motion to dismiss when pled as alternative theories of recovery." *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, Nos. 2018-0783-PRW, N18C-10-332 PRW, 2020 Del. Ch. LEXIS 230, at *57 (Ch. June 29, 2020). In *CLP Toxicology, Inc.*, the Court declined to dismiss such a claim explaining:

> If the principal claim in this case is for fraud and fraudulent inducement and the fraudulent inducement renders the SPA void, then a claim for unjust enrichment may thus proceed under the theory that no valid contract exists. Therefore, the Court will not dismiss the unjust enrichment claim, but CLP must eventually decide under what theory it wishes to proceed—fraud and unjust enrichment or breach of contract.

*CLP Toxicology*, 2020 Del. Ch. LEXIS 230 at *57-58; *Albert v. Alex. Brown Mgmt. Servs.*, Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133, at *28 (Ch. Aug. 26, 2005) (acknowledging that quasi contract claims can be brought in the alternative "when there is doubt surrounding the enforceability or the existence of the contract."); *Novipax Holdings LLC v. Sealed Air Corp.*, No. : N17C-03-1682 EMD CCLD, 2017 Del. Super. LEXIS 605, at *42 (Super. Ct. Nov. 28, 2017) (denying a motion to dismiss a claim for unjust enrichment because "[a] claim for unjust enrichment may thus proceed under the theory that no valid contract exists."); *Bear Stearns Mortg. Funding Tr. 2006-SL1 v. EMC Mortg. LLC*, No. 7701-VCL, 2015 Del. Ch. LEXIS

9, at *55 (Ch. Jan. 12, 2015) (holding that it was "it is premature to dismiss the unjust

enrichment claim" during a motion to dismiss where the applicability of the contract

was at issue.).

The same is true here.  Plaintiffs have alleged that the LLC Agreement was

fraudulently induced which would render it void.  Plaintiffs' unjust enrichment claim

is an alternative to the contract claims and should not be dismissed.

### H.    Plaintiffs' Claims for Receiver (Count 12), Injunctive Relief (Count 13), and Dissolution (Count 14) Should Not Be Dismissed

Defendants' only argument relating to these counts is that they are remedies

and not causes of action.  Defendants have not provided any case law supporting this

proposition.  Indeed, 6 Del. C. § 18-802 expressly authorizes claims for judicial

dissolution.  Moreover, courts often do not consider remedial claims during a motion

to dismiss and refuse to dismiss these claims.  *VTB Bank v. Navitron Projects Corp.*,

No. 8514-VCN, 2014 Del. Ch. LEXIS 61, at *20 (Ch. Apr. 28, 2014) (denying a

motion to dismiss claims for a receiver stating, "[i]n these situations, this Court has

tended to permit the remedial claims to remain in the complaint, but it has generally

excluded them from its analysis at the motion to dismiss stage."); *Zutrau v. Jansing*,

No. 7457-VCP, 2013 Del. Ch. LEXIS 71, at *18 (Ch. Mar. 18, 2013) (Therefore,

Jansing's motion to dismiss Zutrau's request for appointment of a receiver pursuant

to Rule 12 (b)(6) is denied."); *see Achaian, Inc. v. Leemon Family LLC*, 25 A.3d

800, 807 (Del. Ch. 2011) (denying motion to dismiss request for dissolution under 6

Del. C. § 18-802.).

Moreover, Plaintiffs' FAC is filled with allegations supporting the relief requested in Counts 12-14.  From the FAC, it is clear that Defendants are draining the assets of ML Fashion, using those assets for their personal gain, and in a position to foreclose on ML Fashion through ML, LLC.  It clear that a receiver is warranted to sort through Defendants' mismanagement and waste of the Company's assets, an injunction is necessary to prevent Defendants from further harming the Company, and dissolution is proper because it is not reasonably practicable to carry on the business of ML Fashion.  As such, Defendants' motion should be denied.

## I.      Leave To Amend

If for any reason this Court detects any pleading deficiencies in Plaintiffs' FAC, Plaintiffs should be granted leave to amend.  Delaware Courts have generally adhered to the principle that leave to amend pleadings should liberally be given. *Gott v. Newark Motors, Inc.*, 267 A.2d 596, 599 (Del. Super. Ct. 1970) ("It is the policy in this jurisdiction to be liberal in permitting amendments to pleadings at all stages of the proceedings unless the opposing party would be seriously prejudiced thereby.").

None of Defendants' arguments that leave to amend should be denied hold water.  As discussed above, Plaintiffs have not engaged in any improper claim splitting and the claims in the FAC are not actually subject to any venue provisions.

Thus, Defendants' arguments that this claim has been brought in bad faith fall flat.

Also, Defendants have not pointed to any case law limiting a plaintiff to only one amendment of their claims.  This is not the situation where Plaintiffs have had multiple opportunities to amend or guidance from the Court on any potential issues with the claim.  As such, Plaintiffs' previous amendment of the complaint should not prevent them from further amendments.  Again, "[a]s a general rule, leave to amend is freely given."  *Aziz v. Tsappas*, Civil Action No. 2018-0871-TMR, 2019 Del. Ch. LEXIS 1396, at *2 (Ch. Nov. 1, 2019).  Thus, to the extent the Court finds merit in Defendants' motion, Plaintiffs should be granted leave to amend.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety, and to the extent the Court grants any portion of Defendants' motion Plaintiffs request leave to amend.

Dated: October 16, 2020          */s/ Sean J. Bellew*
                                 Sean J. Bellew (#4072)
                                 **Bellew LLC**
                                 Red Clay Center at Little Falls
                                 2961 Centerville Road, Suite 302
                                 Wilmington, Delaware 19808
                                 Telephone: (302) 353-4951
                                 sjbellew@bellewllc.com

                                 Words: 9,402

38

**Gerard Fox Law P.C.**
Gerard P. Fox (*admitted pro hac vice*)
Lauren M. Greene (*admitted pro hac vice*)
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447
gfox@gerardfoxlaw.com
lgreene@gerardfoxlaw.com

*Attorneys for Plaintiffs Nicolas Goureau and Stephanie Menkin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of October 2020, a copy of the foregoing

*Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Dismiss* was

served via File & ServeXpress on the following counsel of record:

> Brian E. Farnan
> Michael J. Farnan
> Farnan LLP
> 919 North Market Street 12th Floor
> Wilmington, DE 19801

> */s/ Sean J. Bellew*
> Sean J. Bellew (#4072)