EXHIBIT – 3 –

EFiled: Nov 02 2020 03:51PM EST
Transaction ID 66073802
Case No. 2020-0486-MTZ

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| NICHOLAS GOUREAU and STEPHANIE MENKIN, individually and derivatively on behalf of ML FASHION, LLC, a Delaware Limited Liability Company,<br><br>   *Plaintiffs*,<br><br> v.<br><br>MARCUS LEMONIS, an individual, ML RETAIL, LLC, a Delaware Limited Liability Company, MARCUS LEMONIS, LLC, a Delaware Limited Liability Company, ROBERTA RAFFEL a/k/a BOBBI LEMONIS, an individual, and MLG RETAIL, LLC, a Delaware Limited Liability Company,<br><br>   *Defendants*,<br><br> And<br><br>ML FASHION, LLC, a Delaware Limited Liability Company,<br><br>   *Nominal Defendant*. | C.A. No. 2020-0486-MTZ |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Dated: November 2, 2020

Brian E. Farnan (# 4089)
Michael J. Farnan (# 5165)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

mfarnan@farnanlaw.com

Michael D. Wexler (*admitted pro hac vice*)
SEYFARTH SHAW LLP
Willis Tower
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5559

Jesse M. Coleman (*admitted pro hac vice*)
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas  77002
(713) 238-1805

*Attorneys for Defendants*
*Marcus Lemonis, ML Retail, LLC, Marcus*
*Lemonis, LLC, Roberta Raffel, and MLG*
*Retail, LLC*

# **TABLE OF CONTENTS**

**Page**

I.  ARGUMENT ...............................................................................................1

A.  The Court has authority to look beyond the Complaint........................1

B.  The Complaint must be dismissed for improper venue. .......................2

C.  Plaintiffs' simultaneous lawsuits undisputedly share a common nucleus of operative fact requiring wholesale dismissal for improper claim splitting.........................................................................8

D.  Plaintiffs' allegations against MLG Retail fail to state a plausible claim..................................................................................................14

    1.  No facts support Plaintiffs' claim for conversion (Count 11)...........................................................................................14

    2.  Plaintiffs' conversion claim arises solely from contract. .........16

    3.  Plaintiffs have no contract (Count 15) with MLG Retail, much less any breach. ................................................................16

E.  Plaintiffs' allegations against Raffel, taken as true, do not state a claim..................................................................................................18

    1.  Plaintiffs fail to plead aiding and abetting (Count 5) against Raffel...........................................................................18

    2.  Plaintiffs' fail to plead conversion (Count 11) against Raffel. ....................................................................................19

F.  Plaintiffs' remaining claims (Counts 1-6, 8-11) are barred by contract..............................................................................................20

    1.  Plaintiffs' opposition confirms their failure to adequately plead that the ML Defendants are alter ego of one another......20

    2.  Plaintiffs' failure to plead alter ego status precludes their fraud claims. .........................................................................23

    3.  Plaintiffs' tort claims are barred by contract. ..........................24

G.     Plaintiffs' remedial claims (Counts 12-14) should be dismissed........27

H.     Leave to amend should be denied......................................................29

II.    CONCLUSION ...........................................................................................31

**TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Allied Capital Corp. v. GC–Sun Hldgs., L.P.*,
  910 A.2d 1020 (Del. Ch. 2006) .......................................................................18

*In re Arrow Inv. Advisors, LLC*,
  CIV.A. 4091-VCS, 2009 WL 1101682 (Del. Ch. Apr. 23, 2009)...............28, 29

*Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*,
  992 A.2d 1239 (Del. Ch. 2010) ......................................................................2, 8

*Baker v. Impact Holding, Inc.*,
  2010 WL 1931032 (Del. Ch. May 13, 2010) .....................................................7

*Balin v. Amerimar Realty Co.*,
  1995 WL 170421 (Del. Ch. Apr. 10, 1995)........................................................8

*Boyd v. N.J. Dep't of Corr.*,
  583 F. App'x 30 (3d Cir. 2014)........................................................................14

*Capital Grp. Companies, Inc. v. Armour*,
  2004 WL 2521295 (Del. Ch. Oct. 29, 2004) ...................................................3, 4

*In re Citigroup Inc. S'holder Derivative Litig.*,
  964 A.2d 106 (Del. Ch. 2009) .........................................................................17

*Clark v. State Farm Mut. Auto. Ins. Co.*,
  131 A.3d 806 (Del. 2016).................................................................................30

*Cont'l Fin. Co., LLC v. TD Bank, N.A.*,
  2018 WL 565305 (Del. Super. Ct. Jan. 24, 2018) .......................................24, 25

*Cornerstone Techs., LLC v. Conrad*,
  2003 WL 1787959 (Del. Ch. Mar. 31, 2003) .....................................................9

*Doberstein v. G-P Indus., Inc.*,
  2015 WL 6606484 (Del. Ch. Oct. 30, 2015) ....................................................21

*Dolan v. Altice USA, Inc.*,
  2019 WL 2711280 (Del. Ch. June 27, 2019) .....................................................6

*East Sussex Assocs., LLC v. West Sussex Assocs., LLC*,
  2013 WL 2389868 (Del. Ch. June 3, 2013) ........................................................30

*Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*,
  583 A.2d 1378 (Del. 1990)..................................................................................5

*Hadley v. Shaffer*,
  2003 WL 21960406 (D. Del. Aug. 12, 2003)........................................................6

*Hamilton Partners, L.P. v. Englard*,
  11 A.3d 1180 (Del. Ch. 2010) .............................................................................1

*Ingres Corp. v. CA, Inc.*,
  8 A.3d 1143 (Del. 2010)......................................................................................4

*J.L. v. Barnes*,
  33 A.3d 902 (Del. Super. Ct. 2011)..............................................................9, 12

*Kuroda v. SPJS Holdings, L.L.C.*,
  971 A.2d 872 (Del. Ch. 2009) ............................................................................16

*Lexington Servs. Ltd. v. U.S. Patent No. 8019807 Delegate, LLC*,
  2018 WL 5310261 (Del. Ch. Oct. 26, 2018) ........................................................7

*Maldonado v. Flynn*,
  417 A.2d 378 (Del. Ch. 1980) ............................................................................12

*" Mesirov v. Enbridge Energy Co., Inc.*,
  2018 WL 4182204 (Del. Ch. Aug. 29, 2018).....................................................19

*Miller v. HCP & Co.*,
  2018 WL 656378 (Del. Ch. Feb. 1, 2018), *aff'd sub nom. Miller v.
  HCP Trumpet Investments, LLC*, 194 A.3d 908 (Del. 2018),
  *reargument denied* (Oct. 9, 2018) ....................................................................26

*Noah v. Enesco Corp.*,
  911 F. Supp. 305 (N.D. Ill. 1995).......................................................................29

*O'Rangers v. Cadia Rehab. Silverside*,
  2019 WL 1531520 (Del. Super. Ct. Apr. 8, 2019) ...........................................8, 9

*Plaze, Inc. v. Callas*,
  2019 WL 1028110 (Del. Ch. Feb. 28, 2019)........................................................8

*Pushkin v. Nussbaum*,
2017 WL 1591863 (D.N.J. Apr. 28, 2017), *report and recommendation adopted,* 2018 WL 500145 (D.N.J. Jan. 19, 2018)................14

*RBC Capital Mkts., LLC v. Jervis*,
129 A.3d 816 (Del. 2015)....................................................................................19

*Ross Holding & Mgmt. Co. v. Advance Realty Grp., LLC*,
2010 WL 3448227 (Del. Ch. Sept. 2, 2010).....................................................28

*Shandler v. DLJ Merch. Banking, Inc*.,
2010 WL 2929654 (Del. Ch. July 26, 2010) ....................................................21

*Simon v. Navellier Series Fund*,
2000 WL 1597890 (Del. Ch. Oct. 19, 2000) ..................................................4, 5

*SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*,
CV 2019-0791-JRS, 2020 WL 1291638 (Del. Ch. Mar. 18, 2020) .................28

*Sylebra Capital Partners Master Fund, Ltd. v. Perelman*,
2020 WL 5989473 (Del. Ch. Oct. 9, 2020) (citing Del. Ch. Ct. R. 15(aaa))..........................................................................................................29, 30

*In re TGM Enterprises, L.L.C.*,
2008 WL 4261035 (Del. Ch. Sept. 12, 2008)...................................................10

*Wallace v. Wood*,
752 A.D.2d 1175 (Del. Ch. 1999) ....................................................................22

**Statutes**

Del. C. § 18-303 ....................................................................................................22

6 Del. C. § 18-802 ..................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 8(a) ...............................................................................................14

Rule 8....................................................................................................................17

Rule 12(b)(3) ........................................................................................................2, 4

Rule 12(b)(6) ......................................................................................................29, 31

Rule 15(a) .................................................................................................................29

## I.    ARGUMENT

### A.    The Court has authority to look beyond the Complaint.

In a move emblematic of the inconsistent arguments that permeate their Brief in Opposition (Trans. ID 66032546) ("Opposition" or "Opp."), Plaintiffs contradictorily assert Defendants' outside proof should be barred while their own considered in order to avoid the truth of their own deficient claims.  Specifically, Plaintiffs argue the Court should not consider outside statements regarding Menkin's recent theft of ML Fashion property through her new competing store Nobelle because these claims "have already been squashed" by their own outside statements, namely Menkin and Goureau's declarations filed in this Court.   Opp. 5-6. Regardless, the Court may take judicial notice of other lawsuits as Defendants requested. *Hamilton Partners, L.P. v. England*, 11 A.3d 1180, 1188 (Del. Ch. 2010) (taking judicial notice of NYHC's public filings, the pleadings in a prior lawsuit in New York, and the complaint in a related action in the Court).

As set forth in Defendants' Opening Brief in support of Motion to Dismiss (Trans. ID. 65938397) ("Opening Brief" or "Br."), the Court both can and should consider Plaintiffs' public statements, social media posts, and statements made during their "The Profit" episode.  Br. 3, n. 3.  Plaintiffs concede in their Opposition that the Court "may also take judicial notice of publicly filed documents on a motion to dismiss," (Opp. 5), which is exactly what Defendants have asked the Court to do

(Br. 3, n. 3).  Further, Plaintiffs do not dispute the key facts these public sources undisputedly establish: their business was failing before Defendant Marcus Lemonis stepped in, they gave Lemonis complete and unfettered control of the business voluntarily in hopes that he could save the business, his actions *did* save the business, and the business remains open today due solely to his continued investment; rather, they just ask the Court to ignore these facts.

**B.     The Complaint must be dismissed for improper venue.**

Without citation to the Complaint nor any authority, Plaintiffs seek to distance themselves from their own proof by conclusorily declaring they "have not sued under" and their claims "do not arise out of" the Credit and Security Agreements Menkin signed and attached to their Complaint.  As demonstrated in Defendants' brief, however, the Complaint alleges that the loans obtained by ML Fashion are the very basis for Plaintiffs' central theme of "saddling" the entities with insurmountable debt that they seek to recover as their damages.  Br. 9-10.  As further set forth in the Opening Brief, the agreements use express language indicating Illinois as the exclusive forum.  *Ashall Homes Ltd. v. ROK Entm't Grp. Inc*., 992 A.2d 1239, 1245 (Del. Ch. 2010) ("Under Court of Chancery Rule 12(b)(3), a court will grant a motion to dismiss based upon a forum selection clause where the parties use express language clearly indicating that the forum selection clause excludes all other courts

2

before which those parties could otherwise properly bring an action.") (internal citations omitted).

Plaintiffs also incorrectly argue that they are not individually signatories to these agreements, but selectively ignore that Plaintiffs are suing derivatively on behalf of ML Fashion. All of Plaintiffs' claims are either explicitly derivative in nature or clearly implicate these agreements by virtue of seeking the loan amounts as Plaintiffs' damages. [1]  The only exception is Menkin's standalone breach of contract claim for her salary, Count 15, which is divorced from reality and must be dismissed as addressed below. Plaintiffs cannot reasonably ignore that all their claims flow through ML Fashion, who is a signatory to these valid forum selection clauses. *Capital Grp. Companies, Inc. v. Armour*, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004) ("The doctrine of equitable estoppel prevents a non-signatory to a contract from embracing the contract, and then turning her back on the portions of the contract, such as a forum selection clause, that she finds distasteful.").

Menkin and Goureau's non-signatory argument fails for an additional, independent reason: as the two majority owners of ML Fashion (33.33%,

---

[1] Br. 9, n. 9; *see, e.g.*, Compl. ¶¶ 202-9 (Count 1: fraudulent inducement); 210-17 (Count 2: fraud); 218-221 (Count 3: breach of fiduciary duty); 222-5 (Count 4: breach of fiduciary duty); 226-9 (Count 5: aiding and abetting); 230-33 (Count 6: breach of the implied covenant); 234-48 (Count 7: breach of contract); 249-54 (Count 8: unjust enrichment); 255-6 (Count 9: gross mismanagement); 257-63 (Count 10: waste); 264-71 (Count 11: conversion); 272-5 (Count 12: Receiver); 276-7 (Count 13: injunction); 278-81 (Count 14: Dissolution).

respectively), Menkin and Goureau cannot reasonably claim not to have benefited from cash given to the company they own, nor failed to foresee the enforceability of these agreements against them. Delaware courts use a three-part inquiry to determine whether a nonsignatory to an agreement is bound by a forum selection clause in that agreement: (1) whether the forum selection clause is valid; (2) whether the [nonsignatories] are third-party beneficiaries, or closely related to, the contract; and (3) whether the claims arise from their standing relating to the agreement. *Capital Gp. Cos. v. Armour*, 2004 WL 2521295, at *5 (Del. Ch. Oct. 29, 2004). If all three questions are answered in the affirmative, the forum selection clause will bind the nonsignatory. *Id.*

Here, Plaintiffs have not met their burden of establishing a recognized exception to the presumptively valid and enforceable forum selection clause. *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010). In support, Plaintiffs point only to their allegation of fraudulent inducement into ML Fashion's LLC Agreement— not the Credit and Security Agreements—as dispositive. Compl. ¶¶ 108-111, 202-9. A Rule 12(b)(3) motion is not subject to the same pleading standards, however, because it does not challenge whether a claim was stated but rather where Plaintiffs may assert their claim. *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *4 (Del. Ch. Oct. 19, 2000). Indeed, the Court is not "shackled to the plaintiff's complaint as an initial matter," but may instead consider extrinsic evidence from the

outset and decide such motions without the expense of discovery if it concludes that such discovery is irrelevant or that either party's position is frivolous. *Id.* at 4-5. Because the only "evidence" Plaintiffs present is factually insufficient and legally irrelevant, Plaintiffs' frivolous position does nothing to overcome the presumptively valid forum selection clause and the first prong is satisfied.

The second prong is likewise satisfied because Plaintiffs are third party beneficiaries to the Credit and Security Agreements. As alleged in the Complaint, the entire purpose of these agreements was to provide funds to ML Fashion—an entity which Plaintiffs are majority owners. Compl. ¶¶ 105-13. This purpose is material to ML Fashion's stated purpose. Compl. Ex. A, § 2.3 ("The purpose of the Company is to, directly or indirectly through one or more partnerships, [LLC] or other entities, acquire, hold, maintain, manage, improve, finance, sell, dispose of or otherwise invest in businesses focused on the distribution and sale of apparel, footwear and accessories…"). While Plaintiffs disagree with Lemonis's business judgment in using this money provided to ML Fashion through the Credit and Security agreements, there is no doubt that Plaintiffs received an intended benefit (*i.e.* cash to operate their business) that was material to the purpose of both ML Fashion and these agreements (which, as alleged, were created to provide capital to the newly formed ML Fashion). *See Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386-87 (Del. 1990) ("[I]n order for third-party beneficiary

rights to be created, not only is it necessary that performance of the contract confer a benefit upon a third person that was intended, but the conferring of the beneficial effect on such third-party, whether it be creditor or donee, should be a material part of the contract's purpose"); *Dolan v. Altice USA, Inc.*, 2019 WL 2711280, at *7 n.72 (Del. Ch. June 27, 2019) (clarifying that performance need not be rendered directly to the third-party beneficiary) (internal citation omitted); *Hadley v. Shaffer*, 2003 WL 21960406, at *6 (D. Del. Aug. 12, 2003) ("Delaware law prohibits third-party beneficiaries from reaping the benefits of a contract they seek to enforce, while, at the same time, avoiding the burdens or limitations of the contract, such as a forum selection clause.").

Plaintiffs are also closely related to these agreements because they both receive a direct benefit from them (namely, cash to operate the business they own) and it was foreseeable they would be bound by these agreements (because they are owners and Menkin signed). As owners and shareholders of ML Fashion, both Menkin and Goureau received pecuniary benefits in the form of loans resulting from the credit and security agreements. *Hadley v. Shaffer*, 2003 WL 21960406, at *5 (D. Del. Aug. 12, 2003) ("The Hadleys, as shareholders, were undoubtedly intended to receive a benefit from the sale of their stock through the Merger Agreement."). Moreover, and as set forth in the declarations of Marcus Lemonis, Menkin and Goureau received monetary benefits from these agreements, including expensive

cars and trips, nannies, and other benefits.  August 28, 2020 Declaration, Trans. ID. 65886080 ("8/28 Decl."), ¶¶ 5, 7, 10; August 31, 2020 Supplemental Decl., Trans. ID. 65890134 ("8/31 Decl."), ¶ 4.  Menkin's status as an officer, along with Goureau's right to be an officer, also qualify as non-pecuniary benefits. *Baker v. Impact Holding, Inc.*, 2010 WL 1931032, at \*4 (Del. Ch. May 13, 2010) (finding a right to a seat on the board of directors a direct benefit on the rationale that a benefit need not be pecuniary to constitute a direct benefit.).  Finally, it was also foreseeable that Menkin and Goureau could be bound by these agreements because both are the majority owners of the party explicitly bound—ML Fashion—and Menkin actually signed these agreement on its behalf. *Lexington Servs. Ltd. v. U.S. Patent No. 8019807 Delegate, LLC*, 2018 WL 5310261, at \*5 (Del. Ch. Oct. 26, 2018) (holding that non-signatories had standing to invoke a forum selection provision because that result was "foreseeable by virtue of the relationship between the signatory and the party sought to be bound").

Lastly, and as set forth in Defendants' Opening Brief, Plaintiffs' claims arise from and are related to the Credit and Security agreements in satisfaction of the third prong.  Despite their denials, Plaintiffs nevertheless emphasize the vital importance of these agreements as "the vehicles through which Defendants harmed ML Fashion and Plaintiffs."  Opp. 12.  Indeed, ML Fashion's funding arrangement granted by these agreements forms the central harm and damages alleged throughout the

Complaint.  Compl. ¶ 113 ("There can be no doubt that this funding arrangement was set up to thwart fiduciary duties, obligations under the LLC Agreement, and potential creditors."); *see also* Compl. ¶¶ 107-116, 202-9.  Plaintiffs cannot have it both ways.  Delaware courts have consistently refused to adopt such rigid formulism where, as here, parties seek to avoid the forum selection clause through artful pleading and ask the Court to favor form over substance.  *Ashall Homes Ltd.*, 992 A.2d at 1253  (holding non-signatories could enforce forum selection obligations because they were "closely related to one of the signatories such that the non-party's enforcement of the clause is foreseeable."); *Plaze, Inc. v. Callas*, 2019 WL 1028110, at *9 (Del. Ch. Feb. 28, 2019).

### C.  Plaintiffs' simultaneous lawsuits undisputedly share a common nucleus of operative fact requiring wholesale dismissal for improper claim splitting.

Plaintiffs concede that "the rule against claim splitting eliminates the contemporaneous litigation of the same factual or legal issues in different courts." *Balin v. Amerimar Realty Co.*, 1995 WL 170421, at *4 (Del. Ch. Apr. 10, 1995). Plaintiffs nonetheless wrongly contend that the rule does not bar their simultaneous, overlapping lawsuits in New York and Delaware.

Plaintiffs first argue that the rule against claim splitting does not apply to them because there is no "prior" action, as the New York Lawsuit "was filed at the same time as this instant action."  Opp. 13.  But Plaintiffs' cited authority, *O'Rangers v.*

*Cadia Rehab. Silverside*, 2019 WL 1531520, at *6 (Del. Super. Ct. Apr. 8, 2019), and Delaware decisions more generally, make clear that claim splitting is concerned with suits against "the same defendant[s] in different courts on different causes of action arising out of a common underlying nucleus of facts." *Id.* at *13.

If Plaintiffs' argument was correct, the policy articulated in *O'Rangers* and other cases would be a dead letter because plaintiffs could file as many lawsuits against the same defendants, asserting the exact same allegations and claims, in as many jurisdictions as the plaintiffs wished, so long as plaintiffs filed the various complaints at the same time.  That outcome makes no sense, and has no support in the common law.  *See J.L. v. Barnes*, 33 A.3d 902, 918 (Del. Super. Ct. 2011) ("the rule is founded upon the principle that no person should be unnecessarily harassed with a multiplicity of suits" (internal quotations and brackets omitted)); *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *14 & n.56 (Del. Ch. Mar. 31, 2003) (because Delaware courts "frown on claim splitting," a court "need not indulge the plaintiffs' whim for simultaneous conflict in two different forums . . . .").

Plaintiffs next assert that the New York federal court cannot resolve all of Plaintiffs' claims in this action because claims for dissolution of a Delaware entity can only be heard by Delaware courts (Opp. 13), ignoring that Delaware law only permits dissolution where "it is not reasonably practicable to carry on the business *in conformity with a limited liability company agreement*."  6 Del. C. § 18-802

(emphasis added).  Here, although Plaintiffs disagree with the business decisions made by ML Fashion's managing member, they have not adequately alleged that ML Fashion's business cannot be carried out in accordance with the LLC Agreement, which expressly permits Lemonis to exercise discretion over the entity's business decisions.  *See* Compl. Ex. A (LLC Agreement) § 6.  Plaintiffs cannot proceed with simultaneous, duplicative lawsuits based upon an unviable claim for dissolution.

More fundamentally, even if Plaintiffs' dissolution claim was somehow viable, Plaintiffs' own cited cases confirm that the issue of dissolution can be dealt with separately by the Chancery Court after another court resolves Plaintiffs' underlying claims.  *See In re TGM Enterprises, L.L.C.*, 2008 WL 4261035, at *2 (Del. Ch. Sept. 12, 2008) (cited in Opp. 13) ("after defendant's claims have been resolved in the Superior Court the parties will maintain the opportunity to re-open and resolve any remaining issues, including plaintiff's motion to dissolve [the entity], in the Court of Chancery").  As set forth in the ML Defendants' Opening Brief and further below, dissolution is a remedy, not a cause of action, to which Plaintiffs will be entitled only if they prevail on their other claims regarding the ML Defendants' alleged misconduct with respect to ML Fashion.  Because the New York and Delaware Lawsuits include many of the exact same allegations and address the same conduct by the ML Defendants, it is conceivable that this Court could reach one conclusion about the propriety of the ML Defendants' conduct, and the New York court could

reach the opposite conclusion.  This is exactly the sort of outcome the rule against claim splitting is meant to avoid.

A single court should resolve Plaintiffs' primary claims and, if Plaintiffs prevail on those claims, they can re-apply to this Court for dissolution of ML Fashion at the appropriate time.  Under Delaware law, however, Plaintiffs cannot maintain two simultaneous, duplicative actions and run the risk of inconsistent court decisions merely because they hope to one day be entitled to seek dissolution of ML Fashion.

Plaintiffs' final contention regarding claim splitting is that the cases are not truly duplicative.  Plaintiffs concede that "the names of the causes of action may be the same" and that there is "overlap in background facts," but nonetheless contend that the lawsuits are different because they involve some different parties and, purportedly, "different transactions."  Opp. 14-15.  Plaintiffs rely primarily on the facts that the Delaware and New York Lawsuits involve different derivative entities—Gooberry in New York, ML Fashion in this Court—and additional defendants—Machete in New York, Raffel and MLG Retail in this Court.

However, Plaintiffs cannot dispute that the ML Defendants are named as defendants in each of the lawsuits, and that the two Complaints contain many identical allegations and address the same conduct by the ML Defendants.  Nor does any of this change the fact that Plaintiffs could have sued all of these parties, and asserted all of their primary claims, in a single lawsuit.  That each action has different

additional parties does not change those facts or preclude the application of the rule against claim splitting. *J.L.*, 33 A.3d at 918 (rejecting the argument that claim splitting does not apply where plaintiff "has named different defendants in both actions" because the claim splitting analysis "turn[s] on" whether "the claims involved in the separate actions . . . 'substantially overlap'"). Courts applying the rule against claim splitting also analyze claims "transactionally" to ensure that plaintiffs are not able to "prosecute overlapping or repetitive actions in different courts" simply because "the substantive theory of recovery . . . in the two courts is different." *Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980).

Far from precluding application of the claim splitting prohibition here, the identities of the derivative entities and additional defendants in each action underscore the overlapping and duplicative nature of Plaintiffs' lawsuits.  In this action, Plaintiffs purport to sue on behalf of ML Fashion, while in New York they purport to sue on behalf of Gooberry.  Plaintiffs concede that ML Fashion, although a Delaware LLC, has its principal place of business in New York and is effectively the successor to Gooberry, as Plaintiffs allege that MLG Retail, an entity "owned" and managed by ML Fashion and named as a defendant in this action, holds all of Gooberry's former assets except the Runway brand.  Compl. ¶¶ 19, 104; New York Compl. ¶¶ 114-115.  With respect to the Runway brand, which Plaintiffs now allege is Gooberry's sole asset, Plaintiffs assert claims against Runway's founder, Raffel,

in this action and allege, as they do in the New York Lawsuit, that Gooberry's purchase from Raffel of the Runway brand was improper.  Compl. ¶¶ 136-139; New York Compl. ¶¶ 99-102.[2]

The foregoing, coupled with the other identical allegations and claims outlined in Exhibits 1 and 2 to Defendants' Opening Brief, confirm that there is no real distinction between these actions, and that (1) Plaintiffs' purported claims on behalf of ML Fashion, Gooberry's *de facto* successor; (2) Plaintiffs' claims against MLG Retail, the alleged holder of most of Gooberry's assets; and (3) Plaintiffs' claims against Raffel, the founder of Gooberry's alleged sole remaining asset, in this action all could have, and should have, been asserted in a single action alongside Plaintiffs' purported claims on behalf of Gooberry.  Because each lawsuit arises from a common nucleus of operative fact, and because all of Plaintiffs' claims could have been asserted in a single lawsuit, this suit should be dismissed.[3]

---

[2] Similarly, although Plaintiffs only named Machete as a Defendant in the New York Lawsuit, Plaintiffs make allegations regarding Machete in their Complaint in this action and could have asserted their claims against Machete as part of a single action. *See* Compl. ¶¶ 53-54.

[3] Defendants have raised the claim splitting argument in the New York lawsuit as well.  If the New York court dismisses that lawsuit prior to the Court's ruling on this Motion, Defendants will withdraw their claim splitting argument in this action.

**D.     Plaintiffs' allegations against MLG Retail fail to state a plausible claim.**

**1.     No facts support Plaintiffs' claim for conversion (Count 11).**

In their Opposition, Plaintiffs again fail to identify how MLG Retail specifically—not the Defendants collectively—converted anything belonging to ML Fashion. *See* Opp. 15-16. Rather, and as with the Complaint, Plaintiffs simply resort to impermissible group pleading against all "Defendants" and cite Lemonis' alleged removal of funds as attributable to MLG Retail, without any authority or evidence. Compl. ¶¶ 186 ("…***Lemonis, or someone acting at his direction***, transferred all funds (roughly $601,324.02) in the ML Fashion and MLG Retail bank accounts into a new bank account under the name of MLG Retail."); 265 ("***Defendants converted*** these funds by removing such funds from ML Fashion's bank accounts…"); 266 ("***Defendants additionally converted*** ML Fashion's property by taking at least $3,023,004.47 from ML Fashion and MLG Retail's bank accounts…") (emphasis added); *see Boyd v. N.J. Dep't of Corr.,* 583 F. App'x 30, 32 (3d Cir. 2014) (Fed. R. Civ. P. 8(a) requires plaintiffs to "plead[] specific facts for each Defendant's liability"); *Pushkin v. Nussbaum,* 2017 WL 1591863, at *7 (D.N.J. Apr. 28, 2017), *report and recommendation adopted,* 2018 WL 500145 (D.N.J. Jan. 19, 2018) ("group pleading is impermissible because it fails to put each Defendant on notice of their specific actions which render them liable to Plaintiff").

Further, Plaintiffs cannot plausibly allege conversion on their own taken as true facts because they have not established that ML Fashion's rights to its bank accounts, inventory, and FFE have been denied by MLG Retail.  At their core, Plaintiffs allege only that bank accounts, inventory, and FFE have been moved and transferred preventing access by Menkin and Goureau—but not by ML Fashion, upon whose behalf Plaintiffs are allegedly suing.  Specifically, Plaintiffs allege Lemonis removed $601,324.02 from both ML Fashion and MLG Retail's bank accounts into a new MLG Retail account; however, there is no allegation that ML Fashion does not have access to these funds nor that MLG Retail precluded ML Fashion's access.[4]  Compl. ¶¶ 186, 265.  Plaintiffs also alleged Lemonis removed $3,023.004.47 from both ML Fashion and MLG Retail's bank accounts for personal expenses on Lemonis' personal credit card, but Lemonis' alleged personal charges cannot plausibly be attributed to MLG Retail.  With respect to the inventory and FFE, Plaintiffs' Complaint only alleges that these items were removed during various store closures, not that ML Fashion does not have continuing access to its own property.[5]  *See* Compl. ¶¶ 173-6, 186, 264-71.  Accordingly, all of Plaintiffs' conversation claims should be dismissed.

---

[4] Rather, as set forth in the 8/28 Decl., ML Fashion was forced to open new bank accounts to prevent Plaintiffs from using ML Fashion's money as their own personal piggy bank for unauthorized payments.  *See* 8/28 Decl. ¶ 8.

[5] All ML Fashion inventory and FFE removed from any store has, at all times, remained within the ML Fashion system.  *See* 8/28 Decl. ¶ 9.

## 2.   Plaintiffs' conversion claim arises solely from contract.

Plaintiffs conflate ML Fashion's rights in its bank accounts, inventory, and FFE with the nature of the harm they themselves alleged—namely, that Defendants' use of ML Fashion's property was ***not*** used for legitimate business reasons.  The issue from which liability might purportedly arise is not whether ML Fashion has rights to its bank accounts, inventory, and FFE, though those are also fully addressed in the LLC Agreement.  Compl. Ex. A, § 1 (defining company "Property"); § 2.7 (Title to Property); § 8.1(a) (Bank Accounts).  The issue, rather, is that Plaintiffs' allegations of wrongdoing with respect to this property all center upon Defendants' allegedly illegitimate business uses, which is entirely governed by their respective LLC operating agreements.

Moreover, Plaintiffs' conversion claim fails as a matter of law because Plaintiffs are seeking satisfaction of a contractual obligation that could be satisfied "by the payment of money." *Kuroda v. SPJS Holdings,* L.L.C., 971 A.2d 872, 890 (Del. Ch. 2009) ("Generally, an action in conversion will not lie to enforce a claim for the payment of money.")  Therefore, the Court should not permit Plaintiffs' conversion claim to survive in the alternative or otherwise.

## 3.   Plaintiffs have no contract (Count 15) with MLG Retail, much less any breach.

Rather than attach Menkin's contract with MLG Retail detailing her right to duplicative bi-monthly payments of $11,558 from two separate entities—or even a

pay stub—Plaintiffs instead double down on their proclamation that because they wrote that MLG Retail breached a contract it must be true under Chancery Rule 8. Such *ipse dixit* statements, unsupported by specific facts like the contract itself and requiring unreasonable inferences that Menkin was entitled to duplicative payments for the same services from two separate entities based upon separate contracts, are the exact type of conclusory statements that motions to dismiss are designed to weed out. S*ee In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 128-29 (Del. Ch. 2009) (dismissing breach of fiduciary duty demand futility claim based on "ipse dixit syllogisms").

Setting aside the inherent unreasonableness of Plaintiffs' position, their own allegations, taken as true, demonstrate the lack of any contract with MLG Retail. Plaintiffs explicitly base Menkin's right to compensation only for her service "[a]s the President of ML Fashion," and claim her compensation came "from an account in the name of MLG Retail **but was for her work as President of ML Fashion**." Compl. ¶ 170 (emphasis added).   As such, Plaintiffs' own allegations demonstrate the lack of any plausible contract with MLG Retail.

Finally, Plaintiffs' have not and cannot establish any breach nor damages by MLG Retail or even ML Fashion.  Menkin's alleged breach is "[b]eginning on April 1, 2020, ML Fashion and MLG Retail ceased paying Menkin the compensation due under the agreement."  Compl. ¶ 284.  However, Plaintiffs do not allege that Menkin

continued to work as ML Fashion's President after March 2020—rather, they allege the opposite that "around April 2020, Lemonis abruptly cut off Menkin and removed her access to her company e-mail and all of her company files." Compl. ¶ 169. Plaintiffs' own allegations dispositively demonstrate ***Menkin ceased performing any services as President for ML Fashion as of March 31, 2020***. *Id.* Plaintiffs' failure to allege the fundamental *quid pro quo* of employment or consulting relationships does not create a plausible claim for breach of a contract, especially one that requires her to be paid in perpetuity for no services rendered. Moreover, the LLC Agreement expressly provides that, "The Manager may, in his own discretion, fix the salaries of all Officers and agents of the Company, in their capacity as such." Compl. Ex. A, § 6.1(c). Reducing Menkin's salary to zero, as alleged, particularly for a time frame in which she is alleged to have provided no services, is therefore not a breach nor constitutes damages.

Because both claims against MLG Retail fail, MLG Retail must be dismissed from this lawsuit.

### E.   Plaintiffs' allegations against Raffel, taken as true, do not state a claim.

#### 1.   Plaintiffs fail to plead aiding and abetting (Count 5) against Raffel.

In response to the "stringent test" for establishing aiding and abetting, *Allied Capital Corp. v. GC–Sun Hldgs., L.P.,* 910 A.2d 1020, 1039 (Del. Ch. 2006), that

"*is among the most difficult in our law to satisfy,*" *Mesirov v. Enbridge Energy Co., Inc.,* 2018 WL 4182204, at \*13 (Del. Ch. Aug. 29, 2018)(emphasis added), Plaintiffs concede they have not plead Raffel's alleged scienter with particularity, but erroneously cite authority to claim it is not required under the law.  *See* Opp. 19-20. Plaintiffs also unsuccessfully fail to establish the first two elements of aiding and abetting against Raffel.  *See id*. 18-19.

Instead, Plaintiffs attempt to band-aid their deficient claim by falling back on the generalized trope that "Raffel and Lemonis worked together to use the assets of ML Fashion to benefit their own fashion brand and retail concept MARCUS," supported only by the same facts (inventory over purchasing and incorrect business decisions) debunked in the Opening Brief.  *Id*. at 20; Br. 17-21.  Plaintiffs' aiding and abetting claim therefore boils down to whether Raffel's receipt of standard company-issued inventory reports, taken as true, establishes her scienter, or knowing participation in the fiduciary's breach with an "illicit state of mind" of her own "legally improper" conduct.  *See RBC Capital Mkts., LLC v. Jervis,* 129 A.3d 816, 862 (Del. 2015).  This falls well short of any reasonable inference, and accordingly the aiding and abetting claim should be dismissed.

### 2.   Plaintiffs' fail to plead conversion (Count 11) against Raffel.

None of the Complaint paragraphs (Compl. ¶¶ 124-33) cited in Plaintiffs' Opposition Brief regarding conversion contains any reference to Raffel.   The

Complaint paragraphs that actually do address Raffel were dispelled in Defendants' Opening Brief.  Ultimately, Plaintiffs' essential conversion allegation against Raffel is that ML Fashion assets were misused to build MARCUS.  Compl. ¶ 228.  Even taken as true, Plaintiffs' fail to allege any instance *of Raffel* converting corporate funds, inventory, or FFE belonging to ML Fashion whatsoever—much less the $601,324.02 or $3,023,004.47 removed from ML Fashion's bank accounts nor inventory and FFE removed from various company stores that forms the specific basis of their conversion claim.  As no conversion allegations are directed to Raffel specifically, this claim must be dismissed.

### F.     Plaintiffs' remaining claims (Counts 1-6, 8-11) are barred by contract.

Plaintiffs erroneously contend that Counts 1-6 and 8-11 of their Complaint are not barred by the LLC Agreement and Plaintiffs' breach of contract claim, but fail to support this contention or rebut Defendants' showing that these claims are barred. Opp. 22.

### 1.     Plaintiffs' opposition confirms their failure to adequately plead that the ML Defendants are alter ego of one another.

Plaintiffs wrongly argue that they are allowed to lump all of the ML Defendants together in their allegations because Plaintiffs adequately pled that the ML Defendants are alter egos of one another, Opp. 22-26, but concede that they were required to "plead facts supporting an inference that the corporation, through its

alter-ego, has created a sham entity designed to defraud investors and creditors." *Id.* at 22 (internal quotation marks omitted) (quoting *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015)).   Plaintiffs also effectively concede that their allegations are not "robust," *see id.* at 25-26, confirming that they have not even come close to meeting their pleading burden.

A cursory review of the Complaint paragraphs cited by Plaintiffs shows that their allegations are conclusory: for example, Plaintiffs allege, "upon information and belief," that Lemonis is "the sole natural person involved in each entity" and that "[t]he corporate form, entity, and structure of ML Retail and [Marcus Lemonis, LLC] were at all times disregarded by Defendant Marcus Lemonis."  Compl. ¶ 26. Plaintiffs plead no additional facts from which the Court could infer that these conclusory statements are possibly true, *e.g.*, by pleading an example of how Lemonis allegedly disregarded corporate formalities.  *See id.*  Plaintiffs make no effort to plead that ML Retail and Marcus Lemonis, LLC have identical boards of directors, share employees or assets, or any of the other typical indicia of alter ego status identified in Delaware case law.  *See, e.g., Shandler v. DLJ Merch. Banking, Inc.*, 2010 WL 2929654, at *15 (Del. Ch. July 26, 2010) (cited in Opp. 23).  As Plaintiffs concede (Opp. 22), it is not enough for Plaintiffs merely to state that the ML Defendants are alter egos: they have to plead actual facts supporting such a claim, which they have failed to do.

21

Even if Plaintiffs had adequately pled a lack of separateness between the ML Defendants, their alter ego claims would still fail because they have not pled, and cannot plead, that ML Retail or Marcus Lemonis, LLC were "sham [entities] and exist for no other purpose than as a vehicle for fraud." *Wallace v. Wood*, 752 A.D.2d 1175, 1184 (Del. Ch. 1999).  As Plaintiffs affirmatively allege, these entities have their own assets and activities, and Plaintiffs even alleged that Marcus Lemonis, LLC employed Plaintiff Goureau for a time.  Compl. ¶¶ 69, 75, 91, 106, 110-12, 130, 167-68.  Plaintiffs do not explain how Goureau could have been employed by Marcus Lemonis, LLC, if it was a mere "sham" entity, and have not pled any non-conclusory allegations from which the Court could infer that these entities were created as sham entities for the sole purpose of committing fraud.

Nor do Plaintiffs adequately allege that Lemonis' supposed use of ML Retail and Marcus Lemonis, LLC as his purported alter egos caused Plaintiffs' alleged harm.  Br. 26-27.  Plaintiffs attempt to salvage their claim by arguing that Lemonis formed ML Retail and Marcus Lemonis, LLC to improperly attempt to shield himself from liability.  Opp. 25-26.  But Plaintiffs nowhere plead any facts to support this assertion or explain why, if true, it would be wrongful, since Delaware law shields individual members and managers from the liabilities of an LLC.  *See., e.g.,* 6. Del. C. § 18-303.

Plaintiffs also argue that Lemonis' use of "sham" entities caused them harm because Lemonis allegedly used those "sham" entities to "saddle" ML Fashion with debt, through ML Fashion's entry into Credit and Security Agreements with ML Retail that were allegedly funded by Marcus Lemonis, LLC.  Opp. 25.  But Plaintiffs' purported harm was caused by the alleged imposition of debt, not by the use of "sham" entities—Plaintiffs' purported harm would be the same even if the ML Defendants observed all corporate formalities, never commingled funds, and so forth. Because Plaintiffs' purported harm is not tied to, and has no connection with, ML Retail's and Marcus Lemonis, LLC's supposed status as "alter egos" of Lemonis, their alter ego claims necessarily fail.

### 2. Plaintiffs' failure to plead alter ego status precludes their fraud claims.

Plaintiffs admit that they rely largely on their alter ego allegations in order to plead their claims for fraudulent inducement and fraud against ML Retail or Marcus Lemonis, LLC, Opp. 27-28, but half-heartedly argue that Plaintiffs alleged fraud specifically by ML Retail and Marcus Lemonis, LLC because the Credit and Security Agreements were fraudulent or because ML Retail and Marcus Lemonis, LLC were used to allegedly defraud other businesses.   Opp. 28.   Plaintiffs misrepresent their own Complaint.  Many of the allegations to which Plaintiffs cite refer to conduct by "Defendants," not to ML Retail or Marcus Lemonis, LLC specifically.  Compl. ¶¶ 204-205, 212-213; Opp. 28.  The remainder fail to identify

any material misstatements by ML Retail or Marcus Lemonis, LLC made with intent to induce Plaintiffs' detrimental reliance or refer to the ML Defendants "defrauding" other businesses.  Compl. ¶¶ 12, 106-16, 118, 130; Opp. 28.  Plaintiffs also do not explain why the alleged defrauding of other businesses unaffiliated with Plaintiffs caused injury **_to Plaintiffs_**, as opposed to those other business owners, such that it could support Plaintiffs' fraud claims.

Because Plaintiffs improperly lumped "Defendants" together in order to plead their fraud claims, Plaintiffs' fraud and fraudulent inducement claims fail.

### 3.    Plaintiffs' tort claims are barred by contract.

Plaintiffs incorrectly argue both that their tort claims are not barred by the economic loss doctrine or are not duplicative of their breach of contract claim despite the overlapping allegations underlying the claims and the fact that all of the claims are grounded in the LLC Agreement.  Opp. 28-32.

Plaintiffs first present a red herring that the economic loss doctrine does not apply to fraud in the inducement.  Opp. 28.  But Defendants never asserted that the doctrine bars Plaintiffs' fraud in the inducement claim.  Br. 28.  With respect to the claims to which the doctrine applies, Plaintiffs were required to allege breaches of an independent duty rather than mere breaches of contract, which they failed to do. *See Cont'l Fin. Co., LLC v. TD Bank, N.A.*, 2018 WL 565305, at *2 n.12 (Del. Super. Ct. Jan. 24, 2018) (cited in Opp. 30).  For example, Plaintiffs allege that their fraud

claim is "separate and apart" from the LLC Agreement because the claim is based upon statements regarding various business transactions undertaken by ML Fashion. Opp. 29-30.  But of course, Plaintiffs' claim that these statements were "fraud" is based upon the notion these transactions were taken for an improper purpose, contrary to the LLC Agreement.  *See* Compl. ¶¶ 212-213.[6]

Whether or not the economic loss doctrine applies, these tort claims are duplicative of Plaintiffs' contract claims, and thus are barred as a matter of Delaware law.  Br. 29-30.  Plaintiffs attempt to distract from this by first arguing that the LLC Agreement permits "potentially duplicative tort claims," Opp. 31, but the LLC Agreement actually provides that the managers or members cannot be held liable for their conduct unless that conduct involves "fraud, breach of fiduciary duty, bad faith, a knowing violation of law or willful misconduct."  Compl. Ex. A, pg. 5, §§ 6.2, 6.4. In other words, the LLC Agreement precludes a suit for breach of the LLC Agreement unless the defendant acted fraudulently, in breach of his duties, or with bad faith.  The Agreement does not envision duplicative claims.

---

[6] Plaintiffs also argue that economic loss doctrine does not apply because the LLC Agreement contemplates certain claims for "fraud, breach of fiduciary duty, bad faith, a knowing violation of law or willful misconduct," relying upon a footnote in an unpublished Superior Court decision that, in turn, relied upon a decision by a court in Florida.  Opp. 30; *Cont'l Fin. Co.*, 2018 WL 565305, at *2 n.12.  To the extent that decision represents Delaware law on this issue, the LLC Agreement does not cover Plaintiffs' claims for aiding and abetting, unjust enrichment, mismanagement, waste, or conversion claims, which are barred by the economic loss doctrine.

Plaintiffs do not even attempt to argue that their claims for waste and mismanagement are not duplicative. Opp. 31-32. Those claims should be dismissed.

With respect to Count III (breach of fiduciary duty against Lemonis only), Plaintiffs argue in conclusory fashion that their claim is based upon duties "not set forth in the LLC Agreement." Opp. 31. But the Complaint leaves no doubt that this claim is predicated upon Lemonis' exercise of his powers under the LLC Agreement. *See* Compl. ¶ 220. Plaintiffs effectively concede this point and resort to arguing that it is "premature" to dismiss the claim now despite its duplicative nature. Opp. 31. There is nothing "premature" about dismissing duplicative claims that are grounded in breaches of the LLC Agreement, however.

Plaintiffs next vaguely argue that Count IV (breach of fiduciary duty against the three ML Defendants) is independent of the LLC Agreement because that claim is premised upon the ML Defendants being part of a "Control Group" that is separate and apart from the LLC Agreement. *Id.* This argument is difficult to decipher, but Plaintiffs appear to rely upon their failed alter ego allegations, and thus this argument should be rejected.

Regarding any implied covenant of good faith and fair dealing, Plaintiffs' own cited authorities confirm that "the doctrine is 'rarely invoked successfully'" and applies "only if the contract is silent as to the subject at issue." *Miller v. HCP & Co.*, 2018 WL 656378, at *9 (Del. Ch. Feb. 1, 2018), *aff'd sub nom. Miller v. HCP*

*Trumpet Investments, LLC*, 194 A.3d 908 (Del. 2018), *reargument denied* (Oct. 9, 2018) (cited in Opp. 32-33).  Here, Plaintiffs conceded the contract is ***not*** silent as to the issues in this litigation.  *See* Opp. 33-34.

Regarding unjust enrichment, Plaintiffs concede the claim is barred by the existence of a valid contract, but contend that they are permitted to plead in the alternative.  Opp. 35-6  But Plaintiffs' have no response to Defendants' showing in their Opening Brief that unjust enrichment claims are dismissed, even in the alternative, when those claims are duplicative of a fraud claim or are not independent of the breach of contract claim.  Br. 36.  Plaintiffs do not even attempt to argue that the unjust enrichment claim is not duplicative, Opp. 35-6, and accordingly that claim should be dismissed.

### G.     Plaintiffs' remedial claims (Counts 12-14) should be dismissed.

Plaintiffs' Complaint fails to allege sufficient facts to transform their formulaic recitations of remedies into claims. *See* Compl. ¶¶ 272-5 (Count 12 - Receiver); 276-7 (Count 13 - injunction); 278-81 (Count 14 - Dissolution).  Plaintiffs' Opposition does not dispute that these claims are indeed remedies; instead they request the Court kick the can down the road to salvage extraordinary remedies which are themselves premised upon heightened unmet standards of proof and unproven predicate claims.  The Court should decline this invitation.

As pled, these procedural remedies lack necessary factual support and are necessarily secondary to Plaintiffs' breach of contract and fiduciary duty claims. For example, Plaintiffs' conclusory receiver allegations do not allege facts sufficient to suggest ML Fashion is unable to operate in accordance with its governing document. Indeed, ML Fashion remains in operation to this day. Plaintiffs' injunctive relief claim also fails and must be dismissed because no amended facts can convert a remedy into a cause of action. Plaintiffs' dissolution claims premised on unproven breaches of fiduciary duty are especially suspicious because Delaware views any form of judicial dissolution as a, "limited remedy that [should be] grant[ed] sparingly." *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, CV 2019-0791-JRS, 2020 WL 1291638, at *5 (Del. Ch. Mar. 18, 2020). Such "extreme" remedies should generally be preceded by proof of the underlying contractual or fiduciary claims, and only applied thereafter if the remedies granted are insufficient. *See In re Arrow Inv. Advisors, LLC*, CIV.A. 4091-VCS, 2009 WL 1101682, at *1 (Del. Ch. Apr. 23, 2009) ("Dissolution is an extreme remedy" that should not be entertained when "premised on unproven breaches of fiduciary duty.")

Ultimately Plaintiffs' receiver, injunction, and dissolution "claims" should be dismissed for both lack of factual sufficiency and as extraordinary procedural remedies that are necessarily secondary to Plaintiffs' breach of contract and fiduciary duty claims. *See Ross Holding & Mgmt. Co. v. Advance Realty Grp., LLC*,

2010 WL 3448227, at *6 (Del. Ch. Sept. 2, 2010) ("As a general matter, 'the appointment of a receiver is an extraordinary, a drastic and ... an heroic' remedy."); *Noah v. Enesco Corp.,* 911 F. Supp. 305, 307 (N.D. Ill. 1995) ("[Plaintiff], however, fails to state a claim merely by stating that he is entitled to injunctive relief.  An injunction is a remedy, not a cause of action."); *In re Arrow Inv. Advisors, LLC,* 2009 WL 1101682, at *1 (Del. Ch. Apr. 23, 2009) ("Dissolution is an extreme remedy" that should not be entertained when "premised on unproven breaches of fiduciary duty.").

As such, Plaintiffs' receiver, injunction, and dissolution claims should be dismissed.

### H.    Leave to amend should be denied.

The Court should reject Plaintiffs' request for leave to amend yet again in the event that the Court dismisses the Complaint.  Opp. 37-38.  As an initial matter, although Court of Chancery Rule 15(a) provides that leave to amend "shall be freely given," the Court's Rules further provide that "[n]otwithstanding Rule 15(a)," a court should "deny leave to amend when a plaintiff fully engages on a motion to dismiss under Rule 12(b)(6) without first seeking leave to amend so that it can address the pleading deficiencies exposed in the motion." *Sylebra Capital Partners Master Fund, Ltd. v. Perelman*, 2020 WL 5989473, at *7 (Del. Ch. Oct. 9, 2020) (citing Del. Ch. Ct. R. 15(aaa)).  In such instances, where the plaintiff elects to

oppose dismissal rather than amend, the Court will consider the motion to dismiss on the merits of the pleading as addressed in the motion, and will dismiss with prejudice where warranted." *Id*. "The rule is intended to conserve litigants' and judicial resources by discouraging a party from briefing a dispositive motion before filing an amendment complaint." *East Sussex Assocs., LLC v. West Sussex Assocs., LLC*, 2013 WL 2389868, at *1 (Del. Ch. June 3, 2013).

Here, Plaintiffs have already filed one amended complaint after Defendants' initial motion to dismiss exposed the flaws in Plaintiffs' pleading. Now, Plaintiffs have yet again chosen to oppose dismissal rather than amend and have not submitted a proposed further amended complaint or otherwise explained how they could cure the deficiencies identified by Defendants, and, in fact, Plaintiffs cannot cure the deficiencies. No amount of amended allegations can circumvent the fact that this action was brought in an improper venue and is barred by the rule against claim splitting. Nor can Plaintiffs correct the substantive pleading defects in the claims, as outlined above. Presumably, if Plaintiffs could do so, they would have done so before filing an amended Complaint, since they knew exactly what Defendants would argue on this motion. The fact that any further amendment would be futile provides an independent basis to deny leave to amend. *Clark v. State Farm Mut. Auto. Ins. Co.*, 131 A.3d 806, 811-12 (Del. 2016) ("leave to amend should be denied where the proposed amendment would be futile," such as when "the amended

complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim").

If the Court dismisses the Complaint under these circumstances, it should not permit Plaintiffs to have a third bite at the apple, particularly because the flaws in Plaintiffs' pleading cannot be corrected.  *See* Br. 38-39.  Leave to amend should be denied, and the Complaint should be dismissed with prejudice.

## II.    CONCLUSION

Defendants Marcus Lemonis, ML Retail, LLC, Marcus Lemonis, LLC, Roberta Raffel, and MLG Retail, LLC respectfully request the Court grant their Motion to Dismiss and for the Court to dismiss this case and all claims in their entirety.  Defendants request all further relief to which they may be entitled.

Dated:  November 2, 2020

Respectfully submitted,

FARNAN LLP

/s/ *Brian E. Farnan*
Brian E. Farnan (# 4089)
Michael J. Farnan (# 5165)
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Words: 7,497

Michael D. Wexler (*admitted pro hac vice*)
SEYFARTH SHAW LLP
Willis Tower
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5559

Jesse M. Coleman (*admitted pro hac vice*)
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas  77002
(713) 238-1805

*Attorneys for Defendants*
*Marcus Lemonis, ML Retail, LLC, Marcus*
*Lemonis, LLC, Roberta Raffel, and MLG*
*Retail, LLC*

**EFiled:  Nov 02 2020 03:51PM EST**
**Transaction ID 66073802**
**Case No. 2020-0486-MTZ**

## <u>CERTIFICATE OF SERVICE</u>

I, Brian E. Farnan, hereby certify that on November 2, 2020, a copy of

Defendants' Reply Brief in Support of Motion to Dismiss was served via LexisNexis

File&Serve on the following:

Sean J. Bellew
Bellew LLC
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808
sjbellew@bellewllc.com

/s/ *Brian E. Farnan*
Brian E. Farnan (# 4089)