EXHIBIT – F –

## CREDIT AGREEMENT

**THIS CREDIT AGREEMENT** is made and entered into as of March 29, 2016, by and between **ML RETAIL LLC**, a Delaware limited liability company ("Borrower"), and **MARCUS LEMONIS LLC**, a Delaware limited liability company ("Lender").

## W I T N E S S E T H:

**WHEREAS**, subject to the terms and conditions set forth herein, Lender is willing to make revolving loans (the "Loans") to Borrower in amounts not to exceed $30,000,000 in the aggregate.

**NOW, THEREFORE,** in consideration of the foregoing, of the mutual covenants set forth herein and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties hereto, intending legally to be bound, hereby agree as follows:

## ARTICLE I
## DEFINITIONS; ETC.

1.1    Definitions.  As used in this Agreement, the following terms and phrases shall have the following meanings:

"Agreement" means this Credit Agreement, as the same may hereafter be amended, modified, supplemented or restated.

"Borrower" is defined in the first paragraph.

"Borrowing" means a future borrowing of a Loan by Borrower.

"Business Day" means each day other than a Saturday, a Sunday or any other day on which banks are permitted to be closed in the City of New York, New York.

"Closing Date" means the date on which both of the following shall have occurred: (a) Lender has received counterparts of, or signature pages to, the Loan Documents executed by Borrower, and (b) the conditions set forth in Article IV have been satisfied.

"Collateral" means all property and interests in property now owned or hereafter acquired by Borrower in or upon which a security interest, lien or mortgage is granted to Lender by Borrower, whether under this Agreement, or under any other documents executed by Borrower and delivered to Lender.

"Collateral Documents" means, collectively, (a) the Security Agreement, and all other security agreements, mortgages, deeds of trust, patent and trademark assignments, lease assignments, guarantees and other similar agreements made by Borrower for the benefit of Lender now or hereafter delivered to Lender pursuant to or in connection with the transactions contemplated hereby, and all financing statements (or comparable documents now or hereafter

filed in accordance with the Uniform Commercial Code or comparable law) against Borrower as debtor in favor of Lender as secured party, and (b) any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions and extensions of any of the foregoing.

"Commitment" means the commitment of Lender to make Loans to Borrower in an aggregate amount at any time outstanding not in excess of $30,000,000.

"Commitment Termination Date" means the earlier of (a) Borrower's sale, transfer, pledge or other disposition of all or any substantial part of its assets, Borrower's consolidation or merger with any other entity or the sale, transfer, pledge or other disposition of all or substantially all of the membership interests of Borrower, other than to an affiliate, (b) the date on which the Commitment shall terminate pursuant to Article VI, and (c) the date that is three (3) years from the date hereof; provided, however, that Borrower and Lender shall extend the initial 3-year term and any subsequent term thereof, automatically for so long as Borrower is "current" in the payment of its accounts payable.

"Default" means any event, act or condition which with notice or lapse of time, or both, would constitute an Event of Default.

"Dollars" and "$" mean the lawful money of the United States of America.

"Event of Default" has the meaning ascribed to it in Article VI.

"Indebtedness" means (a) indebtedness for borrowed money or the deferred purchase price of property or services purchased (other than amounts constituting accrued expenses and trade payables arising in the ordinary course of Borrower's business), (b) obligations arising in respect of letters of credit or similar instruments, (c) obligations under capital leases, (d) indebtedness of the type described in clauses (a), (b) and (c) which have been directly or indirectly assumed or guaranteed.

"Interest Period" means the period commencing on the date of a Loan or the last day of the preceding Interest Period (with the first Interest Period to commence on the date of this Agreement) and ending on the last day of the calendar month which is one month thereafter; provided, however, that if any Interest Period would end on a day which shall not be a Business Day, such Interest Period shall be extended to the next succeeding Business day unless such next succeeding Business Day would fall in the next calendar month, in which case such Interest Period shall end on the next preceding Business Day.

"Interest Rate" means, for each loan, six percent (6%) per annum with annual compounding.

"Lender" is defined in the first paragraph.

"Loan Documents" means this Agreement, the Note, the Security Agreement, and all other documents, instruments, notes and agreements executed in connection therewith or contemplated thereby, as the same may be amended, restated or otherwise modified and in effect from time to time.

27436445.1

"Loans" has the meaning ascribed to it in the recitals.

"Note" is defined in Section 2.3(a).

"Obligations" means all amounts owing by Borrower to Lender or any other Person or any of their respective successors and assigns pursuant to or in connection with this Agreement or any other Loan Document or otherwise with respect to any Loan, including without limitation, all principal, interest (including any interest accruing after the filing of any petition in bankruptcy or the commencement of any proceeding under any debtor relief law relating to Borrower, or would accrue but for such filing or commencement, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), all reimbursement obligations, fees, expenses, indemnification and reimbursement payments, costs and expenses (including all fees and expenses of counsel to Lender incurred pursuant to this Agreement or any other Loan Document), whether direct or indirect, absolute or contingent, liquidated or unliquidated, now existing or hereafter arising hereunder or thereunder, together with all renewals, extensions, modifications or re-financings thereof.

"Person" means an individual, a corporation, a partnership, an association, a trust or other entity or organization, including a government or political subdivision or an agency or an instrumentality thereof.

"Restricted Payment" means (a) any distribution, dividend or other payment of a similar nature paid to holders of equity interests of Borrower or any of its Subsidiaries (expressly excluding any Tax Distributions (as defined in Borrower's Limited Liability Company Agreement) and, with respect to holders of equity interests of Borrower or any of its Subsidiaries who are employees of Borrower or such Subsidiary, any payments with respect to such employment), and (b) any redemption, retirement or other acquisition by Borrower or a Subsidiary or affiliate thereof of any equity interest of Borrower or such Subsidiary.

"Security Agreement" means the Security Agreement, dated as of the date hereof, between Borrower and Lender, as the same may be amended from time to time, pursuant to which Borrower grants Lender a security interest in and to all of Borrower's assets.

"Subsidiary" means any corporation, partnership or limited liability company of which Borrower owns, directly or indirectly, such number of shares, partnership interests or membership interests as have more than 50% of the ordinary voting power and any limited liability company in which Borrower has invested in which it is also the manager.

1.2    References.    All references in this Agreement to particular Sections or Articles shall, unless expressly otherwise provided or unless the context otherwise requires, be deemed to refer to the specific sections or articles in this Agreement. In addition, the words "hereof," "herein," "hereunder," and words of similar import, refer to this Agreement as a whole and not to any particular section or article.

27436445.1

## ARTICLE II
## THE LOANS

2.1 <u>Loans</u>. Lender agrees, upon the terms and subject to the conditions of this Agreement, to make the Loans to Borrower on any Business Day and from time to time from the Closing Date to the Commitment Termination Date in an aggregate principal amount at any one time outstanding not to exceed the Commitment.

2.2 <u>Borrowing Procedures</u>.

(a) Borrower shall give at least seven (7) Business Days' prior written notice to Lender of each Borrowing. Each such notice in order to be effective must be received by Lender not later than 11:00 am (Chicago time) on the day required and shall specify the Business Day on which such Loan is to be made and the aggregate principal amount of the requested Loan.

(b) Subject to <u>Article IV</u>, on the borrowing date specified in such notice, Lender shall disburse funds in the amount of the requested Borrowing to Borrower via wire transfer into an account specified by Borrower.

2.3 <u>Notes; Repayment</u>.

(a) The Loans made by Lender shall be evidenced by a secured promissory note substantially in the form of <u>Exhibit A</u> hereto (the "<u>Note</u>") in the face amount equal to the Commitment, duly executed on behalf of Borrower and dated as of the date hereof. The outstanding principal amount of the Loans as evidenced by the Note shall be payable in full on the Commitment Termination Date, subject to acceleration as provided in <u>Article VI</u>.

(b) Lender is hereby authorized by Borrower, but not obligated, to enter on the last page of the Note the amount of the Loans made by Lender hereunder and the other information provided for on such last page; <u>provided</u>, <u>however</u>, that the failure of Lender to set forth the amount of such Loans, or the other information, or any error with respect thereto, shall not in any manner affect the obligation of Borrower to repay the Loans and all other Obligations due hereunder.

2.4 <u>Interest; Default Interest</u>.

(a) The Note shall bear and accrue interest on the outstanding principal amount thereof at the Interest Rate. Interest shall accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the end of the most recent Interest Period. Interest shall be payable quarterly, on a calendar quarter basis, and, subject to <u>Section 2.4(b)</u> and <u>Article VI</u>, shall be due in full at the earlier of (i) the Commitment Termination Date, and (ii) the Borrower's payment in full of all outstanding Loans pursuant to <u>Section 2.6</u>. Borrower may elect not to pay the accrued interest in cash on any interest due date, in which event such interest shall be paid in kind and shall accrete as additional principal on the Loans on the applicable payment date and shall thereafter accrue interest as part of the principal amount of the Loans at the Interest Rate.

27436445.1

(b)    If the Borrower shall default in the payment of the principal of, or interest on, any Loan or any other amount becoming due hereunder, whether at the Commitment Termination Date, by acceleration or otherwise, Borrower shall on demand from time to time pay interest, to the extent permitted by applicable law, on overdue amounts outstanding up to the date of actual payment of such defaulted amount at a rate equal to the Interest Rate plus 300 basis points.

(c)    Anything in this Agreement or the Note to the contrary notwithstanding, the interest rate on the Loans shall in no event be in excess of the maximum rate permitted by applicable law.

2.5    <u>Termination of Commitment</u>.    The Commitment shall be automatically and permanently reduced to zero Dollars ($0) on the Commitment Termination Date. Simultaneously with the termination of the Commitment, Borrower shall pay Lender an amount equal to the principal amount of Loans outstanding, together with (a) all accrued interest thereon and (b) all other Obligations (other than contingent and other inchoate obligations for which no claim has been made) due hereunder.

2.6    <u>Permissive Prepayment of Loans</u>.    Borrower shall have the right at its option at any time and from time to time to prepay the Loans, in whole or in part, upon at least one (1) Business Day's prior written notice to Lender.    All prepayments shall be accompanied by accrued but unpaid interest on the principal amount being prepaid to the date of (but not including) the date of prepayment.

2.7    <u>Manner of Payment</u>.    All payments of interest and principal in respect of the Loans shall be made directly to Lender without offset or counterclaim, in Dollars, in immediately available funds, at the offices of Lender specified in <u>Section 7.8</u>.    All payments made by Borrower to Lender shall be applied first to accrued and unpaid interest on the Loans and the remainder thereof to the unpaid principal amount of the Loans.

## ARTICLE III
## <u>REPRESENTATIONS AND WARRANTIES</u>

Borrower hereby represents and warrants to Lender as follows:

3.1    <u>Authority</u>.    Borrower has the full power, right and legal authority to execute and perform the Loan Documents in accordance with their respective terms.

3.2    <u>Validity</u>.    The Loan Documents have been duly and validly executed by Borrower and, upon delivery thereof by Borrower, will constitute a legal, valid and binding obligation of Borrower enforceable against it in accordance with their respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally or by general equitable principles relating to enforceability, regardless of whether such enforceability is considered in a proceeding at law or in equity.

3.3    <u>Compliance with Laws and Contracts</u>.    The execution, delivery and performance of the Loan Documents by Borrower in compliance with their respective terms and provisions do

27436445.1

not and will not conflict with, or result in a breach of, any of the terms, conditions or provisions of any mortgage, lien or other security arrangement or any agreement, instrument, order, judgment, decree or any other restriction of similar kind or character to which Borrower is a party or is otherwise bound.

3.4     Organization.  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction of organization.

3.5     Representations to Be Continuing.  Each of the foregoing representations and warranties are true and correct as of the date of this Agreement and will continue to be true at the date of the disbursement of each Loan hereunder.  By submitting to Lender a request for Borrowing hereunder, Borrower shall be deemed to have restated each of such representations and warranties as of the date of such request.

## ARTICLE IV
## CONDITIONS

4.1     Conditions Precedent to the Initial Loans.  The obligation of Lender to make the initial Loan hereunder shall be subject to the satisfaction by Borrower or waiver by Lender on or prior to the Closing Date of the following conditions precedent:

(a)     Lender shall have received the Note duly executed by Borrower, dated the date hereof and payable to the order of Lender in the principal amount of the Commitment.

(b)     Lender shall have received the Security Agreement, duly executed by Borrower and dated the date hereof.

(c)     No action, suit, claim or proceeding before any domestic court, governmental agency, commission, or administrative or regulatory authority shall have been commenced by a party other than Lender and be pending which (i) seeks to restrain, prevent, or materially restructure the Loans contemplated hereby or which otherwise questions the validity or legality thereof, or (ii) could, in Lender's reasonable judgment, impair Borrower's ability to satisfy the Obligations.

4.2     Conditions Precedent to each Loan.  The obligation of Lender to make any Loan hereunder shall be subject to the satisfaction by Borrower or waiver by Lender on or prior to the requested Borrowing date of the following conditions precedent:

(a)     Lender shall have received a written notice with respect to such Borrowing as required by Section 2.2(a).

(b)     The representations and warranties of Borrower set forth in Article III shall be true and correct on and as of the date of each Borrowing, with the same effect as if made on and as of such date.

(c)     On the date of each Borrowing, no Event of Default or Default shall have occurred and be continuing.

27436445.1

(d)    Lender, in its sole and absolute discretion, shall have determined there is no malfeasance by Borrower.

Each Borrowing hereunder shall be deemed to be a representation and warranty by Borrower on the date of such Borrowing as to the matters and to the extent specified by paragraphs (b) and (c) of this Section.

## ARTICLE V
## COVENANTS

5.1    <u>Affirmative Covenants</u>.    From the Closing Date and for so long as the Commitment shall be in effect or any Obligations (other than contingent and other inchoate obligations for which no claim has been made) shall remain outstanding hereunder, Borrower shall (a) use the proceeds of the Loans to make investments and for working capital and other general corporate purposes (including without limitation, for avoidance of doubt, to make loans or advances to any of its Subsidiaries), (b) deliver to Lender such information from time to time concerning the financial condition of Borrower and its Subsidiaries as Lender may request, (c) file all tax returns when due and pay and discharge, when due, all taxes reflected on such returns; and pay, when due, all assessments and other liabilities, except such liabilities which are contested in good faith and by proper proceedings and for which appropriate reserves have been established in accordance with generally accepted accounting principles then in effect, (d) comply with the requirements of all applicable laws, rules, regulations and orders of any governmental authority (federal, state, local or foreign), a breach of which would adversely affect the interest of Lender hereunder, and (e) preserve its company existence.

5.2    <u>Indemnification</u>.  From the Closing Date and for so long as the Commitment shall be in effect or any Obligations (other than contingent and other inchoate obligations for which no claim has been made) shall remain outstanding hereunder, Borrower shall indemnify and hold Lender and its affiliates harmless from and against any and all claims, damages, losses, liabilities, costs, expenses and fees resulting from Borrower's breach of any representation, warranty, agreement or covenant made by Borrower to Lender in any of the Loan Documents. The indemnification provisions of this <u>Section 5.2</u> shall survive each Loan and any termination of this Agreement.

5.3    <u>Limitation on Indebtedness</u>.    From the Closing Date and for so long as the Commitment shall be in effect or any Obligations (other than contingent and other inchoate obligations for which no claim has been made) shall remain outstanding hereunder, without the prior written consent of Lender, Borrower shall not create, incur, assume or suffer to exist any Indebtedness, except Indebtedness hereunder.

5.4    <u>Limitation on Restricted Payments</u>.  From the Closing Date and for so long as the Commitment shall be in effect or any Obligations (other than contingent and other inchoate obligations for which no claim has been made) shall remain outstanding hereunder, Borrower shall not declare, make or incur any liability to make any Restricted Payments without Lender's prior written consent.

27436445.1

## ARTICLE VI
## EVENTS OF DEFAULT

In the case of the happening and during the continuance of any of the following events (herein called "Events of Default"):

(a)    default shall be made in the payment of any principal of, or interest on, the Note when and as the same shall become due and payable, whether at the due date thereof or at the date fixed for prepayment thereof or acceleration thereof or otherwise;

(b)    default shall be made in the due performance of any covenant or agreement contained in any of the Loan Documents (other than a payment covenant of the kind contemplated by clause (a) of this Article VI) and such default shall remain unremedied for ten (10) Business Days after receipt by Borrower of a written notice of such default;

(c)    any representation or warranty of Borrower contained in any of the Loan Documents shall be false or misleading as of the date made or deemed made;

(d)    any of the Loan Documents shall cease, for any reason, to be in full force and effect;

(e)    default in payment, after the expiration of any applicable grace period, shall be made with respect to any Indebtedness of Borrower other than the Indebtedness hereunder in an amount or amounts over $25,000.00 in the aggregate; or other default in connection with such Indebtedness, if the effect of such default is to accelerate or permit the holder thereof to accelerate the maturity of such Indebtedness or to permit the holder thereof to cause such Indebtedness to become due prior to its stated maturity;

(f)    Borrower or any of its Subsidiaries is generally unable to pay its debts as they become due or admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors; or Borrower or any of its Subsidiaries commences any case, proceeding or other action seeking to have an order for relief entered on its behalf as debtor or to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property or shall file an answer or other pleading in any such case, proceeding or other action admitting the material allegations of any petition, complaint or similar pleading filed against it or consenting to the relief sought therein; or Borrower or any of its Subsidiaries shall take any action to authorize any of the foregoing;

(g)    any involuntary case, proceeding or other action against Borrower or any of its Subsidiaries shall be commenced seeking to have an order for relief entered against it as debtor or to adjudicate it a bankrupt or insolvent or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property,

-8-

and such case proceeding or other action (i) shall result in the entry of any order for relief against it or (ii) shall remain undismissed or undischarged for a period of 60 days; or

        (h)    final judgment(s) for the payment of money in excess of $100,000 shall be rendered in the aggregate against Borrower or any of its Subsidiaries which within 60 days from the entry of such judgment(s) shall not have been discharged or stayed pending appeal or which shall not have been discharged within 60 days from the entry of a final order of affirmance on appeal from which no further appeal may be taken;

<u>then</u>, in every such event and at any time thereafter during the continuance of such event, the Lender may take, in its sole discretion, any or all of the following actions, at the same or different times:

        (i)    terminate forthwith the Commitment;

        (ii)    declare the principal of, and interest on, the Loans and the Note and all other Obligations (other than contingent and other inchoate obligations for which no claim has been made) payable hereunder or thereunder to be forthwith due and payable, without presentment, demand, protest, notice of acceleration, notice of intent to accelerate or other notice of any kind, all of which are hereby expressly waived, anything in this Agreement or the Note to the contrary notwithstanding; and/or

        (iii)    exercise any and all rights and remedies available to Lender under law.

If an Event of Default specified in paragraphs (f), (g) or (h) above shall have occurred with respect to Borrower or any of its Subsidiaries, the Loans, the Note and all other Obligations (other than contingent and other inchoate obligations for which no claim has been made) payable hereunder or thereunder shall thereupon and concurrently become due and payable, without presentment, demand, protest, notice of acceleration, notice of intent to accelerate or other notice of any kind, all of which are hereby expressly waived, anything in this Agreement or the Note to the contrary notwithstanding and the Commitment shall thereupon forthwith terminate.

**ARTICLE VII**
**<u>MISCELLANEOUS</u>**

    7.1   <u>No Waiver</u>.  No failure or delay on the part of Lender in exercising any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy hereunder.

    7.2   <u>Amendments, Etc.</u>  No amendment, waiver, modification, supplementation or termination of any term or provision of this Agreement nor any consent to any departure by Borrower therefrom shall in any event be effective unless the same shall be in writing and signed by Lender and then (if in respect of a waiver or consent) shall be effective only in the specific instance and for the specific purpose for which given.

27436445.1

7.3 <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; <u>provided</u>, <u>however</u>, that Borrower may not assign this Agreement or its rights or obligations hereunder without the prior written consent of Lender.

7.4 <u>Governing Law; Venue</u>. **THIS AGREEMENT SHALL BE A CONTRACT MADE UNDER AND GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW. THE PARTIES HEREBY AGREE TO IRREVOCABLY SUBMIT TO THE PERSONAL AND SUBJECT MATTER JURISDICTION OF THE FEDERAL AND STATE COURTS SITTING IN CHICAGO, COOK COUNTY, ILLINOIS, AND AGREE NOT TO OBJECT TO SUCH VENUE FOR ANY REASON AT LAW OR IN EQUITY.**

7.5 <u>Severability of Provisions</u>. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

7.6 <u>Counterparts; Effectiveness</u>. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all such counterparts shall together constitute one and the same Agreement.

7.7 <u>Complete Agreement</u>. The Loan Documents, and the other documents and agreements expressly referred to herein and therein collectively embody the complete agreement and understanding among the parties hereto and supersede and preempt any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

7.8 <u>Notices</u>. Any notice, waiver, consent or other communication required or permitted hereunder shall be in writing and shall be delivered personally (including delivery by a internationally recognized courier service), by email transmission, or by pre-paid certified or registered mail, return receipt requested, addressed as follows:

> To Borrower:    ML Retail LLC
> 38 E. 29th Street
> New York, NY 10016
> Attention:  Manager
> Email:    marcus@marcuslemonis.com
>
> To Lender:    Marcus Lemonis LLC
> 4192 IL Route 83, Suite C
> Long Grove, Illinois 60047
> Attention:  Jeremy Dombroski
> Email: jeremy.dombroski@marcuslemonis.com

-10-

Notice hereunder shall be deemed to have been received and be effective for all purposes hereunder (a) if given by prepaid certified or registered mail, return receipt requested, on the third Business Day after mailing or (b) if given by any other means, when delivered at the address specified in this Section.  The address and facsimile number of any party hereto may be changed by notice given in accordance with the provisions hereof.

7.9    <u>Survival</u>.  All warranties, representations and covenants made by Borrower herein shall be considered to have been relied upon by Lender and shall survive the making of the Loans and the issuance and delivery to Lender of the Note regardless of any investigation made by Lender and shall continue in full force and effect so long as any Obligation due or to become due is outstanding and unpaid and so long as the Commitment has not been terminated in its entirety.

7.10    <u>Waiver of Jury Trial</u>.  **TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.**

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

27436445.1

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**BORROWER:**

ML RETAIL LLC,
a Delaware limited liability company

By: _____
Name:  Marcus Lemonis
Title:  Chairman and CEO

**LENDER:**

MARCUS LEMONIS LLC,
a Delaware limited liability company

By: _____
Name:  Marcus Lemonis
Title:  Chairman and CEO

**EXHIBIT A**

**<u>FORM OF SECURED PROMISSORY NOTE</u>**

Attached

EXHIBIT C

27436445.1

## SECURED PROMISSORY NOTE

U.S. $30,000,000                                                      Chicago, Illinois
original principal amount                                        as of March 29, 2016

      **FOR VALUE RECEIVED**, the undersigned ("<u>Maker</u>") hereby promises to pay to the order of **ML RETAIL LLC**, a Delaware limited liability company ("<u>Payee</u>"), at the address of Payee set forth in the Credit Agreement (as hereinafter defined), in lawful money of the United States of America in immediately available funds, the principal amount of U.S.$30,000,000 plus the amount of interest which as accrued thereon pursuant to Section 2.4 of the Credit Agreement, or the aggregate principal amount of all Loans (as defined in the Credit Agreement) made by Lender to Maker pursuant to the Credit Agreement, whichever is less, on such date or dates as is provided in the Credit Agreement, and to pay interest on the unpaid principal amount from time to time outstanding hereunder, in like money, at such address and at such times and in such amounts, as set forth in the Credit Agreement.

      Maker and any and all sureties, guarantors and endorsers of this Secured Promissory Note (this "<u>Note</u>") and all other parties now or hereafter liable hereon, severally waive all grace periods (except grace periods expressly provided for in the Credit Agreement), demand, presentment for payment, protest, notice of any kind and diligence in collecting and bringing suit against any party hereto and agree to the extent permitted by applicable law (i) to all extensions and partial payments, with or without notice, before or after maturity, (ii) to any substitution, exchange or release of any security now or hereafter given for this Note, (iii) to the release of any party primarily liable hereon, and (iv) that it will not be necessary for any holder of this Note to first institute or exhaust such holder's remedies against the Maker or any other party liable herefor or against any security for this Note.  The non-exercise by any holder of this Note of any of its rights hereunder in any particular instance shall not constitute a waiver in that or any subsequent instance.

      This Note is secured under and pursuant to the terms of certain Collateral Documents, to which reference is hereby made for a statement of their respective terms and conditions and a description of the collateral security for this Note.

      This Note is the Note referred to in that certain Credit Agreement dated as of the date hereof (the "<u>Credit Agreement</u>") by and between Maker and Payee, to which reference is hereby made for a statement of said terms and provisions.  Capitalized terms used herein shall have the meanings set forth in the Credit Agreement unless otherwise defined herein or unless the context otherwise requires.

### [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

27436445.1

**IN WITNESS WHEREOF**, Maker has executed and delivered this Note as of the day and year first above written.

<div style="margin-left: 40%;">

**<u>MAKER</u>:**

ML RETAIL LLC,
a Delaware limited liability company

By: _____
Name:  Marcus Lemonis
Title:   Chairman and CEO

</div>

Schedule attached to Secured Promissory Note dated as of March 29, 2016
of ML Retail LLC payable to the order of Marcus Lemonis LLC

## LOANS AND PRINCIPAL PAYMENTS

| Date | Amount of Loan Made | Amount of Principal Repaid | Unpaid Principal Balance | Notation made by |
|------|---------------------|----------------------------|--------------------------|------------------|
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |
|      |                     |                            |                          |                  |

The aggregate unpaid principal amount shown on this schedule shall be rebuttable presumptive evidence of the principal amount owing and unpaid on this Note. The failure to record the date and amount of any Loan on this schedule shall not, however, limit or otherwise affect the obligations of Borrower under the Credit Agreement or under this Note to repay the principal amount of the Loans together with all interest accruing thereon.

27436445.1