USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/2/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLAS GOUREAU, and STEPHANIE MENKIN, individually and derivatively on behalf of GOOBERRY CORPORATION, | |
| Plaintiffs, | |
| -against- | 1:20-cv-04691-MKV |
| MARCUS LEMONIS, ML RETAIL, LLC, MARCUS LEMONIS LLC, and MACHETE CORPORATION d/b/a MACHETE PRODUCTIONS, | ORDER GRANTING IN PART MOTION TO DISMISS |
| Defendants, | |
| -and- | |
| GOOBERRY CORPORATION, | |
| Nominal Defendant. | |

MARY KAY VYSKOCIL, United States District Judge:

CNBC's hit TV show "The Profit" is formulaic. Entrepreneur Marcus Lemonis identifies a struggling small business, acquires an equity stake in that business, revamps the way it is run, and everyone leaves richer. Plaintiffs Nicolas Goureau and Stephanie Menkin contend their experience was different. They claim that after their appearance on The Profit, Mr. Lemonis mismanaged their company, Gooberry Corporation, thereby saddling it with debt and destroying their business.

As a result of this alleged scheme, Plaintiffs Goureau and Menkin, individually and on behalf of Gooberry, brought suit against Mr. Lemonis, ML Retail, LLC ("ML Retail"), and Marcus Lemonis, LLC ("ML LLC"), [ECF No. 1], and later amended their Complaint to add The Profit's production company, Machete Productions ("Machete"). [Amended Complaint, ECF No. 24]. Pending before the Court are Mr. Lemonis' and Machete's Motions to Dismiss. [Lemonis Mot. to

Dismiss, ECF No. 44; Machete Mot. to Dismiss, ECF No. 49].  For the reasons discussed below, the Motions are granted in part.

## BACKGROUND

For a number of years, Plaintiffs Goureau and Menkin ran the "upscale women's clothing" brand "Courage.B" through Gooberry Corporation.  Am. Compl. ¶ 4.  By their measure, the brand was successful, and they had several stores around the country.  Am. Compl. ¶ 5.  Nonetheless, Plaintiffs decided "to take their business to the next level" and began searching for a potential investor.  Am. Compl. ¶ 37.  Mr. Goureau learned of CNBC's The Profit when he saw an episode that featured a small Floridian candy shop.  Am. Compl. ¶ 45.  Subsequently, Mr. Goureau reached out to the show and applied.  Am. Compl. ¶ 46.

Machete, the production company behind The Profit, then interviewed Plaintiffs about their business for an appearance on the show.  *See* Am. Compl. ¶ 48.  In early 2014, Plaintiffs interviewed via Skype with a producer who "represented that the stories, investments, and successes portrayed on the show are real" and that Mr. Lemonis, if interested, would make a "real" deal while filming.  Am. Compl. ¶ 51.  Ultimately, Plaintiffs were selected to appear on the show, which began filming in June 2014.  Am. Compl. ¶ 52.

During the show, Mr. Lemonis made a first offer of $800,000 for 50% equity stock in Courage.B.  Am. Compl. ¶ 56.  Rejecting this, the Parties reached a final deal on the show that Mr. Lemonis would purchase 30% of Gooberry for $800,000, which Plaintiffs maintain "was supposed to be broken down as follows:  $300,000 new inventory, $40,000 to eliminate high interest debt, $150,000 in working capital, $200,000 to renovate the stores, $50,000 to create a new e-commerce site and an extra $60,000 whose use was to be determined."  Am. Compl. ¶ 60.

Plaintiffs allege that before the final deal, Mr. Lemonis began to take advantage of them. According to Plaintiffs, Mr. Lemonis had represented that he would cover the expenses to renovate Courage.B stores, and that they would have access to Mr. Lemonis' executive operations team. Am. Compl. ¶¶ 67-68.  Instead, Mr. Lemonis allegedly began significant renovations that cost upwards of $2,000,000, and told Plaintiffs that they would be stuck with the bill if they decided to back out of the show deal.  Am. Compl. ¶ 65.  The team of experts apparently turned out to be Mr. Lemonis' employees from other companies, who charged Plaintiffs consulting fees.  Am. Compl. ¶ 67.  Still, knowing this, Plaintiffs entered a final deal with Mr. Lemonis after the show was filmed.

The deals on the show are not the "final" deals, which the parties negotiate and finalize outside the camera's lens.  *See* Am. Compl. ¶ 69.  After filming, the Parties entered into the final operative Stock Purchase Agreement [ECF No. 24-1], which consummated Mr. Lemonis' investment in Gooberry.  The investment is structured so that ML Retail, which is purportedly a "Lemonis entity," purchased 32 of the 100 shares of Gooberry for $800,000.  Stock Purchase Agreement at § 2.2.  Executed at the same time was a Shareholder Agreement that placed Mr. Lemonis, Mr. Gouerau, Ms. Menkin and Mr. Goureau's mother, Neomi Goureau, on the four-person board of directors.  [ECF No. 24-2].

After the deal was finalized, Plaintiffs allege that their relationship with Mr. Lemonis soured further.  Mr. Lemonis quickly brought Gooberry into his fold, issuing new e-mails that bore the Lemonis name, and selling off old inventory to make space for new items that Mr. Lemonis purchased.  *See* Am. Compl. ¶¶ 76-79.  The new inventory apparently did not work well in stores, and Plaintiffs could not compete with prices for these products that were available in other boutiques and department stores.  Am. Compl. ¶¶ 80-81.

In 2016, two years after the post-show deal was finalized, Mr. Lemonis decided to expand Plaintiffs' brand and invest in new businesses.  Am. Compl. ¶ 89.  Mr. Lemonis formed ML Fashion, LLC that "would be an umbrella entity for the parties' various business ventures."  Am. Compl. ¶ 91.  According to Plaintiffs, Mr. Goureau and Ms. Menkin were given 33.33% membership, while Mr. Lemonis took a "controlling" 33.4% interest, and made himself Chairman and CEO.  Am. Compl. ¶ 92.  To fund the new ventures, Mr. Lemonis executed a Credit Agreement between Gooberry and ML Fashion, which provided up to $10,000,000 in loans from the LLC at an annually rate of 7.5%.  Am. Compl. ¶ 93.  Concurrent with the Credit Agreement, Gooberry and ML Fashion entered into a Security Agreement, which gave ML Fashion "a continuing security interest in essentially all of Gooberry's assets."  Am. Compl. ¶ 95.

ML Fashion was, in turn, funded by a credit agreement that it had with Defendant ML, LLC.  Am. Compl. ¶ 97.  Plaintiffs allege that "whenever ML Fashion lent money to Gooberry, those funds were actually coming from Lemonis through ML, LLC" and that by doing so he could "increase his debt position in both companies at one time."  Am. Compl. ¶ 97.

During this venture, the relationship between Plaintiffs and Mr. Lemonis continued to deteriorate.  As a result, Plaintiffs filed their Amended Complaint which states thirteen causes of action against Mr. Lemonis, ML Retail, ML, LLC and Machete.  Defendants Mr. Lemonis (and his various LLC companies) and Machete then moved separately to dismiss the Amended Complaint for, among other reasons, failure to state a claim with particularity under Federal Rule of Civil Procedure 9 and improper venue.  As the Court explains below, it considers now only the claims that give rise to the Court's federal jurisdiction over this case:  the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the related fraud-based claims.

## ANALYSIS

I.   **LEGAL STANDARD**

A.   **MOTION TO DISMISS AND RULE 9(B) PARTICULARITY**

When considering these Motions, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021).  However, the court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the  . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  A complaint alleging fraud must contain a greater level of factual specificity under Federal Rule of Civil Procedure 9(b).  Under that rule, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Thus, to survive a motion to dismiss under the heightened requirements of Rule 9(b), "the complaint must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted).  This boils down to a requirement to plead the "who, what, when, where and how of the alleged

5

fraud." *See U.S. ex rel. Kester v. Novartis Pharm. Corp.,* 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

## II.   DISCUSSION

Plaintiffs assert three fraud-based claims against Defendants:  1) a fraudulent inducement claim against Mr. Lemonis, ML Retail, ML, LLC, and Machete; 2) a fraud claim against Mr. Lemonis, ML Retail, and ML, LLC and; 3) a mail and wire fraud RICO claim against Mr. Lemonis, ML Retail, ML, LLC, and Machete.  *See* Am. Compl. at 33, 35, 44.  Fraudulent conduct that gives rise to predicate acts in the RICO context must be plead with the particularity required by Rule 9(b).  *D. Penguin Bros. v. City Nat'l Bank*, 587 Fed. Appx. 663, 664 (2d Cir. 2014).  The Court first addresses the fraudulent inducement and fraud claims before turning to the RICO claim.

### A.  PLAINTIFFS DO NOT PLEAD THEIR FRAUDULENT INDUCEMENT CLAIM WITH THE REQUISITE SPECIFICITY

Under New York law, claims for fraudulent inducement require a plaintiff to prove five elements:  (1) a material misrepresentation or omission of fact, (2) made by the defendant with knowledge of its falsity (3) and an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.  *Hindsight Sols., LLC v. Citigroup Inc.*, 53 F. Supp. 3d 727, 772 (S.D.N.Y. 2014).  "[F]raudulent inducement involves a misrepresentation of present fact, not of future intent, collateral to a contract and used to induce the defrauded party to sign the contract." *Bruce v. Martin*, No. 87 Civ. 7737 (RWS), 1993 WL 148904, at *5 (S.D.N.Y. Apr. 30, 1993) (internal quotation marks and citations omitted); *Druck Corp. v. Macro Fund Ltd.*, 290 Fed. Appx. 441, 444 (2d Cir. 2008).  Furthermore, "the Complaint must state with particularity the circumstances of the fraud under Rule 9(b) and contain sufficient facts, accepted as true, to state claims for relief for common-law fraud that are facially plausible under Rule

8(a)(2)." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016) (internal quotation

marks and citations omitted).  Under the enhanced pleading standards of Rule 9(b), plaintiffs

"must not only allege that the content is false, but 'they must demonstrate with specificity why

and how that is so.'" *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, 449 F. Supp. 3d

385, 395 (S.D.N.Y. 2020) (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)).

Plaintiffs summarize the allegedly false representations as follows:

> (1) representing that the Lemonis Entities help the businesses featured on
> "The Profit," (2) representing that deals with the Lemonis Entities portrayed on
> "The Profit" were real, (3) representing that the results the small business featured
> on "The Profit" achieved with the Lemonis Entities' help were real, (4) representing
> to Plaintiffs that Defendants wanted to help Plaintiffs expand their business through
> Gooberry and not saddle it with debt in order to take its assets; (5) representing that
> Plaintiffs and Lemonis would be treated as partners and equals in running
> Gooberry; (6) representing that Defendants would run Gooberry in a way that
> would benefit Plaintiffs and the Company; (7) representing that Defendants cared
> for Plaintiffs' family and their business and that Lemonis would take care of
> Plaintiffs' mother Noemi, (8) that renovating Plaintiffs' stores would cost $200,000
> and would be part of Defendants' overall $800,000 investment, and (9) representing
> that Gooberry would invest in other business and to help grow and develop the
> businesses in their profile.  Am. Compl. ¶ 137.

These alleged misrepresentations are not sufficiently particularized to support Plaintiffs'

fraudulent inducement claim.  With respect to numbers 1 through 3 of the above allegations,

Plaintiffs do not specify how the statements are false.  Certainly, The Profit resulted in a "real"

deal for Plaintiffs; real enough that they now litigate under the agreements ultimately entered.[1]

Similarly, Plaintiffs do not show how the statements that Lemonis "help[s]" businesses and has

real results are false, and, in any event, such statements constitute in-actionable puffery.  *Cohen v.*

*Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994); *Hubbard v. General Motors Corp.*, No. 95 Civ. 4362,

1996 U.S. Dist. LEXIS 6974, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) (puffery is a

---

[1] The Gooberry Participant Release [ECF No. 51-3] states that the on-air negotiations and deal are "simulated," belying any belief that Plaintiffs could have thought that the on-air deal was the final, "real" deal.  *See Kosaraju v. Gordon*, No. 17-CV-00383, 2018 WL 1382405, at *4 (S.D.N.Y. Mar. 15, 2018).

"generalized or exaggerated statement[] . . . that a reasonable consumer would not interpret . . . as a factual claim upon which he or she could rely.") With respect to allegations number 4 through 7 and 9 of the above, prospective statements about what the Defendants intended would be the outcome of their relationship constitute forward looking, nonactionable statements. New York law requires a misrepresentation of present fact that induced the plaintiff to enter the contract. *Druck Corp.*, 290 Fed. Appx. at 444; *Bruce*, 1993 WL 148904, at *5.

And finally, with respect to number 8, Plaintiffs do not explain how the alleged misrepresentation of the investment cost was material or how reliance on it was reasonable. For purposes of a fraudulent inducement claim, an alleged misrepresentation is "material" if "it influenced the party's decision to enter into the contract." *Sheffield Commercial Corp. v. Clemente*, 792 F.2d 282, 285 (2d Cir. 1986). Plaintiffs claim that while the on-air agreement stipulated to $200,000 to renovate stores, "Lemonis spent millions renovating" "while the show was filming and before the deal was finalized." Am. Compl. ¶¶ 6-7. Plaintiffs knew about this apparent over-expenditure because they discussed it with Lemonis before the show deal was memorialized. Am. Compl. ¶¶ 8-9. The alleged promise to spend $200,000 on renovations could not then have influenced their decision to enter the contract because, by their own allegations, it is clear that Plaintiffs knew before a deal was finalized that it had cost more to renovate the stores. This order of operations also negates any purported reliance on the $200,000 statement. Where a party has reason to know that a statement is false, there can be no reasonable reliance as a matter of law. *Banque Franco-Hellenique De Commerce Int'l et Maritime, S.A. v. Christophides*, 106 F.3d 22, 27 (2d Cir. 1997).

Combing through the rest of the lengthy Amended Complaint, the Court cannot find any other facts that would support Plaintiffs' claim that they were fraudulently induced into entering

any agreement with the Defendants.  Plaintiffs claim that Machete made false statements "about Lemonis' ability to help small businesses, the deals Lemonis makes on the show, and how Lemonis has helped business[es] that appeared on" The Profit.  Am. Compl. ¶¶ 48, 50.  During the initial interview to appear on The Profit, a producer apparently stated that "the stories, investments, and successes portrayed on the show are real," and that "if Lemonis was interested in investing [he] would make a deal while the show was being filmed and that the deal would be real."  Am. Compl. ¶ 51.  However, for the same reasons as just discussed, these statements are not shown to be false, and otherwise constitute in-actionable puffery.

## B.  PLAINTIFFS DO NOT PLEAD THEIR FRAUD CLAIM WITH REQUISITE SPECIFICITY

Similarly, Plaintiffs do not plead with enough specificity facts that would support their fraud claim against Defendants Mr. Lemonis, ML Retail, and ML, LLC.  "The elements of common law fraud under New York law are:  (1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff."  *Bui v. Industrial Enter, of Am., Inc.*, 594 F. Supp. 2d 364, 371 (S.D.N.Y. 2009) (internal quotation marks and citation omitted); *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009).

Plaintiffs identify the below statements as among those that constitute actionable fraud:

(1) representing that Gooberry was investing in stores, brands, and retail businesses in order to further grow those businesses and Gooberry; (2) representing that purchases made for Gooberry were done to benefit the brand and not increase Lemonis' debt position in Gooberry; (3) representing that Plaintiffs would have access to Lemonis' team of experts in the retail industry, not Lemonis' employees at Camping World; (4) representing that this team of experts were part of the Lemonis expertise package, not that Plaintiffs would have to pay for their fees and services; and (5) representing that Lemonis would be investing in Plaintiffs' business in order to help grow their business not to saddle it with debt in order to remove its assets.  Am. Compl. ¶ 146.

With respect to the first and second statements above, Plaintiffs again identify statements of puffery that are in-actionable statements of fraud under Rule 9(b).  *See Cohen*, 25 F.3d at 1172; *see also Int'l Oil Field Supply Servs. Corp. v. Fadeyi*, 825 N.Y.S.2d 730, 734 (App. Div. 2006) ("Vague expressions of hope and future expectation provide an insufficient basis upon which to predicate a claim of fraud.")  And as to the first, second, third and fifth statements, Plaintiffs do not explain how they are false.  Plaintiffs further cannot make out any reasonable reliance as to the fourth allegation—that they would not have to pay fees for Lemonis' experts.  In their Amended Complaint, Plaintiffs allege that they asked about the apparently high fees associated with Lemonis' experts before the deal was consummated.  Am. Compl. ¶ 65.  Thus, even if the Court assumes the statement was a material representation made with intent to defraud that caused damage, it is still not actionable because it is not one on which Plaintiffs could have reasonably relied on, since Plaintiffs allege they knew they were being charged for the consultations.  *Banque Franco-Hellenique*, 106 F.3d at 27; *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 405 (S.D.N.Y. 2004) ("[W]here a plaintiff actually knew at the time a representation was made that it was false, she cannot claim to have relied on the truth of that representation, and any injury she suffers is therefore not attributable to the defendant.")  The Court identifies no other statements that could support Plaintiffs' claim of fraud.

## C.  PLAINTIFFS' RICO CLAIMS ALSO FAIL AS A MATTER OF LAW

"[C]ourts have an obligation to scrutinize civil RICO claims early in the litigation—to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud."  *Rosenson v. Mordowitz*, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012).  To make out a valid RICO case, a plaintiff must plead "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity."  *Anatian v. Coutts Bank Ltd.*, 193

F.3d 85, 88 (2d Cir. 1999) (internal quotation marks omitted). The pattern element of a RICO

claim requires that the plaintiff "plead at least two predicate acts, show that the predicate acts are

related, and that they amount to, or pose a threat of, continuing criminal activity." *Schlaifer*

*Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997). For the reasons discussed

above, the alleged fraud claims cannot constitute predicate acts as they are inadequately plead.

*See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999). Plaintiffs' remaining

allegations—that Defendants engaged in a pattern of wire and mail fraud—are similarly

unavailing. *See* Am. Compl. ¶¶ 203-8.

Plaintiffs maintain that all Defendants "used mails, wires, and television in furtherance of

their fraudulent scheme." Pls.' Opp. at 23. "The mail and wire fraud statutes require a plaintiff

to show that the defendant participated in a scheme to defraud victims of money or property,

through the use of the mails or an interstate wire." *Condos Bros. Constr. Corp. v. Main St. Am.*

*Assur. Co.*, 280 F. Supp. 3d 349, 355 (E.D.N.Y. 2017). With respect to Machete, Plaintiffs claim

that the representations made to them during their screening interview for participation on The

Profit were fraudulent. *See* Pls.' Opp. at 24. But that claim is nothing more than Plaintiffs'

inadequately pleaded fraud claims wrapped up in wire fraud packaging. *See Mills v. Polar*

*Molecular Corp.*, 12 F.3d 1170, 1176-77 (2d Cir. 1993) ("[A]llegations of predicate mail and

wire fraud acts should state the contents of the communications, who was involved, where and

when they took place, and explain why they are fraudulent."). Similarly, the allegations that any

of the other Defendants "consistently maintained a website and ran advertising which contained

false misrepresentations [that Lemonis] helped small businesses" rehashes what this Court has

already found insufficient to state a claim with respect to fraudulent inducement. Plaintiffs'

complaint that Defendants used "the Internet to transmit documents [] to give [Lemonis] equity

11

positions in" Plaintiffs' business is in-actionable given that Plaintiffs fail to establish that the entered-deal was in some way fraudulent, as discussed above.  Even in the RICO context, Plaintiffs must meet Rule 9(b)'s heightened pleading standard for fraud-based predicate acts. *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999); *D. Penguin Bros.*, 587 Fed. Appx. at 664.  Where, as here, a plaintiff does not adequately plead the elements of any actionable predicate conduct, the Court cannot entertain a civil RICO claim simply because a defendant used the internet, TV, or mail.  *See Condos Bros.*, 280 F. Supp. at 355-56; *see also Mills*, 12 F.3d at 1176-77.

## III.   SUPPLEMENTAL JURISDICTION

Plaintiffs' federal jurisdiction is predicated on the RICO claim.  Am. Compl. ¶ 27. Plaintiffs then append the state-level claims to this action, seeking to avail themselves of the Court's discretionary supplemental jurisdiction.  Am. Compl. ¶ 27; *see also* 28 U.S.C. § 1367. Because the Court finds that Plaintiffs do not make out a valid claim under 18 U.S.C. § 1961 for a RICO violation, it declines at this juncture to exercise jurisdiction over the remaining state level claims alleged in the Amended Complaint.

## IV.   LEAVE TO AMEND

In their briefing, Plaintiffs seek leave to amend if the Court determines that their case should be dismissed.  [Pls.' Opp. to Lemonis at 25, ECF No.52; Pls.' Opp. to Machete at 19, ECF No. 53].  The Court also notes that Plaintiffs have separately asked for leave to further amend their First Amended Complaint.  [ECF No. 68].  On or before October 5, 2021, Plaintiffs should inform the Court whether they intend to rely on that Motion and the proposed Second Amended Complaint therein, or whether they intend to request leave to file a revised proposed amended

complaint that addresses the deficiencies identified in this opinion.  Defendants are instructed to respond to Plaintiffs' statement on or before October 18, 2021.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Motions to Dismiss with respect to the fraud-based and RICO claims alleged in the Amended Complaint.  The Clerk of the Court respectfully is requested to terminate the Motions at ECF Nos. 44 and 49.  The Clerk of the Court also respectfully is requested to terminate the Letter Motion [ECF No. 43] for a Pre-Motion Conference to Transfer Venue by Mr. Lemonis.  If the Court grants leave to file the Second Amended Complaint, which will be addressed after the Defendants have had a chance to respond to the request, Mr. Lemonis may renew his request to transfer venue in any future motion to dismiss.

**SO ORDERED.**

**Date:  September 2, 2021**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**