**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NICOLAS GOUREAU, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 1:20-cv-04691-MKV |
| | : | |
| MARCUS LEMONIS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THE COURT'S**
**SEPTEMBER 2, 2021 DECISION ON MOTIONS TO DISMISS**

## TABLE OF CONTENTS

SUMMARY OF THE RELEVANT ALLEGATIONS ..................................................................3

THE COURT SHOULD RECONSIDER ITS DISMISSAL OF PLAINTIFFS' FRAUD AND RICO CLAIMS, AS WELL AS ITS DECISION TO DECLINE JURISDICTION OVER THE REMAINING CLAIMS ...................................................................................................................5

    A.    Applicable Standard ...................................................................................................5

    B.    The Court Has Diversity Jurisdiction Over the Remaining Claims ........................6

    C.    Plaintiffs' Fraud Claims Should Proceed ................................................................7

    D.    Plaintiffs' RICO Claims Should Proceed ..............................................................22

## TABLE OF AUTHORITIES

**Cases**

*Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*,
   5 F Supp 3d 543 (S.D.N.Y. 2014) ................................................................................ 19

*Allen v. WestPoint-Pepperell, Inc.*,
   945 F.2d 40 (2d Cir. 1991) .......................................................................................... 14

*Am. Fin. Servs. Grp. v. Treasure Bay Gaming & Resorts, Inc.*,
   2000 WL 815894 (S.D.N.Y. June 23, 2000) ................................................................ 13

*Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*,
   2019 WL 6498094 (S.D.N.Y. Dec. 3, 2019) ................................................................ 19

*Avola v. Louisiana-Pac. Corp.*,
   991 F. Supp. 2d 381 (E.D.N.Y. 2013) .......................................................................... 12

*Banque Franco-Hellenique de Com. Int'l et Mar., S.A. v. Christophides*,
   106 F.3d 22 (2d Cir. 1997) .......................................................................................... 22

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ..................................................................................................... 10

*Bayerische Landesbank, New York Branch v. Barclays Capital, Inc.*,
   902 F.Supp.2d 471 (S.D.N.Y. 2012) ........................................................................... 16

*Brady v. Calyon Sec. (USA)*,
   2007 WL 4440926 (S.D.N.Y. Dec. 17, 2007) ................................................................ 7

*Bruce v. Martin*,
   1993 WL 148904 (S.D.N.Y. Apr. 30, 1993) ................................................................ 13

*Cohen v. Koenig*,
   25 F.3d 1168 (2d Cir. 1994) ................................................................................... 10, 13

*Colangelo v. Champion Petfoods USA, Inc.*,
   2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ................................................................ 10

*Cosmas v. Hassett*,
   886 F.2d 8 (2d Cir. 1989) ................................................................................... 3, 21, 22

*Devaney v. Chester*,
   813 F.2d 566 (2d Cir. 1987) .......................................................................................... 8

*DIMON Inc. v. Folium, Inc.*,
   48 F. Supp. 2d 359 (S.D.N.Y. 1999) ............................................................................ 19

*Donoghue v. Casual Male Retail Grp., Inc.*,
   427 F. Supp. 2d 350 (S.D.N.Y. 2006) ............................................................................ 6

*Druck Corp. v. Macro Fund Ltd.*,
   290 F. App'x 441 (2d Cir. 2008) .................................................................................. 13

*EBC I, Inc. v. Goldman, Sachs & Co.*,
    5 N.Y.3d 11 (N.Y. 2005) ...................................................................................................14

*Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*,
    2021 WL 2075586 (S.D.N.Y. May 24, 2021) .....................................................................1

*Fishon v. Peloton Interactive, Inc.*,
    2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020).......................................................................9

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985) ..............................................................................................8

*Goureau v. Lemonis*,
    2021 WL 3931897 (S.D.N.Y. Sept. 2, 2021) .............................................................passim

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
    748 F.2d 729 (2d Cir. 1984) ..............................................................................................19

*Guzzone v. Zazza*,
    2021 WL 2661142 (E.D.N.Y. June 29, 2021) ....................................................................20

*Hubbard v. Gen. Motors Corp.*,
    1996 WL 274018 (S.D.N.Y. May 22, 1996) ......................................................................12

*In re APA Assessment Fee Litig.*,
    766 F.3d 39 (D.C. Cir. 2014)..............................................................................................16

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010) .................................................................................9

*In re Ford Fusion & C-MAX Fuel Econ. Litig.*,
    2017 WL 3142078 (S.D.N.Y. July 24, 2017)......................................................................9

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017) .................................................................................9

*In re Harbinger Cap. Partners Funds Inv. Litig.*,
    2013 WL 7121186 (S.D.N.Y. Dec. 16, 2013) .....................................................................6

*In re Madison Asset LLC*,
    2021 WL 1894032 (S.D.N.Y. May 11, 2021) .....................................................................1

*In re Petrobras Sec. Litig.*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015) ...............................................................................12

*In re Platinum-Beechwood Litig.*,
    427 F. Supp. 3d 395 (S.D.N.Y. 2019) ...............................................................................17

*In re Ridley*,
    453 B.R. 58 (Bankr. E.D.N.Y. 2011) ..................................................................................8

*In re Scotts EZ Seed Litig.*,
    2013 WL 2303727 (S.D.N.Y. May 22, 2013) .....................................................................9

*In re Synchrony Fin. Sec. Litig.*,
    988 F.3d 157 (2d Cir. 2021) ..................................................................................10

*Indus. Tech. Ventures, L.P. v. Pleasant T. Rowland Revocable Tr.*,
    280 F.R.D. 86 (W.D.N.Y. 2012) ............................................................................8

*Jacob v. Duane Reade, Inc.*,
    293 F.R.D. 578 (S.D.N.Y. 2013) ...........................................................................6

*Jefferson v. California Dep't of Youth Auth.*,
    28 Cal.4th 299 (Cal. 2002) ..................................................................................19

*JP Morgan Chase Bank v. Winnick*,
    350 F. Supp. 2d 393 (S.D.N.Y. 2004) ...................................................................22

*Label Health, LLC v. United Am. Supply, LLC*,
    2021 WL 638624 (S.D.N.Y. Feb. 17, 2021) ...........................................................9

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
    108 F.3d 1531 (2d Cir. 1997) ...............................................................................19

*Lipton v. Nature Co.*,
    71 F.3d 464 (2d Cir. 1995) ....................................................................................9

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015) .................................................................................11

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
    83 F. Supp. 3d 501 (S.D.N.Y. 2015) ....................................................................10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Citigroup Glob. Markets Inc.*,
    119 A.D.3d 136 (1st Dep't 2014) .........................................................................18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) .................................................................................16

*Mandelblatt v. Devon Stores, Inc.*,
    521 N.Y.S.2d 672 (1st Dep't 1987) ......................................................................14

*Manderville v. PCG&S Grp., Inc.*,
    146 Cal.App.4th 1486 (Cal. App. 4 Dist. 2007) ..................................................19

*Manufacturers Hanover Tr. Co. v. Yanakas*,
    7 F.3d 310 (2d Cir. 1993) ....................................................................................18

*McClain v. Octagon Plaza, LLC*,
    159 Cal.App.4th 784 (Cal. App. 2 Dist. 2008) ...................................................19

*Melcher v. Fried*,
    2018 WL 6326334 (S.D. Cal. Dec. 4, 2018) .......................................................19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chipetine*,
    634 N.Y.S.2d 469 (N.Y. 1995) .............................................................................14

*Midwest Commerce Banking Co. v. Elkhart City Ctr.*,
   4 F.3d 521 (7th Cir. 1993) ...........................................................................................16

*Mintz v. Am. Tax Relief, LLC*,
   16 Misc. 3d 517 (N.Y. Sup. Ct. 2007)...........................................................................10

*New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC*,
   2021 WL 930616 (S.D.N.Y. Mar. 11, 2021)....................................................................1

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ...............................................................................2, 9, 11

*Obstfeld v. Schwartz*,
   621 F. Supp. 2d 87 (S.D.N.Y. 2008) ...............................................................................7

*Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
   2020 WL 3268531 (S.D.N.Y. June 17, 2020) ..................................................................8

*Olagues v. Perceptive Advisers LLC*,
   2017 WL 3605511 (S.D.N.Y. July 26, 2017)...................................................................6

*Olagues v. Perceptive Advisors LLC*,
   902 F.3d 121 (2d Cir. 2018) ............................................................................................6

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ..........................................................................................10

*P.T. Bank Cent. Asia v ABN AMRO Bank N.V.*,
   754 N.Y.S.2d 245 (1st Dep't 2003)................................................................................17

*PetEdge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017) ............................................................................17

*Powers v. Brit. Vita, P.L.C.*,
   57 F.3d 176 (2d Cir. 1995) ............................................................................................14

*Raymond Loubier Irrevocable Tr. v. Loubier*,
   858 F.3d 719 (2d Cir. 2017) ............................................................................................7

*RKB Enterprises Inc. v. Ernst & Young*,
   182 A.D.2d 971 (3d Dep't 1992)....................................................................................14

*Robinson v. Deutsche Bank Tr. Co. Americas*,
   572 F.Supp.2d 319 (S.D.N.Y. 2008) .............................................................................16

*Schlaifer Nance & Co. v. Estate of Warhol*,
   119 F.3d 91 (2d Cir. 1997) ............................................................................................16

*Sheffield Com. Corp. v. Clemente*,
   792 F.2d 282 (2d Cir. 1986) ..........................................................................................22

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*,
   832 F. Supp. 2d 194 (E.D.N.Y. 2010) ...........................................................................10

*Sheridan Drive-In, Inc. v. State,*
  228 N.Y.S.2d 576 (4th Dep't 1962) ........................................................................13

*Shrader v. CSX Transp., Inc.,*
  70 F.3d 255 (2d Cir. 1995) ........................................................................................6

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.,*
  346 F. Supp. 3d 473 (S.D.N.Y. 2018) ...............................................................11, 16

*Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.,*
  2018 WL 1027754 (S.D.N.Y. Feb. 20, 2018) ..........................................................14

*Szymczak v. Nissan N. Am., Inc.,*
  2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ..........................................................14

*Tahini Investments, Ltd. v Bobrowsky,*
  99 A.D.2d 489 (2d Dep't 1984)................................................................................19

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
  497 F.3d 144 (2d Cir. 2007) ......................................................................................9

*Tribune Co. v. Abiola,*
  66 F.3d 12 (2d Cir. 1995) ........................................................................................20

*Tribune Co. v. Purcigliotti,*
  869 F. Supp. 1076 (S.D.N.Y. 1994) ........................................................................20

*TSC Indus., Inc. v. Northway, Inc.,*
  426 U.S. 438 (1976) .................................................................................................12

*U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co.,*
  2020 WL 2489078 (S.D.N.Y. May 14, 2020) .........................................................11

*United States v. Clemente,*
  640 F.2d 1069 (2d Cir. 1981) ..................................................................................22

*United States v. Kaplan,*
  758 F. App'x 34 (2d Cir. 2018) ...............................................................................10

*United States v. Rastelli,*
  551 F.2d 902 (2d Cir. 1977) ....................................................................................22

*Vaughn v. Consumer Home Mortg. Co.,*
  470 F.Supp.2d 248 (E.D.N.Y. 2007) .........................................................................6

*White v. Davidson,*
  150 A.D.3d 610 (1st Dep't 2017) ..............................................................10, 11, 13

*Wight v. BankAmerica Corp.,*
  219 F.3d 79 (2d Cir. 2000) ......................................................................................13

*Williams v. Sidley Austin Brown & Wood, L.L.P.,*
  832 N.Y.S.2d 9 (1st Dep't 2007) .............................................................................13

*Zerman v. Ball,*
    735 F.2d 15 (2d Cir. 1984) ........................................................................................................11

**Rules**

Fed. R. Civ. P 9 ...........................................................................................................passim

Fed. R. Civ. P. 12 .........................................................................................................8, 11

**Statutes**

18 U.S.C. § 1951 ..............................................................................................................22

28 U.S.C. § 1332 ................................................................................................................7

Cal. Civ. Code § 1668 ......................................................................................................19

**Other Authorities**

Wright & Miller, *Pleading Fraud with Particularity—Extent of Requirement*, 5A Fed. Prac. & Proc.
    Civ. § 1298 (West 2021).................................................................................................8

A lot has changed since Plaintiffs opposed Defendants' motions to dismiss nine months ago.[1] At least fifty other businesses have come forward claiming they fell victims to the expansive racketeering ring that is behind *The Profit*. All of these small businesses, most of which are family-run, have been ruined by their experience on the show through an orchestrated, repeated and consistent pattern of misconduct undertaken by Defendants here for more than a decade now, including lies, self-dealing, cover-up and intimidation.  And, as it turns out, it is not only Defendants that form this vast conspiracy but also one of the largest most-trusted public broadcasting companies in the country—none other than NBCUniversal Media, LLC ("NBC"), which lured the contestants in with its name-recognition and trusted reputation of a serious business network—only to ruin them in the end by purposefully feeding them into the well-oiled self-dealing and cheating machine that is "CNBC's Marcus Lemonis" and his cronies.[2]

The facts that have been uncovered in the space of the past nine months are numerous and compelling.  They are the subject of the already-pending motion for leave to file Plaintiffs' proposed Second Amended Complaint (*see* Dkt. No. 69.)  Plaintiffs submit that this newly discovered evidence also provides sufficient grounds to reconsider the Court's findings that their fraud claims are lacking in particularity,[3] since it is now clear that Defendants represented to Plaintiffs that Lemonis helps small businesses and acts in their best interests while knowing that Lemonis actually destroys these

---

[1]    All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted.

[2]    NBCUniversal News Group, a division of NBCUniversal, owns and runs CNBC, a television business news channel that created and aired *The Profit*.

[3]    *See* Dkt. No. 77, also found at *Goureau v. Lemonis*, 2021 WL 3931897 (S.D.N.Y. Sept. 2, 2021) (the "Order"). Plaintiffs note that the Order appears to have been issued in contravention to this Court's "***preferred*** course" of usual practice, given Plaintiffs' pending motion for leave to further amend the complaint (Dkt. No. 69).  *See In re Madison Asset LLC*, 2021 WL 1894032, at *1 (S.D.N.Y. May 11, 2021) ("Where the proposed amendment requires leave of court, the ***preferred*** course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave.") (Vyskocil, J.); *see also Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, 2021 WL 2075586, at *2 (S.D.N.Y. May 24, 2021) (Vyskocil, J.) (same); *New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC*, 2021 WL 930616, at *2 (S.D.N.Y. Mar. 11, 2021) (Vyskocil, J.) (same).  Notably, the Court denied defendant's motion to dismiss as moot in favor of granting leave to amend in *New Oriental* despite plaintiff's having previously filed its opposition to the pending motion to dismiss.  *See id*. at *1.

businesses by various forms of self-dealing.  Defendants also papered their tracks by contractual releases while knowing that they conceal the whole truth—namely, that the simulated deals on the show are almost never real and that the actual deals have been consistently much worse to the point of killing these businesses.  Moreover, this was a relationship of trust and reliance where contestants retained Lemonis for his advice in exchange for appearing on the show and reposed their trust in him as a result; as such, the damages that flow are recoverable under New York law.  Additionally, the new evidence further supports Plaintiffs' RICO claims, since the criminal enterprise is now well-defined and concrete, given the repeated scheme of luring the victims in and taking them apart, where each Defendant, along with NBC, played a long-defined role.

Aside from this new evidence, however, there are certain matters of controlling law that the Court seemingly overlooked, as set forth below.  As an initial matter, the Court appears to have overlooked the alternative pleaded basis for subject matter jurisdiction, as Plaintiffs plead diversity jurisdiction, obviating any need to reach the issue of supplemental jurisdiction over Plaintiffs' state law claims.  Additionally, as for Plaintiffs' fraud-based claims, as well as the RICO claims predicated thereon, the misrepresentations at the heart of the complaint are matters of ***verifiable*** present fact thus precluding any notion that these are some nebulous rosy characterizations that usually qualify as puffery.  *See Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (where defendants represented that the inventory situation was "in good shape" or "under control" while they allegedly knew that the contrary was true, the statements could not qualify as puffery, especially given that plaintiffs' allegations must be taken as true at the pleading stage).  Indeed, the alleged statements are nothing akin to "like a rock," "popular" and "the most dependable, long-lasting trucks on the planet" claims found in the cases that the Court cited in support of its "puffery" findings.  Thus, for example, whether Defendants "turned around over 100 [failing] companies" is not a matter of opinion—they either did or did not.  As such, this and the other alleged misrepresentations discussed below provide sufficient

basis for Plaintiffs' fraud-based claims to proceed (along with the RICO claims that are predicated on Plaintiffs' fraud allegations).  This is especially so considering that Rule 9(b)'s heightened pleading requirements do not override the Second Circuit's "mandate that on motions to dismiss, ***complaints should be read generously, and all inferences should be drawn in favor of the pleader***."  *Cosmas v. Hassett*, 886 F.2d 8, 12 (2d Cir. 1989) (reversing dismissal for insufficient particularity under Rule 9(b) because "[t]he district court's analysis failed to follow" said mandate).

## SUMMARY OF THE RELEVANT ALLEGATIONS

Plaintiffs assume the Court's familiarity with the facts at issue and will not belabor them herein.  Plaintiffs also respectfully refer the Court to their pending motion for leave to file their SAC (*see* Dkt. No. 69), which sets forth the new evidence that, in part, serves as the basis for reconsideration sought herein.

As relevant to the motion at bar, Plaintiffs' First Amended Complaint ("FAC") alleged the following affirmative misrepresentations of material fact and/or omissions of material facts in support of their fraud-based claims:

(1) Defendants represented that Lemonis "save[s] the struggling businesses [that appear on the *Profit*] and use[s] his expertise and resources to make them profitable."  (FAC at ¶ 39.)

(2) Defendants represented that Lemonis "fix[es] failing businesses … [by] spending [his] own money.  (*Id.* at ¶ 40.)

(3) Defendants represented that Lemonis would "fix YOUR failing business."  (*Id.* at ¶ 41.)

(4) Defendants represented that in the past 10 years, Lemonis "successfully turned around over 100 companies."  (*Id.* at ¶ 41.)

(5) Defendants represented that the investments portrayed on the show are "real" in the sense that they accurately portray the actual deals reached between Lemonis and the participants.  (*Id.* at ¶ 51.)

(6) Defendants represented that the stories and successes portrayed on the show were "real" in the sense that they were truthfully portrayed.  (*Id.* at ¶ 51.)

> ➤ ***Why misrepresentations (1)-(6) were all untrue***:  Defendants knew Lemonis actually destroys businesses instead of saving them by, *inter alia*, secretly overspending on various items while portraying the spending as part of his investment—only to present the businesses with exorbitant bills that automatically gave him debt leverage to strong-arm worse deals than those portrayed on the show or take the business altogether.  (*Id.* at ¶¶ 66-67, 138 & 147.)  Defendants also knew that it was part of Lemonis' pattern and practice to regularly destroy the participants profit margins by, *inter alia*, forcing them to sell substandard product and/or take on other fledging companies, adding more debt to Plaintiffs' company while making more participants on the *Profit* beholden to him.  (*Id.* at ¶¶ 82-88, 98 & 102-06.)  Defendants also knew that it was part of Lemonis' pattern and practice to grow his own brands at the participants' expense.  (*Id.* at ¶ 110-12.)[4]

(7) When making the offer for a stake in the company, Defendants failed to disclose Lemonis' intent to overload the company with self-dealing debt allowing him to foreclose on a whim.  (*Id.* at ¶¶ 56 & 75.)  In actuality, his purported $800,000 "investment" was to become the company's debt owed to Lemonis.  (*See id.* at ¶ 75.)  Notably, Lemonis is further alleged to have acted under a fiduciary duty once he became a director of Gooberry, which should have foreclosed any intended self-dealing.  (*Id.* at ¶ 155.)[5]

---

[4]    While Plaintiffs found this out based on their own experience and the experience of the companies that came after them, they now also know that participants that had come before them had the same experience, and Defendants knew it while making their representations to Plaintiffs.  (*See generally* Dkt. No. 70-4 (Plaintiffs' proposed Second Amended Complaint ("SAC").)

[5]    The SAC sets forth further allegations that Lemonis began acting in a fiduciary capacity much earlier in the process.  (*See, e.g.,* Dkt. No. 70-4 at ¶ 472.)

(8) Defendants represented that out of the $800,000 purported "purchase" price for the 30% of the company, only $200,000 was allocated to cover the renovations of Plaintiffs' store, while the actual expenses spent on those renovations were purposefully concealed from them during the filming of the show and before Plaintiffs agreed to the deal. (*Id.* at ¶¶ 58-60 & 68.)

> ➢ ***What was concealed and why***: Lemonis' actual plan was to force the company to spend upwards of $2M on the renovations. (*Id.* at ¶ 61.) Plaintiffs were purposefully kept in the dark as to the true extent of these expenditures. (*Id.*; *see also id.* at ¶¶ 68 & 140.) In addition to enriching Lemonis, this was done to keep Plaintiffs in line and threaten them with foreclosure in case they ever considered backing out of the deal. (*Id.* at ¶ 65.)

(9) Defendants represented that they intended to bring in "expert retail and business executives" as part of Lemonis' purported expertise package to grow Plaintiffs' brand in furtherance of growing Plaintiffs' business. (*Id.* at ¶¶ 62 & 67.)

> ➢ ***What was concealed and why***: Lemonis' actual plan was to bring in Camping World's employees (one of Lemonis' companies) at an exorbitant cost to Plaintiffs' company. (*Id.* at ¶¶ 64 & 67.) In addition to enriching Lemonis, this was done to keep Plaintiffs in line and threaten them with foreclosure in case they ever considered backing out of the deal. (*Id.* at ¶ 65.)

## THE COURT SHOULD RECONSIDER ITS DISMISSAL OF PLAINTIFFS' FRAUD AND RICO CLAIMS, AS WELL AS ITS DECISION TO DECLINE JURISDICTION OVER THE REMAINING CLAIMS

**A.** **Applicable Standard**

A motion for reconsideration is due to be granted where the moving party can demonstrate, *inter alia*, (1) "the availability of new evidence," (2) "the need to correct clear error," or (3) "the need to … prevent manifest injustice." *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580-81 (S.D.N.Y.

2013) (partially granting reconsideration based on revising earlier legal conclusions), *aff'd*, 602 F. App'x 3 (2d Cir. 2015*); see also Donoghue v. Casual Male Retail Grp., Inc.*, 427 F. Supp. 2d 350, 354-56 (S.D.N.Y. 2006) (granting reconsideration based on a finding that the court's earlier order misapplied the law).  Aside from the "new evidence" and "clear error" grounds for reconsideration, the "manifest injustice" showing is an alternative third ground that supports reconsideration where the Court overlooked a key fact in the record or a controlling point of law.  *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (observing that reconsideration lies where the moving party "point[s] to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," including "additional relevant case law").  As such, the Second Circuit has expressly approved granting reconsideration based on relevant authority that was not before the district court when it initially ruled on the matter. *See Vaughn v. Consumer Home Mortg. Co*., 470 F.Supp.2d 248, 257-58 (E.D.N.Y. 2007), citing *Shrader*, 70 F.3d at 257; *see also Olagues v. Perceptive Advisers LLC*, 2017 WL 3605511, at \*5 (S.D.N.Y. July 26, 2017) (granting reconsideration based on "better support[]" articulated in the motion for reconsideration), *aff'd sub nom. Olagues v. Perceptive Advisors LLC*, 902 F.3d 121 (2d Cir. 2018); *In re Harbinger Cap. Partners Funds Inv. Litig*., 2013 WL 7121186, at \*2 (S.D.N.Y. Dec. 16, 2013) (granting reconsideration for similar reasons).

**B.**     <u>**The Court Has Diversity Jurisdiction Over the Remaining Claims**</u>

As an initial matter, the Court appears to have overlooked that Plaintiffs properly alleged diversity jurisdiction in addition to federal question jurisdiction.  *See* Order, 2021 WL 3931897, at \*5 ("Plaintiffs' federal jurisdiction is predicated on the RICO claim."); *but see* FAC at ¶ 29 (alleging diversity jurisdiction: "This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 because all Plaintiffs are residents of different states than the non-nominal Defendants and the

amount in controversy exceeds $75,000.");[6] *see also id.* at ¶ 28 ("Plaintiff Goureau is domiciled in the State of Florida and Plaintiff Menkin is domiciled in the State of New York.  No non-nominal defendant is a citizen of the States of New York or Florida or domiciled in the States of New York or Florida.  Defendant Lemonis is domiciled in Illinois, Defendant ML Retail is a citizen of Illinois, Defendant ML, LLC is a citizen of Illinois, and Defendant Machete is a citizen of California.") & ¶¶ 16-22 (establishing citizenship for each party, including the single-membered limited liability companies that are defendants ML Retail, with its single member Lemonis, an Illinois citizen, and ML, LLC, with its single member Marcus Lemonis Enterprises, LLC, whose sole member is the Marcus Lemonis Revocable trust, whose trustee is Marcus Lemonis, an Illinois citizen).[7]

"Because the Court has jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332(a)(1), there is no need to exercise supplemental jurisdiction over plaintiff's state law … claim." *Brady v. Calyon Sec. (USA)*, 2007 WL 4440926, at *5 n.8 (S.D.N.Y. Dec. 17, 2007).  As such, the Court's decision to decline exercise of supplemental jurisdiction does not affect its remaining diversity jurisdiction over Plaintiffs' state law claims, even assuming that Plaintiffs' RICO claims remain dismissed.[8]

## C.    <u>Plaintiffs' Fraud Claims Should Proceed</u>

The Court cites Rule 9(b)'s particularity standard to find that Plaintiffs' complaint failed to properly plead circumstances constituting fraud.  But binding Second Circuit precedent teaches that "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'"

---

[6]      Gooberry, as a nominal defendant, is properly aligned with the Plaintiffs.  *See Obstfeld v. Schwartz*, 621 F. Supp. 2d 87, 93 (S.D.N.Y. 2008).

[7]      It is Lemonis's citizenship that determines the citizenship of the trust.  *See Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017) ("[I]t is the trustees' citizenship that must determine diversity….").

[8]      Presumably, this is why the Court classified its grant of Defendants' motions as only partial, yet the issue of the Court's subject matter jurisdiction over the remaining state law claims needs to be further clarified, as it is unclear why the Court needed to reach the issue of supplemental jurisdiction in the first place.

even where plaintiff had an opportunity to amend (which Plaintiffs did out of their own volition here, without any benefit of the Court's guidance). *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) (reversing dismissal for, *inter alia*, failure to comply with Rule 9(b)). Notably, "the degree of particularity required should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts." *Indus. Tech. Ventures, L.P. v. Pleasant T. Rowland Revocable Tr.*, 280 F.R.D. 86, 94 (W.D.N.Y. 2012), citing *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987). Indeed, "Rule 9(b)'s fraud pleading requirement should not be understood to require absolute particularity as to matters peculiarly within the opposing party's knowledge that the pleader is not privy to at the time of the pleading and that can only be developed through discovery." Wright & Miller, *Pleading Fraud with Particularity—Extent of Requirement*, 5A Fed. Prac. & Proc. Civ. § 1298 (West 2021), as *cited in*, *e.g.*, *In re Ridley*, 453 B.R. 58, 74 (Bankr. E.D.N.Y. 2011).

The Court held that Plaintiffs' FAC does not explain why the alleged misrepresentations are false, which is addressed on the per-misrepresentation basis below. The Court, however, also went on to hold that regardless of whether the misrepresentations are false, they are "in-actionable puffery" in "any event." Order, 2021 WL 3931897, at *3. In other words, the Court appears to hold that even those statements that could be proven to be false may classify as such "in-actionable" puffery. Plaintiffs respectfully submit that such a holding is contrary to New York law as interpreted by the Second Circuit.

"[S]tatements are not puffery when they constitute 'misrepresentations of existing facts' that were made even though the speaker 'knew that the contrary was true.'" *Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, 2020 WL 3268531, at *10 (S.D.N.Y. June 17, 2020), citing *Novak*, 216 F.3d at 315 (rejecting a puffery argument where "the defendants stated that the inventory situation was 'in good shape' or 'under control' while they allegedly knew that the contrary was true"), and *In*

*re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 757 F. Supp. 2d 260, 310 (S.D.N.Y. 2010)

("[T]here is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in 'misrepresentations of existing facts.'" (quoting *Novak*, 216 F.3d at 315)). Indeed, "[t]he Second Circuit has defined non-actionable puffery as '[s]ubjective claims about products, which cannot be proven either true or false.'" *Label Health, LLC v. United Am. Supply, LLC*, 2021 WL 638624, at *7 (S.D.N.Y. Feb. 17, 2021), citing *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995); *see also Fishon v. Peloton Interactive, Inc.*, 2020 WL 6564755, at *6 (S.D.N.Y. Nov. 9, 2020) (holding that representation that defendant's library of classes was "ever-growing" was not puffery because it was a representation of a provable fact), citing, *inter alia*, *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (holding that a claim is puffery when it consists of "subjective claims about products, which cannot be proven either true or false"), *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 457 (S.D.N.Y. 2017) (holding that claims discussing vehicles' "world class engineering" and "advanced safety and security features," not puffery because they could be "objectively measured"), *In re Ford Fusion & C-MAX Fuel Econ. Litig.*, 2017 WL 3142078, at *10 (S.D.N.Y. July 24, 2017) (holding that claim of better gas mileage was not puffery because it was not a "subjective claim which cannot be proved either true or false, nor is it a vague statement of a product's superiority"), and *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *7 (S.D.N.Y. May 22, 2013) (representations that "EZ Seed grows grass 50% thicker with half the water compared to ordinary seed" and that "EZ Seed is developed to thrive in virtually every condition—harsh sun, dense shade, and even spreads to repair wear and tear" were not puffery because they made a promise that the product would "perform in specific measurable ways").[9] In the same vein, a "relatively concrete representation as to ... future performance, if made

---

[9]     Notably, courts have held that the determination of whether a statement is fact-based as opposed to a mere opinion should be reserved for the trier of fact. *See, e.g., Colangelo v. Champion Petfoods USA, Inc.*, 2020 WL 777462,

at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994); *see also White v. Davidson*, 150 A.D.3d 610, 611, 55 N.Y.S.3d 223 (1st Dep't 2017) ("[I]f a promise [as to future performance] was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of a material existing fact ….").

Thus, for example, the Second Circuit has recently rejected claims of puffery in *United States v. Kaplan*, 758 F. App'x 34, 38 (2d Cir. 2018), holding that defendants' statements—that the locating companies would place machines at locations where they would make specific amounts of money per day, but knew the companies would do no such thing, and that defendants had profitable vending routes even though they did not—could not qualify as puffery because they were "specific, *falsifiable* statements that a reasonable jury could certainly deem material." *Id.*; *cf. In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 168 (2d Cir. 2021) (rejecting a finding of puffery where "several allegations within the amended complaint specifically allege that Synchrony and its representatives knew the statement was false when made"); s*ee also Mintz v. Am. Tax Relief, LLC*, 16 Misc. 3d 517, 523, 837 N.Y.S.2d 841, 846 (N.Y. Sup. Ct. 2007) (where postcards promised recipients that they "can be helped Today" with their "Unbearable Monthly Payment Plan[s]," and that defendant "can stop wage garnishments, bank seizures, and assessment of interest and penalties," the mailings "make explicit promises which for purposes of this motion [to dismiss], cannot be described as 'puffery'").

Similarly, as shown below, the statements at issue here were either based on verifiable facts

---

at *8 (N.D.N.Y. Feb. 18, 2020) (observing that "courts are more often reluctant to label claims non-actionable puffery—and thus rule that the statements cannot be deceptive—at the motion to dismiss stage" and declining to make the determination where the statements "are not so obviously 'puffing' that their significance should be determined as a matter of law"), citing *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010) ("[W]hen a statement is not obviously puffing, the question of whether it is fact or opinion is 'almost always a question of fact for a jury's resolution.'"). The related question of materiality is similarly factual and thus "poorly suited to a determination at the pleadings stage." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 518 (S.D.N.Y. 2015) (refusing to determine whether the statements are puffery on the pleadings); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 250 (1988) ("materiality depends on the facts and is to be determined on a case-by-case basis"); *Orlander v. Staples, Inc.*, 802 F.3d 289, 298 (2d Cir. 2015) (materiality is "usually a question of fact").

or offered concrete promises of performance without any intention to perform.  As such, both types

are actionable and should proceed, especially given the fundamental rule of the motion to dismiss

jurisprudence requiring this Court to draw all reasonable inferences at this point in *Plaintiffs*' favor.

*See, e.g., U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co*., 2020 WL 2489078, at *2 (S.D.N.Y.

May 14, 2020) (Vyskocil, J.) ("On a motion to dismiss under Rule 12 (b)(6) of the Federal Rules of

Civil Procedure, the Court accepts 'all factual allegations in the complaint ... as true' and draws 'all

inferences ... in the plaintiff's favor.'"), citing *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d

Cir. 2015).

**(1)** **The "saves," "fixes," and "turns around" struggling/failing businesses
misrepresentations**.  Plaintiffs' FAC alleged that Defendants induced Plaintiffs' participation in the

show by representing to them that Lemonis "save[s] the struggling businesses" that appear on the

show, "fix[es] failing businesses," and "successfully turned around over 100 companies;" moreover,

they represented that past contestants were "success" stories that were accurately portrayed.  (*See*

FAC at ¶¶ 39-41 & 51.)  All of these statements are provably false statements because they convey

that Lemonis improves businesses on the show.  In other words, they relate to the past rather than the

future, and they are based on provable facts.  *See, e.g., Zerman v. Ball*, 735 F.2d 15, 22 (2d Cir. 1984)

("The alleged representation is one of fact, not puff or opinion …."); *Silvercreek Mgmt., Inc. v.

Citigroup, Inc*., 346 F. Supp. 3d 473, 506 (S.D.N.Y. 2018) (finding that representations as to

company's creditworthiness were not puffery because they were based on "a present fact" and

observing that statements "that a situation was 'in good shape' or 'under control' while [speakers]

allegedly knew that the contrary was true—[were] actionable"), citing *Novak*, 216 F.3d at 315; *White*,

150 A.D.3d at 611 (defendants' representation that "their record label was highly successful and that

they had previously successfully represented famous recording artists …  were not mere opinion or

puffery, but included specific misrepresentations concerning the … defendants' experience in

11

promoting performing artists").[10]

This is especially so, considering that these were not merely isolated statements—rather, Plaintiffs allege that they were constantly bombarded with these representations.  Since "[w]hether a representation is 'mere puffery' depends, in part, on the context in which it is made," this fact reinforces the conclusion that "[w]hile some of the alleged statements, viewed in isolation, may be mere puffery, nonetheless, when (as here alleged) the statements were made repeatedly in an effort to reassure," a reasonable potential contestant "could rely on them as reflective of the true state of affairs" at the show.  *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) ("Accordingly, the Court cannot find that all of Petrobras' alleged statements regarding its general integrity and ethical soundness were immaterial as a matter of law."), citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (noting that the issue of materiality "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact").

In fact, these promises were reinforced with a written contractual obligation for Lemonis to use his "best efforts" to improve the participant business and act in "good faith" in all his dealings with that business.  (*See* Dkt. No. 51-3 ("Reality Participant Agreement") at 1B(i), (ii) & (iii), cited in the Order, 2021 WL 3931897, at *3 n.1.)  When viewed in combination with these written assurances and the constant theme embedded into the transaction that Lemonis was supposedly there to improve Plaintiffs' business, the misrepresentations concerning Lemonis' intentions to expand the business, treat Plaintiffs as equals, and run the business in its best interests (as opposed to Lemonis'

---

[10]        These statements are nothing like the representations in *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *7 (S.D.N.Y. May 22, 1996), that Suburbans are "like a rock," "popular" and "the most dependable, long-lasting trucks on the planet."  Those are indeed subjective opinions; by contrast, whether one saves, fixes or turns around a business is a matter of verifiable fact.  It is not a matter of opinion whether Lemonis saved, fixed or turned around "over 100 companies"—he either did or did not.  *See, e.g., Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 392-94 (E.D.N.Y. 2013) (distinguishing Hubbard for similar reasons).

own self-interest, which was the real unstated intention based on how Lemonis treated Plaintiffs'
business in the end and treated other businesses on the show) qualify as actionable misrepresentations
under New York law. *See Cohen*, 25 F.3d at 1172; *see also White*, 150 A.D.3d at 611 (concluding
with respect to the misrepresentations of future performance that "the complaint adequately alleges
that defendants made specific representations concerning the actions that they would undertake to
promote plaintiff's single in order to induce him to self-fund their promotional campaign while never
intending to perform, and were, in effect, engaging in a Ponzi scheme").[11]

Moreover, given the allegations that Lemonis actually destroyed businesses that appeared on
the show (*see* FAC at ¶¶ 66-67, 82-88, 98, 102-06, 110-12, 138 & 147)—and the new evidence that
he did so with regard to at least fifty such businesses, as set forth in the SAC, these representations
were (at the very least) misleading. This is because New York law holds Defendants liable for
speaking half-truths. *See, e.g., Williams v. Sidley Austin Brown & Wood, L.L.P.*, 832 N.Y.S.2d 9, 11
(1st Dep't 2007); *Sheridan Drive-In, Inc. v. State*, 228 N.Y.S.2d 576, 585 (4th Dep't 1962); *accord
Am. Fin. Servs. Grp. v. Treasure Bay Gaming & Resorts, Inc.*, 2000 WL 815894, at *4 (S.D.N.Y.
June 23, 2000) (collecting New York authorities to demonstrate that "[f]raud in the inducement occurs
when the victim of the fraud is aware that a contract is in contemplation, but his or her consent to the
bargain is obtained by lies or half-truths").

In fact, Plaintiffs also alleged that Defendants suppressed information concerning past
contestants' failures (*see* FAC ¶¶ 2-3, 199(d) & 201(6)), which amounts to Defendants' actual

---

[11]     The authorities cited by the Court on this point are not inconsistent because the courts there never found that the
statements were inactionable because they were "forward looking"—rather, they held that the statements merged into the
contract and were thus duplicative of plaintiffs' breach of contract claims. *See Druck Corp. v. Macro Fund Ltd.*, 290 F.
App'x 441, 444 (2d Cir. 2008); *Bruce v. Martin*, 1993 WL 148904, at *5 (S.D.N.Y. Apr. 30, 1993). By contrast, none of
Plaintiffs' contract claims here is based on the breaches that duplicate their fraud claims. Moreover, "[w]e apply the more
general standard to scienter for the simple reason that 'a plaintiff realistically cannot be expected to plead a defendant's
actual state of mind.'" *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000), citing, *inter alia*, *Cohen*, 25 F.3d at
1174 (reversing Rule 9(b) dismissal where "sufficient facts were pleaded to suggest that plaintiffs may be able to prove
that defendants more likely than not knew" of fraud, and where complaint "spelled out circumstances from which it could
easily be inferred that the [defendants] had a motive" to commit fraud).

concealment.  Indeed, "[t]he suppression of material facts which a person is in good faith bound to disclose is evidence of and equivalent to a false representation."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chipetine*, 634 N.Y.S.2d 469, 470 (N.Y. 1995); *cf. RKB Enterprises Inc. v. Ernst & Young*, 182 A.D.2d 971, 972, 582 N.Y.S.2d 814, 816 (3d Dep't 1992) (holding that plaintiff stated a fraudulent inducement claim where it "relied upon the advice and the opinion of defendants and was thereby induced to enter into the contracts, that the inducements made by defendants were deliberately misleading and fraudulent, and that defendants knew plaintiff was relying upon their special knowledge and skill when they rendered their opinions").[12]  While Plaintiffs could only suspect that other businesses must have been similarly harmed based on their own experience on the show and the businesses they saw destroyed after it,[13] now they know that more than fifty businesses were actually harmed, and many destroyed.  In fact, none of these businesses improved their circumstances in any way, and a substantial percentage of them became insolvent, forced to close their businesses, or faced dramatically reduced profitability, while others saw their owners forced out of their own companies.  Moreover, the stated intention to improve the business is only a half-truth considering Defendants'

---

[12]     Additionally, as discussed, Lemonis is also alleged to act as a fiduciary once he became a director of Gooberry; moreover, the SAC demonstrates Lemonis became a fiduciary once Plaintiffs became contestants on the show.  *See Powers v. Brit. Vita, P.L.C.*, 57 F.3d 176, 189 (2d Cir. 1995) ("A fiduciary relationship or other relationship of trust and confidence can give rise to a duty to disclose material information; unique access to information can also trigger such a duty.").  After all, the contestants were lured to participate in the show in exchange for Lemonis' advice; indeed, they reposed trust in him that he would act in their best interests.  *See Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*, 2018 WL 1027754, at *4 (S.D.N.Y. Feb. 20, 2018), citing, *inter alia, Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (1st Dep't 1987) ("A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."); *see also EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19-20 (N.Y. 2005) (finding allegations of "advisory relationship" sufficient to support a pleading of fiduciary duty: "A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.  Such a relationship, necessarily fact-specific, is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions.").  Indeed, no formal structure is required for a fiduciary duty to arise in this context.  *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 45 (2d Cir. 1991) (fiduciary obligations properly arise from "informal relations which exist whenever one [person] trusts in, and relies upon, another") (original alteration).

[13]     Notably, courts allow fraudulent omission claims to proceed despite "sparse" allegations where "plaintiffs' allegations rely on information that is more likely in the possession of defendants than plaintiffs," *see, e.g., Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *19 (S.D.N.Y. Dec. 16, 2011).  The information concerning past contestants that were harmed by their appearance on the show was in Defendants' possession at the time they made their representations to Plaintiffs.

non-disclosure of Lemonis' extensive history of self-dealing in connection with the show by, *inter alia*, (1) causing participating companies to contribute funds to Lemonis' owned companies, and (2) making participating companies incur substantial expenses, or to lose clients, so that the company's owners would be left with no other choice but to agree to surrender to Lemonis an equity stake in return for financial assistance.  (*See* FAC at ¶¶ 66-67, 82-88 & 104-06.)

As such, given that these statements are based on present provably false facts and/or impermissible half-truths, they properly support Plaintiffs' fraud claims.

**(2)**     **The "show is the real deal" misrepresentation.**     The Court addressed this alleged misrepresentation by asserting that it was real enough that it spawned litigation.  *See* Order, 2021 WL 3931897, at *3.  This analysis appears to overlook the actual message: the "simulated" deals are actually never the deals reached in reality because Lemonis makes the businesses so vulnerable and dependent on him that he always changes those deals to his advantage, leaving the businesses worse off in the end.  Here, the promised $800,000 "investment" for a 30% stake in the company never came true—instead, the company was drowned in debt extended by Lemonis' other companies, and, having made Plaintiffs dependent on him, Lemonis strong-armed total control.  As such, when Defendants represented that the deals on the show reflected the deals in real life, they knew this to be untrue because they knew that Lemonis sticks to his repeat pattern and practice of weakening businesses, often by self-dealing extensions of debt, to change the deals to his advantage. (*See, e.g.*, FAC at ¶¶ 3 & 201(7)-(10).)

The Court also appears to suggest that Plaintiffs' reliance on this statement was somehow unreasonable as a matter of law in light of the Participant Release's language warning that the on-air deals are "simulated."  Order, 2021 WL 3931897, at *3 n.1.  There are several important points that these findings overlook.

*First*, "[u]nder New York's contextual approach, the question of what constitutes reasonable

15

reliance is always nettlesome because it is so fact-intensive.  Reasonable reliance is therefore a question normally reserved for the finder of fact and not usually amenable to" dismissals as a matter of law.  *Silvercreek*, 346 F. Supp. 3d at 507; *accord Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 186 n.19 (2d Cir. 2015) (confirming that "the reasonableness of a plaintiff's reliance is a 'nettlesome' and 'fact-intensive' question, which we, like our Circuit's many district courts, will not lightly dispose of at the motion-to-dismiss stage."), citing, *inter alia*, *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997), *Bayerische Landesbank, New York Branch v. Barclays Capital, Inc.*, 902 F.Supp.2d 471, 474 (S.D.N.Y.2 012) ("Whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss."), and *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F.Supp.2d 319, 322-23 (S.D.N.Y. 2008) (citing several cases to the same effect).  While "[l]ack of reasonable reliance may ultimately prove to be a successful defense," it "does not, however, warrant dismissal at the pleading stage" where, as here, there are disputed factual issues.  *Loreley*, 797 F.3d at 186 n.19; *see also In re APA Assessment Fee Litig.*, 766 F.3d 39, 48 (D.C. Cir. 2014) ("Defendants seek to prevail at the motion-to-dismiss stage even though the 'reasonableness of ... reliance upon a misrepresentation is a question of fact, for which disposition by [pre-trial motion] is generally inappropriate.'"); *cf. Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir. 1993) (Posner, J.) (observing that Rule 9(b) does not require particularity beyond the time-place-identity-contents threshold because one need not "allege the facts necessary to show that the alleged fraud was actionable.  That … would certainly entail allegations demonstrating … *[plaintiff]'s reliance on the defendant's misrepresentations or omissions, and the reasonableness of that reliance.  None of that was required*.").

Here, the new evidence shows that Defendants' pattern and practice was to mislead business owners the contract was a standard form agreement, and that many parts thereof did not apply to

them.  (*See* SAC at ¶¶ 90-94.)  This certainly muddles the waters of whether reliance was reasonable and raises a ***factual*** issue as to how much Plaintiffs were misled into discounting the releases as potentially inapplicable.[14]  This is especially so, given that Defendants made these assurances, as well as their representations that on-air deals are real, knowing full well that they were false based on the past contestants' experiences that showed the on-air deals rarely coming to fruition.  *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 467 (S.D.N.Y. 2019) (observing that disclaimer "does not preclude plaintiff's claim based upon representations that [defendant] made to plaintiff that [defendant] allegedly knew were false"), citing *P.T. Bank Cent. Asia v ABN AMRO Bank N.V.*, 301 A.D.2d 373, 378, 754 N.Y.S.2d 245, 252 (1st Dep't 2003).  This, in fact, was part of the pattern of conduct of high-pressure sales tactics forcing many past contestants to sign similar releases under various pretenses, be it the threat of losing a spot on the show or missing out "on this one in a lifetime opportunity"—everything to prevent them from seeking legal advice in connection with these agreements.  (*See* SAC at ¶¶ 90-94.)

*Second*, on its face, the "simulated investment" language does not render Plaintiffs' reliance unreasonable as a matter of law.  This is because it does not actually inform them that, in the past, the real deals were materially different from the ones shown on the show.  In fact, after advising about simulated investment, the next section appears designed to allay any fears by promising that Lemonis "shall" enter into "good faith" negotiations and "may" enter into the same deal as was shown on air. (Dkt. No. 51-3 at 1B.(ii).)  Against the back-drop of the regular assurances that the deals shown on the show were real, it is entirely reasonable for the contestants to read more into this language than it actually provides.  In other words, the releases were insufficiently specific to preclude reliance.  *See*

---

[14]     *Cf. PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (declining to resolve the issue of waiver of extracontractual fraudulent misrepresentations on the pleadings where the analysis "could be influenced by facts that are not properly before [the court] in this motion," such as considerations of whether plaintiff was a sophisticated party, which the complaint here alleged Plaintiffs are not, or whether the waiver clauses were "the result of negotiations between the parties" or whether plaintiff "was represented by counsel," which here Plaintiffs allege they were not).

*Manufacturers Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 316-17 (2d Cir. 1993) (holding that to preclude a fraudulent inducement claim, the alleged "must contain explicit disclaimers of the particular representations that form the basis of the fraud-in-the-inducement claim;" surveying New York state court authorities and concluding that "the disclaimer [must be] sufficiently specific to match the alleged fraud"); *accord Loreley Fin. (Jersey) No. 3 Ltd. v. Citigroup Glob. Markets Inc.*, 119 A.D.3d 136, 144, 987 N.Y.S.2d 299, 304 (1st Dep't 2014) (rejecting contractual disclaimers where they fell "well short of tracking the particular misrepresentations and omissions alleged").

This is especially so given that the contestants were never told that in the past, the actual deals were regularly, in fact usually, different from the deals shown on the show, such that the participants did not get the net infusion of capital once the costs required from them during Lemonis' consultancy were taken into account.  (*See* SAC at ¶ 102.)  And while the purported release proceeds to make promises that Lemonis may choose to "incur expenses to improve" the participants' business, this is in itself misleading because Defendants never disclosed that: (1) Lemonis planned to cause their company to incur substantial expenditures that could not be deemed an effort to "improve [the] Company's business or property" because the expenses would leave the company in financial extremis unless the owners accepted Lemonis' deal; (2) that Lemonis regularly used his consultancy to cause companies to incur debts that exceeded the amount that he later offered to invest; and (3) that he was not simply acting for their best interest because he regularly caused contestants to incur substantial expenditures to his own companies.  (*See id.*)  In fact, one of Lemonis' former accountants testified that Lemonis told him it was never his intention to provide any funding but rather claim investment through renovations and equipment purchases done on the show as a capital contribution. (*See id.*)[15]

---

[15]     Notably, the purported release is governed by California law (Dkt. No. 51-3 at ¶ 24), and California law further supports a fraudulent inducement claim here, since it prohibits waivers of fraud liability—indeed, even ***indirect***

*Third*, even sufficiently specific disclaimers cannot stand in the face of the long-recognized peculiar-knowledge exception, which holds that "even where the parties have executed a specific disclaimer of reliance on [defendant]'s representations, [plaintiff] may not be precluded from claiming reliance on any ... misrepresentations if the facts allegedly misrepresented are peculiarly within [defendant]'s knowledge." *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368-69 (S.D.N.Y. 1999) (declining to determine applicability of the "peculiar knowledge" exception without discovery, despite dealing with "extremely sophisticated parties"), citing *Tahini Investments, Ltd. v Bobrowsky*, 99 A.D.2d 489, 490, 470 N.Y.S.2d 431, 433 (2d Dep't 1984); *accord Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997) (reviewing New York law and concluding that the inquiry as to whether the defendant has peculiar knowledge of the facts at issue informs the issue of reasonableness of the plaintiff's reliance). Indeed, "reliance may be justifiable where 'undisclosed information was only known by—and indeed only available to—the defendants, and incapable of discovery by the plaintiff.'" *Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, 2019 WL 6498094, at *10 (S.D.N.Y. Dec. 3, 2019), citing *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 738 (2d Cir. 1984).

As discussed, both Plaintiffs' existing allegations and the new evidence introduced in the proposed SAC now show that it was in Defendants' peculiar knowledge that the past participants'

---

waivers, which thus includes the simulated investment disclosure in the purported release, considering Defendants' extracontractual assurances that the on-air deals were real: "Section 1668 of the [California] Civil Code provides that '[a]ll contracts which have for their object, ***directly or indirectly***, to exempt anyone from responsibility for his own fraud, ... whether willful or negligent, are against the policy of the law.' This provision encompasses intentional and negligent misrepresentation." *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 794 (Cal. App. 2 Dist. 2008); *accord Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*, 5 F Supp 3d 543, 557 n.6 (S.D.N.Y. 2014) ("[T]he public policy of New York bars enforcement … of fraud waivers …."). Consistent with this rule, California courts refuse to find reliance "unjustifiable" as a matter of law based on general contractual disclaimers or imprecise disclosures where plaintiff's consent to those disclaimers and disclosures was induced by misleading information or actionable concealment, as it was here. *See McClain*, 159 Cal.App.4th at 794-95 (collecting cases); *see also Melcher v. Fried*, 2018 WL 6326334, at *8 (S.D. Cal. Dec. 4, 2018), citing, *inter alia*, *Jefferson v. California Dep't of Youth Auth.*, 28 Cal.4th 299, 310 (Cal. 2002) (observing that if "contrary extrinsic evidence" shows that the parties did not intend to waive all claims or that fraud, deception, or other "similar abuse" was involved in the transaction, the release is not enforceable); *cf. Manderville v. PCG&S Group, Inc.*, 146 Cal.App.4th 1486, 1501 (Cal. App. 4 Dist. 2007) ("Because the fraud renders the entire contract voidable, the clause intended to absolve [defendant] from liability is also voidable.").

experiences proved that the on-air deal were, as a matter of course, different than the on-air deals and, in fact, were much worse than those "simulated" on air. It further shows that it was only in Defendants' knowledge that the past participants' experience revealed Lemonis' lack of good faith and consistent self-dealing. Since the combined knowledge that was exclusively in Defendants' possession would have been material to Plaintiffs' decision to provide their consent to the purported disclaimers and half-truth disclosures, Plaintiffs should proceed with their fraud-based claims, including their fraudulent inducement claim. *See, e.g., Guzzone v. Zazza*, 2021 WL 2661142, at *3 (E.D.N.Y. June 29, 2021) (observing that "the Rule [9(b)]'s pleading requirements are relaxed when the allegations relate to matters peculiarly within defendants' knowledge or possession. Plaintiff alleges that Defendant's representations were fraudulent when made and that he never intended to provide a return on her investment. It is difficult to imagine what specific facts beyond the above allegations that Plaintiff could possess as to Defendant's knowledge and intent without having conducted discovery."), citing *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1088 (S.D.N.Y. 1994), *aff'd sub nom., Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995).

**(3)**      **The "renovations will be under $200,000" representation.**  Plaintiffs also alleged that Defendants represented to them that only $200,000 of the purchase price would be allocated to renovating their stores while Defendants intended to overspend on those renovations as part of their plan to drown the company in debt and leave Plaintiffs vulnerable to Lemonis' intended self-dealing. The Court disposed of this allegation by finding that Plaintiffs knew the real cost. *See* Order, 2021 WL 3931897, at *4. Yet Plaintiffs specifically alleged that they were purposefully kept in the dark of the actual renovation expenditures. (*See* FAC at ¶¶ 7 ("Plaintiffs had no idea that Lemonis was vastly exceeding the stated $200,000 renovations budget."), 57-59 ("The owners are purposefully kept in the dark about how much the renovations are costing and who ultimately will be paying for them. The same was true here. Plaintiffs were told by Lemonis and Machete that they could not visit

the store while it was undergoing the renovations.  Prior to the show, Lemonis did not tell Plaintiffs how much he was spending on the renovations, and when Plaintiffs asked, he told them, 'I got it,' that they should 'trust the process,' and that they 'didn't have to deal with it.'"), 61 ("[Defendants] completely controlled the renovations and did not allow Plaintiffs to give any input or keep them informed of the costs of the renovations.") & 65 ("Plaintiffs were not able to repay Lemonis the over $2M that Lemonis had unilaterally decided to spend on the store—despite telling Plaintiffs that renovations would only cost $200,000 and keeping them in the dark about how much Lemonis was truly spending.").)  Since Plaintiffs' allegations are to be taken as true for purposes of Defendants' motions to dismiss, and all the reasonable inferences are to be drawn in *Plaintiffs*' favor and not the other way around, this allegation should proceed as the basis for their fraud claims as well.  *See*, *e.g.*, *Cosmas*, 886 F.2d at 12 (reversing dismissal for insufficient particularity under Rule 9(b) because "[t]he district court's analysis failed to follow our mandate that on motions to dismiss, *complaints should be read generously*, and all inferences should be drawn in favor of the pleader.  Read generously, the amended complaint does allege with sufficient particularity [the alleged fraud's circumstances].").

**(4)**     **The "experts costs are part of the package" misrepresentation.**     Similarly, the Court disposed of the allegation that Defendants misrepresented the deal as including the expert costs by finding that Plaintiffs questioned these costs before the deal was reached and thus must have known about them.  *See* Order, 2021 WL 3931897, at *4 (citing FAC at ¶ 65).  This is expressly contrary to the cited allegation: "When Plaintiffs questioned Lemonis about the skyrocketing … executive costs, Lemonis berated them, called them ungrateful, and told them that if they want to *back out of the deal*, all they had to do was pay him back …."  (*Id.*)  To state the obvious, if there was a deal to back out of, then the cited questioning of the costs must have happened *after* the deal was reached.  Again, to the extent this point was somehow unclear, the required "generous" reading of Plaintiffs' complaint

and the reasonable inferences to be drawn in their favor counsel *against* dismissing fraud claims supported by this allegation. *See Cosmas*, 886 F.2d at 12.[16]

**D.    Plaintiffs' RICO Claims Should Proceed**

As discussed, the existing fraud allegations, as well as the new evidence gathered as a result of the comprehensive investigation that forms the basis for Plaintiffs' additional allegations of an extensive enterprise formed by Defendants to pursue a common purpose through orchestrated pattern of fraud and intimidation (as set forth in the proposed SAC), provide sufficiently particularized predicate allegations to support Plaintiffs' RICO claims as well.  This includes the pleaded evidence of Defendants' knowledge that the representations they made were false, based on, *inter alia*, Defendants' special knowledge of the past participants' actual experiences on the show.

As is further set forth in the proposed SAC, there are now grounds for new RICO predicates as well, such as extortion under the Hobbs Act, 18 U.S.C. § 1951.  (*See* SAC at ¶¶ 607-09.)  Extortion "means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force or fear," *United States v. Clemente*, 640 F.2d 1069, 1076 (2d Cir. 1981), which includes fear of economic loss, *United States v. Rastelli*, 551 F.2d 902, 904 (2d Cir. 1977).  It has now become clear that Lemonis' threats to foreclose on his self-dealing debt is part of Defendants' racketeering scheme that extends beyond the particular case presented here.  This is extortion, which fits into the pattern of the enterprise alleged based on the past participants' experiences that are now

---

[16]     None of the authorities cited by the Court in support of its holdings vis-à-vis these last two misrepresentations requires a contrary conclusion.  This is especially so with regard to the decision in *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2004), where the court refused to determine the factual question of whether reliance was reasonable in the face of the information available to the sophisticated plaintiff.  In turn, in *Sheffield Com. Corp. v. Clemente*, 792 F.2d 282, 285 (2d Cir. 1986), the court had no occasion to pass on the standard of *pleading* materiality because this was a bench trial case; instead, it found that there was insufficient evidence introduced on the issue at trial. Finally, *Banque Franco-Hellenique de Com. Int'l et Mar., S.A. v. Christophides*, 106 F.3d 22, 26 (2d Cir. 1997), stands for the proposition that "[w]hile the law does not require that a defrauded party go to the ends of the earth to discover the falsity of a statement, patent foolishness is not excused."  Plaintiffs here could hardly qualify for the label of foolishness given their alleged efforts to obtain, *inter alia*, the actual costs of the renovations and failing to do so only because Defendants purposefully kept the information from them.  In any event, plaintiff in *Christophides* actually testified that he had known of the falsity while Plaintiffs plead otherwise here.

known to Plaintiffs and that include similar pattern of misconduct.  Given this additional alleged support, Plaintiffs' RICO claims should proceed based on this new predicate as well.

Accordingly, for all the reasons set forth above, as well as in Plaintiffs' pending motion for leave to file their proposed SAC that sets forth the new evidence uncovered in the past nine months, the Court should reconsider the Order.

Dated: September 16, 2021                        GERARD FOX LAW P.C.

                                                 /s/ Gerard P. Fox
                                                 Gerard P. Fox (admitted *pro hac vice*)
                                                 1345 Sixth Avenue, 33rd Floor
                                                 New York, New York 10105
                                                 Telephone: (646) 690-4980
                                                 Facsimile: (646) 368-9328
                                                 gfox@gerardfoxlaw.com