USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/15/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOLAS GOUREAU, and STEPHANIE MENKIN, individually and derivatively on behalf of GOOBERRY CORPORATION,

    Plaintiffs,

-against-

MARCUS LEMONIS, ML RETAIL, LLC, MARCUS LEMONIS LLC, and MACHETE CORPORATION d/b/a MACHETE PRODUCTIONS,

    Defendants,

-and-

GOOBERRY CORPORATION,

    Nominal Defendant.

---

1:20-cv-04691

**ORDER GRANTING IN PART MOTION TO RECONSIDER**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Nicolas Goureau and Stephanie Menkin move this Court under Local Rule 6.3 to reconsider its September 2, 2021 Opinion [ECF No. 77] in which the Court granted a Rule 12(b)(6) motion to dismiss Plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO") and fraud claims, and declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims (the "September 2 Opinion"). [Mot. to Reconsider; ECF No. 80]. A detailed recitation of the facts underlying this case are provided in the Court's September 2 Opinion. On August 17, 2020, Plaintiffs, individually and on behalf of Nominal Defendant Gooberry, sued Marcus Lemonis, ML Retail, LLC ("ML Retail"), Marcus Lemonis, LLC ("ML LLC"), (together, the "Defendants" or the "Lemonis Defendants"), and Machete Productions ("Machete"). [Amended Complaint, ECF No. 24]. Thereafter, the Lemonis Defendants moved to dismiss [ECF No. 44], and filed a Memorandum of Law in Support. [Defs. Mem., ECF No.

45]. Plaintiffs opposed the Motion [Pls. Opp, ECF No. 52], and the Lemonis Defendants filed their reply [Defs. Reply, ECF No. 54].

While Plaintiffs' Amended Complaint predicated jurisdiction on federal question with respect to its RICO claims, the Amended Complaint did later make factual assertions that support diversity jurisdiction. As such, the Court finds that reconsideration is warranted. Notwithstanding the existence of diversity jurisdiction, Plaintiffs have failed to state a claim upon which relief can be granted, and the Court concludes that Plaintiffs' Amended Complaint must be dismissed in its entirety.

**I.     RECONSIDERATION IS WARRANTED**

*A.     The Standard for a Motion to Reconsider*

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Group, Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). A court may grant the request where there is a need to correct a clear error. *Id.* at 696. In seeking reconsideration, Plaintiffs may not, however, "advance new facts, issues or arguments not previously presented to the Court, or reargue those issues already considered." *Hayles v. Advanced Travel Mgmt. Corp.*, 2004 U.S. Dist. LEXIS 865, 2004 WL 117597, at *1 (S.D.N.Y. Jan. 26, 2004).

*B.     Plaintiff Correctly Alleges that Certain Facts Were Overlooked*

In seeking reconsideration, Plaintiffs argue, in part, that the Court overlooked Plaintiffs' allegation of diversity jurisdiction. *See* Mem. in Support of Reconsideration at 6. Plaintiffs' Amended Complaint states that "[t]his action arises under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.,* and under the common law of the State of New York" and the "Court has [federal question] subject matter jurisdiction over the

RICO claims pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331." Am. Compl. ¶ 27. The Amended Complaint further states that this "Court has subject matter jurisdiction over the related New York state law claims," citing 28 U.S.C. § 1367—the statute that gives this Court the discretion to exercise *supplemental jurisdiction* over state law claims. Am. Compl. ¶ 27. Buried later in the Amended Complaint are allegations that the Plaintiffs and Defendants are citizens of different states, and that the amount in controversy exceeds $75,000. As such, diversity jurisdiction pursuant to 28 U.S.C. § 1332 is proper. *See* Am. Compl. ¶ 28.

Plaintiffs also attempt to reargue the Court's prior decision with respect to their fraud and RICO claims. *See* Mem. in Support of Reconsideration at 7, 22. On careful review of Plaintiffs' motion, Plaintiffs do not identify any intervening change in controlling law or relevant facts this Court overlooked. Thus, the Court concludes that only the decision to decline to exercise jurisdiction over Plaintiffs' state-law claims warrants reconsideration. Since the Court declined to exercise supplemental jurisdiction over the state law claims, it did not analyze the sufficiency of those claims on Defendants' motion under Rule 12(b)(6). The Court now revisits the claims asserted in Plaintiffs' Amended Complaint, and the arguments made in the Parties' moving papers.[1]

## II. THE STATE LAW CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *Francis v. Kings*

---

[1] Because the September 2 Opinion dismissed all claims against Defendant Machete, the Court does not address arguments raised in its moving papers. To the extent that the Amended Complaint asserted a "cause of action" for a receiver, dissolution, and an injunction against Defendant Machete, *see* Am. Compl. at 55-58, those claims are dismissed for the reasons discussed herein.

*Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021). However, the court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants move this Court to dismiss under Federal Rule of Civil Procedure 12(b)(6) for non-compliance with Federal Rule of Civil Procedure 23.1. *See* Defs. Mem. at 11. Rule 23.1 governs derivative actions where, as here, a plaintiff brings claims on behalf of a nominal defendant corporation. Rule 23.1 imposes a pleading standard higher than the normal standard under Rule 12(b)(6), and "requires that a plaintiff in . . . a derivative action state with particularity . . . any effort by plaintiff to obtain the desired actions from the directors . . . and . . . the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(a)-(b)(3)(B). "This rule sets forth a 'rule of pleading' as to 'the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question,' which is referred to as 'demand' on the corporation." *Canty v. Day*, 13 F. Supp. 3d 333, 341 (S.D.N.Y. 2014) (quoting *Halebian v. Berv*, 590 F.3d 195, 206 n.7 (2d Cir. 2009). Additionally, a derivative suit requires that a "complaint must be verified." Fed. R. Civ. P. 23.1(b).

"The adequacy of a plaintiff's pre-suit demand efforts is determined by the relevant state substantive law." *Jiminian v. Seabrook*, 760 F. App'x 38, 41 (2d Cir. 2019) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 (1991)). Because it is undisputed that Gooberry is a New York corporation, New York law governs the adequacy of Plaintiffs' pre-suit demand. *Id.*; *Canty* 13 F. Supp. 3d at 342.

## DISCUSSION

The Court addresses first Plaintiffs' seven derivative claims made on behalf of the Nominal Defendant, Gooberry, and their "causes of action" for the appointment of a receiver, a

4

preliminary injunction, and dissolution of the corporation. Then, the Court determines whether the Lemonis Defendants breached the implied covenant of good faith and fair dealing.

### A.     *Plaintiffs Fail to Adequately Plead a Derivative Claim*

Plaintiffs assert seven derivative claims on behalf of Nominal Defendant Gooberry: 1) a breach of fiduciary duty claim against Lemonis, Am. Compl. at 37; 2) an unjust enrichment claim against the Lemonis Defendants, Am. Compl. at 40; 3) a misappropriation of corporate assets claim against the Lemonis Defendants, Am. Compl. at 41; 4) a corporate mismanagement and waste claim against the Lemonis Defendants, Am. Compl. at 42; 5) a conversion claim against the Lemonis Defendants, Am. Compl. at 43; 6) an accounting claim against the Lemonis Defendants, Am. Compl. ¶ 54; and 7) the previously referenced RICO claim against all Defendants, Am. Compl. at 44.

"Because derivative actions inherently interfere with the managerial discretion of corporate boards, New York has 'historically been reluctant to permit shareholder derivative suits, noting that the power of courts to direct the management of a corporation's affairs should be exercised with restraint.'" *Jiminian*, 760 F. App'x at 41 (quoting *Marx v. Akers*, 88 N.Y.2d 189, 194, 666 N.E.2d 1034, 644 N.Y.S.2d 121 (1996)); *see also Bansbach v. Zinn*, 1 N.Y.3d 1, 8-9, 801 N.E.2d 395, 769 N.Y.S.2d 175 (2003). In deference to the discretion of corporate boards, as a general rule, a Court should not entertain an action by a shareholder purporting to act on behalf of a corporation in the absence of an allegation that the corporation has been asked to act and has declined to do so. *See Jiminian*, 760 F. App'x at 41. "As a general matter, equity courts established as a precondition for the [derivative] suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by *extraordinary* conditions." *Id.* (emphasis and alterations in original) (quoting *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004)); *see also Bansbach*, 1 N.Y.3d at 8-9.

Alternatively, a shareholder plaintiff may prosecute a claim on behalf of a corporation if it would have been futile to ask the corporation to act. *Bansbach*, 1 N.Y.3d at 8-9.

"To plead demand futility under New York law, a complaint must allege with particularity that (1) a majority of the directors are interested in the transaction, or (2) the directors failed to inform themselves to a degree reasonably necessary about the transaction, or (3) the directors failed to exercise their business judgment in approving the transaction." *Jiminian*, 760 F. App'x at 42 (internal quotation marks and citations omitted). "In other words, plaintiffs' allegations must support their assertion that a majority of the board was so interested or so culpable regarding the complained-of conduct that it would have been futile to demand that the board take legal action to make the company whole." *Id.*

Plaintiffs concede they have not made any demand on Gooberry's Board of Directors. Am. Compl. ¶ 125. Instead, Plaintiffs allege that demand would be futile because demand would "essentially require Lemonis to sue himself," raising a "conflict of interest which would prevent him from exercising independent business judgment in evaluating the merits of the claims." Am. Compl. ¶ 127. Plaintiffs conclude that "it is readily apparent that Lemonis would either be incapable or unwilling to take the actions required to seek the relief requested." Am. Compl. ¶ 137. Plaintiffs miscomprehend the law of demand futility.

The requirement to plead demand futility in New York is that *a majority of the directors* are either interested, failed to inform themselves, or did not exercise sound business judgment. *See Marx*, 88 N.Y.2d at 200. The Board of Directors of Goobery is comprised of Plaintiff Goureau, Plaintiff Menkin, their mother Neomi Goureau, and Lemonis. Am. Compl. ¶ 70. Thus, the two named Plaintiffs and their mother are the *majority of the directors* that sit on the Board. Even if this Court were to assume that Mr. Lemonis is interested, the Amended

Complaint is devoid of support for the proposition that the remaining three members of the Board are as well. Such an allegation would be contradicted by the present case, where Plaintiffs Goureau and Menkin—Board members—bring the exact suit Gooberry would itself bring if demanded. To the extent that the other non-Lemonis director (Plaintiffs' mother Neomi Goureau) would not acquiesce in the demand, Plaintiffs have not so alleged. Thus, Plaintiffs cannot establish that a majority of the directors are interested.

This flaw is also fatal to the other futility requirements under New York law, which require that the directors—plural—fail to inform themselves or exercise sound business judgment. *See Marx*, 88 N.Y.2d at 200 ("Demand is excused because of futility when a complaint alleges with particularity that *the board of directors* did not fully inform themselves about the challenged transaction.") (emphasis added); *see also Stein v. Immelt*, 472 F. App'x 64, 66 (2d Cir. 2012) (noting that "New York courts have suggested it is the rare case in which a transaction may be so egregious on its face that *board approval* cannot meet the test of business judgment.") (cleaned up) (emphasis added); *see also Jiminian*, 760 F. App'x at 42. Futility would therefore require that Plaintiffs allege with particularity that they themselves failed to exercise appropriate business judgment, or that they failed to inform themselves of the transaction.

Plaintiffs further claim that demand would be futile because the Shareholder Agreement contains a provision that various actions may not be taken without the affirmative vote of "the ML Shareholder," which is ML Retail. Pls. Opp. at 12; Shareholder Agreement § 2.1.1; *see also id.* § 2.1.2. The enumerated actions contained in that provision pertain to, *inter alia*, the addition of shareholders, removal of company management, entering into transactions outside the ordinary course of business, and the merging of the corporation. Significantly, however, nothing

in the Shareholder Agreement states that the ML Shareholder's vote is required for a direct-action suit by Gooberry. These provisions, therefore, do not absolve Plaintiffs from making a demand on the Corporation, or otherwise pleading with specificity why demand would be futile.

Plaintiffs' derivative claims are further deficient because neither Plaintiffs' original Complaint nor the Amended Complaint are verified pleadings, as required under Rule 23.1(b). For a complaint to be verified, the plaintiff must swear (either in an affidavit or in the complaint) as to the veracity of the statements contained in the pleading. *See Cellucci v. O'Leary*, 19-cv-2752, 2020 U.S. Dist. LEXIS 34729, 2020 WL 977986, at *6 (S.D.N.Y. Feb 28, 2020). Here, both complaints are signed only by counsel. While ordinarily failure to verify the pleading might not, by itself, be an adequate basis to dismiss, Plaintiffs here have also failed to satisfy other requirements under Rule 23.1. *Id.* (citing *Markowitz v. Brody*, 90 F.R.D. 542, 549-50 (S.D.N.Y. 1981)).

As stated, reconsideration of the September 2 Opinion is not warranted to the extent it dismissed the federal RICO claims under Rule 12(b)(6). The Court notes, however, that Plaintiffs' failure to plead with particularity the reasons for not making a demand on Gooberry under Rule 23.1 and New York law is a further ground requiring dismissal of the RICO claim, as it is also an inappropriate derivative action brought on behalf of the Nominal Defendant. *See Marx*, 88 N.Y.2d at 200.

### B.   *Plaintiffs May Not Assert Remedies as Cognizable Causes of Action*

In their Amended Complaint, Plaintiffs plead separate "causes of action," purportedly under state law, for the appointment of a temporary receiver and a permanent injunction restraining "Defendants" from "continuing to maintain control over the company's finances and assets." Am. Compl. at 55-57.

As a threshold matter, the Amended Complaint is silent as to the statutory or legal basis for the demand for the appointment of a receiver. *See* Am. Compl. ¶¶ 226-233. In their Opposition, Plaintiffs claim that the appointment of a receiver is authorized by New York Civil Practice Law & Rules Section 6401(a), and rely on a footnote to assert that when state-law rights are pursued in federal court "they are a cause of action and a remedy." Pls. Opp. at 24 (*citing United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 255 n.4 (S.D.N.Y. 2012)).

The Federal Rules of Civil Procedure provide that "[t]hese rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued." Fed. R. Civ. P. 66. "Whether a federal court should appoint a receiver in a diversity action appears to be a question properly determined on the basis of federal law." 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedures* § 2983 (3d ed. 2017). "A federal court has the power in equity to appoint a receiver in order to protect a party's interest in property." *Varsames v.* Palazzolo, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (citing Fed. R. Civ. P. 66). Appointment of a receiver is, however, a remedy to redress a cognizable wrongdoing; it is not a claim upon which relief can be granted. The Second Circuit has held that "the appointment of a receiver is considered to be an extraordinary *remedy*" and that "the *remedy* should be employed cautiously." *Citibank N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (internal quotation marks omitted) (emphasis added). This comports with the teachings of other Circuits that have considered what law, and procedure, governs the appointment of a receiver in diversity cases. *See National Partnership Inv. Corp. v. National Housing Development Corp.*, 153 F.3d 1289, 1291 (11th Cir.1998) (stating "the appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the action."); *Aviation Supply Corp. v.*

9

*R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) ("The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles," and a "receiver is an extraordinary equitable remedy that is only justified in extreme situations."); *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009) (stating that under federal law appointing a receiver is an equitable remedy).  The Court finds no support for the proposition that a demand for the equitable remedy of the appointment of a receiver is an independent claim that properly can be sustained as an independent "cause of action" in a complaint.

Similarly, injunctions are remedies and may only be issued on an independent claim for relief.  *See Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 294 (S.D.N.Y. 1995) ("There is no 'injunctive' cause of action under New York or federal law."); *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) (noting that "injunctions are remedies, not causes of action."); *Trodale Holdings LLC v. Bristol Healthcare Inv'rs, L.P.*, 2017 U.S. Dist. LEXIS 196150, at *31 (S.D.N.Y. Nov. 29, 2017) (stating it "is well settled that an injunction is a remedy, not a cause of action."); *Pitcairn Props. V. LJL 33rd Street Assocs., LLC*, 2013 U.S. Dist. LEXIS 28509, 2013 WL 705861, at *2 n.1 (S.D.N.Y. Feb. 21, 2013) (same); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010).

"The Court's task on a motion to dismiss is to consider the factual allegations in [Plaintiffs'] complaint to determine if they plausibly suggest an entitlement to relief, and not to determine the appropriate remedy." *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, 2011 U.S. Dist. LEXIS 82912, 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011).  For this reason, the Court must dismiss the requests for the appointment of a receiver and injunctive relief as improper causes of action.  The Court notes that it is not ruling at this time whether Plaintiffs

might ultimately be entitled to said relief were they to adequately state a claim upon which relief can be granted. *See Cellucci*, 2020 WL 977986, at *11 (dismissing derivative claims and admonishing that a complaint "must clearly set forth each cause of action without blurring legal theories, [and] distinguish between causes of action and remedies.").

### C. The Court Abstains from Entertaining the Request that the Nominal Corporation be Dissolved

Separately, Plaintiffs bring a cause of action for "dissolution under N.Y. Bus. Corp. Law § 1104-a." Am. Compl. at 58. Under that law, "the holders of shares representing twenty percent or more" of a corporation may bring a petition of dissolution on the grounds that "[t]he directors or those in control of the corporation have been guilty of illegal fraudulent or oppressive actions toward the complaining shareholders," or because the corporation's assets "are being looted, wasted, or diverted for non-corporate purposes by its directors, officers or those in control of the corporation." N.Y. Bus. Corp. Law § 1104-a.

Plaintiffs ask for extraordinary relief: they would like this Court—the federal District Court for the Southern District of New York—to judicially dissolve a business incorporated and regulated under the laws of the state of New York. The Second Circuit has directed that a "federal court may abstain from hearing a case or claim over which it has jurisdiction to avoid needless disruption of state efforts to establish coherent policy in an area of comprehensive state regulation." *Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943)).

"New York has a strong interest in the creation and dissolution of its corporations and in the uniform development and interpretation of the statutory scheme regarding its corporations." *Friedman*, 38 F.3d at 671. For that reason, "courts within the Second Circuit have almost uniformly ruled that even if federal courts have subject matter jurisdiction over claims for

11

corporate dissolution, they should abstain from exercising [it]." *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 271 (S.D.N.Y. 2008) (internal quotation marks omitted) (collecting cases). Because New York has a strong interest in the creation and dissolution of its corporations, the Court finds that abstention is warranted here.[2]

### D. *Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claim Fails as a Matter of Law*

What remains of Plaintiffs' Amended Complaint is a single cause of action alleging a violation of the implied covenant of good faith and fair dealing. Am. Compl. ¶¶ 158-62. "Under New York law, a covenant of good faith and fair dealing is implied in all contracts." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011). The implied covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 154 (2002) (internal quotation marks omitted).

Plaintiffs allege, *inter alia*, that Defendants have sold inventory at a loss, taken out loans, financially favored the ML Retail shareholder, used the assets of Gooberry to benefit themselves, and closed various stores. *See* Am. Compl. ¶ 161. Defendants seek to dismiss this claim because the Shareholder Agreement includes an express provision that ML Retail has "*sole and absolute discretion* over [a]ll financial and accounting functions, controls, decisions and

---

[2] The Court notes that there is judicial disagreement as to whether a federal court sitting in diversity has subject matter jurisdiction over claims for dissolution of a corporation, which is a creature of state law. *Compare In re English Seafood (USA) Inc.,* 743 F. Supp. 281 (D. Del. 1990) (subject matter jurisdiction), *with Alkire v. Interstate Theatres Corp.,* 379 F. Supp. 1210, 1214 (D. Mass. 1974) (no subject matter jurisdiction). The Second Circuit, and district courts within it, has routinely declined to answer the question. *Friedman*, 38 F.3d at 671 (declining to resolve the question); *Kermanshah*, 580 F. Supp. 2d at 271; *Mecca v. Lennon*, 2017 U.S. Dist. LEXIS 59550, at *13 (E.D.N.Y. April 18, 2017); *Beckworth v. Bizier*, 48 F. Supp. 3d 186, 207 (D. Conn. 2014); *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 296 n.6 (E.D.N.Y. 1999). This uncertainty also underscores abstention here.

procedures for the Company, including, but not limited to, accounting and financial reporting methods and controls, banking relationships, opening and closing of bank accounts, capital expenditures for store expansions, remodels and new locations." Shareholder Agreement § 2.2 (emphasis added); Defs. Mem. at 17. Defendants allege that the implied covenant cannot be breached by actions the express provision of their contract permits them to take. *See* Defs. Mem. at 17-18.

The New York Court of Appeals has suggested that a contract provision granting discretionary authority to one party may be subject to the implied covenant of good faith and fair dealing. *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 396 (1995) ("To be sure, there is a covenant of good faith and fair dealing implicit in [a] contract [that involves discretionary functions]."). Relying on this guidance, courts have ruled that where a contract clause imbued in a party the discretion to take some action, the implied covenant of good faith and fair dealing could adhere to require that the action taken be exercised in a way that was not arbitrary or irrational. *See, e.g.*, *Maddaloni Jewlers, Inc. v. Rolex Watch U.S.A., Inc.*, 41 A.D.3d 269, 838 N.Y.S.2d 536 (1st Dep't 2007).

However, the New York Court of Appeals in *Moran v. Elk* provided further guidance. In *Moran*, the Court of Appeals ruled that a contingent approval clause in a real estate contract did not implicate the implied covenant of good faith and fair dealing. 11 N.Y.3d 452, 458-59. The *Moran* Court looked to the plain meaning of the at-issue contract provision and found that where no limitation was placed on the contingent approval as part of the bargained-for language, the implied covenant of good faith and fair dealing did not attach. *Id.* at 459. Subsequently, Courts in this district and New York have applied *Moran* and its logic broadly to discretionary clauses in contracts. *See Stokes v. Lusker*, 2009 U.S. Dist. LEXIS 23471, 2009 WL 612336, at *8

13

(S.D.N.Y. Mar. 4, 2009) ("[A] discretionary contingency clause does not carry with it an implied duty of good faith, unless it was explicitly part of the bargain."); *Paxi, LLC v. Shiseido Ams. Corp.*, 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009) ("[T]he obligation of good faith and fair dealing does not negate an expressly bargained-for clause that allows a party to exercise its discretion, unless that clause imposes a limit on the discretion to be exercised or explicitly states that the duty of good faith and fair dealing applies."); *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 322, 334 (S.D.N.Y. 2010).

Subsequent to *Moran*, state courts applying New York law have also refused to recognize a claim for breach of the implied covenant of good faith and fair dealing where the contract entitles one party to exercise complete and sole discretion with respect to the complained of actions. *Cambridge Invs. LLC v. Prophecy Asset Mgt., LP*, 188 A.D.3d 521, 522, 132 N.Y.S.3d 622 (1st Dep't 2020) ("Defendant cannot breach the covenant of good faith and fair dealing if the contract gives it sole and complete discretion."); *Transit Funding Assoc., LLC v. Capital One Equip. Fin. Corp.*, 149 A.D.3d 23, 29-30, 48 N.Y.S.3d 110 (1st Dep't 2017) (covenant of good faith and fair dealing cannot negate express provision of contract); *ELBT Realty, LLC v. Mineola Garden City Co.*, 144 A.D.3d 1083, 1084, 42 N.Y.S.3d 304 (2d Dep't 2016) (rejecting implied covenant argument where plain language of contract gave termination discretion to defendant in "its sole discretion.").

Where, as here, the plain language of the agreement provides that a party may act in its "sole and absolute discretion," *see* Shareholder Agreement § 2.2, the implied covenant of good faith and fair dealing may not be used to read into the contract that which is not there. The Shareholder Agreement in this case gave ML Retail "sole and absolute discretion" over a range of actions: "[a]ll financial and accounting functions, controls, decisions and procedures for the

14

company" and "[t]ax matters." Shareholder Agreement § 2.2. Specifically, ML Retail was given the express, exclusive ability to control "banking relationships" and "capital expenditures for store expansions, remodels, and new locations." *Id.* Plaintiffs' allegations with respect to the implied covenant claim complain of the exact actions ML Retail expressly was entitled in its sole discretion to take under the contract. *See* Am. Compl. ¶ 161. The implied covenant cannot alter the plain language in the Shareholder Agreement.

In opposing the Motion to Dismiss, Plaintiffs cite to *In Touch Concepts v. Cellco P'ship*, 949 F. Supp. 2d 447 (S.D.N.Y. 2013). *See* Pls. Opp. at 19. However, that case does not support Plaintiffs' claim. Rather, *In Touch Concepts* found that "an obligation cannot be implied which is inconsistent with or negates the express terms of the contract." *In Touch Concepts*, 949 F. Supp. 2d at 470. Consistent with this reasoning, the Court concludes that Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing. If Plaintiffs wished the "sole and absolute" discretion given to ML Retail were further limited, it could have bargained for specific limitations. *See id.* at 471. Courts "do not ordinarily read implied limitations into unambiguously worded contractual provisions designed to protect contracting parties." *Moran*, 11 N.Y.3d at 456. The Court declines to do so here.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion to Reconsider with respect to the unaddressed state-law claims. On reconsideration, the Court concludes that it does have subject matter jurisdiction over the state law claims and should have ruled on the merits of Defendants' Motion to Dismiss those claims. In the exercise of its diversity jurisdiction, the Court concludes that Plaintiffs' state law claims fail to state a claim upon which relief can be granted. Accordingly, the Court GRANTS the Lemonis Defendants' Motion to Dismiss those claims. Plaintiffs' Amended Complaint is dismissed in its entirety.

In a letter dated October 5, 2021, Plaintiffs stated that they intend to revise their previously-filed proposed Second Amended Complaint.  [ECF No. 85].  Any motion for leave to file a second amended complaint, which must take into account the issues raised herein, shall be filed on or before November 19, 2021.  Any opposition to the Motion to Amend shall be filed on or before December 3, 2021.

**SO ORDERED.**

Date:   **October 15, 2021**
        **New York, NY**

                                            **MARY KAY VYSKOCIL**
                                            **United States District Judge**